IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CEDRIC TRUELUCK,

                              Plaintiff,

        v.                                          Civil Action No.
                                                    9:08-CV-1205 (GLS/DEP)

NEW YORK STATE BOARD OF
PAROLE, *et al.,*

                              Defendants.

_____

APPEARANCES:

FOR PLAINTIFF:

Cedric Trueluck, *pro se*
1421 SW 27th Avenue
Apt. #2701
Ocala, FL  34471

FOR DEFENDANT:

HON. ANDREW M. CUOMO          CHARLES J. QUACKENBUSH, ESQ.
Attorney General              Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Cedric Trueluck, a former New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action against the New York State Board of Parole ("BOP") and various BOP Commissioners and other personnel pursuant to 42 U.S.C. § 1983, alleging deprivation of rights guaranteed both under the United States Constitution and by state statute.  Plaintiff's claims center upon his assertion that when considering him for parole in 2000, 2002, 2004, and 2006, BOP personnel failed to obtain and consider a sentencing transcript from the court in which he was convicted, thereby denying him fair and impartial parole consideration.  Plaintiff's complaint seeks to recover compensatory and punitive damages as well as declaratory and injunctive relief.

In response to plaintiff's complaint, defendants have moved for its dismissal on a variety of grounds.  In their motion, defendants argue that 1) plaintiff's claims are now moot because he has been released from prison; 2) plaintiff has no cognizable, constitutionally protected interest in the granting of parole; and 3) they are immune from suit both in their official capacities and as individuals.  Defendants also contend that

portions of plaintiff's claims, including those accruing more than three years prior to commencement of this action, are time-barred.  Having considered the arguments raised by the defendants, I recommend that their motion, which plaintiff does not oppose, be granted.

I.    BACKGROUND[1]

At the times relevant to his claims, the plaintiff was entrusted to the care and custody of the New York Department of Correctional Services ("DOCS") as a result of a 1992 manslaughter conviction.  *See generally* Complaint (Dkt. No. 1); *see also* https://nysdocslookup.docs.state.ny.us (screenshot attached as Appendix A).  Plaintiff was released from DOCS custody to parole supervision on November 10, 2008.  *Id.*

Plaintiff's claims in this action stem from his periodic appearances before various three-member parole panels, dating back to 2000.  Complaint (Dkt. No. 1) ¶ 3.  The plaintiff was interviewed and considered for parole on May 17, 2000, May 1, 2002, May 12, 2004, and July 25, 2006.  *Id.*  According to the plaintiff, parole officials failed to obtain and

---

[1]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

review minutes of his sentencing before conducting those hearings.  *Id.*
After each interview the plaintiff was denied parole.  *Id.*

After being denied parole in 2006, plaintiff commenced a proceeding
pursuant to Article 78 of the New York Civil Practice Law and Rules in
Bronx County Supreme Court.  Complaint (Dkt. No. 1) ¶ 3.  After the
matter was transferred to Albany County, a decision was issued on April
23, 2008 ordering the Parole Board to obtain the plaintiff's sentencing
transcript for consideration in connection with the parole determination
and to conduct a new parole hearing.  *Id.* Plaintiff's application for parole
was subsequently granted.  *Id.*

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on November 10, 2008.  Dkt. No. 1.
Named as defendants in plaintiff's complaint are the New York State
Board of Parole; BOP Commissioners Vanessa Clark, Irene Platt, Joseph
Gawloski, Daiszzee Bouey, Marietta Gailor, William W. Smith Jr., Patricia
Tappan, William Crowe, Patrick Gallivan, Christina Hernandez, and Kevin
G. Ludlow; BOP Panel Chairmen Robert Dennison and George
Alexander; and Facility Parole Officers Rande D. Nezezon, L.M. Fairchild,
Lester G. Edwards, and Cynthia Martin.  *Id.*  In his complaint, plaintiff

4

asserts various state statutory and constitutional claims, alleging that 1)

defendants denied him the right to a fair hearing by failing to obtain and

review his sentencing minutes prior to the scheduled parole hearings;  2)

defendants followed unofficial and unwritten policies and procedures in

denying plaintiff parole based upon his violent felony conviction; and 3)

two of the defendants retaliated against him in June of 2008 by denying

him a fair parole hearing in response to his having exercised his right to

seek judicial redress.  Plaintiff's complaint demands compensatory

damages in the amount of $450,000 and an additional award of punitive

damages totaling $1.85 million.

In response to plaintiff's complaint, on April 29, 2009 those

defendants who have thus far appeared in the action interposed a motion

seeking dismissal of all or some of plaintiff's claims on a variety of bases.[2]

Dkt. No. 32.  In their motion, defendants argue that 1) plaintiff's claims are

moot in light of his release and the fact that he no longer has a personal

stake in the BOP's practices and procedures;  2) plaintiff's constitutional

claims lack merit since New York inmates have no cognizable liberty

_____

[2]       As will be seen, the court has yet to acquire jurisdiction over defendants
Platt, Gawloski, and Tappan, despite pendency of the action for more than a year.  As
a result, I am recommending dismissal of plaintiff's claims against them, without
prejudice.  *See* pp. 34 - 37, *post.*

interest in being granted parole;  3) all or some of plaintiff's claims are precluded by the Eleventh Amendment; 4) defendants are absolutely immune from suit; and 5) certain of plaintiff's claims are barred by the governing statute of limitations.  *Id.*  Plaintiff has not filed any opposition to defendants' motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

      A.    Plaintiff's Failure To Respond

In addressing defendants' motion the court does not have the benefit of any submission by the plaintiff setting forth his arguments in opposition.  Plaintiff's failure to oppose the motion, however, does not preclude the court from deciding it.  *See*, *e.g., White v. Mitchell,* No. 99-CV-8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001).[3]  A motion to dismiss tests only the legal sufficiency of the plaintiff's complaint; accordingly, since the plaintiff has been afforded a reasonable opportunity to respond to the motion but has failed to avail himself of that chance, the

---

     [3]     Copies of all unreported decisions cited in this document have been attached collectively as Appendix B for the convenience of the *pro se* plaintiff.

court can now determine the complaint's sufficiency as a matter of law based on its own reading of the complaint and knowledge of the case law. *McCall v. Pataki,* 232 F.3d 321, 322-23 (2d Cir. 2000).

It should be noted, however, that plaintiff's failure to respond in opposition to the pending motion is not without significance.  Under this court's local rules a party's failure to respond to a properly filed motion can properly be regarded as consent to the granting of that motion, which under such circumstances should occur provided the court determines that the moving party has met his or her burden of demonstrating facial entitlement to the relief requested.  N.D.N.Y.L.R. 7.1(b)(3); *see also McCall*, 232 F.3d at 322-23 (holding that plaintiff's failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White,* 2001 WL 64756, at n. 2 (citing *McCall*).   Accordingly, I recommend that the court review defendants' motion for facial sufficiency and, upon a finding they have demonstrated entitlement to the relief sought, that the motion be granted.

B.    <u>Dismissal Motion Standard</u>

Defendants' motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Such a motion calls upon a court to

gauge the facial sufficiency of that pleading, utilizing as a backdrop a

pleading standard which, though unexacting in its requirements,

"demands more than an unadorned, the-defendant-unlawfully-harmed me

accusation" in order to withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___,

___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*,

550 U.S. 554, 555, 127 S. Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal

Rules of Civil Procedure requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  *Id.*  While modest in its requirement, that rule

commands that a complaint contain more than mere legal conclusions;

"[w]hile legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations."  *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim which is plausible on its

face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)

(citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second

Circuit has observed, "[w]hile *Twombly* does not require heightened fact

pleading of specifics, it does require enough facts to 'nudge [plaintiffs']

claims across the line from conceivable to plausible.'" *In re Elevator*

*Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570 127 S. Ct. at 1974).

    C.    <u>Mootness</u>

In their motion defendants first urge the court to find that the claims set forth in plaintiff's complaint are moot in light of the fact that he has now been granted parole.  Defendants assert that plaintiff no longer has the requisite stake in the BOP's practices and procedures inasmuch as the "wrong" he claims to have suffered has been remedied, and there is no reasonable possibility that the circumstances of which he complains will be repeated.

The "case or controversy" requirement of Article III of the United States Constitution limits the ability of a federal court to exercise jurisdiction over cases no longer presenting an actual, live dispute between parties.  *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001) (*citing Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78, 110 S. Ct. 1249, 1253-54 (1990)).  When a live controversy ceases to exist or parties lack a "legally cognizable interest" in the outcome of the case, such as where the relief sought has been afforded through non-judicial avenues, the case is moot and a federal court no longer possess subject matter

jurisdiction over the matter.  *Catanzano*, 277 F.3d at 107 (citing and quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944 (1969)); *see also Fox v. Bd. of Trus. of State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir. 1994), *cert. denied*, 515 U.S. 1169, 115 S. Ct. 2634 (1995); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1986).

As an exception to the mootness doctrine, a federal court may entertain an action when presented with a claim that is "capable of repetition, yet evading review." *Omlstead v. Zimring*, 527 U.S. 581, 594 n.6, 119 S. Ct. 2176, 2184 n.6 (1999).  An otherwise moot claim is properly regarded as "capable of repetition" if 1) the duration of the challenged condition was too limited in duration to permit litigation prior to its cessation, or 2) if there is a reasonable expectation that the plaintiff will be subject to the same action again.  *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S. Ct 347, 349 (1975).  A federal court may also entertain a claim if collateral consequences would ensue from denial of the relief sought on mootness grounds. *Werber v. U.S.*, 149 F.3d 172, 176 (1998) (appeal was not moot where resolution of the sentence issue raised affected how long the defendant would remain in jail).

The United States Supreme Court has recognized that the mootness doctrine may serve as a bar to recovery when a prisoner who is no longer in custody challenges the denial of parole.  *See Spencer v. Kemna,* 523 U.S. 1, 7-8, 118 S. Ct. 978, 983 (1998).  In *Spencer*, a habeas proceeding brought pursuant to 28 U.S.C. § 2254, the petitioner did not attack his conviction but instead challenged only the wrongful termination of his parole status.  *Id.*  Since the reincarceration that he experienced as a result of the action ended, and he could not again be subject to arrest or parole revocation based upon his original conviction, the Court concluded that dismissal on the basis of mootness was proper.  *Id.* at 17-18, 118 S. Ct. at 988.

The plaintiff in this case alleges that because the defendants did not obtain and review his sentencing minutes before he appeared at various parole hearings, he was denied the fundamental right to a fair hearing. Complaint  (Dkt. No. 1) ¶¶ 3-4.  Defendants argue that since plaintiff is only challenging the procedures implemented by the defendants, and not the resulting parole denials themselves, and he has now been released from incarceration, his claim is moot.

It is undeniable that in light of plaintiff's release from prison, his claim for injunctive relief no longer presents a live controversy.  Plaintiff's request for injunctive relief appears aimed at requiring the defendants to follow proper procedures in connection with his parole hearings, and does not purport to direct that he be released on parole.  *See* Complaint (Dkt. No. 1) ¶ 9.  Plaintiff is no longer in a position to benefit from the injunctive relief sought, however, since he has already been paroled.

It should be noted that defendants' mootness argument extends beyond plaintiff's request for equitable relief.  Defendants argue that because Trueluck has been released on parole his entire claim, including for damages, is now moot.  The essence of plaintiff's claim is that by failing to provide him with fair consideration in connection with the various parole hearings conducted prior to his release defendants have denied him due process, a violation for which he should be compensated in damages.  To the extent plaintiff seeks such damages, his claim is not moot.  *See Board of Pardons v. Allen,* 482 U.S. 369, 371 n.1, 107 S. Ct. 2415, 2417 n.1 (1987) (in civil rights suit brought by Montana prisoners against the state's Board of Pardons claiming due process violations prisoners' release did not render the action moot since compensatory

damages were sought in addition to injunctive relief); *see also Powell,* 395 U.S. at 495-500, 89 S. Ct. 1950-53.

Based upon the foregoing, while I recommend denial of plaintiff's request for injunctive relief as moot, the portion of defendants' motion seeking dismissal of plaintiff's complaint altogether on the basis of mootness should be denied.

D.    Merits Of Plaintiff's Due Process Claim

Defendants next argue that because New York State prison inmates possess neither a liberty interest in parole nor a constitutional right to due process in connection with the parole process prescribed by the State, and plaintiff's complaint alleges only a violation of state statute which is not cognizable under 42 U.S.C. § 1983, his claim is legally deficient and thus subject to dismissal.

To successfully state a claim under 42 U.S.C. § 1983 for denial of due process, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process.  *See Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.), *cert. denied*, 525 U.S. 907 S. Ct. 246 (1998); *Bedoya v. Coughlin*, 91 F.3d 349,

351-52 (2d Cir. 1996); *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976 (1974).  As a threshold matter, the court must therefore determine whether there is a protected liberty interest at stake in the case. *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)).

Courts have long held that generally speaking, prison inmates do not enjoy a constitutionally protected right to release on parole unless the state in question has created a protectable liberty interest through its prescribed parole scheme.  *Standley v. Dennison*, No. 9:05-CV-1022, 2007 WL 2406909, at *1 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J. & Lowe, M. J.); *Allen v. New York*, No. 9:05-CV-1613, 2006 WL 2864951 at *1 (N.D.N.Y. Oct. 5, 2006) (Mordue, C. J.); *see also Lee v. Governor of New York*, 87 F. 3d 55, 58-59 (2d Cir. 1996).   The court must therefore determine whether New York's statutory parole regime creates a protected liberty interest sufficient to trigger the Fourteenth Amendment's procedural due process requirements.  As the Second Circuit has noted, "[i]n order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he [or she] must have a legitimate expectancy of release that is grounded in the state's statutory scheme. . ..

14

Neither the mere possibility of release, . . . nor a statistical probability of

release, . . . gives rise to a legitimate expectancy of release on parole.

*Barna v. Travis*, 239 F.3d 169, 170-71 (2d Cir. 2001) (per curiam)

(citations omitted).

Against this backdrop, analysis of New York's parole provisions

reveals no basis to find the existence of a protected liberty interest in

being released on parole.   *Marvin v.* Goord, 255 F.3d 40, 44 (2d Cir.

2001); *Barna*, 239 F.3d at 171; *see also Larocco v. New York State Div. of

Parole*, No. 9:05-CV-1602, 2006 WL 1313341, at *2 (N.D.N.Y. May 12,

2006) (McAvoy, S.J.).  New York Executive Law § 259-i(2)(c), the statute

governing the New York parole process, affords broad discretion to the

BOP in determining whether to grant or deny an inmate's application for

early release.  For this reason, the Second Circuit has recognized that the

New York's parole scheme creates no legitimate expectation of release

mandating that an inmate seeking release be afforded procedural due

process protection.  *Duemmel v. Fischer,* No. 9:08-CV-1006,  2009 WL

174364, at *1 (N.D.N.Y. Jan. 23, 2009) (McAvoy, S. J.); *see Barna*, 239

F.3d at 171; *see also Morel v. Thomas*, No. 02 CV 9622, 2003 WL

21488017, at *4 (S.D.N.Y. June 26, 2003).

This is not to say that a New York prison inmate may constitutionally

be denied parole for purely arbitrary or otherwise impermissible reasons.

*Boddie v. N.Y. Div. of Parole*, 288 F. Supp.2d 431, 440 (S.D.N.Y. 2003).

To the contrary, courts have recognized a limited due process right of

New York inmates not to be denied parole for arbitrary or capricious

reasons or based on a protected classification or irrational distinction.

*See Standley,* 2007 WL 2406909, at *9; *see also Graziano v. Pataki*, No.

06 Civ. 0480, 2006 WL 2023082, at *7-9  (S.D.N.Y. July 17, 2006)

(holding that prison inmates do not have a constitutional right to release

on parole, but recognizing "a due process right to have the decision made

only in accordance with the statutory criteria" specified by state law.)

The plaintiff in this case does not allege in his complaint that the

denial of his parole was arbitrary or capricious or that it was based upon a

suspect classification.[4]  Instead, plaintiff maintains that the defendants did

not comply with state law requiring that the Parole Board obtain his

sentencing transcript and consider the recommendation of the sentencing

court when making a decision regarding parole.  At the outset, it should be

---

[4]        While plaintiff does allege that the rejection of his application for parole
resulted from a denial of his right to equal protection to the extent it may have been
based on his status as a violent offender, *see* Complaint (Dkt. No. 1) ¶ 6, as will be
seen that claim is facially lacking in merit.  *See* pp. 19-21, *post.*

16

noted that it is not at all clear, as plaintiff argues, that parole authorities were obligated by state law to obtain and review his sentencing transcript in connection with the various parole hearings.  The relevant statutory provision appears to require consideration of the recommendation of the sentencing court only in cases where a minimum period of imprisonment is not fixed by the sentencing court.  N.Y. Exec. Law § 295-i(2)(c)(A); *see Standley,* 2007 WL 2406909, at *9, n.55.  In this instance, plaintiff's manslaughter conviction resulted in a sentence that included a minimum period of incarceration of eight and one-third years.  More fundamentally, even assuming such a violation occurred, as the Second Circuit has noted, violations of state law procedural requirements alone do not constitute a deprivation of due process.[5]  *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990).

Trueluck may argue that the defendants acted irrationally in failing to consider the sentencing minutes of his criminal conviction at his parole hearings.[6]  New York law directs that the parole determination is to be

---

[5]     It should be noted that there is no independent constitutional right to sentencing minutes at a parole hearing.  *See, e.g., Germenis v. N.Y. Dep't of Corr. Services,* No. 08 Civ. 8968(GEL), 2009 WL 2877646, at *4-5 (S.D.N.Y. Sept. 9, 2009).

[6]     In his complaint plaintiff does not elaborate as to what information the sentencing transcript would disclose and how it would be relevant to the parole decision.

17

informed by consideration of certain factors listed including the inmate's

sentencing record, but does not specify the weight to be accorded each

factor.  N.Y. Exec. Law § 259-i(2)(c)(A); *Mitchell v. Conway*, No. 04 CV

1088, 2006 WL 508086, at *4 (E.D.N.Y. Mar. 1, 2006).  That section

specifically provides that

> [d]iscretionary release on parole shall not be
> granted merely as a reward for good conduct or
> efficient performance of duties while confined but
> after considering if there is a reasonable
> probability that, if such inmate is released, he will
> live and remain at liberty without violating the law,
> and that his release is not incompatible with the
> welfare of society and will not so deprecate the
> seriousness of his crime as to undermine respect
> for law.

N.Y. Exec. Law § 259-i(2)(c)(A).  Additionally, the BOP is entitled to

determine that a prisoner's criminal history and the nature of his or her

criminal conduct outweighs any of the other statutory factors present that

may be used to determine parole. *See Siao-Pao v. Mazzuca*, 442 F.

Supp.2d 148, 154 (S.D.N.Y. 2006).  Thus, even if the plaintiff was denied

parole as a matter of BOP's policy to deny early release to violent

offenders, as he now appears to argue, a federal due process claim would

not lie. *McLaurin v. Paterson,* No. 07 Civ 3482 (PAC) (FM),  2008 WL

3402304, at * 1 (S.D.N.Y. Aug. 11, 2008).  "The parole board may in its

18

discretion find that any one of these factors, *including the severity of the inmate's offense of conviction,* outweighs the other factors in a particular case and is grounds to deny parole." *Mitchell*, 2006 WL 508086, at *4 (emphasis added).

In this instance, nothing in plaintiff's complaint establishes a plausible claim that he was denied due process in connection with the denials of parole at issue. Although plaintiff alleges a violation of a procedural requirement set forth in the applicable state law provisions—an allegation which, as previously noted, is of questionable validity under the circumstances of this case—that alleged violation does not rise to a level sufficient to support a due process cause of action. *Cf. Boddie*, 285 F.Supp.2d at 429-30 (use of uncorrected pre-sentence report and statement of incorrect facts in a parole decision did not violate due process). I therefore recommend dismissal of plaintiff's due process claim based upon his inability to establish the deprivation of cognizable liberty interest or to allege that the denial of parole was arbitrary and capricious. *Larocco,* 2006 WL 1313341, at *3.

E.   Equal Protection

Although plaintiff's complaint makes no explicit reference to the alleged denial of equal protection, read liberally it could be construed to assert such a claim.  Specifically, plaintiff's complaint intimates that he was discriminated against when denied parole on the basis of his status as a violent offender.  *See* Complaint (Dkt. No. 1) ¶ 6.  In their motion, defendants also seek dismissal of any such claim.

The equal protection clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." *City of Cleburne, Tx. v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985) (citation omitted). The equal protection clause, however, does not forbid all classifications. *Curtis v. Pataki*, No. 96-CV-425, 1997 WL 614285, at *3 (N.D.N.Y Oct. 1, 1997) (Pooler, J. & DiBianco, M.J.) (citing *Nicholas v. Tucker*, 114 F.3d 17, 20 (2d Cir.1997)).  Unless either a fundamental right is implicated or a distinction is created that burdens a suspect class, defendants must only demonstrate that their challenged actions in differentiating between groups were rationally related to a legitimate government interest.  *Id.*  It should be noted that prison inmates are not a suspect class; accordingly, when making classifications prison administrators "'need only demonstrate

20

a rational basis for their distinctions.'"  *Hameed v. Coughlin*, 37 F.

Supp.2d 133, 137 (N.D.N.Y. 1999) (citing *Jones v. North Carolina*

*Prisoners' Union, Inc*., 433 U.S. 119, 134, 97 S. Ct. 2532 (1977));

*Nicholas*, 114 F.3d at 20.

Plaintiff's potential equal protection claim is lacking in merit.  The

claim hinges upon his contention that violent felony offenders are similarly

situated to non-violent offenders, a position which has been soundly

rejected by the courts.  *See Standley,* 2007 WL 2406909, at \*13.  As

many courts have recognized, distinguishing between these two groups

for purposes of parole determinations is "entirely appropriate and not at all

invidious."  *Parks v. Edwards,* No. 03 CV 5588 (JG), 2004 WL 377658, at

\*4 (E.D.N.Y. Mar. 1, 2004); *Standley*, 2007 WL 2406909, at \*13.   I

therefore recommend a finding that any potential equal protection claim by

the plaintiff is not plausible, and is thus subject to dismissal.

F.    Retaliation

When liberally construed plaintiff's fifth cause of action could be

interpreted as including a claim of unlawful retaliation.  Complaint (Dkt.

No. 1) ¶ 8.  The essence of that claim appears to be that in retaliation for

having challenged the failure of parole officials to obtain and review a

transcript of his sentencing transcript by way of an Article 78 proceeding filed in the state court, plaintiff was denied a fair and impartial parole hearing in June of 2008.  *Id.*  Although defendants have not similarly construed plaintiff's complaint and challenged this potential retaliation claim, for the following reasons I nonetheless find any such claim is lacking merit.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S. Ct. 992 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (same).

In order to state a *prima facie* claim under section 1983 for

retaliatory conduct, a plaintiff must advance non-conclusory allegations

establishing that 1) the conduct at issue was protected; 2) the defendants

took adverse action against the plaintiff; and 3) there was a causal

connection between the protected activity and the adverse action – in

other words, that the protected conduct was a "substantial or motivating

factor" in the prison officials' decision to take action against the plaintiff.

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287,

97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir.

2007); *Dawes*, 239 F.3d at 492 (2d Cir. 2001).  If the plaintiff carries this

burden, to avoid liability the defendants must show by a preponderance of

the evidence that they would have taken action against the plaintiff "even

in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at

287, 97 S. Ct. at 576.  If taken for both proper and improper reasons, state

action may be upheld if the action would have been taken based on the

proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) (citations omitted).

As can be seen, a critical element of a First Amendment retaliation

claim is that the plaintiff experienced some form of adverse consequence

attributable to the protected activity involved.  In this instance plaintiff has

not alleged, and under the circumstances now known to the court would

be unable to establish, the existence of adverse action stemming from the

June 2008 parole hearing.  It appears from information available to the

court that the hearing, in fact, resulted in the granting of parole.  It thus

appears that, while plaintiff may have been dissatisfied with the tenor of

the June 22, 2008 hearing, the end result was favorable and therefore

does not qualify as adverse action sufficient to support a retaliation claim.

*See Cruz v. Hillman*, No. 01 Civ. 4169, 2002 WL 31045864, at *7

(S.D.N.Y. May 16, 2002) (noting that "[c]ertain means of 'retaliation' may

be so *de minimus* as not to inhibit or punish an inmate's right to free

speech [,and] many verbal responses of officials of resentment or even

ridicule . . . fall into this safe harbor . . ..") (quoting *Dawes*, 239 F.3d at

493).  Accordingly, to the extent plaintiff's fifth cause of action is deemed

to include within it a retaliation claim I recommend that the claim be

dismissed.

     G.    <u>Eleventh Amendment</u>

     Plaintiff seeks compensatory damages against the defendants, each

of whom is alleged to be a BOP employee, for what he alleges are failures

on their part to fulfill their official state duties.  To the extent that damages are sought against them in their official capacity, defendants' motion seeks dismissal of that claim on the basis of the protection afforded under of the Eleventh Amendment.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and to state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest.  *Richards v. State of New York Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh* and *Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)).  To the extent that a state official is sued for damages in his official capacity the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.  *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985); *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991).

Since plaintiff's damage claims against the eighteen defendants in their official government-employee capacity are the  equivalent of claims against the State of New York, they are subject to dismissal under the Eleventh Amendment state-employee exception.  *Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).  I therefore recommend dismissal of plaintiff's damage claims against the defendants in their official capacities.

H.    Absolute Immunity

In their motion defendants also maintain that as BOP employees, they are entitled to absolute immunity from suit since plaintiff's claims involve functions related to their decision of whether to grant, deny, or revoke parole.  The cornerstone of defendants' argument is the adjudicative nature of the function they perform as parole commissioners and is based principally upon the Second Circuit's decision in *Montero v. Travis*, 171 F.3d 757 (2d Cir. 1999); *see also King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).

To ensure a properly functioning penal system, a parole board official should "be free to act upon his [or her] convictions, without apprehension of personal consequences to himself [or herself]."  *Montero,*

171 F.3d at 760-761 (quoting *Bradley v. Fischer,* 80 U.S. 335, 347 (1871)).  Immunity assumes that a risk of error and potential injury outweighs not deciding or acting at all.  *Scheuer v. Rhodes*, 416 U.S. 232, 242, 94 S. Ct 1683, 1689 (1974).  "The Second Circuit [has] . . . held that Parole Board officials are entitled to absolute immunity from liability for damages under § 1983 for their decisions to grant, deny, or revoke parole."  *Barna v. Travis*, No.  97 CV 1146, 1999 WL 305515, at *2 (N.D.N.Y. Apr. 22, 1999) (Smith, M. J.), *aff'd,* 239 F.3d 169 (2d Cir. 2001) (citing *Montero*, 171 F.3d at 760.  To qualify for absolute immunity, parole officials must have been engaged in the performance of an adjudicative function at the time of the challenged action.  *Montero*, 171 F.3d at 761; *see also Farid v. Bouey*, 554 F. Supp.2d 301, 317 (N.D.N.Y. 2008). Parole board officials are provided absolute immunity when performing adjudicative functions in order to preserve impartiality in decision-making and to depreciate the overall costs of defending frivolous inmate suits. *Montero,* 171 F.3d at 760-61.  Further, a state official is entitled to qualified immunity when the officer has an "objectively reasonable basis for believing in the lawfulness of his actions".  *LeDuc v. Tilley,* No.

3:05CV157, 2005 WL 1475334, at *6 n.1 (D. Conn. June 22, 2005)  (citing

*Connecticut v. Crotty*, 346 F.3d 84, 101-02 (2d Cir. 2005)).

It should be noted that the Supreme court has been "sparing" in

recognizing claims of absolute immunity (*Forrester v. White*, 484 U.S.

219, 224, 108 S. Ct. 538, 542 (1988)), as absolute immunity should be

limited to circumstances where the official is able to demonstrate that

application of absolute, rather than qualified, immunity is required by

public policy.  *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1988)

(citations omitted).  A parole officer who claims the benefit of absolute

immunity thus bears the burden of proof.  *DiBlasio v. Novello*, 344 F.3d

292, 297 (2d Cir. 2003), *cert. denied,* 541 U.S. 988, 124 S. Ct. 2018 (Apr.

19, 2004) (quoting *Butz v. Economou*, 438 U.S. 478, 515, 98 S. Ct 2894,

2915 (1978)).

Absolute immunity is less likely to attach when the official function

involved is less adjudicative, such as when the officer acts under his own

initiative rather than that of the court.  *Scotto*, 143 F.3d at 111.  In

determining the applicability of absolute immunity, there must be a specific

inquiry into the facts of the situation at hand to determine whether the

particular acts or responsibilities of the officers fall within the confines of

the absolute immunity doctrine.  *King,* 189 F. 3d at 288.  If the officer's

"function was administrative rather than adjudicative or prosecutorial and

not integrally related to the judicial process," qualified, not absolute,

immunity would attach.  *Id.* at 288 (citing *Scotto*, 143 F.2d at 111-13).  If a

judicial function was performed, even if it was done in an erroneous

manner the function does not become any less judicial in nature.

*Quartararo v. Catterson*, 917 F. Supp 919, 951 (E.D.N.Y. 1996) (quoting

*Tarter v. State of New York*, 68 N.Y.2d 511, 517-18, 503 N.E.2d 84, 87

(1986)).

Plaintiff alleges that he was deprived of his constitutional rights by

the defendants, all BOP employees, through their performance of official

adjudicative functions, including by conducting parole hearings and

denying him release to supervision.  Those functions are precisely the

type to which absolute immunity is applicable.  *See Montero*, 171 F.3d at

761.  I therefore recommend dismissal of both compensatory and punitive

damage claims against the defendants because plaintiff's claims clearly

stem from defendant's participation in an adjudicative process.

In addition to seeking damages, the plaintiff has also requested

injunctive relief.  Although absolute immunity precludes the plaintiff from

succeeding on a claim for damages, it does not prohibit injunctive relief against the defendants.[7]  Such a claim for relief, however, is barred in this case on other grounds.

In 1996 Congress adopted the Federal Courts Improvement Act of 1976, Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996).  Section 309(c) of that Act amended 42 U.S.C. § 1983 to add the provision "that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . . ."  Federal Courts Improvement Act of 1976 § 309(c); *see LeDuc,* 2005 WL1475334, at *7.  Although the added provision of section 1983 references only judicial officers, for the same reason parole board members are ordinarily entitled to absolute immunity based upon the quasi-adjudicatory function which they perform, so too are they entitled to the benefit of this provision precluding the issuance of injunctive relief. *See Montero*, 171 F.3d at 761.  Since the plaintiff has not demonstrated the unavailability of declaratory relief as an exception, his claim for

---

[7]     As was earlier noted, in this instance any claim by plaintiff for injunctive relief is moot.  *See* pp. 9-13, *ante*.

injunctive relief under section 1983 in this action is therefore also barred.
*Id.*

      I.     <u>Statute of Limitations</u>

      In their motion, defendants additionally seek dismissal of certain of
plaintiff's claims based upon the governing statute of limitations.  The
focus of defendants' statute of limitations argument is upon those of
plaintiff's claims accruing more than three years prior to commencement
of this action.

      The applicable limitation period for a claim asserted under 42 U.S.C.
§ 1983 is derived from the general or residual statute of limitations for
personal injury actions under the laws of the forum state. *See Owens v.
Okure,* 488 U.S. 235, 249-50, 109 S. Ct. 573, 582 (1989).  Plaintiff's claim
in this action is accordingly governed by the three-year statute of
limitations which applies in New York to personal injury claims of an
otherwise unspecified nature.  *See* N.Y.C.P.L.R. § 214(5); *see also
Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quoting *Owens*);
*Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995); *Lugo v.
Senkowski*, 114 F. Supp.2d 111, 113 (N.D.N.Y. 2000) (citing *Pinaud* and
*Owens*).

In calculating the three-year statutory limitation period, under the "prison mailbox rule" courts presume that a pleading is filed when it is submitted to the prison officials.  *McLaurin v. Paterson*, No. 07 Civ. 3482, 2008 WL 3402304, at * 10 (S.D.N.Y. Aug. 11, 2008); s*ee also Nobel v. Kelly,* 246 F.3d 93, 97 (2d Cir.), *cert. denied*, 534 U.S. 886, 122 S. Ct. 197 (2001).  Additionally, when applying the applicable limitations period the courts consider a claim to accrue when the plaintiff "'knows or has reason to know of the injury which is the basis of his [or her] action.'"  *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotations and citation omitted), *cert. denied*, 450 U.S. 920, 101 S. Ct. 1368 (1981).

In gauging the timeliness of the plaintiff's claims, I have taken note of the fact that while the plaintiff's complaint in this action was filed on November 10, 2008, it is dated September 17, 2008.   At this juncture, without the benefit of more information concerning when plaintiff's complaint was given to prison officials for mailing to the court, all that can be said with certainty is that his claims are facially untimely unless found to have accrued on or after September 17, 2005.  Plaintiff's claims related

32

to his parole denials in May of 2000, May, 2002,  May, 2004, and July, 2004 are therefore time-barred absent a basis to find equitable tolling.[8]

Equitable tolling is a doctrine applied in "'rare and exceptional circumstances,' where [the court finds] that 'extraordinary circumstances' prevented a party from timely performing a required act and that party 'acted with reasonable diligence throughout the period he [sought] to toll.'" *Czernicki v. U.S. Dep't of Justice*, 137 Fed. Appx. 409, 410-11, 2005 WL 1498456, at *1 (2d Cir. 2005) (summary order cited in accordance with Fed. R. App. Proc. 32.1) (citing and quoting *Doe v. Menefee*, 391 F.3d 147, 159-60 (2d Cir. 2004)). The doctrine may be applied where a statute of limitations has passed due to "'defective pleading'" or the defendant's "'misconduct'" in preventing the plaintiff from bringing his claim or learning of the cause of action.  *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 489

---

[8]    Although not raised in Trueluck's complaint, the question may arise whether the statute of limitations should be considered as having been tolled during the pendency of his Article 78 proceeding.  While federal law determines when a section 1983 claim accrues, state tolling principles determine whether the limitations period has been tolled, unless those rules would "'defeat the goals'" of section 1983.  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (quoting *Hardin v. Straub*, 490 U.S. 536, 539, 109 S. Ct. 1998, 2000 (1989)).  Under New York law, there is no tolling while a litigant pursues related but independent causes of action.  *See Board of Regents v. Tomanio*, 446 U.S. 478, 484-87, 100 S. Ct. 1790, 1795-96 (1980).  Accordingly, a plaintiff's pursuit of a state remedy does not toll the statute of limitations for filing a claim pursuant to section 1983.  *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (citing *Meyer v. Frank*, 550 F.2d 726, 728-730 (2d Cir. 1977) and *Williams v. Walsh*, 558 F.2d 667, 673 (2d Cir. 1977)).

U.S. 89, 96, 111 S. Ct. 453, 112 L.Ed.2d 435 (1990); *Kronisch v. United States*, 150 F.3d 112, 123(2d Cir. 1998).  In this instance plaintiff has not alleged any circumstances that would support a finding of equitable tolling.

J.      Failure To Effectuate Service

A review of the docket sheet in this matter reflects that summonses issued for defendants Patricia Tappan, Irene Platt, and Joseph Gawloski were returned on or about March 20, 2009 together with an indication that the acknowledgment of service forms forwarded by mail to those defendants by the United States Marshal Service were returned unexecuted.  Dkt. Nos. 21-23.  The return of those unexecuted summonses prompted a letter dated April 23, 2009 from the court to Trueluck requesting additional information in order to assist in effectuating service upon those three defendants.  Dkt. No. 30.  Despite that letter plaintiff has not provided the requested information, and jurisdiction has not been acquired over the three unserved defendants.

Although defendants' motion does not explicitly request this relief, the court has *sua sponte* decided to raise the question of whether plaintiff's claims should proceed against the three unserved defendants.[9]

---

[9]      Although plaintiff, who in any event as not responded to defendants' motion, was not alerted to the fact that dismissal of his claims against the three

34

This decision to raise the issue rests upon the requirement, imposed by Rule 4(m) of the Federal Rules of Civil Procedure, that service be made within 120 days of issuance of the summons, absent a court order extending that period.[10]  "[W]here good cause is shown, the court has no choice but to extend the time for service, and the inquiry is ended." *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996). "If, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time." *Id.* (citing Fed. R. Civ. P. 4(m)); *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) ("[D]istrict courts have discretion to grant extensions even in the absence of good cause."); *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986).

---

unserved defendants was under consideration, plaintiff will nonetheless have an opportunity to argue against the recommended dismissal when filing objections to this report with the assigned district judge, the Hon. Gary L. Sharpe.

[10]    That rule provides that

> [i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). This court's local rules shorten the time for service from the 120 day period under Rule 4(m) to sixty days.  *See* N.D.N.Y.L.R. 4.1(b).

When examining whether to extend the prescribed period for service, a district court is afforded ample discretion to weigh the "overlapping equitable considerations" involved in determining whether good cause exists and whether an extension may be granted in the absence of good cause.  *See Zapata*, 502 F.3d at 197.

A plaintiff's *pro se* status entitles him or her to a certain degree of leniency insofar as service of process is concerned; courts generally favor resolution of a case on its merits rather than on the basis of a procedural technicality.  *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N.D. Ill. 1991). When a plaintiff proceeds *in forma pauperis*, as is the case here, the court is obligated to issue the plaintiff's process to the United States Marshal who must, in turn, effect service upon the defendants, thereby relieving the plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.  *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).  That does not mean, however, that a *pro se* plaintiff may stand idly by upon being notified that efforts by the United States Marshals Service to serve a particular defendant have been unsuccessful.  *VanDiver v. Martin*, 304 F. Supp.2d 934, 938-43 (E.D. Mich. 2004).  In such instances it is incumbent

upon the plaintiff to develop, though pretrial discovery or otherwise, any

additional information necessary to permit service by the United States

Marshals Service.  *See id.* at 942.

In this case the defendants at issue have not been served or

otherwise appeared in the action within the appropriate time period.  Upon

a careful review of the record I am unable to find good cause justifying

plaintiff's failure to effectuate timely service and find no sufficient basis to

exercise my discretion in favor of extending the governing period for

service.  Accordingly, since this court has never acquired jurisdiction over

them, the complaint should be dismissed as against defendants Tappan,

Platt and Gawloski, without prejudice.  *See, e.g., Michelson v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp. 1279, 1282 (S.D.N.Y.

1989) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-

45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction until defendants

properly served with summons and complaint).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint in this action challenges the denial of his

application for early release to parole supervision on four separate

occasions.  Plaintiff alleges that those denials were the product of the

defendants' failure to follow prescribed procedures, including by neglecting to consider plaintiff's sentencing minutes before making a determination to deny his applications for parole release.   Plaintiff's complaint, however, merely alleges a failure on the part of the defendants to comply with state statutory provisions and does not make a sufficient allegation of an arbitrary and capricious denial of parole or that parole was denied based upon an irrational distinction sufficient to bring his claim within the narrow confines of a plausible due process cause of action that may be brought by a New York prison inmate being considered for parole. Similarly, plaintiff's complaint fails to assert a cognizable claim for the denial of equal protection.

       In addition to these fundamental shortcomings, plaintiff's claims are also subject to dismissal for a variety of reasons, including the mootness of plaintiff's request for injunctive relief; the Eleventh Amendment, insofar as damages are sought from the defendants in their official capacities; the absolutely immunity enjoyed by defendants engaged in their official decision-making duties; and, to some extent, the applicable statute of limitations.  Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 32) be GRANTED and that plaintiff's complaint be dismissed in its entirety as against all defendants, with prejudice, except as to defendants Patricia Tappan, Irene Platt, and Joseph Gawloski, who should be dismissed from the action on the procedural basis that plaintiff failed to effect timely service, without prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     February 23, 2010
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

39

APPENDIX A

# Department of Correctional Services

## Inmate Information

Inmate Information Data Definitions are provided for most of the elements listed below. When a detailed definition is available for a specific element, you may click on the element's label to view it.

### Identifying and Location Information
### As of 02/22/10

| | |
|---|---|
| DIN (Department Identification Number) | 92A6212 |
| Inmate Name | TRUELUCK, CEDRIC |
| Sex | MALE |
| Date of Birth | 03/31/1975 |
| Race / Ethnicity | BLACK |
| Custody Status | RELEASED |
| Housing Releasing Facility | QUEENSBORO |
| Date Received (Original) | 07/21/1992 |
| Date Received (Current) | 07/21/1992 |
| Admission Type | |
| County of Commitment | BRONX |
| Latest Release Date / Type (Released Inmates Only) | 11/10/08 PAROLE - COND REL TO PAROLE |

### Crimes of Conviction
If all 4 crime fields contain data, there may be additional crimes not shown here. In this case, the crimes shown here are those with the longest sentences.
### As of 02/22/10

| Crime | Class |
|---|---|
| MANSLAUGHTER 1ST | B |
| | |



## Sentence Terms and Release Dates

Under certain circumstances, an inmate may be released prior to serving his or her minimum term and before the earliest release date shown for the inmate.

As of 02/22/10

| | |
|---|---|
| **Aggregate Minimum Sentence** | 008 Years, 04 Months, 00 Days |
| **Aggregate Maximum Sentence** | 025 Years, 00 Months, 00 Days |
| **Earliest Release Date** | |
| **Earliest Release Type** | |
| **Parole Hearing Date** | 12/2008 |
| **Parole Hearing Type** | REAPPEARANCE (OR EARLIER CASE) |
| **Parole Eligibility Date** | 07/11/2000 |
| **Conditional Release Date** | 11/11/2008 |
| **Maximum Expiration Date** | 03/11/2017 |
| **Maximum Expiration Date for Parole Supervision** | |
| **Post Release Supervision Maximum Expiration Date** | |
| **Parole Board Discharge Date** | |

# APPENDIX B



Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Antwon WHITE, Plaintiff,
v.
Dr. J. MITCHELL, Arthur Kill Correctional Facility
Health Services Director, Dennis Breslin, Arthur Kill
Correctional Facility Superintendent and Edward
Checkett, D.D.S., Arthur Kill Correctional Facility
Dentist, Defendants.
No. 99-CV-8519 (FB).

Jan. 18, 2001.

Antwon White, Arthur Kill Correctional Facility, Staten
Island, New York, for the Plaintiff, pro se.

Eliot Spitzer, Attorney General of the State of New York,
By: Maria Filipakis, New York, New York, for the
Defendants.

*MEMORANDUM AND ORDER*

BLOCK, J.

**\*1** Plaintiff Antwon White ("White"), a prison inmate,
brings this action *pro se* pursuant to 42 U.S.C. § 1983 and
New York law alleging that defendants were both
negligent and deliberately indifferent to his medical needs
in connection with treatment for hearing loss he suffered
following the extraction of a wisdom tooth. White pleads
that this conduct violated his rights under the Eighth
Amendment, and seeks injunctive relief as well as
compensatory and punitive damages. While White does
not make the distinction clearly, the Court construes the
complaint as naming defendants in both their individual
and official capacities.[FN1] Defendants have moved to
dismiss White's complaint pursuant to Fed.R.Civ.P.
12(b)(6) asserting that (1) the complaint fails to state a

claim under the Eighth Amendment for deliberate
indifference to his medical needs; (2) the complaint fails
to allege personal involvement by defendant Dennis
Breslin ("Breslin"), Superintendent of Arthur Kill
Correctional Facility ("Arthur Kill"); and (3) defendants
are entitled to qualified immunity. Although White has
filed no opposition to defendants' motion, the Court can
decide the motion without the benefit of a submission
from him.[FN2] For the reasons set forth below, defendants'
motion is denied.

> **FN1.** "[T]he plaintiff ... should not have the
> complaint automatically construed as focusing on
> one capacity to the exclusion of the other."
> *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.1993).

> **FN2.** *See McCall v. Pataki,* 232 F.3d 321, 323
> (2d Cir.2000) ("If a complaint is sufficient to
> state a claim on which relief can be granted, the
> plaintiff's failure to respond to a Rule 12(b)(6)
> motion does not warrant dismissal").

BACKGROUND

The following facts are drawn from White's complaint and
the records attached thereto, and are accepted as true for
the purposes of this motion: On August 5, 1999, while
incarcerated at Arthur Kill, White had a wisdom tooth
extracted by defendant Edward Checkett ("Checkett"), a
dentist employed at Arthur Kill. Read broadly, the
complaint seems to allege that Checkett was aware that he
negligently injured White during the extraction procedure,
but failed to provide immediate medical attention.

Soon after the extraction, White began experiencing
ringing and hearing loss in his left ear. On several
occasions, White brought these complaints to the attention
of defendant Jennifer Mitchell ("Mitchell"), Arthur Kill's
Health Services Director. However, Mitchell did not
provide White with prompt medical attention, and, in
particular, failed to refer him to an ear specialist.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

On November 15, 1999, White filed an administrative complaint, pursuant to the Department of Correctional Services' grievance procedures, requesting medical attention for his hearing problem and, "if necessary," a referral to an ear specialist. Inmate Grievance Complaint attached to Compl. White alleges that Breslin denied his grievance, and "failed to direct his subordinates" to provide White with prompt medical attention.[FN3]

> FN3. Despite White's allegation to the contrary, the Inmate Grievance Resolution Committee ("IGRC") appears to have accepted White's grievance on November 30, 1999, and directed him to "report back to sick-call." Inmate Grievance Complaint attached to Compl.

On December 9, 1999, White was seen by an audiologist who described the degree of hearing loss in his left ear as "severe-profound." NYSDOCS Request & Report of Consultation attached to Compl. The audiologist recommended further medical consultation to determine the etiology of White's hearing loss and approval for a hearing aid evaluation. *See Id.* White filed the complaint in this action on December 23, 1999.

## DISCUSSION

### I. Standard on a Motion to Dismiss

*2 In considering a motion to dismiss, the court's task is " 'necessarily a limited one.' " *George Haug Co. v. Rolls Royce Motor Cars Inc.,* 148 F.3d 136, 139 (2d Cir.1998) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "[I]n ruling on [the] defendant[s'] motion, the court must accept as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 63 (2d. Cir1997). The Court may consider the allegations in the complaint and "all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken." *Hirsch v. Arthur Anderson & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995). In addition, because White is a *pro se* plaintiff, his pleadings must be read liberally. *See Corcoran v. New York Power Auth.,* 202 F.3d 530, 536 (2d Cir.1999);

*Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). The Court should grant such a motion only if, after viewing the plaintiff's allegations in the most favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Feder v. Frost,* 220 F.3d 29, 32 (2d Cir.2000).

### II. Section 1983 Individual Capacity Claims

Defendants contend that White's complaint must be dismissed because it fails to state an Eighth Amendment violation. To state a claim under § 1983 for deprivation of medical treatment, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A serious medical need exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997)) (internal quotation marks omitted). The Second Circuit has recently held that refusal to treat a degenerative condition that tends to have serious medical implications if left untreated is a sufficient basis to support the existence of a serious medical need. *See Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) (holding that a tooth cavity may be a serious medical condition).

To establish deliberate indifference, the plaintiff must prove that "the prison official knew of and disregarded the plaintiff's serious medical needs." *Chance,* 143 F.3d at 703 (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Deliberate indifference will exist when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). "[M]ere medical malpractice' is not tantamount to deliberate indifference," but may rise to the level of deliberate indifference when it "involves culpable recklessness, *i.e.,* an act or failure to act ... that evinces 'a conscious disregard of a substantial risk of harm.' " *Chance,* 143 F.3d at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (internal quotation marks

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

omitted)).

**\*3** White has alleged a "serious medical condition" under *Gamble.* He states that the ringing in his ear developed into a progressive loss of hearing. Indeed, the audiologist's report referred to above characterizes the degree of hearing loss in White's left ear as being "severe-profound."

*Gamble'* s "deliberate indifference" prong is satisfied in respect to each of the defendants in their individual capacities by a reasonably liberal reading of White's *pro se* complaint. With respect to Checkett, White appears to allege that the injury leading to his hearing loss occurred when Checkett negligently extracted his wisdom tooth. Dental malpractice, without more, does not state a claim cognizable under § 1983. White further alleges, however, that Checkett was deliberately indifferent to his medical condition because, once he knew that he had injured White during the extraction procedure, he failed to render timely medical treatment to abate the harm.

As for Mitchell, White alleges that she ignored his subsequent repeated requests for appropriate treatment while his condition worsened, and failed to supervise Arthur Kills's medical personnel in connection with his treatment. Mitchell, therefore, allegedly knew of White's serious medical need, and consciously failed to act to prevent further harm to White.

Finally, Breslin allegedly failed to adequately supervise White's treatment, and denied his grievance. Defendants assert that the complaint must be dismissed as to Breslin because it fails to allege his personal involvement in the Eighth Amendment violation. Because "[s]ection 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). However, "personal involvement of a supervisory defendant may be shown by evidence that ... the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong...." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). White alleges that his grievance made Breslin

aware that his medical needs were being ignored. White's further allegations that Breslin denied the grievance, and failed to take steps to provide for White's treatment are sufficient to plead Breslin's personal involvement in the violation.

III. Section 1983 Official Capacity Claims

To the extent White has asserted claims seeking damages against defendants in their official capacities, they are barred by sovereign immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989). However, the complaint also seeks injunctive relief against the defendants. Injunctive relief may be obtained in a § 1983 action for deliberate indifference to a serious medical need, even absent an official's personal involvement, if the complaint alleges that the official had "responsibility to ensure that prisoners' basic needs were met, and the complaint adequately alleged deliberate indifference to a serious medical need." *Koehl v. Dalsheim,* 85 F.3d 86, 89 (2d Cir.1996); *see also New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 135 (2d Cir.1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)) ("the Eleventh Amendment does not bar federal courts from issuing an injunction against a state official who is acting contrary to federal law"). White alleges that defendants have denied him treatment for his progressive hearing loss. If he can prove his contentions, he may be entitled to injunctive relief.

IV. Qualified Immunity

**\*4** The defendants enjoy qualified immunity from White's suit if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Even where a prisoner's rights are clearly established, "qualified immunity is still available to an official if it was 'objectively reasonable for the public official to believe that his acts did not violate those rights.' " *Hathaway,* 37 F.3d at 67 (quoting *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991)).

Defendants contend that their actions were objectively

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

reasonable. (*See* Def. Mem. at 9). However, because the complaint adequately alleges a claim for deliberate indifference, defendants are not entitled to qualified immunity on their Fed.R.Civ.P. 12(b)(6) motion. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (the issue when considering qualified immunity in the context of Fed.R.Civ.P. 12(b)(6) "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). This allegation, if proved, could constitute a violation of White's Eighth Amendment rights, and more facts are necessary to resolve the qualified immunity question.

V. State Law Claims

As referred to above, the complaint, liberally construed, also alleges dental malpractice against Checkett and negligent supervision against Breslin and Mitchell in their individual capacities. Although theses claims are not cognizable in an action under § 1983, they do allege state law claims. Defendants do not address these claims in their motion to dismiss. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over these pendent claims. *See Shimon v. Department of Corr. Serv. for the State of N.Y.,* No. 93 Civ. 3144(DC), 1996 WL 15688, at *3 (S.D.N.Y. Jan. 17, 1996) (Section 24 of New York Correction Law does not bar federal court from hearing pendent state law medical malpractice claim asserted against New York State Department of Correctional Services employee in employee's individual capacity). However, the Eleventh Amendment bars White's claims for damages or injunctive relief against the defendants in their official capacities. *See Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Fleet Bank, Nat'l Ass'n v. Burke,* 160 F.3d 883, 891 (2d Cir.1998).

CONCLUSION

Defendants' motion to dismiss is denied.

SO ORDERED.

E.D.N.Y.,2001.
White v. Mitchell

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
John STANDLEY, Plaintiff,
v.
Robert DENNISON, Terrence X. Tracy, Vanessa
Clarke, Marietta Gailor, Smith Jr., Vernon Manley,
Patricia Tappan, Debra Loomis, Roslyn Block, John
Capacci, Edward Mevec and Livio Lazzari, Defendants.
**No. 9:05-CV-1033 (GLS/GHL).**

Aug. 21, 2007.

John Standley, Comstock, NY, pro se.

Hon. Andrew M. Cuomo, New York Attorney General,
Christopher W. Hall, Assistant Attorney General, of
Counsel, Albany, NY, for the Defendants.

***MEMORANDUM-DECISION AND ORDER***

GARY L. SHARPE, U.S. District Judge.

**\*1** After John Standley filed a § 1983 action alleging
violations of his Fourteenth Amendment rights,[FN1] *see Dkt.
No. 4; see also* 42 U.S.C. § 1983, his complaint was
referred to Magistrate Judge George H. Lowe for report
and recommendation. *See* 28 U.S.C. § 636(b)(1)(A), (B);
N.D.N.Y. R. 72.3(c); Gen. Order No. 12, § D(1) (G).
Subsequently, Judge Lowe issued a report recommending
that Standley's motion for summary judgment be denied,
and defendants' cross-motion for summary judgment be
granted in its entirety. *See Report-Recommendation ("R &
R"), Dkt. No. 45.*[FN2]

> FN1. Standley chiefly asserts that his due process
> were violated when the recommendation of the

sentencing court was not considered during his
parole hearing. *See Dkt No. 4.*

> FN2. The Clerk is directed to append Judge
> Lowe's Report-Recommendation to this decision,
> and familiarity is presumed. *See Dkt. No. 45.*

Broadly construing the complaint, Judge Lowe concluded
the following: (1) Standley did not have a protected liberty
interest in his parole proceedings, and therefore failed to
establish a due process claim, and (2) Standley's equal
protection claim fails to allege a protected class, and is
therefore also deficient.

Standley has now filed timely objections to Judge Lowe's
report. *See Dkt. No. 47.* Since he specifically objects to
Judge Lowe's legal and factual findings, his objections will
be reviewed *de novo. See Almonte v. N.Y. State Div. of
Parole,* 9:04-CV-484, 2006 WL 149049, at \*4 (N.D.N.Y.
Jan.18, 2006). Upon careful consideration of the
arguments, the relevant parts of the record, and the
applicable law, the court adopts the
Report-Recommendation in its entirety.

Standley specifically objects to Judge Lowe's failure to
consider the Supreme Court's holding in *Wilkinson v.
Dotson* in determining his due process claim. *See
Wilkinson v. Dotson,* 544 U.S. 74, 125 S.Ct. 1242, 161
L.Ed.2d 253 (2005). He argues that *Wilkinson* permits
prisoners to bring a § 1983 action to challenge the
constitutionally of parole proceedings. The court will
review this objection *de novo.*

While *Wilkinson* provides a viable § 1983 cause of action
for prisoners seeking redress for state procedures, New
York state prisoners have no constitutionally protected
liberty interest in parole. *See Yourdon v. Johnson,*
01-CV-812E, 2006 WL 2811710, at \*2 (W.D.N.Y.
Sept.28, 2006). The *Yourdon* court noted:

[t]he plaintiffs in *Wilkinson* were state prisoners in Ohio
seeking declaratory and injunctive relief claiming that

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

Ohio's state parole procedures were unconstitutional. The Supreme Court's ruling therein was narrow in that it only allowed a state prisoner who challenges the constitutionality of the state parole procedures to bring a claim under 42 U.S.C. § 1983 for declaratory and injunctive relief 'where success in the action would not necessarily spell immediate or speedier release for the prisoner' and did not create or comment on any constitutional entitlements relating to parole. Clearly, Wilkinson did not address whether discretionary parole in New York imparts a constitutional liberty interest in an inmate within the New York State Corrections System thereby entitling him to due process under the United States Constitution.

Yourdon, 2006 WL 2811710, at *2 (citing Wilkinson, 544 U.S. at 8182). Therefore, Standley's reliance on Wilkinson is misplaced. As Judge Lowe noted, Standley's complaint fails to state a due process claim because he has no liberty interest in parole and no constitutional due process rights in the parole process in New York.FN3 Therefore, Standley's motion for summary judgment on this ground is denied, and defendants' motion on the basis of due process is granted.

FN3. Since Standley does not have a protected liberty interest, to state a claim for relief he must allege that defendants acted "arbitrarily or capriciously." See Bottom v. Pataki, 03-CV-835, 2006 WL 2265408, at *6 (N.D.N.Y. Aug.7, 2006). Standley has not demonstrated that defendants acted either arbitrarily or capriciously, and therefore his due process claim must fail.

*2 Standley also objects to the use of internet citations throughout Judge Lowe's report since he does not have access to Lexis or Westlaw. The court will review this objection de novo. The Supreme Court has recognized that access to the courts under the First Amendment entitles prisoners to adequate law libraries. However, this does not translate into an abstract, free-standing right to a law library or legal assistance. See Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); see also Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Here, Standley does not argue that the Correctional Facility where he is housed does not have

an adequate law library. Instead, he claims that does not have access to all the cases cited by Judge Lowe. Reviewing Judge Lowe's report, the cases cited for major tenets of law are reported in volumes presumably available to Standley. Therefore, to the extent that some peripheral cases were not available to him, Standley has not been unduly prejudiced. For the reasons stated, Standley's motion for summary judgment is denied, and defendants' cross-motion is granted. Accordingly, the court adopts Judge Lowe's report in its entirety.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Judge Lowe's March 30, 2007 Report-Recommendation (**Dkt. No. 45**) is accepted and adopted in its entirety; and it is further

**ORDERED** that Standley's motion for summary judgment (**Dkt. No. 24**) is **DENIED;** and it is further

**ORDERED** that defendants' cross-motion for summary judgment (**Dkt. No. 30**) is **GRANTED,** and the complaint (**Dkt. No. 4**) is **DISMISSED IN ITS ENTIRETY;** and it is further

**ORDERED** that the Clerk of the Court provide copies of this Order to the parties by mail.

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). Generally, in this *pro se* civil rights action brought under 42 U.S.C. § 1983, New York State Inmate John Standley ("Plaintiff") alleges that twelve employees of the New York State Division of Parole-Robert Dennison, Terrence X. Tracy, Venessa Clarke, Marietta Gailor, Walter Smith, Jr., Vernon Manley, Patricia Tappan, Debra Loomis, Roslyn

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

Block, John Capacci, Edward Mevec, and Livio Lazzari ("Defendants")-violated Plaintiff's due process and equal protection rights under the Fourteenth Amendment by, *inter alia,* failing to consider his sentencing minutes during four separate parole hearings on July 22, 2003, July 27, 2004, January 10, 2005, and July 19, 2005. (*See generally* Dkt. No. 4 [Plf.'s Am. Compl.].)

Currently before the Court are Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment. (Dkt.Nos.24, 30.) FN1 For the reasons discussed below, I recommend that Defendants' cross-motion for summary judgment be granted, and that Plaintiff's motion for summary judgment be denied as moot, procedurally deficient, and/or without merit. In the alternative, I recommend that Plaintiff's *in forma pauperis* status be revoked as having been improvidently granted due to Plaintiff's lack of candor with the Court, and that his Amended Complaint be dismissed without prejudice to refiling.

> FN1. I note that service of Plaintiff's Complaint was not effected on Patricia Tappan due to the fact that she is no longer employed by the New York State Division of Parole. (Dkt.Nos.18, 32.) However, the analysis and conclusions set forth in this Report-Recommendation apply to all Defendants, including Defendant Tappan.

## I. BACKGROUND

*3 In his Amended Complaint, Plaintiff alleges as follows. At Plaintiff's first parole hearing, on **July 22, 2003,** Defendants **Tappan, Clarke** and **Gailor** denied Plaintiff parole. (Dkt. No. 4, ¶ 33 [Plf.'s Am. Compl.].) This hearing was improper in two ways: (1) Defendants **Tappan, Clarke** and **Gailor** should not have considered "sealed criminal information" contained in Plaintiff's pre-sentence report, and (2) Defendants **Tappan, Clarke** and **Gailor** failed to consider Plaintiff's "sentencing minutes," which contained "the recommendation from the sentencing judge [Judge Goodman] that plaintiff's release to parole after the completion of twenty years was entirely depend[ent] upon his record of rehabilitation," which record had been exemplary. (*Id.* at ¶¶ 25-35, 37, 40, 89.) On or about **February 12, 2004,** Defendant **Loomis**

participated in the decision to affirm this hearing decision. (*Id.* at ¶¶ 37, 38.)

At Plaintiff's second parole hearing, on **July 27, 2004,** Defendants **Loomis, Block** and **Capacci** denied Plaintiff parole. (*Id.* at ¶¶ 41, 47.) This hearing was improper in five ways: (1) Defendant **Loomis** should not have participated in the hearing since, on June 18, 2004, the New York State Supreme Court, Albany County, had ruled that the hearing must be a *de novo* hearing before members of the New York State Division of Parole other than the members who decided the prior parole proceeding; (2) Defendant **Loomis** should not have participated in the hearing since "her statutory right to act as a parole commissioner expired on June 18, 2004"; (3) Defendants **Loomis, Block** and **Capacci** should have reviewed Plaintiff's sentencing minutes and the recommendation of Judge Goodman before they conducted the hearing, as ordered by the New York State Supreme Court, Albany County, on June 18, 2004; (4) instead, Defendants **Loomis, Block** and **Capacci** based their decision on "their own personal opinions as to the appropriate penalty" to impose on Plaintiff, and not on any evidence; and (5) Defendant **Tracy** should have ensured that Defendants Loomis, Block and Capacci reviewed those documents before they conducted the hearing, since Plaintiff had, before the hearing, written to Defendant Tracy expressing concern that those three Defendants would not review the documents. (*Id.* at ¶¶ 17-19, 36, 38-48, 51, 90, 95.) Subsequently, this hearing was affirmed by a panel that included Defendants **Gailor** and **Loomis** improperly (since Defendant **Gailor** had participated in the first hearing and Defendant Loomis had participated in deciding the appeal from the first hearing). (*Id.* at ¶¶ 68-69, 86.) Furthermore, at some point after **October 27, 2004,** Defendant **Tracy** failed to remedy these errors after being notified of them by Plaintiff. (*Id.* at ¶ 52.)

At Plaintiff's third parole hearing, on **January 18, 2005,** Defendants **Mevec, Manley** and **Smith** denied Plaintiff parole. (*Id.* at ¶¶ 59, 62.) This hearing was improper in three ways: (1) it was ordered without Plaintiff having been previously provided a written decision expressing the findings reached at the previous parole hearing or the findings reached by the appeals unit that had ordered the new hearing; (2) Defendants **Mevec, Manley** and **Smith** should have reviewed Plaintiff's sentencing minutes and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

the recommendation of Judge Goodman before they conducted the hearing; and (3) Defendant **Tracy** should have ensured that Defendants Mevec, Manley and Smith reviewed those documents before they conducted the hearing, since Plaintiff had, before the hearing, written to Defendant Tracy expressing concern that those three Defendants would not review the documents. (*Id.* at ¶¶ 54, 57-64, 66-67, 91, 95.) Furthermore, at some point after **February 5, 2005,** Defendant **Tracy** failed to remedy these errors after being notified of them by Plaintiff. (*Id.* at ¶ 70.) In addition, at some point, Defendant **Tracy** failed to provide Plaintiff with "written reasons as to why he was granted a *second de novo* hearing," as requested by Plaintiff. (*Id.* at ¶ 72.)

**\*4** At Plaintiff's fourth parole hearing, on **July 19, 2005,** Defendants **Lazzari, Manley** and **Capacci** denied Plaintiff parole. (*Id.* at ¶¶ 73, 84.) This hearing was improper in four ways: (1) Defendants **Lazzari, Manley** and **Capacci** should have reviewed Plaintiff's sentencing minutes and the recommendation of Judge Goodman before they conducted the hearing; (2) Defendants **Lazzari, Manley** and **Capacci** "coerced" Plaintiff into agreeing to proceed with the hearing without the benefit of his sentencing minutes, by threatening to otherwise postpone the hearing for three months, and by misrepresenting to Plaintiff that it was his burden to provide such minutes to the Division of Parole; (3) Defendant **Lazzari** considered "sealed criminal information" contained in Plaintiff's pre-sentence report, despite the June 18, 2004, order of the New York State Supreme Court, Albany County, to not consider such information, and to "blackout" such information; and (4) Defendant **Capacci** deprived Plaintiff of his right "to be heard on the record" by "cut[ting] him off in mid sentence[ ] and in a hostile manner" when Plaintiff was attempting to respond to Defendant Capacci's question, "[W]hy did you decide to stab and kill [your victim]?" (*Id.* at ¶¶ 73-84, 92-94.)

Finally, Plaintiff alleges that Defendant **Dennison** is liable by failing "to ensure that plaintiff [was] accorded a proper Parole Board hearing by guaranteeing that the sentencing minutes would be submitted for review and consideration by the defendants prior to any parole determination," and failing to "ensure that the enumerated provisions of Criminal Procedure Law § 160.50 and Executive Law § 296(16), and the previous court's Memorandum and

Judgment, [were] complied with by the removal of all statutorily sealed criminal information from plaintiff's parole file ...." (*Id.* at ¶ 95 [emphasis removed].)

## II. APPLICABLE LEGAL STANDARD

### A. Motion for Summary Judgment Under Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material FN2 fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. FN3

> FN2. A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> FN3.*Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) [citation omitted]; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).FN4 The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." FN5 "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." FN6

> FN4.*See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

FN5.*Matsushita,* 475 U.S. at 585-86;*see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

FN6.*Ross v. McGinnis,* 00-CV-0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

**\*5** When deciding a motion for summary judgment, the facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record [FN7] and are not specifically controverted by the non-movant.[FN8] Once a movant has filed a Rule 7.1 Statement, the opposing party must file a Rule 7.1 Response.[FN9] This Rule 7.1 Response "shall mirror the movant's [Rule 7.1 Statement] by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." [FN10] A district court has no duty to perform an independent review of the record to find proof of a factual dispute.[FN11] In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[FN12] (Here, I note that Plaintiff's Amended Complaint is verified.)

FN7.*See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 243-245 (2d Cir.2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.... [I]n determining whether the moving party has met this burden ..., the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g., Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct.29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a) (3).

Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

FN8.*See* N.D.N.Y. L.R. 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."* ).

FN9.*See* N.D.N.Y. L.R. 7.1(a)(3).

FN10. (*Id.*)

FN11.*See Amnesty Am. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct.29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

FN12.*See Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d. Cir.2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson,* 251 F.3d 345, 361 (2d Cir.2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied,* 536 U.S. 922, 122 S.Ct. 2586, 153 L.Ed.2d 776 (2002); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1993) ("A verified complaint is to be treated

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

as an affidavit for summary judgment purposes.") [citations omitted].

However, to be sufficient to create a factual issue, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge." [FN13] An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay. [FN14] In addition, such an affidavit (or verified complaint) must not be conclusory. [FN15] An affidavit (or verified complaint) is conclusory if, for example, its assertions lack any supporting evidence or are too general. [FN16] Moreover, "[a]n affidavit must not present legal arguments." [FN17]

FN13.Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 44 F.3d 1082, 1084 (2d Cir.1995)* [citations omitted], *cert. denied sub nom, Ferrante v. U.S., 516 U.S. 806, 116 S.Ct. 50, 133 L.Ed.2d 15 (1995).*

FN14.See *Patterson,* 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.' ... [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir.1988)* ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief .... Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top*

*Assoc., Inc., 425 F.2d 92, 97 (2d Cir.1970)* (rejecting affidavit made on "suspicion ... rumor and hearsay"); *Spence v. Maryland Cas. Co., 803 F.Supp. 649, 664 (W.D.N.Y.1992)* (rejecting affidavit made on "secondhand information and hearsay"), *aff'd,995 F.2d 1147 (2d Cir.1993).*

FN15.See Fed.R.Civ.P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson,* 375 F.3d at 219 (2d. Cir.2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate,* 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

FN16.See, e.g., *Bickerstaff v. Vassar Oil, 196 F.3d 435, 452 (2d Cir.1998)* (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur., 78 F.3d 61, 63 (2d Cir.1996)* (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir.1985)* (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e] ), *cert. denied,474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)*; *Applegate,* 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

FN17. N.D.N.Y. L.R. 7.1(a)(2).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." [FN18]

> FN18. *See, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 554-555 (2d Cir.2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner,* 03-CV-3789, 2006 WL 357824, at *3-4 & n. 7, 14, 16, 21 (S.D.N.Y. Feb.15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.,* 332 F.Supp.2d 599, 612 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by

admissible evidence or benign"), *aff'd,* 136 F. App'x 383 (2d Cir.2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit's application of its Local Rule § 0.23). *See, infra,* note 24 of this Report-Recommendation.

**B. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

To the extent that a defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is based entirely on the complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Rule 12(b) (6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273-274 (2d Cir.1968) [citations omitted], *accord, Katz v. Molic,* 128 F.R.D. 35, 37-38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

To prevail on a motion to dismiss for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) [citations omitted].[FN19] A defendant may base this motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a) (2); [FN20] or (2) a challenge to the legal cognizability of the claim.[FN21]

> FN19. *See also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") [internal quotations and citation omitted].

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

FN20.*See* 5C Wright & Miller, *Federe* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN21.*See Swierkiewicz,* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b] [6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

**6** Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[FN22] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47).[FN23] The purpose of this rule is to "facilitate a proper decision on the merits." *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley,* 355 U.S. at 48). A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, C.J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion).[FN24]

FN22.*See Swierkiewicz,* 534 U.S. at 511-512, 515.

FN23.*See also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47);*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley,* 355 U.S. at 47).

FN24. Consistent with the Second Circuit's application of its Local Rule § 0.23, I cite this unpublished table opinion, not as precedential

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Fin. Co.,* 104 F.3d 355 [2d Cir.1996] ); *U.S. v. Casado,* 303 F.3d 440, 449 n. 5 (2d Cir.2002) (citing, for similar purpose, unpublished table opinion of *U.S. v. Terry,* 927 F.2d 593 [2d Cir.1991] ); *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 114 (2d Cir.2002) (citing, for similar purpose, unpublished table opinion of *Zitz v. Pereira,* 225 F.3d 646 [2d Cir.2000] ); *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 57 (2d Cir.2001) (citing, for similar purpose, unpublished table opinion of *Herman Miller, Inc. v. Worth Capitol,* 173 F.3d 844 [2d Cir.1999] ); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A. G.,* 215 F.3d 219, 226 (2d Cir.2000) (citing, for similar purpose, unpublished table opinion of *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.,* 895 F.2d 1410 [2d Cir.1989] ); *Name.Space, Inc. v. Network Solutions, Inc.,* 202 F.3d 573, 586 (2d Cir.2000) (citing, for similar purpose, unpublished table opinion of *Planned Parenthood Fed'n of Am. v. Bucci,* 152 F.3d 920 [2d Cir.1998] ). Moreover, I cite *Gonzales* to show a "well-reasoned district court disposition of a similar case," as did the Second Circuit with regard to another case in a similar circumstance in *Carvey v. LeFevre,* 611 F.2d 19, 22 & n. 2 (2d Cir.1979).

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003); *see, e.g., Dura Pharm.,* 125 S.Ct. at 1634-1635 (pleading did not meet Rule 8(a)[2]'s liberal requirement); *accord, Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004),

*Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004).[FN25]

FN25. Several other decisions exist from the Second Circuit affirming the Rule 12(b)(6) dismissal of a complaint due to its insufficiency under Rule 8(a)(2) after *Swierkiewicz. See, e.g., Johnson v. U.S.,* No. 03-6054, 2003 WL 22849896, at *1 (2d Cir. Dec.2, 2003) (relying on pre-*Swierkiewicz* decision by the Second Circuit applying Rule 8[a] and Rule 12[b][6] ); *Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Second Circuit Local Rule § 0.23, I cite them because they clearly acknowledge the continued precedential effect, after *Swierkiewicz,* of cases from within the Second Circuit interpreting Rules 12(b)(6) and 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]. "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se." Hernandez,* 18 F.3d at 136 [citation omitted].[FN26] Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).[FN27]

FN26. *See also Vital v. Interfaith Med. Ctr.,* 168

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

F.3d 615, 619 (2d Cir.1999) (affirming dismissal under Rule 12[b][6] ) [internal quotations and citation omitted].

FN27. Of course, the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended." *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980) [citations omitted], *accord, Gil v. Vogilano,* 131 F.Supp.2d 486, 491 (S.D.N.Y.2001).

Finally, when addressing a *pro se* complaint, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted).[FN28] Of course, an opportunity to replead should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]. Moreover, granting a *pro se* plaintiff an opportunity to amend his complaint is not required where the plaintiff has already been given an opportunity to amend his complaint (and has taken advantage of that opportunity).

FN28. *See also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

## C. Revocation of Plaintiff's Special Status as *Pro Se* Civil Rights Litigant

**\*7** Imposed over the aforementioned burden-shifting framework is the generous perspective with which the Court *generally* views a *pro se* civil rights plaintiff's papers.[FN29] For example, where a civil rights plaintiff is

proceeding *pro se,* and the defendant has filed a dispositive motion, *generally* the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest.[FN30] Having said that, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment." [FN31]

FN29. *See Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 467 (S.D.N.Y.1998) (*pro se* civil rights action), *aff'd in part, vacated in part on other grounds,* 205 F.3d 1324 (2d Cir.2000) (unpublished decision).

FN30. *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir.2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F.Supp. 794, 799 (W.D.N.Y.1997) (motion for summary judgment in civil rights case).

FN31. *Bussa v. Aitalia Line Aeree Italiane S.p.A.,* 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord, Durran v. Selsky,* 251 F.Supp.2d 1208, 1211 (W.D.N.Y.2003) [citations omitted]. For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, ... [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual." *Kadosh v. TRW, Inc.,* 91-CV-5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec.5, 1994).

In addition, "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or status that is normally afforded *pro se* litigants.[FN32] The rationale for this revocation of special status (at least in the Second Circuit)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

is not that the *pro se* litigant should be punished but that his excessive litigiousness demonstrates his *experience*, the lack of which is the reason for conferring the special status upon *pro se* litigants in the first place.[FN33] Moreover, permitting experienced *pro se* litigants to retain their special status (despite their litigation experience) would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents.[FN34]

FN32.*Smith v. Burge,* 03-CV-0955, 2006 WL 2805242, at *3 & n. 3 (N.D.N.Y. Sept.28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted].

FN33.*See, e.g., Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n. 1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, *2 (2d Cir.1999)* (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,* Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); *Gill v. Pidylpchak,* 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec.19, 2006) (Scullin, J., adopting report-recommendation of Treece, M.J.); *Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *2 (N.D.N.Y. Oct.18, 2006) (Hurd, M.J., adopting Report-Recommendation of Lowe, M.J.); *Gill v. Frawley,* 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Davidson v. Talbot,* 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick,* 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY,* 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept.29, 2004); *Davidson v. Dean,* 204 F.R.D. 251, 257 & n. 5 (S.D.N.Y.2001); *Santiago v. C.O. Campisi,* 91 F.Supp.2d 665, 670

(S.D.N.Y.2000); *McGann v. U.S.,* 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta,* 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct.11, 1991).

FN34.*See, e.g., Hussein,* 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); *see also* Jessica Case, "Pro se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L.Rev.* 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro se* litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

Courts relying on the "experience" rationale for revoking a *pro se* litigant's special status look at a variety of factors in assessing whether or not the *pro se* litigant is experienced. Most often, these factors include (1) the number of previous federal court actions filed, (2) the number of previous federal court appeals filed, (3) the number of previous state court actions filed, (4) the number of previous state court appeals filed, and (5) the recency or simultaneity of the actions and/or appeals.[FN35]

FN35.*See, e.g., Eggersdorf,* 8 F. App'x at 143;*Gummerson,* 201 F.3d at *2; *Flynn,* 32 F.3d at 31;*Frawley,* 2006 WL 1742738, at *3 & n. 2;*Talbot,* 2005 U.S. Dist. LEXIS 39576, at *18-20 & n. 10; *Riddick,* 2005 U.S. Dist. LEXIS 5394, at *7 & n. 3; *Dean,* 204 F.R.D. at 257;*Santiago,* 91 F.Supp.2d at 670;*McGann,* 1999 WL 173596, at *2, 8-10;*McClellan,* 1996 U.S. Dist. LEXIS 8164, at *3-4 & n. 3; *Brown,* 1995 U.S. Dist. LEXIS 213, at *2 n. 1.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

There is, of course, no formula for determining "How many is too many?" However, *generally,* if a *pro se* litigant has filed a dozen or more actions and/or appeals before the date of the decision in question, it is quite possible that he will be deemed to be "experienced." [FN36] Granted, there are some cases revoking the special status of a *pro se* litigant who has filed *fewer* than a dozen cases. [FN37] However, there appear to be *more* cases refusing to revoke the special status of a *pro se* litigant who has filed fewer than a dozen cases. [FN38]

FN36. *See, e.g., Eggersdorf,* 8 F. App'x at 143 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had *twelve* simultaneously pending lawsuits in Northern District alone); *Gummerson,* 201 F.3d at *2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had *twelve* simultaneously pending lawsuits in Northern District alone); *Talbot,* 2005 U.S. Dist. LEXIS 39576, at * 18-20 & n. 10 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed *twenty* lawsuits in Northern District alone); *Riddick,* 2005 U.S. Dist. LEXIS 5394, at *7 & n. 3 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed *twenty* lawsuits in Northern District alone).

FN37. *See, e.g., Santiago,* 91 F.Supp.2d at 670 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had *ten* lawsuits pending in Southern District); *Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *2 & n. 11 (N.D.N.Y. Oct.18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (denying leniency to *pro se* civil rights inmate who had previously filed *eight* federal court actions or appeals); *McClellan,* 1996 U.S. Dist. LEXIS 8164, at *3-4 & n. 3 (denying leniency to *pro se* civil rights inmate based on fact that inmate had filed *seven* previous lawsuits against prison officials); *Brown,* 1995 U.S. Dist. LEXIS 213, at *2 n. 1 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had *seven* lawsuits pending in Western District).

FN38. *See, e.g., McEachin v. Faruki,*

03-CV-1442, 2006 WL 721570, at *2 n. 3 (N.D.N.Y. March 20, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed *eleven* other federal lawsuits since 2000); *Pritchett v. Portoundo,* 03-CV-0378, 2005 WL 2179398, at *2 n. 3 (N.D.N.Y. Sept.9, 2005) (refusing to deny leniency to *pro se* civil rights inmate who had filed *eight* other federal lawsuits since 1996); *Burke v. Seitz,* 01-CV-1396, 2006 WL 383513, at *2 n. 5 (N.D.N.Y. Feb.13, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed *six* other federal lawsuits in previous nine years); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *3 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (refusing to deny leniency to *pro se* civil rights inmate who had previously filed *five* actions or appeals in federal or state court); *Smith,* 2006 WL 2805242, at *3 & n. 4 (refusing to deny leniency to *pro se* civil rights inmate based on his filing of *five* other lawsuits); *Abbas v. Senkowski,* 03-CV-0476, 2005 WL 2179426, at *2 n. 4 (N.D.N.Y. Sept.9, 2005) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed *three* other federal actions since 1997); *Loren v. Feerick,* 97-CV-3975, 1997 WL 441939, at *1 & n. 9 (S.D.N.Y. Aug.6, 1997) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed *three* previous actions in state court regarding current matter, and two previous actions in district court regarding current matter).

One reason for this array of cases is that, in determining whether or not a *pro se* litigant is "experienced," courts sometimes consider additional factors, such as the quality of the *pro se* litigant's submissions to the Court (e.g., whether they are typed, cogent, supported by applicable affidavits, exhibits, and/or memoranda of law, etc), [FN39] and whether or not the *pro se* litigant has been victorious (or partially victorious) in any of his previous actions or appeals. [FN40]

FN39. *See, e.g., Saunders,* 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

that, among other things, "with regard to the current action, ... the motion papers that [p]laintiff has submitted over the past several years have often been fairly good-being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc.").

FN40.*See, e.g., Saudners,* 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had settled two of his previous six federal court actions, receiving $25,000 in exchange for his agreement to voluntarily dismiss the actions, and the fact that some of plaintiff's motions in his many actions have been granted); *Ab v. Sekendur,* 03-CV-4723, 2004 WL 2434220, at *5 (N.D.Ill. Oct.28, 2004) (considering, during decision of whether *pro se* plaintiff should be denied leniency normally afforded inexperienced *pro se* litigants, fact that "[plaintiff's] has successfully applied for and received ... [a] patent, and as the record in this case indicates, he engaged in lengthy business negotiations with Anoto and various other corporations").

**8** Here, Plaintiff has filed at least *sixteen* federal or state court actions or appeals other than the current action. Specifically, he has filed at least *five* other federal court actions,[FN41] at least *one* federal court appeal,[FN42] at least *seven* state court actions,[FN43] and at least *three* state court appeals.[FN44] Plaintiff was victorious or partially victorious in at least *four* of these actions or appeals.[FN45] This last fact is of little surprise to me since, generally, Plaintiff's papers in the aforementioned actions-as well as the current action-have been exceptionally good, almost always being typed, coherent, organized, and accompanied by affidavits, exhibits and memoranda of law, etc.

FN41.*See Standley v. Lazerson,* 91-CV-6078 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Artuz,* 93-CV-3528 (E.D.N.Y.) (habeas corpus action); *Standley v. Stewart,* 97-CV-6552 (S.D.N.Y.) (civil rights action); *Standley v. Lyder,* 99-CV-4711 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Wilcox,* 02-CV-6230 (S.D.N.Y.) (prisoner civil rights action).

FN42.*See Standley v. Artuz,* No. 95-2755 (2d Cir.) (habeas corpus action).

FN43.*See Standley v. Stewart,* Index No. 402210/1999 (N.Y.S. Sup.Ct., New York County) (professional malpractice action); *Standley v. Goord,* Index No. 002763/2000 (N.Y.S. Sup.Ct., Dutchess County) (Article 78 proceeding); *Standley v. Goord,* Index No. 000120/2001 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding); *Standley v. Parole,* Index No. 000149/2004 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding); *Standley v. Goord,* Index No. 002828/2004 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding); *Standley v. Parole,* Index No. 000971/2005 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding); *Standley v. Parole,* Index No. 001989/2006 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding).

FN44.*See Standley v. N.Y.S. Div. of Parole,* 34 A.D.3d 1169, 825 N.Y.S.2d 568 (N.Y.App.Div., 3d Dept.2006) (Article 78 proceeding); *Standley v. Stewart,* 305 A.D.2d 332, 759 N.Y.S.2d 327 (N.Y.App.Div., 3d Dept.2003) (professional malpractice action); *Standley v. Goord,* 293 A.D.2d 922, 742 N.Y.S.2d 406 (N.Y.App.Div., 3d Dept.2002) (Article 78 proceeding); *see also Standley v. N.Y.S. Div. of Parole,* 823 N.Y.S.2d 922 (N.Y.App.Div., 3d Dept.2006) (Article 78 proceeding); *Standley v. N.Y.S. Div. of Parole,* 30 A.D.3d 730, 815 N.Y.S.2d 492 (N.Y.App.Div., 3d Dept.2006) (Article 78 proceeding).

FN45.*See Standley v. N.Y.S. Div. of Parole,* 34 A.D.3d 1169, 825 N.Y.S.2d 568 (N.Y.App.Div., 3d Dept.2006) (reversing and remanding trial court decision against Plaintiff); *Standley v. N.Y.S. Div. of Parole,* 823 N.Y.S.2d 922 (N.Y.App.Div., 3d Dept.2006) (granting Plaintiff's motion for re-argument and motion to proceed as a poor person); *Standley v. Wilcox,* 02-CV-6230, Stipulation and Order of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

Settlement (S.D.N.Y. filed May 13, 2004) (entering order dismissing action upon settlement by parties). (*See also* Dkt. No. 4, ¶ 17-19 [Plf.'s Am. Compl., alleging that Plaintiff's case entitled *Standley v. New York State Division of Parole,* Index No. 149-04, which was pending in Supreme Court, Albany County, resulted in a judgment on June 18, 2003, in Plaintiff's favor, "vacat[ing] and annull[ing] the defendants' determination to deny parole release and order[ing] that plaintiff be brought before a *de novo* hearing"].).

As a result, I find that the circumstances warrant revoking Plaintiff's special status as a *pro se* litigant for the remainder of this action. Again, continuing to afford him such special status would be unnecessary (and unfairly prejudicial to Defendants).

**III. ANALYSIS**

**A. Defendants' Cross-Motion for Summary Judgment**

In support of their cross-motion for summary judgment, Defendants essentially assert three arguments: (1) Plaintiff has failed to state a due process claim because (a) Plaintiff had no "protected liberty interest" in parole in New York State, (b) a violation of New York State law does not in and of itself give rise to a due process violation, and (c) the parole board's actions were not sufficiently irrational and improper to give rise to a due process violation; (2) Plaintiff has failed to state an equal protection claim because he does not allege any facts indicating, or adduce any evidence establishing, any "discriminatory purpose or conduct"; and (3) three of Plaintiff's six causes of action are barred by the doctrine of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). (Dkt. No. 30, Part 8 [Defs.' Mem. of Law].)

**1. Plaintiff's Due Process Claim**

This action is brought pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, as follows: "Every person who ... subjects, or causes to be subjected, any

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ...." 42 U.S.C. § 1983.[FN46] Thus, the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" is an "essential element[ ]" of a Section 1983 claim.[FN47] The term "the Constitution and laws" refers to the United States Constitution and *federal* laws.[FN48] A violation of a state law or regulation, *in and of itself,* does not give rise to a violation of the United States Constitution or a federal law, for purposes of 42 U.S.C. § 1983.[FN49]

FN46. "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) [citation omitted].

FN47. *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994) [emphasis added; citation omitted].

FN48. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States."* ) [emphasis added], *accord, Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Pitchell,* 13 F.3d at 547 ("In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws *of the United States."* ) [emphasis added], *accord, Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

or *federal* statutory right ....") [citation omitted; emphasis added].

FN49.*See* *Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") [citation omitted]; *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") [citation omitted]; *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") [citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 (2d Cir.1990) ].

Having said that, it is true that a state may, *under certain circumstances,* create a liberty interest protected by the Fourteenth Amendment's Due Process Clause through its enactment of certain statutory or regulatory measures. At one point, the Supreme Court held that a state created such a liberty interest if it has repeatedly used, in a statute or regulation, explicit language of an "unmistakably mandatory character" (e.g., the words "shall," "will," or "must," etc.) with regard to specific procedures. *Hewitt v. Helms,* 459 U.S. 460, 466-472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). However, that rule created a perverse incentive (1) for inmates to "comb" state regulations for mandatory language upon which to base claims of entitlements, (2) for courts to draw negative inferences from mandatory language in state regulations, and to involve themselves in the day-to-day management of prisons, and (3) for states to not codify prison management procedures, or to confer on correctional personnel "standardless discretion." *Sandlin v. Connor,* 515 U.S. 472, 481-482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). As a result, the Supreme Court changed the rule, shifting

the courts' focus from the *language* of a particular state law or regulation to the *nature of the deprivation. Sandlin,* 515 U.S. at 477-484 (describing history of due process analysis in modern Supreme Court precedents).[FN50]

FN50.*See also* *Blouin v. Spitzer,* 356 F.3d 348, 362-363 (2d Cir.2004) (recognizing abrogation or modification of prior rule which focused on language of state regulation), accord, *Anderson v. Recore,* 317 F.3d 194, 198-200 (2d Cir.2003), accord, *Watson v. City of N.Y.,* 92 F.3d 31, 37-38 (2d Cir.1996), accord, *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

**\*9** The practical effect of this rule change is that, in cases involving due process challenges to parole hearings, "[i]n order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have *a legitimate expectancy of release* that is grounded in the state's statutory scheme." *Barna v. Travis,* 239 F.3d 169, 170 (2d Cir.2001) [emphasis added; citations omitted].[FN51] "Neither the mere possibility of release ... nor a statistical probability of release ... gives rise to a legitimate expectancy of release on parole." *Barna,* 239 F.3d at 171 [citations omitted]. Moreover, the Second Circuit has repeatedly recognized that "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna,* 239 F.3d at 171.[FN52] As a result, alleged violations of procedural requirements of the New York parole scheme "are matters for consideration by the state courts." *Boothe v. Hammock,* 605 F.2d 661, 665 (2d Cir.1979), accord, *Borcsok v. Pataki,* 05-CV-1542, 2006 WL 839545, at *2, n. 1 (N.D.N.Y. March 29, 2006) (Sharpe, J.).

FN51.*See also* *Greenholz v. Inmates of the Neb. Penal & Corr. Complex,* 442 U.S. 1, 7-16, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (stating that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," and finding that Nebraska's parole scheme did create due process right but only because the parole scheme "mandat[ed]" that prisoners be released unless certain conditions existed), accord, *Board of Pardons v. Allen,* 482 U.S. 369, 373-381, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (holding that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

Montana parole statute created "a liberty interest protected by the Due Process Clause" only because the statute specifically provided that the Parole Board "shall" release the inmate when certain findings prerequisite to release are made).

FN52. *See also Davis v. Dennison,* No. 06-2723, 2007 WL 678331, at *1 (2d Cir. March 2, 2007) (summary order, cited for "persuasive value" in accordance with the *Advisory Committee Notes* to Fed. R.App. P. 32.1 [a], and cited to "acknowledge[ ] the continued precedential effect" of *Barna v. Travis,* 239 F.3d 161 [2d Cir.2001] in accordance with Second Circuit Local Rule § 0.23 as applied by the Second Circuit in *Khan v. Ashcroft,* 352 F.3d 521, 525 [2d Cir.2003] ) ("New York State's parole scheme does not create a liberty interest protected by the Due Process Clause. *See Barna v. Travis,* 239 F.3d 161, 171 (2d Cir.2001)."; *Marvin v. Goord,* 255 F.3d 40, 44 (2d Cir.2001) ("[T]he New York State parole scheme does not create a protectable liberty interest [under the Due Process Clause of the Fourteenth Amendment]."); *Boothe v. Hammock,* 605 F.2d 661, 664 (2d Cir.1979) ("It is apparent that New York's parole provisions ... do not establish a scheme whereby parole shall be ordered unless specific conditions are found to exist.... While guidelines are used to structure the exercise of discretion ... no entitlement to release is created.").

Rather, to the extent that a New York State inmate has any liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment, that interest extends only to not being denied a parole release "arbitrarily" or "capriciously," for example, based on an inappropriate consideration of a protected classification (such as race, religion, gender, economic status, etc.) or an "irrational distinction." [FN53] This often-repeated recitation of the law is based on firmly established precedents from the highest court in the United States and the highest court in the State of New York. [FN54]

FN53. *See Romer v. Travis,* 03-CV-1670, 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003)

("[Plaintiff] can claim a due process violation only if the Parole Board has denied his relief 'arbitrarily or capriciously.' "); *Morel v. Thomas,* 02-CV-9622, 2003 WL 21488017, at *4 (S.D.N.Y. June 26, 2003) ("[Plaintiff's] due process rights extend only to a refusal by the Parole Board to deny release arbitrarily or capriciously, based on inappropriate consideration of a protected classification or on an irrational distinction, or on any other constitutional grounds."), *accord, Manley v. Thomas,* 255 F.Supp.2d 263, 266 (S.D.N.Y.2003); *Defino v. Thomas,* 02-CV-7413, 2003 WL 40502, at *3-4 (S.D.N.Y. Jan.2, 2003) ("[Petitioner's] only interest in parole is in not being denied parole for arbitrary or constitutionally impermissible reasons.").

FN54. *See, e.g., Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ("The touchstone of due process is protection of the individual against *arbitrary* action of government.... The liberty interest protected in *Wolff [v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ] had its roots in state law, and the *minimum* procedures appropriated under the circumstances were held required by the Due Process Clause 'to ensure that the state-created right is not *arbitrarily* abrogated.' ") [internal quotation marks and citations omitted; emphasis added]; *Silmon v. Travis,* 95 N.Y.2d 470, 718 N.Y.S.2d 704, 707, 741 N.E.2d 501 (N.Y.2000) ("Our jurisprudence ... is well settled as to the authority of the Parole Board. Judicial intervention is warranted only when there is a showing of irrationality bordering on impropriety.") [internal quotation marks and citations omitted]; *Russo v. New York State Bd. of Parole,* 50 N.Y.2d 69, 427 N.Y.S.2d 982, 986, 405 N.E.2d 225 (N.Y.1980) ("In light of the board's expertise and the fact that responsibility for a difficult and complex function has been committed to it, there would have to be a showing of irrationality bordering on impropriety before intervention would be warranted.").

Here, Plaintiff's Amended Complaint alleges various violations of procedural requirements set forth in N.Y.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

Exec. Law § 259-i, most notably, the requirement that the recommendation of the sentencing court be considered during his parole hearing. (*See, supra,* Part I of this Report-Recommendation.) Defendants may or may not have violated N.Y. Exec. Law § 259-i during one or more of Plaintiff's four parole hearings. For the sake of argument, I will assume that one or more Defendants did commit one or more such violations. [FN55] The problem is that, as stated above, any such violations do not, in and of themselves, give rise to a violation of the Due Process Clause of the Fourteenth Amendment. Rather, again, to state a due process claim under the Fourteenth Amendment, Plaintiff needs to allege facts indicating that he was denied parole release *arbitrarily* or *capriciously,* for example, based on an inappropriate consideration of a *protected classification* (such as race, religion, gender, economic status, etc.) or an *irrational distinction.*

FN55. I assume this fact even though it is of some uncertainty. Section 259-i(2)(c)(A) of the New York Executive Law (the particular section that governs parole release decisions) does not always require the Parole Board, during a parole release hearing, to consider "the recommendations of the sentencing court." Specifically, Section 259-i(2)(c)(A) provides, in pertinent part, as follows:

Discretionary release on parole shall not be granted merely as a reward for good conduct ... while confined but after considering if there is a reasonable probability that ... his release ... will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision ... the following [shall] be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments ...; (iii) release plans including community resources, employment, education and training and support services available to the inmate .... Notwithstanding the provisions of this section, in making the parole release decision for persons whose minimum period of imprisonment was not fixed pursuant to the provisions of subsection one of this section, in addition to the factors listed in this paragraph

the board shall consider the factors listed in paragraph (a) of subdivision one of this section.

N.Y. Exec. Law § 259-i(2)(c)(A). Rather, the only circumstance under which the Parole Board must, during a parole release hearing, consider the recommendations of the sentencing court is when the parole release hearing concerns a "person[ ] whose minimum period of imprisonment was *not* fixed pursuant to the provisions of [Section 259-i(1) ]." *Id* [emphasis added]. Specifically, Section 259-i(1)(a), provides, in pertinent part, as follows,

In any case where a person is received in an institution ... with an indeterminate sentence, and the court has not fixed a minimum period of imprisonment, the board shall cause to be brought before one or more members ... all information with regard to such person[ ] ... [and] shall study the same and shall personally interview the sentenced person. Upon conclusion of the interview, [the members] shall determine the minimum period of imprisonment to be served prior to parole consideration in accord with the guidelines ... [which] shall include (i) the seriousness of the offense with due consideration of the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors ... and (ii) prior criminal record, including ... adjustment to ... institutional confinement....

N.Y. Exec. Law § 259-i(1)(a). Here, I have trouble construing Plaintiff's Amended Complaint as alleging facts indicating that the sentencing court did *not* fix a "minimum period of confinement." (*See* Dkt. No. 4, ¶ 24 [Plf.'s Am. Compl., alleging that the sentencing court "imposed an indeterminate sentence of twenty years to life"].)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

Plaintiff does not allege facts indicating that Defendants were acting out of an inappropriate consideration of a *protected classification,* but that, at most, they were acting, in part, out of a consideration of Plaintiff's status as convicted murderer (which is not a classification protected by the United States Constitution). (*See, infra,* Part III.A.2. of this Report-Recommendation.) Moreover, Plaintiff does not allege facts indicating that Defendants were acting *irrationally,* but that they were basing their decision too much, or perhaps solely, on the nature and seriousness of his offense (rather than also considering the recommendation of the sentencing judge). (*See, e.g.,* Dkt. No. 4, ¶¶ 56, 57, 70, 95 [Plf.'s Am. Compl., alleging that Defendants found Plaintiff unsuitable for parole release solely due to the seriousness of Plaintiff's offense].) More specifically, Plaintiff alleges facts indicating that Defendants, after acknowledging some factors weighing in favor of Plaintiff's release (such as his "institutional adjustment" and "release plan"), repeatedly concluded that Plaintiff's release, at that time, would so deprecate the seriousness of his crime (i.e., which involved, during the course of an attempted robbery, Plaintiff's, without being under the influence of alcohol or drugs, fatally stabbing a man 15 times, pouring a half-gallon of cleaning solvent on his body, and then lighting him afire) as to undermine respect for the law. (Dkt. No. 4, ¶¶ 33, 47, 62, 84 [Plf.'s Am. Compl.].) [FN56] Again, while such decision-making by Defendants might violate N.Y. Exec. Law § 259-i, it is not "irrational." Under the circumstances, Plaintiff's remedy for any violation of N.Y. Exec. Law § 259-i lies in state court. [FN57]

FN56. It is worth noting that Plaintiff does not even allege facts indicating that Defendants were *arbitrarily* failing to consider the (alleged) recommendation of the sentencing judge but that they were doing so for a variety of stated reasons: (1) that they did not have possession of the recommendation; (2) that they were laboring under the (allegedly) mistaken belief that they had a duty to consider the "sentencing minutes" *only* if Plaintiff could show that the "sentencing minutes" were relevant to Plaintiff's parole release; (3) that they were laboring under the (allegedly) mistaken belief that it was Plaintiff's duty to provide a copy of the recommendation; and (4) that they were laboring under the

(allegedly) mistaken belief that Plaintiff could choose to waive his statutory right to require Defendants to consider such a recommendation. (Dkt. No. 4, ¶¶ 37, 42-43, 74-79 [Plf.'s Am. Compl.].)

FN57. *See Boothe,* 605 F.2d at 665 (alleged violations of procedural requirements of New York parole scheme "are matters for consideration by the state courts"), *accord, Borcsok,* 2006 WL 839545, at *2, n. 1 (Sharpe, J.). (*See, e.g.,* Dkt. No. 39, Ex. A [attaching state court decision dated 11/30/2006, addressing Plaintiff's statutory claim and ordering new parole hearing], Ex. B [attaching Parole Board Decision regarding such hearing on 1/23/07].)

**\*10** In opposition to Defendants' argument, Plaintiff places much reliance on *Graziano v. Pataki,* in which, last July, the Southern District of New York denied a Rule 12(b)(6) motion to dismiss, *inter alia,* the due process claims asserted by a class action of prisoners alleging that the New York State Division of Parole was carrying out a policy (or agenda of then-Governor George Pataki) for eliminating parole for practically all felons serving sentences for of class "A-1" violent felony offenses such as murder, rather than considering the factors required by N.Y. Exec. Law § 259-i. *Graziano v. Pataki,* 06-CV-0480, 2006 WL 2023082, at *6 (S.D.N.Y. July 17, 2006). However, instrumental in reaching that decision was the Southern District's finding that the plaintiffs' complaint asserted "a claim that there is in fact a *policy* [to deny parole to A-1 violent felons], and under the *policy,* each Plaintiff's status as an A-1 violent offender predetermines the outcome of the parole decision, notwithstanding any positive factors ...." *Graziano,* 2006 WL 2023082, at *6 [emphasis added]. Plainly stated, the Southern District found that the plaintiffs' due process allegations stated a claim under Rule 12(b)(6) because the plaintiffs had alleged facts indicating the existence of a system-wide "policy" to make parole decisions for a certain class of offenders not on a case-by-case basis but on a basis that was "arbitrary" or "capricious" and thus in excess of the Parole Board's discretionary authority. *Id.* at *6-8.

The same cannot be said of Plaintiff's Amended Complaint in this action. The closest Plaintiff comes to premising his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

due process claim on such a "policy" is when he alleges, "[A]n argument could be made that these prejudices probably stem from a gubernatorial policy against parole for murders ...." (Dkt. No. 4, ¶ 87 [Plf.'s Am. Compl.].) However, in that same paragraph, Plaintiff makes clear that he is not in fact premising his due process claim on such a speculative "policy" but on his allegation that Defendants' treatment of him (personally) has been so arbitrary that it violates due process. (*Id.*) Furthermore, elsewhere in his Amended Complaint, Plaintiff alleges facts indicating that, during the four hearings, Defendants considered Plaintiff's case on an individual basis. Specifically, those allegations indicate that Defendants considered factors such as (1) Plaintiff's satisfactory "institutional adjustment" (i.e., the fact that Plaintiff "complet[ed] numerous programs, receiving [his] GED, and approximately 129 credits from Marist College ...." and the fact that Plaintiff has developed "commendable" artistic skills), and (2) his "release plan" (which involved "pursuing a vocation in Buddhism at Zen Mountain Monastery [in] Mt. Tremper, New York"), but that Defendants found that those two factors were outweighed by (3) Plaintiff's criminal record while in prison (i.e., the fact that "while incarcerated you have incurred two Tier III disciplinary sanctions," although he had committed no such infractions in the previous four years), and most importantly (4) the particular nature of his crime (i.e., the fact that, during the course of an attempted robbery, Plaintiff, without being under the influence of alcohol or drugs, stabbed a man 15 times, poured a half-gallon of cleaning solvent on his body, and then lighting him afire). (*Id.* at ¶¶ 29, 33, 47, 62, 84.)

**\*11** Indeed, setting aside the way Defendants explicitly weighed the above-stated factors, I find that this last factual allegation (i.e., that Defendants repeatedly noted the particular nature of the facts giving rise to Plaintiff's conviction for murder) is, standing alone, sufficient to distinguish the current case from *Graziano*. In *Graziano*, the plaintiffs alleged that "there is nothing unique or particularly telling about most of the facts and circumstances that these decisions describe and are based on.... [T]he Board is denying parole ... just because [the] prisoner[s] committed murder and for no other reason." *Graziano, 2006 WL 2023082, at \*6.* Here, Plaintiff has alleged facts indicating that Defendants *did* find that there was something unique or telling about the facts and circumstances giving rise to Plaintiff's crime (i.e., again, the fact that, during the course of an attempted robbery,

Plaintiff, without being under the influence of alcohol or drugs, stabbed a man 15 times, poured a half-gallon of cleaning solvent on his body, and then set him afire). As a result, according to Plaintiff's Amended Complaint, Defendants denied Plaintiff parole not simply because he committed murder but (largely) because of the *way* he committed the murder *and what he did with the body afterward*-which actions Defendants characterized as "brutal[ ]," "[in] utter disregard for the life of another," "a significant escalation of your criminal behavior," "violent," "extreme[ly] serious[ ]," and a crime of such "sheer brutality ... [as to be] breathtaking in scope." (Dkt. No. 4, ¶¶ 33, 47, 62, 84 [Plf.'s Am. Compl.].)

Finally, to the extent that Plaintiff relies on *Graziano* for its statement "while there is no due process right to being granted parole, there is a due process right to have the decision made only in accordance with the statutory criteria" (Dkt. No. 36, Part 2, ¶ 15 [Plf.'s Mem. of Law in Opp. to Defs.' Cross-Motion] ), two points deserve mentioning. First, such a proposition (which implies that a convicted felon serving a sentence in New York has a federal due process right to have *all* New York-statutory factors considered during a parole-release decision) is dictum since it is unnecessary to the court's holding that the *policy* at issue was "arbitrary and capricious" in that it involved a failure to consider *any* statutory factors other than the violent nature of the offense.[FN58] Second, in any event, the decision cites no authority for such a proposition.[FN59]

FN58. *See, e.g., Graziano, 2006 WL 2023082, at \*1, 8, 9* ("Plaintiffs allege that since 1995, the 'Board of Parole has been issuing parole determinations pursuant to an unofficial policy of denying parole release to prisoners convicted of A-1 violent felony offenses, *solely* on the basis of the violent nature of such offenses and thus without proper consideration of *any* other relevant or statutorily mandated factor.' ... Plaintiffs ... contend that 'the Board is not exercising its discretion *at all.* ' ... The allegation that there exists a policy or practice to deny parole based *solely* on the nature of the violent offense[ ] enables the Complaint in this case to transcend what all previous Court decisions have addressed ....") [internal record citations removed; emphasis added].

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

FN59.*See Graziano,* 2006 WL 2023082, at \*6-9 (repeating this proposition several times but citing no case law supporting it, citing only *Barna v. Travis,* 239 F.3d 169 [2d Cir.2001], which undermines such a proposition, and *King v. N.Y. State Div. of Parole,* 190 A.D.2d 423, 598 N.Y.S.2d 245 [N.Y.App. Div., 1st Dept., 1993], which did not involve a due process claim).

This lack of authoritative support is not surprising since the proposition appears to be a significant departure from firmly established legal precedents from both the United States Supreme Court and the New York State Court of Appeals, as described above. The proposition creates a distinction between what the decision calls "a due process right to being granted parole" and what it calls "a due process right to have the decision made only in accordance with the statutory criteria." With respect, I do not perceive any such distinction. FN60 In my view, any federal due process right a convicted felon has to a parole decision made only in accordance with a state's statutory criteria exists only if he possesses a "protected liberty interest" in parole. FN61 If he possesses no such protected liberty interest, then he possesses only a *minimal* due process right with regard to that decision-making process (e.g., a right to have the decision made in a *non-arbitrary* way). FN62 And New York State's parole scheme (unlike the parole schemes of various other states) creates no such protected liberty interest. FN63

FN60. Indeed, I note that the decision itself calls the distinction "theor[etical]." *Graziano,* 2006 WL 2023082, at \*9.

FN61.*See, e.g., Greenholz,* 442 U.S. at 4, 5-9 (whether or not convicted felons possessed a "procedural due process" right in the manner in which their parole-release decisions were made by the Nebraska Board of Parole-other than the right to be free from arbitrary decision-making-depended on whether they had a "liberty interest" that was protected under the Fourteenth Amendment's Due Process Clause).

FN62.*See, supra,* cases cited in notes 53 and 54 of this Report-Recommendation; *see also Meacham v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (referring to the right to non-arbitrary decision-making as "minimum" procedures required by the Due Process Clause).

FN63.*See Davis,* 2007 WL 678331, at \*1;*Marvin,* 255 F.3d at 44;*Barna,* 239 F.3d at 171;*Boothe,* 605 F.2d at 664.

\*12 Furthermore, by placing so much emphasis on New York statutory criteria, the *Graziano* decision demonstrates a lack of appreciation for the significance of the Supreme Court's decision in *Sandlin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which declared a shift in focus (in a due process analysis) from the *language* of a particular state law or regulation to the *nature of the deprivation at issue,* as discussed above. Indeed, the Supreme Court in *Sandlin* specifically criticized the practice of, when determining the existence of a due process right, merely focusing on the existence of "mandatory" language in a state's parole statutes (e.g., language requiring release unless certain conditions exist), referring to such a practice as "mechanical." *Sandlin,* 515 U.S. at 479 (referring to the Court's earlier decision in *Greenholz v. Inmates of the Neb. Penal & Corr. Complex,* 442 U.S. 1 [1979], which analyzed Nebraska's parole scheme, and stating, "The time has come to return to the due process principles ... established [before the mandatory-discretionary dichotomy took hold].").

In the alternative, even assuming that Plaintiff has stated a due process claim, I recommend dismissal of that claim under a Rule 56 analysis. Based on the current record, Plaintiff has failed to adduce any evidence in support of a claim that Defendants were acting "arbitrarily" or "capriciously" in denying his parole. FN64 For example, with respect to Plaintiff's claim that his due process rights were violated to the extent that Defendants based their four decisions on Plaintiff's (allegedly) expunged and sealed driving convictions, to the extent that the Second Circuit recognizes any such due process right, Plaintiff has adduced no evidence either that (1) Defendants were *responsible* for the presence of that information in his parole file during the first parole hearing or (2) a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

*likelihood* exists that, in reaching their subsequent three parole decisions, Defendants actually relied on that information in a constitutionally significant manner.[FN65] *See Antonucci v. David,* 03-CV-0653, 2006 WL 2265028, at *4-6 (N.D.N.Y. Aug.7, 2006) (Scullin, J.) (setting forth exact same analysis of similar due process challenge to parole board decision).

> FN64. (*Compare* Dkt. No. 30, Part 2, ¶¶ 20-59 [Defs.' Rule 7.1 Statement, containing factual assertions regarding precisely what occurred at each hearing, followed by accurate citations to record evidence] *with* Dkt. No. 36, Part 1, ¶¶ 20-59 [Plf.'s Rule 7.1 Response, admitting the vast majority of Defendants' factual assertions except a few of those assertions which Plaintiff denies or partially denies, e.g., in Paragraphs 42, 45, 48-53, 55, 59, which denials are either immaterial to the due process issues at hand or are unsupported by specific citations to record evidence].)

> FN65. (*Compare* Dkt. No. 30, Part 2, ¶¶ 57-59 [Defs.' Rule 7.1 Statement, containing factual assertions regarding precisely what occurred at each hearing, followed by accurate citations to record evidence] *with* Dkt. No. 36, Part 1, ¶¶ 57-59 [Plf.'s Rule 7.1 Response, admitting Defendants' factual assertions in Paragraphs 57 and 58, and denying factual assertions in Paragraph 59, but citing no record evidence in support of that denial except Plaintiff's "Ex. R," located at Dkt. No. 36, Part 4, which is simply a partial copy of N.Y. Exec. Law § 259-i].)

For all of these reasons, I recommend that Plaintiff's due process claim be dismissed.

## 2. Plaintiff's Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. In other words, "[t]he Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 [1985] ).

Liberally construed, Plaintiff's Amended Complaint, and his memorandum in opposition to Defendants' motion,[FN66] allege that, with respect to parole, he was treated differently than (2) non-violent felony offenders, or perhaps violent felony offenders who did not kill their victims in a particularly heinous manner (e.g., repeated stabbing followed by ignition of the body), and/or (2) convicted felons who do not have in their parole file sentencing minutes containing a recommendation regarding parole, or perhaps convicted felons who do have their sentencing minutes in their parole file but whose minutes do not contain a recommendation from the sentencing court. (Dkt. No. 4, ¶¶ 89-95 [Plf.'s Am. Compl.]; Dkt. No. 36, Part 2, ¶¶ 38-43 [Plf.'s Mem. of Law in Opp. to Defs.' Motion].)

> FN66. When deciding a motion to dismiss for failure to state a claim, the court may, without converting the motion to dismiss into a motion for summary judgment, consider, *inter alia,* any documents provided by the plaintiff in opposition to defendants' motion, to the extent those documents are consistent with the allegations in the complaint. *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 & n. 41 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.) (citing cases).

*13 The problem is that, even if these allegations are true, Plaintiff has failed to state an equal protection claim because neither of those two classes of persons is a "protected class" for purposes of the Equal Protection Clause of the Fourteenth Amendment. For example, several courts have specifically held that, for purposes of an equal protection analysis, (1) violent felony offenders are not actually "similarly situated" to non-violent offenders, and (2) in any event, discrimination against violent felony offenders in terms of parole release is "entirely appropriate." *See Bottom v. Pataki,* 03-CV-0835, 2006 WL 2265408, at *6-7 & n. 5 (N.D.N.Y. Aug.7, 2006) (Scullin, J.), *accord, Larocco v. N.Y.S. Div. of*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

*Parole,* 05-CV-1602, 2006 WL 1313341, at \*3 (N.D.N.Y. May 12, 2006) (McAvoy, J.), *Borcsok v. Pataki,* 05-CV-1542, 2006 WL 839545, at \*2, n. 2 (N.D.N.Y. March 29, 2006) (Sharpe, J.); *Parks v. Edwards,* 03-CV-5588, 2004 WL 377658, \*4 (E.D.N.Y. Mar.1, 2004).

In the alternative, even assuming that Plaintiff has stated an equal protection claim, I recommend dismissal of that claim under a Rule 56 analysis. Based on the current record, Plaintiff has failed to adduce any evidence in support of such a claim.[FN67]

> **FN67.** (*Compare* Dkt. No. 30, Part 2, ¶¶ 60-61 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 36, Part 1, ¶¶ 60-61 [Plf.'s Rule 7.1 Response, denying both of Defendants' factual assertions, but citing only Plaintiff's Complaint generally, and Plaintiff's Exs. J, K, and L, found at Dkt. No. 36, Part 3, which consist of only (1) a Board of Parole appellate decision with regard to one of Plaintiff's parole hearings, (2) a July 28, 2006, letter from Marco Ricci, an Agency Program Aide at the Division of Parole, to Inmate Hector Pena-Martinez regarding Mr. Pena-Martinez's request for early conditional parole for deportation, and (3) a January 4, 2005, letter from Plaintiff to Defendant Tracy regarding his parole hearing scheduled for January 18, 2005].)

For all of these reasons, I recommend that Plaintiff's due process claim be dismissed.

**3. The Doctrine of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)**

Because I find that sufficient grounds exist upon which to base a dismissal of Plaintiff's Amended Complaint, I need not, and do not, reach the merits of this alternative argument advanced by Defendants. (Dkt. No. 30, Part 8, at 5-8 [Defs.' Mem. of Law].)

**B. Dismissal on Alternative Grounds**

Under the "Three Strikes Rule" set forth in the federal statute governing *in forma pauperis* proceedings,

[i]n no event shall a prisoner bring a civil action ... under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it ... fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The power of a federal district court to invoke this rule is not limited to the outset of a litigation but extends all throughout the pendency of the proceeding. In other words, specifically, federal district courts have the authority to rescind or revoke the *in forma pauperis* status that it has previously bestowed upon a plaintiff, where it discovers that the status was improvidently granted, even if the courts exercise that authority well into the pendency of the proceedings.[FN68]

> **FN68.** *See Gill v. Pidlypchak,* 02-CV-1460, 2006 WL 3751340, at \*5 (N.D.N.Y. Dec.19, 2006) (Scullin, J., adopting Report-Recommendation by Treece, M.J.); *Polanco v. Burge,* 05-CV-0651, 2006 WL 2806574, at \*2 (N.D.N.Y. Sept.28, 2006) (Kahn, J., adopting Report-Recommendation by Homer, M.J.); *Demos v. John Doe,* 118 F.Supp.2d 172, 174 (D.Conn.2000); *McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998); *see also Rolle v. Nassau County Correctional Facility,* 01-CV-2414, Order, at 2 (E.D.N.Y. filed Nov. 17, 2004) ("A court may revoke the *in forma pauperis* status it previously bestowed upon a [plaintiff], where that status is later determined to be 'improvident' ") [citation omitted], *accord, Rolle v. Kurtzrock,* 03-CV-1789 Order (E.D.N.Y. filed June 17, 2004).

Here, I granted Plaintiff's request to proceed *in forma pauperis* on October 5, 2005. (Dkt. No. 5 at 3.) However, when I granted this request, I was relying on (among other things) Plaintiff's sworn allegation in his Amended Complaint that, as of August 16, 2005 (the date of signing

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

of the Amended Complaint), his "prior court proceedings" consisted of only *three* such proceedings: (1) *Standley v. Wilcox,* 02-CV-6230 (S.D.N.Y.); (2) *Standley v. N.Y.S. Div. of Parole,* Index No. 000149/04 (N.Y.S. Sup.Ct., Albany County); and (3) *Standley v. N.Y.S. Div. of Parole,* Index No. 000971/05 (N.Y.S. Sup.Ct., Albany County). (Dkt. No. 4, ¶¶ 15-21 [Plf.'s Am. Compl.].) This sworn assertion was not accurate. As of August 16, 2005, Plaintiff had filed at least *sixteen* actions or appeals in state or federal court (other than the current action), as explained above in Part II.B. of this Report-Recommendation. Even if Plaintiff had intended to mean that he had previously filed only three *actions relating to his imprisonment,* his sworn assertion would not have been accurate. By August 16, 2005, Plaintiff had filed at least *eleven* such actions [FN69]-*twelve* if one counts the legal malpractice action he filed against his former counsel on a criminal appeal.[FN70]

> FN69.*See Standley v. Lazerson,* 91-CV-6078 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Artuz,* 93-CV-3528 (E.D.N.Y.) (habeas corpus action); *Standley v. Stewart,* 97-CV-6552 (S.D.N.Y.) (civil rights action); *Standley v. Lyder,* 99-CV-4711 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Wilcox,* 02-CV-6230 (S.D.N.Y.) (prisoner civil rights action); *Standley v. Goord,* Index No. 002763/2000 (N.Y.S. Sup.Ct., Dutchess County) (Article 78 proceeding); *Standley v. Goord,* Index No. 000120/2001 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding); *Standley v. Parole,* Index No. 000149/2004 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding); *Standley v. Goord,* Index No. 002828/2004 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding); *Standley v. Parole,* Index No. 000971/2005 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding); *Standley v. Parole,* Index No. 001989/2006 (N.Y.S. Sup.Ct., Albany County) (Article 78 proceeding).

> FN70.*See Standley v. Stewart,* Index No. 402210/1999 (N.Y.S. Sup.Ct., New York County).

**\*14** Plaintiff's lack of candor was material in that, had I

known of these other actions, I would have reviewed the docket sheets of these matters, and learned of Plaintiff's considerable litigation experience and his accumulation of strikes. Specifically, as of the date of October 5, 2005 (the date on which I granted Plaintiff's request to proceed *in forma pauperis* ), Plaintiff had received at least *three* "strikes" for purposes of 28 U.S.C. § 1915(g).[FN71] I note that I find nothing on the face of the Amended Complaint indicating that Plaintiff is in "imminent danger of serious physical injury."[FN72]

> FN71.*See Standley v. Stewart,* 97-CV-6552, Order of Dismissal (S.D.N.Y. filed Sept. 5, 1997) (dismissing prisoner civil rights action for failure to state a claim under Rule 12[b][6] ); *Standley v. Lyder,* 99-CV-4711, 2001 WL 225035 (S.D.N.Y. March 7, 2001) (granting defendants' motion to dismiss Plaintiff's prisoner civil rights action for failure to state a claim under Rule 12[b][6] ); *Standley v. Artuz,* No. 95-2755, Order of Dismissal (2d Cir. filed May 31, 1996) (habeas corpus action; docket sheet noting that, on 6/11/96, Plaintiff was specifically informed that his "appeal was dismissed as frivolous").

> FN72.28 U.S.C. § 1915(g); *see also Malik v. McGinnis,* 293 F.3d 559, 561 (2d Cir.2002) (examining plaintiff's allegations in order to determine if plaintiff's case fell within the exception to the three strike's rule for prisoners in "imminent danger of serious physical injury").

As a result, I recommend that, in the alternative, the Court revoke Plaintiff's *in forma pauperis* status and dismiss Plaintiff's Amended Complaint without prejudice to refiling through a paid complaint. I base this recommendation not only on the "three strikes rule" but on the Court's inherent ability to manage its docket through sanctioning abusive litigation practices such as making material misrepresentations or omissions to the Court.

**C. Plaintiff's Motion for Summary Judgment**

Because I have concluded that the Court should dismiss

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 24

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

Plaintiff's Amended Complaint, I conclude that the Court should deny Plaintiff's motion for summary judgment as moot.

In the alternative, I conclude that the Court should deny Plaintiff's motion for summary judgment because that motion violates Local Rule 7.1 of the Local Rules of Practice for this Court by failing to provide a valid Statement of Material Facts as required. Specifically, Plaintiff has failed to provide record citations in support of the factual assertions contained in his Rule 7.1 Statement, as Defendants point out. (Dkt. No. 24, Part 2 [Plf.'s Rule 7.1 Statement]; Dkt. No. 30, Part 8, at 5 [Defs.' Mem. of Law].) Plaintiff's response to this argument is that his failure to provide such record citations should not result in dismissal because (1) Plaintiff's failure was the result of his mistaken reliance on the Northern District's "*Pro Se* Handbook," which does not clearly state that such record citations were required, and (2) Plaintiff's failure should be excused in light of his special status as a *pro se* litigant. (Dkt. No. 36, ¶¶ 41-45 [Plf.'s Reply].)

I reject Plaintiff's argument. First, the version of the *Pro Se Handbook* on which Plaintiff allegedly relied in preparing his motion makes quite clear that the *Handbook* is only a guide, intended for use along with the Local Rules of Practice for this Court and the Federal Rules of Civil Procedure; and the *Handbook* also makes quite clear that Plaintiff should read and become familiar with all of Local Rule 7.1 before he begins writing a motion.[FN73] As a result, it was far from reasonable for him to rely on one excerpt from the Manual in filing the dispositive motion at issue. The unreasonableness of Plaintiff's reliance on an excerpt from the *Pro Se Handbook* is magnified by the fact that the law library at the New York State correctional facility in which Plaintiff was incarcerated when he prepared his motion had on file, along with a copy of the *Pro Se Handbook,* a copy of the Local Rules of Practice for the Northern District of New York, since the Clerk of the Court provides an updated copy of such Local Rules to all such institutions.

FN73.*See, e.g., Pro Se Handbook: The Manual for the Litigant Filing a Lawsuit Without Counsel,* at 1, 34 (U.S.Dist.Ct.N.D.N.Y.2005) ("This handbook should not be considered the last word, nor should it be your only resource.

Rather, this handbook should be considered simply as a procedural aid in helping you file and litigate your lawsuit.... Local Rule 7.1 sets forth the procedure for filing a motion in the Northern District; *motions must be filed in conformity with Local Rule 7.1 or else they will be denied.* Please read and become familiar with all of Local Rule 7.1 before you begin writing a motion.").

**\*15** Second, the special leniency that is normally afforded to *pro se* civil rights litigants does not require that such litigants be excused from complying with Local Rule 7.1.[FN74] In any event, as I explained above in Part II.B. of this Report-Recommendation, I have already found that the circumstances warrant revoking Plaintiff's special status as a *pro se* litigant for the remainder of this action. As a result, he may not use the Court's special leniency to save his procedurally deficient motion for summary judgment.

FN74.*See* Bussa, 2004 WL 1637014, at *4 ("Proceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment.") [citations omitted], *accord,* Durran, 251 F.Supp.2d at 1211 [citations omitted].

Finally, even if I were to reach the merits of Plaintiff's motion, I would deny it for the reasons stated above in Part III.A. of this Report-Recommendation. This is because the two main legal issues raised in Plaintiff's motion are also raised in Defendants' cross-motion which, again, I have addressed above. (*Compare* Dkt. No. 24, Part 4, ¶¶ 1-44 [Plf.'s Mem. of Law in Support of His Motion] *with* Dkt. No. 30, Part 8, at 9-21 [Defs.' Mem. of Law in Support of His Cross-Motion].)

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' cross-motion for summary judgment (Dkt. No. 30) be *GRANTED;* and it is further

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)
(Cite as: 2007 WL 2406909 (N.D.N.Y.))

**RECOMMENDED** that, in the alternative, Plaintiff's *in forma pauperis* status be revoked as having been improvidently granted due to Plaintiff's lack of candor with the Court, and that his Amended Complaint be **DISMISSED** without prejudice to refiling through a paid complaint; and it is further

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 24) be **DENIED** as moot, procedurally deficient, and/or without merit.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Sec'y of Health and Human Svcs., 892 F.2d 15* [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2007.
Standley v. Dennison
Not Reported in F.Supp.2d, 2007 WL 2406909 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 2864951 (N.D.N.Y.)
(Cite as: 2006 WL 2864951 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
John ALLEN, Plaintiff,
v.
State of NEW YORK; New York State Department of
Correctional Services; New York State Division of
Parole, Defendants.
**No. 9:05-CV-1613 (NAM)(GJD).**

Oct. 5, 2006.

John Allen, Moravia, NY, Plaintiff, pro se.

**DECISION and ORDER**

Hon. NORMAN A. MORDUE, Chief U.S. District Court
Judge.

**\*1** By prior Decision and Order, this Court ruled that
the original pleading filed by *pro se* plaintiff John Allen
failed to allege facts to support a live case or controversy which
he has standing to pursue. Dkt. No. 4.FN1 In light of his *pro
se* status, plaintiff was afforded an opportunity to file an
amended complaint. *Id.* at 4-6.

> FN1. Plaintiff's *in forma pauperis* application
> was granted. *Id* . at 5.

Plaintiff's amended complaint is before this Court for
consideration. Dkt. No. 5.

In its prior Decision and Order, the Court determined that
plaintiff had not established that his perceived injury from
the application of New York State Mental Hygiene Law to
convicted sex offenders immediately prior to their

scheduled release from state prison is "sufficiently real
and immediate" so as to constitute an existing case or
controversy which may be properly considered by this
Court. Dkt. No. 4 at 4. As noted by the Court, plaintiff's
complaint did not clearly identify him as a sex offender,
nor did plaintiff claim that he is scheduled for imminent
release from prison. *Id.*

Upon review of the amended complaint, the Court finds
that plaintiff has failed to cure the deficiencies discussed
by the Court in its prior Decision and Order. While the
amended complaint sets forth plaintiff's criminal history in
sufficient detail to demonstrate that he is within the class
of inmates who might be evaluated pursuant to Mental
Hygiene Law § 9.27 (*see* Dkt. No. 6 at 6-7, 10), it does
not appear from that pleading that plaintiff's release is
imminent. Rather, plaintiff's conditional release date is not
until 2013. *Id.* at ex. 1.

The Court notes that the amended complaint also sets forth
claims challenging what plaintiff describes as a practice of
withholding participation in the Sexual Offender
Counseling Program ("SOCP") until an inmate is within
one year of his conditional release date. According to
plaintiff, one result of this practice is that inmates may not
have completed this program prior to their initial
appearance before the parole board and may, as a result,
be denied release. Dkt. No. 5 at 7-8. It is well-settled that
inmates do not enjoy constitutionally rights to participate
in particular programs or to parole release. *See Lee v.
Governor of New York,* 87 F.3d 55, 58-59 (2d Cir.1996);
*Grant v. Ahern,* No. 03-CV-0539, 2005 WL 1936175 * 5
(N.D.N.Y.) (Magnuson, V.J.). Accordingly, these
allegations do not a state a claim upon which relief can be
granted by this Court.

Plaintiff also seeks to consolidate this action with
*Donhauser v. Goord,* 9:01-CV-1535 (DNH/GHL). Dkt.
No. 5 at 10-11. *Donhauser* is a class action challenging
certain aspects of the SOCP. By Order filed February 15,
2005, District Judge Hurd certified the class, which is
defined as "[c]urrent or former New York State prisoners
who have lost or been denied good time credits or have
been threatened with the loss or denial of good time
credits because of a refusal to admit guilt to criminal

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2864951 (N.D.N.Y.)
(Cite as: 2006 WL 2864951 (N.D.N.Y.))

sexual conduct as part of the Sexual Offender Counseling Program." *Donhauser,* Dkt. No. 127. Upon review, because plaintiff has not demonstrated in his amended complaint that he is a member of the class certified in *Donhauser,* consolidation is not warranted.[FN2]

> **FN2.** Inasmuch as plaintiff claims that he has been denied the opportunity to enrol in the SOCP, he can not claim to be a member of a class consisting of SOCP participants who have refused to comply with certain program requirements.

**\*2** For the reasons set forth herein and in the Court's prior Decision and Order, plaintiff's amended complaint, as drafted, fails to state a claim upon which relief may be granted, and this action is hereby dismissed.

WHEREFORE, based upon the foregoing, it is hereby

ORDERED, that this action is dismissed due to plaintiff's failure to state a claim upon which relief can be granted, and it is further

ORDERED, that the Clerk serve a copy of this Order on plaintiff.

IT IS SO ORDERED.

N.D.N.Y.,2006.
Allen v. New York
Not Reported in F.Supp.2d, 2006 WL 2864951 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 1313341 (N.D.N.Y.)
(Cite as: 2006 WL 1313341 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Dominic LAROCCO, Plaintiff,
v.
NYS DIVISION OF PAROLE; Edward Mevec,
Commissioner; George C. Johnson, Commissioner; and
W. William Smith, Jr., Defendants.
**No. 9:05-CV-1602 (TJM)(DEP).**

May 12, 2006.

Dominic Larocco Plaintiff, pro se.

*DECISION and ORDER of DISMISSAL*

THOMAS J. McAVOY, United States Senior Judge.

**I. Background**

*1 Presently before this Court is a complaint filed by *pro se* plaintiff Dominic Larocco, together with an *in forma pauperis* application.FN1 Plaintiff has not paid the required filing fee.

> **FN1.** Larocco has one other action pending in this District. *See Larocco v. Goord,* 9:05-CV1074 (GLS/GHL).

Plaintiff claims that he was denied early parole release because he refused to participate in certain "recommended voluntary programs." Dkt. No. 1 at 2.FN2 According to plaintiff, he participated in comparable programs while confined at Rikers Island and should not be required to re-take them.FN3*Id.* Plaintiff also alleges that defendants denied him early parole release based on the nature of

plaintiff's crime. *Id.* at 2. Plaintiff claims that defendants actions violate his constitutional rights. For a complete statement of plaintiff's claims, reference is made to the complaint.

> **FN2.** Larocco refers specifically to anger management and substance abuse programs such as A.R.T. and A.S.A.T. *Id.*

> **FN3.** Plaintiff also objects to any determination that his participation in these programs is warranted by his record. Dkt. No. 1, 19-23.

**II. Discussion**

Section 1915(e)(2)(B) of Title 28 of the United States Code, which governs proceedings *in forma pauperis,* directs, in pertinent part, that "the court shall dismiss the case at any time if the court determines that-... (B) the action ...-(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is the court's responsibility to determine whether a plaintiff may properly maintain his complaint in this District before the court may permit a plaintiff to proceed with an action *in forma pauperis*. See 28 U.S.C. § 1915(e)(2).

Moreover, under 28 U.S.C. § 1915A, a court must review any complaint in a civil action in which a prisoner seeks redress from officers or employees of a governmental agency and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir.1999) (per curiam) (citation omitted). An action is frivolous as a matter of law when, among other things, it is " 'based on an indisputably meritless legal theory,' " i.e., when it "lacks an arguable basis in law ... or [when] a dispositive defense clearly exists on the face of the complaint...." *Livingston v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1313341 (N.D.N.Y.)
(Cite as: 2006 WL 1313341 (N.D.N.Y.))

*Adirondack Beverage Co.,* 141 F .3d 434, 437 (2d Cir.1998) (internal citations omitted).

Although the court has a duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and should exercise extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint "*before* the adverse party has been served and both parties ... have had an opportunity to respond," *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (citations omitted), there is a responsibility on the part of the court to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (district court may dismiss frivolous complaint *sua sponte* notwithstanding fact that the plaintiff has paid the statutory filing fee); *Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (district court has power to dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*2** In this case, the gravamen of plaintiff's complaint appears to be that he was improperly denied parole release because of his refusal to participate in certain DOCS programs and based upon the nature of his crime. Plaintiff contends that his denial of early parole release amounts to a denial of due process and equal protection, violates his right against double jeopardy, and amounts to cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

**A. Due Process Claim**

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, that

[e]very person who, under color of statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983.

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985)). An essential element of a § 1983 claim is that "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U .S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)); *see also Sykes,* 13 F.3d at 519 (holding that "to prevail on a section 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right" (citations omitted)).

In order to proceed with his due process claim, it must appear that plaintiff enjoyed a protected liberty interest under New York law for granting parole. *See Barna v. Travis,* 239 F.3d 169, 170 (2d Cir.2001) (per curiam). "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis,* 239 F.3d 169, 170 (2d Cir.2001) (per curiam). It is well-settled, however, that "the New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release" and that, as a result, prisoners in New York State "have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Id.* at 171;*see also Boothe v. Hammock,* 605 F.2d 661, 664-65 (2d Cir.1979) (citation omitted); [FN4]*Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 (1979) (holding that "there is no [federal] constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"); *Berard v. Vt. Parole Bd.,* 730 F.2d 71, 75 (2d Cir.1984) (same). Moreover, "[d]enial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by New York statute." *Romer v. Travis,* No. 03 Civ. 1670, 2003 WL 21744079, \*6 (S.D.N.Y. July 29, 2003) (citing *Davis v. Thomas,* 256 F.Supp.2d at 191 ("denial of parole may be justified on the basis of reasonable considerations defined by statute, including ... seriousness of the offense for which he is in custody.")) (other citation and footnote

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1313341 (N.D.N.Y.)
(Cite as: 2006 WL 1313341 (N.D.N.Y.))

omitted).

> FN4. Rather, any alleged violations of procedural requirements "are matters for consideration by the state courts." *Boothe,* 605 F.2d at 665.

**\*3** Because plaintiff has failed to establish that he enjoyed a protected liberty interest in obtaining parole release, any alleged deficiencies or improprieties in the consideration of plaintiff's parole application do not state a claim upon which relief can be granted under 42 U.S.C. § 1983.

**B. Equal Protection claim**

Plaintiff also fails to set forth an equal protection claim. Plaintiff does not allege that he is a member of a protected class for purposes of equal protection. To the extent that plaintiff is trying to allege that, as a violent offender, he is treated differently than non-violent offenders, such discrimination has been held to be "entirely appropriate and not at all invidious." *Parks v. Edwards,* No. 03-CV-5588, 2004 WL 377658, at \*4 (E.D.N.Y. Mar. 1, 2004).

**C. Double Jeopardy violation**

Plaintiff seems to claim that by denying plaintiff parole based upon the violent nature of his original crime, defendants are violating the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Dkt. No. 1 at 9-10. The Second Circuit has held that "[t]he Double Jeopardy Clause applies to judicial proceedings, not parole." *Romer v. Travis,* No. 03 Civ. 1670, 2003 WL 21744079, at \*9 (S.D.N.Y. Jul. 29, 2003) (citations omitted); *see also Alessi v. Quinlan,* 711 F.2d 497, 501 (2d Cir.1983) ("A denial of parole is a decision to withhold early release from the confinement component of a sentence. It is neither the imposition nor the increase of a sentence, and it is not punishment for purposes of the Double Jeopardy Clause ..."). The Parole Board's decision to deny parole did not violate Plaintiff's Double Jeopardy rights.

**D. Plaintiff's cruel and unusual punishment claim**

Plaintiff claims that his continued incarceration beyond his **minimum** sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. "Detention beyond the termination of a sentence can constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest." *Wright v. Kane,* No. 94 Civ. 3836, 1997 WL 746457, \*4 (S.D.N.Y. Dec. 2, 1997) (citing *Estelle v. Gamble,* 429 U.S. 97, 104-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Calhoun v. New York State Division of Parole Officers,* 999 F.2d 647, 654 (2d Cir.1993)). As discussed above, plaintiff does **not** have a liberty interest in being granted parole. Moreover, plaintiff cannot show that he was deprived of a constitutional right "because he was not incarcerated beyond his term ...," i.e., he has not yet completed his maximum term of incarceration. *Wright,* 1997 WL 746457, at \*4.[FN5] Accordingly, the Court concludes that Plaintiff has failed to state a claim under the Eighth Amendment upon which relief can be granted.

> FN5. On September 17, 1997, plaintiff was sentenced to a term of eight to sixteen years imprisonment. *See* Dkt. No. 1 at 10.

**E. Sentence adjustment**

In addition to claiming that his constitutional rights have been violated by the defendants, plaintiff contends that the trial court improperly determined that plaintiff was a "second time violent felony offender" when in fact plaintiff should have been classified as a "first time violent felony offender." Dkt. No. 1 at 11. Plaintiff further argues that, because he was improperly sentenced, his minimum term of incarceration should be adjusted by the defendants and plaintiff should be immediately released. *Id.* at 15, 37.

**\*4** To the extent that plaintiff seeks to alter the fact or duration of his custody, he is advised that such relief may only be obtained by way of a habeas corpus petition brought pursuant to 28 U.S.C. § 2254. *See id.; Preiser v. Rodriguez,* 411 U.S. 475, 490 (1973) ("Congress has determined that habeas corpus is the appropriate remedy

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1313341 (N.D.N.Y.)
(Cite as: 2006 WL 1313341 (N.D.N.Y.))

for state prisoners attacking the validity" of their underlying criminal conviction); *see also Channer v. Mitchell,* 43 F.3d 786, 787 (2d Cir.1994) ("habeas corpus-not a § 1983 action-provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment ....") (citing *Preiser).*

**F. Conclusion**

For all of the above-stated reasons, plaintiff's complaint is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief may be granted.[FN6]

> FN6. Although "the usual practice is to allow leave to replead a deficient complaint, *see* Fed.R.Civ.P. 15(a); *see also Ronzani v. Sanofi, S.A.,* 899 F.2d 195, 198 (2d Cir.1990), such leave may be denied where amendment would be futile, *see Ruffolo v.. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.")." *Price v. Hasly,* No. 04-CV-0090S, 2004 WL 1305744, *2 (W.D.N.Y. June 8, 2004).

**III. *In forma pauperis* application**

In light of the dismissal of this action, plaintiff's *in forma pauperis* application is **DENIED** as moot.

**WHEREFORE,** it is hereby

**ORDERED,** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief may be granted; and it is further

**ORDERED,** that plaintiff's *in forma pauperis* application (Dkt. No. 2) is **DENIED** as moot, and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

N.D.N.Y.,2006.
Larocco v. NYS Div. of Parole
Not Reported in F.Supp.2d, 2006 WL 1313341 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 174364 (N.D.N.Y.)
(Cite as: 2009 WL 174364 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Thomas DUEMMEL, Plaintiff,
v.
Brian FISCHER; New York State Department of
Correctional Services; David A. Paterson; Robert
Dennison; Susan O'Connell, Defendants.
**No. 9:08-CV-1006 (TJM).**

Jan. 23, 2009.

Thomas Duemmel, Rome, NY, pro se.

**DECISION AND ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. Background**

*1 Currently before the Court for review is plaintiff
Thomas Duemmel's amended complaint. Dkt. No. 7.
Plaintiff submitted the amended complaint in compliance
with the Decision and Order of this Court filed on October
23, 2008. Dkt. No. 5 ("October Order"). The October
Order granted plaintiff's *in forma pauperis* application. *Id.*

**II. Discussion**

Section 1915(e)(2)(B) of Title 28 of the United States
Code, which governs proceedings *in forma pauperis,*
directs, in pertinent part, that "the court shall dismiss the
case at any time if the court determines that-... (B) the
action ...-(i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from

such relief." 28 U.S.C. § 1915(e)(2)(B). It is the court's
responsibility to determine whether a plaintiff may
properly maintain his complaint in this District before the
court may permit a plaintiff to proceed with an action *in
forma pauperis. See* 28 U.S.C. § 1915(e)(2).

Moreover, under 28 U.S.C. § 1915A, the Court must
review any complaint in a civil action in which a prisoner
seeks redress from officers or employees of a
governmental agency and "identify cognizable claims or
dismiss the complaint, or any portion of the complaint, if
the complaint ... is frivolous, malicious, fails to state a
claim upon which relief may be granted or seeks monetary
relief from a defendant who is immune from such relief."
28 U.S.C. § 1915A(b); *see also Carr v. Dvorin,* 171 F.3d
115, 116 (2d Cir.1999) (per curiam). An action is
frivolous as a matter of law when, *inter alia,* it is based on
an "indisputably meritless legal theory"-that is, when it
"lacks an arguable basis in law ... or [when] a dispositive
defense clearly exists on the face of the complaint."
*Livingston v. Adirondack Beverage Co.,* 141 F.3d 434,
437 (2d Cir.1998).

The gravamen of plaintiff's amended complaint is that he
has been denied parole release in violation of his
constitutional rights. Dkt. No. 7. Plaintiff also alleges that
defendants denied him the right to participate in SOP in a
timely manner.[FN1]*Id.* Plaintiff seeks his immediate release
from custody and an "examination by the Court" of the
denial of programming and parole. *Id.* For a more
complete statement of plaintiff's claims, refer to the
amended complaint.

> FN1. Plaintiff appears to be referring to the Sex
> Offender Counseling & Treatment Program,
> which is a comprehensive program of counseling
> and treatment for sex offenders. *See*
> http://www.docs .
> state.ny.us/ProgramServices/guidance.html#
> soctp. Plaintiff did enroll in SOP and eventually
> completed the program on January 29, 2006.
> Dkt. No. 7 at 10-11.

**A. Defendants**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 174364 (N.D.N.Y.)
(Cite as: 2009 WL 174364 (N.D.N.Y.))

Plaintiff has not named "New York State Department of Correctional Services," "David Paterson," or "Susan O'Connell" as defendants in his amended complaint. Accordingly, "New York State Department of Correctional Services," "David Paterson," or "Susan O'Connell" are dismissed as defendants in this action.

### B. No right to parole or programming

In order to proceed with his claim that he was denied parole in violation of his constitutional rights, it must appear that plaintiff enjoyed a protected liberty interest under New York State's statutory scheme for determining whether to grant or deny an application for parole. *See Barna v. Travis,* 239 F.3d 169, 170 (2d Cir.2001) (per curiam). It is well-settled, however, that "the New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release," and that, as a result, prisoners in New York state are not entitled to the safeguards afforded by federal due process with respect to parole release determinations. *Barna, supra,* 239 F.3d at 171; *Boothe v. Hammock,* 605 F.2d 661, 663-64 (2d Cir.1979).[FN2] Rather, any alleged violations of procedural requirements "are matters for consideration by the state courts." *Boothe,* 605 F.2d at 665.

> FN2. The decision of the Supreme Court in *Wilkinson v. Dotson,* 544 U.S. 74 (2005), allowing a § 1983 action by Ohio prisoners challenging the constitutionality of that state's parole process, is not applicable to this case. The *Wilkinson* Court "did not create or comment on any constitutional entitlements relating to parole." *Standley, supra,* 2007 WL 2406909 at *1 quoting *Yourdon v. Johnson,* 01-CV-812E, 2006 WL 2811710 at *2 (W.D.N.Y. Sept. 28, 2006). The Court also notes that plaintiff does not claim that defendants acted "arbitrarily or capriciously." *See Standley v. Dennison,* No. 9:05-CV-1033, 2007 WL 2406909 *1 (N.D.N.Y. Aug. 21, 2007); *Bottom v. Pataki,* No. 9:03-CV-0835, 2006 WL 2265408 at *6 (N.D.N.Y. Aug. 7, 2006).

**\*2** It is also clear that inmates do not enjoy a constitutionally protected right to participate in particular programs or to parole release. *Allen v. New York,* 9:05-CV-1613, 2006 U.S. Dist. LEXIS 72646, at *3 (N.D.N.Y. Oct. 5, 2006) (Mordue, C.J.) (citing *Lee v. Governor of New York,* 87 F.3d 55, 58-59 (2d Cir.1996); *Grant v. Ahern,* 2005 U.S. Dist. LEXIS 43274, No. 03-CV-0539, 2005 WL 1936175 *5 (N.D.N.Y.) (Magnuson, V.J.)).[FN3]

> FN3. In *Allen,* as in this case, plaintiff alleged that DOCS had a practice of withholding an inmate's participation in the Sexual Offender Counseling Program until an inmate was within one year of his conditional release date; as a result of this practice, the inmate may not have completed this program prior to his or her initial appearance before the parole board, resulting in denial of parole release. *See Allen,* 2006 U.S. Dist. LEXIS 72646, at *2-3. The *Allen* court found that these allegations did not state a claim upon which relief may be granted. *Id.*

### C. Release from custody

To the extent that plaintiff seeks his immediate release from custody, he is advised that such relief may only be obtained by way of a habeas corpus petition brought pursuant to 28 U.S.C. § 2254. *See id.; Preiser v. Rodriguez,* 411 U.S. 475, 490 (1973) ("[c]ongress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity" of their underlying criminal conviction; *see also Channer v. Mitchell,* 43 F.3d 786, 787 (2d Cir.1994) ("habeas corpus-not a § 1983 action-provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment ....") (citing *Preiser* ).

### III. Conclusion

Because plaintiff has failed to establish that he enjoyed a protected liberty interest in parole release or programming, the alleged deficiencies in the consideration of his parole application or the delay in providing programming do not state a claim upon which relief can be

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 174364 (N.D.N.Y.)
(Cite as: 2009 WL 174364 (N.D.N.Y.))

granted under 42 U.S.C. § 1983. Moreover, to the extent that plaintiff seeks his immediate release from custody, such relief may only be obtained by way of a habeas corpus petition brought pursuant to 28 U.S.C. § 2254. The amended complaint is therefore dismissed.

WHEREFORE, it is hereby

ORDERED, that "New York State Department of Correctional Services," "David Paterson," or "Susan O'Connell" are dismissed as defendants in this action; and it is further

ORDERED that this action is **dismissed** pursuant to 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim upon which relief may be granted, and it is further

ORDERED, that the Clerk of the Court serve a copy of this Decision and Order on plaintiff.

N.D.N.Y.,2009.
Duemmel v. Fischer
Slip Copy, 2009 WL 174364 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2003 WL 21488017 (S.D.N.Y.)
(Cite as: 2003 WL 21488017 (S.D.N.Y.))

☞  Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Fernando MOREL, Petitioner,
v.
Gail THOMAS, Acting Superintendent, Mid-Orange
Correctional Facility; Brion D. Travis, Chairman, New
York State Division of Parole, Respondents.
**No. 02 CV 9622(HB).**

June 26, 2003.

Inmate petitioned for a writ of habeas corpus, claiming that his due-process and equal-protection rights were violated when the New York State Division of Parole denied his release, and moving for bail pending habeas review. The District Court, Baer, J., held that: (1) New York parole statute did not create a liberty interest in parole; (2) parole board did not violate Due Process in denying inmate parole; and (3) there was no Equal Protection violation in the denial of parole.

Petition denied, and motion dismissed.

West Headnotes

**[1] Constitutional Law 92** ☞     4838

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)12 Other Particular Issues and
Applications
                92k4838 k. Parole. Most Cited Cases
                (Formerly 92k272.5)

**Pardon and Parole 284** ☞     46

284 Pardon and Parole
    284II Parole
        284k45 Authority or Duty to Grant Parole or
Parole Consideration
            284k46 k. Parole as Right or Privilege. Most
Cited Cases
New York parole statute did not create a liberty interest in parole, so as to support an inmate's claim of a Due Process violation in the denial of parole. U.S.C.A. Const. Amend. 14; 28 U.S.C.A. § 2254(b)(1), (b)(2); McKinney's Executive Law § 259-i(2)(c)(A).

**[2] Pardon and Parole 284** ☞     61

284 Pardon and Parole
    284II Parole
        284k57 Proceedings
            284k61 k. Reasons for Decision. Most Cited
Cases
Parole board acted within its discretion in denying inmate parole, despite the inmate's claim that the board failed to offer any reasons for rejecting his institutional record, community support, and employment prospects; board was supplied with numerous documents about the inmate's crime (manslaughter), was aware of the factors in the inmate's favor, and was entitled to determine that the nature of the crime outweighed the positive aspects of his record.

**[3] Constitutional Law 92** ☞     3821

92 Constitutional Law
    92XXVI Equal Protection
        92XXVI(F) Criminal Law
            92k3821 k. Parole. Most Cited Cases
            (Formerly 92k250.3(2))

**Pardon and Parole 284** ☞     60

284 Pardon and Parole

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21488017 (S.D.N.Y.)
(Cite as: 2003 WL 21488017 (S.D.N.Y.))

284II Parole
    284k57 Proceedings
        284k60 k. Decision; Reconsideration. Most Cited Cases
Inmate convicted of manslaughter failed to show that he was similarly situated to two other prisoners convicted of manslaughter but granted parole, or that the parole board intended to treat him differently from similarly situated inmates, thus defeating his claim of an equal protection violation in the denial of parole. U.S.C.A. Const. Amend. 14.


OPINION AND ORDER


BAER, J.


*1 Fernando Morel ("Morel") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on the basis that his due-process and equal-protection rights were violated when the New York State Division of Parole denied his release. Morel also moved for bail pending habeas review. For the following reasons, the petition is DENIED and the motion for bail is dismissed.


I. BACKGROUND [FN1]


FN1. Gabe Miller, an intern in my Chambers during the summer of 2003 and a second-year law student at Columbia Law School, provided substantial assistance in the research and drafting of this opinion.


Morel was convicted of first-degree manslaughter for a fatal stabbing during an altercation in a parking lot in Queens, New York on July 20, 1991. He was convicted on November 13, 1992, but this conviction was later reversed. He was again convicted of the same crime on November 9, 1995, and the court imposed a sentence of eight and one-third to twenty-five years, which he is currently serving at the Mid-Orange Correctional Facility in Warwick, New York.


Morel became eligible for parole after he served his minimum sentence, and he appeared before the Parole Review Board (the "Board") for the first time on September 22, 1999. The Board denied his application for parole and recommended that he apply again for parole in two years, the maximum allowed interval under N.Y. Executive Law § 259-i(2)(a).


He appeared before the Board a second time on September 19, 2001. When asked about the details of his crime, Morel explained that he was acting in self-defense. He stabbed the victim unintentionally as the victim threatened to strike Morel in the head with a glass bottle. Resp. Ex. A at 11-12 (Morel Parole Board Hearing, Sept. 19, 2001). At the hearing, the Board discussed with Morel his "excellent institutional adjustment" and "great disciplinary record," and his employment prospects if paroled.[FN2] Nevertheless, the Board again denied him parole, stating:


FN2. The relevant portions of this discussion are as follows:


Q ... Since you've been in State prison you have an excellent institutional adjustment. You have completed many programs. You have a great disciplinary record. You don't have any tickets; is that correct?


A Yes.


...


Q If you were to get released where would you live?


A I would live at home where I have been living all my life, practically-


Q And, where is that?


A That's in Jamaica, Queens.


© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21488017 (S.D.N.Y.)
(Cite as: 2003 WL 21488017 (S.D.N.Y.))

Q Forty-eight Street?

A Yes

Q And, you live there with your mother?

A Yes, I do.

Q And, what type of work would you do? You could be a mechanic; could you do that?

A Yes. I have numerous letters of employment.

Q Yes. you have got a lot of letters of support and a lot of community support.

This was an extremely heinous brutal act during the commission of which you took a human life. You have an excellent institutional adjustment, however, you appear to lack insight into the reason for your crime. This panel feels that you are a poor candidate for discretionary release at this time [as it] would deprecate the seriousness of the instant offense and diminish respect for the law. *Id.* at 19.

Morel filed an administrative appeal on December 17, 2001 to the Appeals Unit of the Division of Parole, and on June 5, 2002, the decision was affirmed on grounds that the Board did not rely on any erroneous information in denying his claim nor did it fail to consider all relevant information regarding his release. Resp. Ex. B at 29-30.

On February 11, 2002, Morel filed a petition for judicial review of the parole denial in the Supreme Court of the State of New York, Albany County, pursuant to N.Y. C.P.L.R. § 7803 ("Article 78"). He asserted that the Board violated his rights to due process and equal protection under the federal Constitution and his state-law right to be free of arbitrary and capricious administrative action under the New York Constitution. He contended that the Board's determination was arbitrary and capricious as it was not

supported by any evidence that his release was inappropriate at that time.

**\*2** Supreme Court Justice George L. Cobb dismissed Morel's Article 78 petition on all counts for failing to state facts on which relief could be granted. Justice Cobb observed that:

It is well settled that the serious nature of the crime together with a lack of remorse or insight constitutes sufficient grounds and evidence to deny parole release.... [A] review of the transcript of his parole release hearing indicates that petitioner attempted to minimize his fault, thereby clear[ly] establishing a lack of insight.

*Morel v. Travis,* No. 3044-02, slip op. at 2-3 (Sept. 30, 2002) (citations omitted). Morel has not appealed this most recent denial to the Appellate Division.

On December 4, 2002, Morel filed a petition for habeas corpus and a motion for bail pending habeas review.

## II. DISCUSSION

Morel contends that he is entitled to habeas corpus relief because the Parole Board violated his federal constitutional rights to due process and equal protection under the Fourteenth Amendment when it denied his September 2001 request for parole. In addition to contesting the merits of Morel's petition, respondent also argues that Morel is procedurally barred under 28 U.S.C. § 2254(b)(1)(a) from bringing his habeas petition until he has exhausted all remedies available to him at the state level.[FN3]

FN3. To exhaust a denial of parole under New York law, an inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. *See* N.Y. Comp.Codes. R. & Regs. tit. 9, § 8006.1. If that appeal is denied, he must seek relief in state court pursuant to Article 78 of the Civil Practice Law and Rules. *See Desire v. N.Y. Div. Of Parole,* 2001 U.S.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21488017 (S.D.N.Y.)
(Cite as: 2003 WL 21488017 (S.D.N.Y.))

Dist. LEXIS 13784, at *6 (S.D.N.Y. Aug. 22, 2001). Morel did appeal his denial to the Appeals Unit, and he also filed an appeal in New York Supreme Court pursuant to Article 78. Yet, he did not appeal the denial rendered by Justice Cobb to the Appeals Division of the state court. Thus, he failed to fully exhaust the state remedies available to him; Morel concedes this fact. *See* Pet. Mem. of L. at 1.

A petitioner challenging his custody pursuant to a conviction in state court must first exhaust all state-court remedies unless "it appears that ... circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." 28 U .S.C. § 2254(b)(2). Morel contends that the appeal process for a denial of parole is ineffective because he will be eligible for a new hearing before he has exhausted his appeal-thus his appeal will be moot. He also contends that the state remedy is ineffective because the only remedy available to him is a de novo hearing before the Board. Morel's argument is nearly identical to the argument raised in several recent habeas challenges by other inmates in the Mid-Orange Correctional Facility. In all four cases, the court dismissed the due-process and equal-protection claims on substantive grounds and declined to rule on the procedural question of state exhaustion. *See Brown v. Thomas,* 2003 U.S. Dist. LEXIS 3396 (S.D .N.Y. Mar. 10, 2003); *Defino v. Thomas,* 2003 U.S. Dist. LEXIS 4299 (S.D.N.Y. Mar. 24, 2003); *Hairston v. Thomas,* 2003 U.S. Dist. LEXIS 5020 (S.D.N.Y. Mar. 31, 2003); *Manley v. Thomas,* 2003 WL 1739003 (S.D.N.Y. Apr.1, 2003).[FN4] Judge Lynch stated in *Brown,*

FN4. In *Brown* and *Defino,* the petitioners were each incarcerated pursuant to convictions of manslaughter in the first degree. *See Brown,* 2003 U.S. Dist. LEXIS 3396 at *1; *Defino,* 2003 U.S. Dist. LEXIS 4299 at *1. In *Hairston,* the petitioner had been convicted of four counts of robbery and one count of assault, and the petitioner in *Manley* was incarcerated pursuant to a conviction of second-degree murder. *See Hairston,* 2003 U.S. Dist. LEXIS 5020 at *1; *Manley,* 2003 WL 1739003 at *1. Each of the

petitioners had excellent institutional records, had met numerous rehabilitative goals, and had participated in several institutional programs while incarcerated.

[S]o often in habeas corpus cases potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit. Since [the] petition can easily be rejected on the merits, requiring submission of that petition to the state courts, with the likelihood that the same arguments will be presented here in any event, would be a waste of the resources of both the state and federal courts.

**\*3** 2003 U.S. Dist. LEXIS 3396, at *2-*3. Similarly, this Court declines to rule on Morel's exhaustion argument because the petition can be dismissed on the merits of both the due-process and equal-protection claims.

A. Due Process

[1] Morel contends that the Parole Board violated his federally-protected rights to procedural due process on three grounds. First, the Board provided no evidence to support its determination that granting him parole would be inappropriate. Second, the Board's denial was arbitrary and capricious because it "failed to proffer any reasons for rejecting Petitioner's institutional record, community support and employability." Pet. Mem. of L. at 18. Finally, the Board's decision was "impermissibly infected" with political and public pressure to deny parole to inmates convicted of violent felonies. *Id.* at 19. He concedes that if he was not deprived of a liberty interest, then his "claims necessarily fail." *Id.* at 7. Although Morel makes a compelling argument that he should be paroled under the present state of the law, his due-process claim must be dismissed.

The Supreme Court has held that a convicted inmate has no inherent or constitutional right to be released on parole prior to the expiration of a valid sentence. *Greenholtz v. Inmates of the Neb. Panel & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). However, in *Greenholtz,* the Court found that a Nebraska statute that mandated parole unless certain requirements were met *created* a liberty interest in release.[FN5] Morel contends that the New York parole statute creates a liberty interest in the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21488017 (S.D.N.Y.)
(Cite as: 2003 WL 21488017 (S.D.N.Y.))

same fashion as the Nebraska statute. The New York statute provides:

> FN5. The Nebraska statute provides:

>> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release *unless* it is of the opinion that his release should be deferred because:

>> (a) There is a substantial risk that he will not conform to the conditions of parole;

>> (b) His release would depreciate the seriousness of his crime or promote disrespect for law;

>> (c) His release would have a substantially adverse effect on institutional discipline; or

>> (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a lawabiding life when released at a later date.

> Neb.Rev.Stat. § 83-1,114(1) (emphasis added).

Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so depreciate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the guidelines ... shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to section one hundred forty-seven of the correction law; and (v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated.

**\*4** N.Y. Exec. L. § 259-i(2)(c)(A). Morel relies on *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in which the Supreme Court held that the deprivation of good-time credits because of serious misconduct required a certain degree of due process protection. Morel also cites *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), where the Court ruled that a liberty interest is violated if treatment of an inmate imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin,* 515 U.S. at 480-84. However, the Second Circuit has ruled unequivocally that the New York parole process "is not one that creates in any prisoner a legitimate expectancy of release" so as to warrant full procedural due process protection. *Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001) (per curiam). Within a few months of the *Greenholtz* decision, this circuit found New York's parole scheme legally distinguishable from that in Nebraska. *See Boothe v. Hammock,* 605 F.2d 661, 664 (2d Cir.1979). The Second Circuit observed, "[I]t is apparent that New York's parole provisions ... do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist." *Id.; see also Barna,* 239 F.3d at 171 (quoting *Boothe* ). Morel contends that in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court departed from the analytical approach of *Greenholtz.* Even if Morel is correct, this court is bound by the Second Circuit's precedent, which is unambiguous on this point.[FN6]

> FN6. Indeed, the *Barna* opinion appears to rely on the distinction mentioned in *Greenholtz* about whether the state's parole statute contains language of an unmistakable mandatory

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21488017 (S.D.N.Y.)
(Cite as: 2003 WL 21488017 (S.D.N.Y.))

character. *See Barna,* 239 F.3d at 171 ("Thus, '[i]t is apparent that New York's parole provisions ... do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist.... [N]o entitlement to release is created [by the parole provisions].' *Boothe v. Hammock,* 605 F.2d at 664. Accordingly, plaintiffs have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable."). There is no citation in *Barna* to *Sandin,* which instructed that the proper analysis was not about whether the statute contained "language of an unmistakable mandatory character," but rather about "the nature of the deprivation," and specifically whether it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 480-84. However, even if Morel is correct that the New York parole scheme, like the Nebraska statute, creates a liberty interest, he overlooks the fact that New York's scheme contains procedures similar to Nebraska's to minimize the risk of erroneous decisions, which the Court found met due process requirements. *See Greenholtz,* 442 U.S. at 16 ("The Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more.").

Thus, because a New York law does not create a liberty interest in parole, Morel's due process rights extend only to a refusal by the Parole Board to deny release arbitrarily or capriciously, based on inappropriate consideration of a protected classification or an irrational distinction, or on any other unconstitutional grounds. *See Manley v. Thomas,* 2003 WL 1739003 at *3 (S.D.N.Y. Apr.1, 2003) (citing *Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). Morel has not proven that the government treated him in an arbitrary manner. The Board's decision was justified on the basis of reasonable considerations defined in the New York Executive Law.

[2] Morel contends that the Board's determination was arbitrary and capricious because it failed to offer any reasons for rejecting his institutional record, community

support, and employment prospects.[FN7] Pet. Mem. of L. at 18. Morel also asserts that his behavioral record and his desire to provide assistance to the parents of the victim demonstrate that he has been rehabilitated. *See* Pet. Mem. of L. at 16. Indeed, Morel presented a number of other factors that seemed to weigh in his favor. Nevertheless, however productive Morel's institutional adjustment has been, the statute clearly states that the Board is not to determine parole based on this consideration alone. The record indicates that the Board was supplied with numerous documents about Morel's crime and discussed these details with him at the parole hearing. Further, as noted above, the Board was certainly aware of the factors in Morel's favor, as it adverted to his exceptional institutional history and employment prospects. Although Morel argues that the arbitrariness of the decision is demonstrated by the lack of a comprehensive and inclusive discussion as to the Board's decision, "[t]he fact that the [B]oard did not discuss each factor with petitioner at [his] hearing does not constitute convincing evidence that it did not consider them." *See Matter of Mackall v. New York State Bd. of Parole,* 91 A.D.2d 1023, 458 N.Y.S.2d 251, 251 (App. Div.2d Dep't 1983). Similarly, the Board has discretion to accord these considerations whatever weight it deems appropriate, and, contrary to assertions made by petitioner, need not expressly discuss each of the reasons in its determination. *See Garcia v. N.Y.S. Div. of Parole,* 239 A.D.2d 235, 657 N.Y.S.2d 415, 418 (App. Div. 1st Dep't 1997).

FN7. He also contends that the Board's determination was arbitrary and capricious because he believes it misconstrued the facts of his case when it issued its determination. Specifically, Morel contends that the Board incorrectly described how he killed the victim and then fled the scene, and that this inaccuracy adversely affected the Board's determination. However, Justice Cobb's ruling on this point aptly characterizes the Board's statements. He found that,

[It] is uncontroverted that the stab wound in fact was responsible for the death of the victim. While there might be some implication from the language [of the Board's decision] that the victim died before petitioner fled, the records before the parole board clearly

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21488017 (S.D.N.Y.)
(Cite as: 2003 WL 21488017 (S.D.N.Y.))

establish that such was not the case. It is thus far more likely that the parole board was inarticulate in stating its grounds for denial, rather than that it believed that the victim died immediately.

*Morel v. Travis,* No. 3044-02, slip op. at 2-3 (Sept. 30, 2002).

**\*5** The Board was entitled to determine that the nature of the crime outweighed the positive aspects of his record.[FN8] *See Defino,* 2003 U.S. Dist. LEXIS 4299, at \*4. New York law is clear that where the record "demonstrates that the Parole Board considered the relevant statutory factors, including petitioner's record in prison and postrelease plans, before concluding in its discretion that, due to the serious and violent nature of the crime and petitioner's other violent conduct, petitioner is not an acceptable candidate for release on parole," reliance on the nature of the inmate's crime in their denial is entirely consistent with the criteria laid down by the legislature. *Brown,* 2003 U.S. Dist. LEXIS 3396 (citing *Thurman v. Hodges,* 292 A.D.2d 872, 739 N.Y.S.2d 324, 324 (App. Div. 4th Dep't 2002)).

FN8. Although not rising to the level of arbitrary and capricious, the Board's decision in this case is somewhat troublesome. As noted, Morel presented a number of positive factors, such as his exemplary institutional record and the employment opportunities available to him upon release, which the Board was required by the statute to consider. *See* N.Y. Exec. L. § 259-i(2)(c)(A); *see also Greenholtz,* 442 U.S. at 15 ("The behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release."). Yet, the Board apparently found that his crime, which it characterized as an "extremely heinous brutal act," and his apparent lack of insight outweighed these positive factors. Notwithstanding that Morel's actions caused the death of another person, one could easily be concerned, as I am, with the Parole Board's description and the denial which flowed from it, where the uncontroverted facts of the events preceding the

crime indicate that Morel had been approached by the victim, that the victim threatened to strike Morel in the head with a glass bottle, that Morel stabbed him once in the abdomen and then fled the scene, and that Morel contacted the police to turn himself in the following day. Pet. Ex. 4 at 3-9. Concern, however, does not pass the arbitrary and capricious test.

Thus, for the aforementioned reasons, it was within the Board's discretion to find as they did, and Morel's contention that the Parole Board violated his due process rights is unfounded.

B. Equal Protection

[3] Morel also asserts that the Board violated his right to equal protection of the laws by denying him parole while granting it to offenders convicted of similar crimes. This contention too is without merit.

Morel's equal-protection claim is in the nature of a "class of one." See *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). As the Court explained in *Olech,* "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* Thus, the three elements of a "class of one" equal-protection claim are that 1) the person received different treatment than others similarly situated, and that this disparate treatment was 2) irrational and wholly arbitrary and 3) intentional.[FN9] *See Giordano v. City of New York,* 274 F.3d 740, 751 (2d Cir.2001); *DeMuria v. Hawkes,* 328 F.3d 704, 706-07 (2d Cir.2003).

FN9. Morel also contends that the *Giordano* approach runs counter to the Supreme Court's decision in *Olech,* where the Court sustained a "class of one" equal-protection claim without requiring proof of an illicit motivation by the state. The Circuit has not decided whether *Olech* eliminated the Circuit's previously existing requirement that malice or bad faith be shown. *See DeMuria,* 328 F.3d at 707 n. 2 (declining to

Not Reported in F.Supp.2d, 2003 WL 21488017 (S.D.N.Y.)
(Cite as: 2003 WL 21488017 (S.D.N.Y.))

decide the issue and noting that it was similarly left unresolved in *Giordano* and *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499-500 (2d Cir.2001)). It is not necessary to resolve this issue here, either.

As noted above, there was a rational basis for the Board's decision to deny him parole *i.e.,* the Board's determination that to release Morel would deprecate the seriousness of the crime and undermine respect for the law. This alone would seem to also dispose of his equal-protection claim. However, in addition, although Morel contends that on the same day he was denied parole, the same three commissioners granted parole to two inmates convicted of manslaughter, he fails to show that they were similarly situated. Indeed, as Judge Sweet noted, "Given the degree of discretion accorded to the parole Board and the wealth of factors that its members may take into account, [petitioner's equal-protection] argument is difficult if not impossible to sustain." *See Defino,* 2003 U.S. Dist LEXIS 4299, at * 19. Further, given the various factors the Board can consider, Morel does not and cannot allege or show that the Parole Board *intended* to treat him differently from similarly situated inmates. Finally, Morel points to the Circuit's recent *DeMuria* decision in support of his argument that he has stated a claim and is entitled to discovery on it. He is correct that in *DeMuria,* the Circuit noted that "the allegation of an impermissible motive and of animus is sufficient to establish an equal protection issue." *DeMuria,* 328 F.3d at 707. However, the motive and animus that Morel contends is impermissible-namely, the Board's decision to get tough on violent offenders because of public and political pressure-in fact seems entirely permissible, as it closely relates to the statutory factor of whether "release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law." *See* N.Y. Exec. L. § 259-i(2)(c)(A).

**\*6** Given the amount of discretion accorded to the Parole Board under the law and the lack of substantive proof that the Board irrationally and intentionally treated Morel in a different fashion than it did other similarly situated offenders, Morel's equal protection claim is dismissed as being without merit.

III. CONCLUSION

For the foregoing reasons, Morel's habeas corpus petition is DENIED. Accordingly, his motion for bail is moot and dismissed. The Clerk of the Court is instructed to close this case and remove it from my docket.

IT IS SO ORDERED.

S.D.N.Y.,2003.
Morel v. Thomas
Not Reported in F.Supp.2d, 2003 WL 21488017 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

☞  Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Peter GRAZIANO, James Buckley, Mark Malone,
Robert A. Harris, William Walker, Aaron Talley,
Maurice Murrell, Steven Ho, Brian Jacques and Charles
Friedgood, suing on behalf of themselves and all others
similarly situated, Plaintiffs,
v.
George E. PATAKI, Governor of the State of New
York, Robert Dennison, Chairman of the New York
State Division of Parole, and The New York State
Division of Parole, Defendants.
**No. 06 Civ. 0480(CLB).**

July 17, 2006.

Robert Nathan Isseks, Middletown, NY, for Plaintiffs.

Neil Shevlin, New York State Department of Law (EPB),
Albany, NY, for Defendants.

*Memorandum and Order*

BRIEANT, J.

**\*1** Before the Court in this prisoner civil rights case, filed
as a class action, is a motion to dismiss the Complaint
(Doc. Nos.8, 9) filed on April 28, 2006. Opposition papers
were filed May 25, 2006 and reply papers were filed June
9, 2006. Oral argument was held on June 16, 2006. No
motion for class certification has yet been filed, but for
ease of reference the Court may hereinafter refer to the
case as a class action.

Unless otherwise noted, the following facts are assumed
true for purposes of this motion only. The ten named

individual Plaintiffs sue on behalf of themselves and all
others similarly situated for violations of due process and
equal protection under the Fourteenth Amendment, and for
violations of the *ex post facto* clause. They argue that they
have been denied full, fair and balanced parole hearings as
required to be conducted pursuant to the provisions of
New York State Executive Law § 259-1, and as a result
have been subjected to unconstitutional enhancements of
their sentences. All of the named plaintiffs were convicted
of second degree murder by trial or plea, and several have
additional crimes attached to their record.

Defendant Governor Pataki is being sued in his official
capacity only. Defendant New York State Division of
Parole is a 19-member Board of Parole with statutory
responsibility for determining whether parole-eligible
prisoners will be released. Defendant Robert Dennison
was confirmed in June of 2000, as Chairman and Chief
Executive Officer of the New York Division of Parole,
and is sued only in his official capacity.

In the last several years during the tenure of Governor
George E. Pataki, there has been commentary and
speculation on what is perceived by some to be a sudden
sharp curtailing of the number of parole grants for entire
classes of otherwise eligible offenders. This statistically
apparent policy change is perceived to be based on the fact
that they have committed crimes of great violence such as
murder. Certain state court judges and panel scholars have
remarked on what they consider to be an undeniable
inference that something has changed within the Parole
Board, with respect to crimes of great violence while the
statutory bases for the exercise of its discretion, common
to all cases, remains unchanged.

In this action, Plaintiffs allege that since 1995, the "Board
of Parole has been issuing parole determinations pursuant
to an unofficial policy of denying parole release to
prisoners convicted of A-1 violent felony offenses, solely
on the basis of the violent nature of such offenses and thus
without proper consideration to any other relevant or
statutorily mandated factor." *First Amended Complaint
("Complaint") at* ¶ 31. Plaintiffs allege that the "unofficial
policy of the Parole Board was instigated by [Governor]
Pataki and has been implemented and executed by the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

Division of Parole under Parole Chairman Robert Dennison," contrary to and in violation of New York State Executive Law § 259-I, which provides that several enumerated factors must all be considered in deciding whether to grant parole in a specific case. These include, but are not limited to the seriousness of the offense, the type of sentence, the length of sentence, the pattern of offenses, the inmate's institutional record, including program goals and accomplishments, academic achievements, therapy and interpersonal relationships with staff and inmates. *Complaint* at ¶¶ 32, 33. Plaintiffs contend the unofficial policy allegedly executed by the Parole Board is "in conflict with, and completely ignores the rehabilitative goals embodied in the provisions of the N.Y. S. Executive Law and Penal Law and contravenes the discretionary scheme mandated by these statutes." *Complaint* at ¶ 36.

**\*2** Plaintiffs contend that the Defendants' "unofficial policy precludes and/or substantially curtails the Parole Board's full and meaningful consideration of the statutorily mandated factors," and that the Parole Board bases its parole decisions for prisoners serving sentences for A-1 violent felonies upon impermissible factors. *Complaint at* ¶ 3. Plaintiffs allege that this unofficial policy has resulted in denials of parole that have been arbitrary and capricious and speculate that obtaining grants of federal money has been one of the motives for effecting a plunging parole release rate for violent criminals. *See Oppo. Memo at 2-4.* They cite to statistics illustrating that there has been a significant decline since 1995 in parole releases for prisoners serving sentences for A-1 violent offenses. Attached to the Complaint are summaries of the Parole Board Interviews and Release Rates for Fiscal Year ("FY") 1991-1992 through 2002-2003, the Board decisions by Summary Crime Categories for 1992-1993 through 2002-2003, and the Board decisions by Crime of Commitment for FY 1991-1992 through 2002-2003. *Complaint at Ex. A.* Plaintiffs also refer to recent attention brought to this subject in an article in the New York Law Journal in which it was reported that the percentage of A-1 violent felons paroled each year had fallen from a high of 28% under Governor Cuomo to 3% in 2004-2005 under Governor Pataki. *Oppo. Memo at 2, citing to 'Dismantling Parole: Parole Release Rates Plunge Under Pataki's Tough Policy,"* New York Law Journal, January 31, 2006.

Plaintiffs contend that such a policy exists and has led to

unequal treatment of prisoners convicted of A-1 violent felony offenses as compared to prisoners who are not serving sentences for such offenses, "in that the single criterion-the nature of the present offense-is all that is being given weight or consideration in the Board's determinations as to whether prisoners convicted of A-1 violent felony offenses will be granted parole release, while due consideration is being given to other statutory criteria in determining whether other prisoners not so convicted will be granted parole release." *Complaint* at ¶ 37.

Plaintiffs contend that the execution of this policy has also led to violations of their due process rights, because as a result of this policy, the denials of the parole release to class members "have been and continue to be arbitrary and capricious, based upon impermissible political and economic" reasons. They argue that execution of the policy of denying them parole without proper consideration of all relevant statutory factors constitutes unauthorized action in violation of Plaintiffs' rights to due process guaranteed by the Fourteenth Amendment. *Complaint at* ¶ 38.

Plaintiffs finally assert violations of the *ex post facto* clause, asserting that the Parole Board's policy has "brought about an ex post facto enhancement of the punishments imposed upon the named plaintiffs and members of the prospective class at their respective sentencings and thereby violates U.S. Const. Art. 1, § 10, cl. 1." *Complaint* at ¶ 39.

**\*3** Plaintiffs acknowledge, as they must, that there have been numerous similar recent challenges in the New York State Supreme Courts through Article 78 proceedings and in the federal courts through § 1983 proceedings, in which it has been argued that the Parole Board has been dismantling parole, in refusing to give meaningful and balanced consideration to the various factors required by law and by giving undue weight to the violent nature of prisoners' crimes. They distinguish this class action as focusing their challenge "not just on their own individual parole determinations, but on the unlawful manner in which the Pataki Parole Board is issuing adverse parole determinations on a class-wide basis," and thereby failing to exercise its discretion. *Oppo. Memo at 5.* They argue that the Board has instead been "carrying out an Executive

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

agenda, which calls for the elimination of parole for practically all A-1 violent felons." *Oppo. Memo at 6.*

Defendants move to dismiss the Complaint for failure to state a claim of violations of due process, equal protection and the *ex post facto* clause, contending, *inter alia,* that there exists no such policy to deny parole outright to A-1 violent offenders and that Plaintiffs ignore the fact that their sentences involve a maximum sentence range of life imprisonment.

*Proposed Class & Subclass*

Plaintiffs submit that members of the class are estimated to be in the thousands and are therefore so numerous to render joinder impracticable. The named Plaintiffs seek to represent a class comprised of all prisoners in the custody of the New York State Department of Correctional Services who:

1) were convicted of A-1 violent felony offenses;

2) have served the minimum terms of their indeterminate sentences and are therefore eligible for parole release; and

3) have had their most recent applications for parole release denied by the Parole Board solely because of the "seriousness of the offense," the "nature of the present offense," or words to that effect, and in some cases, their prior criminal history.

*Complaint* at ¶ 3.

Nine out of the ten named Plaintiffs (not Plaintiff Friedgood), also seek to represent a sub-class of prisoners who meet the same defining factors of the main class as set forth above, but who were also sentenced to *less* than the statutory maximum term of imprisonment-25 years to life-for their violent offenses.

The proposed class period for the class and subclass commences three years before the date the action was filed. The case was filed January 23, 2006, therefore the proposed class period begins January 23, 2003, and extends "until such date when the defendants are enjoined from, or otherwise cease, the unconstitutional manner in which the Parole Board is denying parole release to the plaintiffs and members of the proposed class and/or subclass." *Complaint* at ¶ 5.

*Abstention*

At the outset, the Court will address Defendants' suggestion that this Court should abstain from deciding this issue under *Pullman* for purposes of comity, federalism, and New York's separation of powers, and under *Younger,* for Plaintiffs Walker and Friedman, each of whom, they argue, has the same claims pending in state court.

**\*4** Abstention under the Pullman doctrine may be appropriate when three conditions are met: (1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible "to an interpretation by a state court that would avoid or modify the federal constitutional issue." *Greater New York Metro. Food Council v. McGuire,* 6 F.3d 75, 77 (2d Cir.1993) (per curiam). Satisfaction of all three criteria does not automatically require abstention, however. "The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."

*Vermont Right to Life Comm. v. Sorrell,* 221 F.3d 376, 385 (2d Cir.2000).

Plaintiffs oppose abstention, arguing that there is no unclear state statute involved, as the plain meaning of New York Executive Law § 259-I and New York Penal Law § 70.00 is not in dispute, and that sensitive issues of federalism are not involved. The Court recognizes that the issue presented is an extremely sensitive one. Human liberty interests are implicated, counterbalanced by societal interests in punishment and prevention of violent crime, as well as state separation of powers principles. The

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

Court nevertheless declines to abstain, as the state law is not, in this Court's view, unclear and the extraordinary recourse of abstention is not necessary. Insofar as concerns *Younger* abstention, it would apply only to two of the named plaintiffs, so the Court declines to consider that issue at this stage of the litigation.

*Discussion*

In considering a motion to dismiss under Rule 12(b)(6), the Court is obliged to accept the well-pleaded assertions of fact in the complaint as true and to draw all reasonable inferences and resolve doubts in favor of the non-moving party. *See Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). The focus of the Court's inquiry is not whether plaintiffs will ultimately prevail, but whether the plaintiffs are entitled to an opportunity to offer evidence in support of their claims. Therefore a motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

*Parole in New York*

Parole in New York is entirely a creature of statute. "There shall be in the executive department of state government a state division of parole. The chairman of the state board of parole shall be the chief executive officer of the division." N.Y. Exec. Law § 259(1). "There shall be in the state division of parole a state board of parole which shall possess the powers and duties hereinafter specified. Such board shall consist of not more than nineteen members appointed by the governor with the advice and consent of the senate. The term of office of each member of such board shall be for six years." N.Y. Exec. Law § 259-b(1). "The governor shall designate one of the members of the board as chairman to serve in such capacity at the pleasure of the governor or until the member's term of office expires and a successor is designated in accordance with law, whichever first occurs." N.Y. Exec. Law § 259-b(3).

**\*5** The state board of parole shall "have the power and duty of determining which inmates serving an indeterminate or determinate sentence of imprisonment may be released on parole," N.Y. Exec. Law § 259-c(1), and shall "establish written guidelines for its use in making parole decisions as required by law, including the fixing of minimum periods of imprisonment or ranges thereof for different categories of offenders." *Id.* at § 259-c(4). New York's law provides that:

Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.

N.Y. Exec. § 259-i(2)(c)(A). It also provides:
In making the parole release decision, the guidelines adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article shall require that the following be considered: (I) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to section one hundred forty-seven of the correction law; and (v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated.

*Id.* The law permits appeal of parole determinations as follows:
Except for determinations made upon preliminary hearings upon allegations of violation of presumptive release, parole, conditional release or post-release supervision, all determinations made pursuant to this section may be appealed in accordance with rules promulgated by the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

board. Any board member who participated in the decision from which the appeal is taken may not participate in the resolution of that appeal. The rules of the board may specify a time within which any appeal shall be taken and resolved.

NY Exec. § 259-i(4)(A).

The New York Court of Appeals has held:

As the Supreme Court has recently stated, referring to the Federal parole system, in United States v. Addonizio (442 U.S. 178, 190): "The import of this statutory scheme is clear: the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with judicial expectations, * * * would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts."

**\*6** Russo v. New York State Board of Parole, 50 N.Y.2d 69, 76-77 (N.Y.1980).

*Due Process Claim*

Defendants argue that the Board's denials have not been arbitrary, capricious, or otherwise unlawful, and that there exists no *policy* to deny parole to violent criminals based solely on the nature or severity of their crimes. They assert that "it is well-established that the Board may deny parole based upon the nature and severity of the underlying crime as long as it has taken the other statutory factors into consideration." *Memo at 20.* The Court agrees, but notes here that the allegation in this case is that the other statutory factors are not actually taken into consideration in connection with A-1 felons, and that this occurred and continues under a *policy,* rather than on an individualized process of decision-making.

Plaintiffs argue that prior courts could not fully address the allegation in this case, which is that the Parole Board is not exercising statutory discretion, but is instead carrying out a policy, or Executive agenda, which calls for the elimination of parole for practically all A-1 violent felons. They argue that reviewing state courts have thus far only considered this type of case on an individual case-by-case basis, and accordingly could not have perceived an illegal policy, as is alleged to exist in this litigation, of denying parole on the singular basis of the violent nature of the crime. Plaintiffs contend that:

With only one parole decision being reviewed per judicial proceeding, the Attorney General was always able to argue, and the courts were always able to accept, that, in the discretionary judgment of the Parole Board, the *particular* circumstances of the crime in question, as recited in the Board's decision, had some rational bearing upon whether the prisoner ought to be released at that time. But what becomes obvious when reading dozens of these parole decision at a single sitting, rather than just one at a time, is that there is nothing unique or particularly telling about most of the facts and circumstances that these decisions describe and are based on. The Board is simply describing murders and denying parole-nothing more than that. It becomes obvious, ... that the Board is denying parole to practically every prisoner who is serving time for murder, just because that prisoner committed murder and for no other reason, no matter how well that prisoner may have done in prison and no matter how well he may have prepared himself for a law abiding life on the outside.

*Oppo. Memo at 7.*

Plaintiffs argue that in this class action the "Court will have the entire picture and that picture makes it abundantly clear that, because of an Executive mandate, the plaintiffs and class members' "hopes for parole [have been] doomed from the start." *Oppo. Memo at 8,* citing Cappiello v. New York State Bd. of Parole, 6 Misc.3d 1010(A), 2004 WL 3112629 at \* \*6 (N.Y.Sup.). Defendants contend that when a panel finds that the gravity of violence in a particular inmate's crime outweighs any positive factors, and denies parole on that basis, it reflects a societal desire for enhanced safety, and as a matter of law does not reflect or constitute a prohibited policy to deny parole to A-1 violent felons.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

Perhaps this is the most likely reality, however, the Court reads the Complaint, in the light most favorable to Plaintiffs, to assert a claim that there is in fact a policy, and under the policy, each Plaintiff's status as an A-1 violent offender predetermines the outcome of the parole decision, notwithstanding any positive factors, and that this is in violation of New York law. Accordingly, the Complaint pleads facts, the validity or truth of which may not be determined on a Rule 12(b)(6) motion.

**\*7** Plaintiffs "readily acknowledge that a New York State prisoner does not have a constitutional right to parole release." *Oppo. Memo at 12.* They acknowledge also that "New York's parole scheme gives the Parole Board discretionary authority to grant or deny parole and therefore does not create a legitimate expectancy of release." *Id., citing Barna v. Travis,* 239 F.3d 169, 170-171 (2d Cir.2001). However, the Board's discretionary authority does not amount to unlimited authority, as the Board is required to apply the three standards and consider the five factors set forth in Executive Law § 259-i(2)(c)(a). Plaintiffs argue, and the Court agrees, that even though there is no liberty interest in parole release, there is still a due process liberty interest in "not being denied parole for arbitrary or impermissible reasons" or as the result of "flagrant or unauthorized action," in derogation of the statute. *Oppo. Memo at 12.*

In *Barna v. Davis,* our Court of Appeals held:

The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release. The State statute creates a parole board that has the power and the duty to determine "which inmates serving an indeterminate ... sentence of imprisonment may be released on parole ... and when." N.Y. Exec. Law § 259-c.1. The board is to establish its own guidelines for making such parole decisions. See *id.* § 259-c.4. The current parole board guidelines state, in pertinent part, that the purpose of the guidelines is to "structure [the parole board's] discretion with regard to [minimum-period-of-imprisonment] and release decisions," that the guidelines "are based on only two major factors-crime severity and past criminal history," and that "they are intended only as a guide, and are not a substitute for the careful consideration of the many circumstances of each individual case." 9 N.Y.C.R.R. § 8001.3(a).

Barna v. Travis, 239 F.3d 169, 171 (2d Cir.2001). The Court also held in that decision that:
[I]t is apparent that New York's parole provisions ... do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist.... No entitlement to release is created [by the parole provisions]. Accordingly, plaintiffs have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable.

*Id.* (citations and quotations omitted).

In *Barna,* the Plaintiffs argued on appeal that the State "systematically denies parole to prisoners who were convicted of crimes of violence." Barna, 239 F.3d at 170. Although our Court of Appeals clearly held that there is no entitlement or "legitimate expectation of release that is grounded in the state's statutory scheme," this Court concludes as a matter of law that there is an entitlement to a process of decision-making, which comports with the statutory guidelines of consideration to all relevant statutory factors. Expressed differently, the Executive Branch, by adopting a policy as alleged, which constricts or alters the intended operation of the statute, if it did so, would violate Plaintiffs' due process rights. Indeed, Defendants acknowledge that "decisions following *Barna* have recognized that because the Board is required to consider the guidelines set forth in N.Y. Exec. Law § 259-i(2)(a), an inmate's due process rights will extend 'only to a refusal by the Board to deny release arbitrarily or capriciously, based upon inappropriate consideration of a protected classification or an irrational distinction, or on any other unconstitutional grounds.' " *Memo at 19-20* (citations omitted). Defendants argue, however, that in this case, the parole denials challenged were neither arbitrary, nor capricious, nor otherwise unlawful, and that Plaintiffs' due process claims must accordingly be dismissed without taking evidence in support of the allegations of an unlawful policy.

**\*8** Defendants argue that as "as a matter of law, the Board's determinations in each of the plaintiffs' parole interviews do not constitute a prohibited policy" and that "this contention has been rejected time and again by both federal and state courts in New York," which have found

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

that "as long as the Board has properly considered the statutory guidelines, it may determine that parole should be denied based on the nature and severity of the underlying crime and that such determinations do not constitute a policy to deny parole to inmates who have committed violent crimes." *Memo at 22.* The Court agrees that where a Board has properly considered statutory guidelines, it may in its proper exercise of discretion deny parole where it determines upon a fair consideration of all relevant statutory factors that the nature and severity of the underlying crime outweigh other possibly positive factors.

In this case, however, Plaintiffs do not simply challenge "the way that the Board exercised its discretion in their particular cases," but contend that "the Board is not exercising its discretion, at all." *Oppo. Memo at 5.* They argue that in other Article 78 and § 1983 proceedings, a plaintiff could challenge only his own adverse parole decision, and such cases were usually decided against the individual Plaintiff, because of the reasoning that the well-settled state law of New York is that a Parole Board's decision is discretionary, resulting in no due process liberty interest in parole release; that the seriousness of a person's crime is a valid consideration; and that it was within the Board's discretion to deny parole release.

If there were proved to exist an unpublished official policy as alleged, imposed upon and implemented by the Board, which dictated the outcome of parole decisions for certain prisoners in contravention of the statutorily required process of determining an individualized outcome, Plaintiffs would have asserted a viable claim. They should be entitled to submit evidence in support of their non-frivolous allegations. Without suggesting that he has done so, the Court can hold with confidence that the Governor would not be permitted to effect a "policy" as an end run around the legislature, in order to accomplish a goal of amending the statutory criteria to deny parole to a class of violent offenders.

Such an end run is precisely what is alleged by the Plaintiffs. The abrupt and steep decline in the grant of parole in A-1 cases *(see supra, pages 2-4)* is at least circumstantial evidence suggesting that such a policy exists. Although there is no due process right to be granted parole, this Court concludes that there exists a Constitutional right to have a parole decision made in

accordance with the statute.

The role of the Parole Board is ... to determine whether, as of this moment, given all the relevant statutory factors, he should be released. In that regard, the statute expressly mandates that the prisoner's educational and other achievements affirmatively be taken into consideration in determining whether he meets the general criteria relevant to parole release under section 259-i(2)(c).

**\*9** *King v. New York State Division of Parole,* 190 A.D.2d 423, 432 (N.Y.App.Div.1993). In King, the Appellate Division also held:
[W]hile the courts remain reluctant to second-guess the decisions of the Board, it is unquestionably the duty of the Board to give fair consideration to each of the applicable statutory factors as to every person who comes before it, and where the record convincingly demonstrates that the Board did in fact fail to consider the proper standards, the courts must intervene.

*Id.* at 431. In that case, the Court held that "the record clearly reveals that the denial of petitioner's application was a result of the Board's failure to weigh all of the relevant considerations and there is a strong indication that the denial of petitioner's application was a foregone conclusion." *Id.* at 431-432 (N.Y.App.Div.1993). The same is alleged in the case at bar, and that is all that is needed to defeat a Rule 12(b)(6) motion.

This Court discerns a meaningful distinction in theory between a challenge to the process of determining a parole decision, and a challenge of the actual outcome. While adhering to the Court of Appeals' holding that prisoners have no liberty interest in being *granted* parole, so as to invoke the protections of the due process clause, it is nevertheless understood that if, as alleged, there were to exist an "unofficial policy or practice of the Parole Board," to "unlawfully eliminate or substantially curtail the Parole Board's discretion concerning prisoners serving sentences for A-1 violent offenses" and to have the Parole Board "deny parole release to such prisoners solely on the basis of the violent nature of their present offenses," as clearly alleged in the Complaint, that this would constitute a violation of a due process right to have a parole decision made according to the legislatively enacted criteria. *See*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

*Complaint* at ¶ 2. In other words, while there is no due process right to being *granted* parole, there is a due process right to have the decision made only in accordance with the statutory criteria. Although difficulties of proof of the existence of the alleged policy are readily apparent, the Complaint appears to state a claim for a due process violation, which at the very least would support declaratory or injunctive relief.[FN1] It is unclear that any Plaintiff could ultimately prove, in addition to the existence of the alleged policy, that his resulting parole decision would have been different if it had resulted from a fair and balanced consideration of all factors, including, of course, the violent nature of the offense.

> FN1. It seems extremely doubtful that the sudden change in the percentage of parole grants *(see* text at pages 2-4) standing alone, would prove the adoption or existence of the claimed policy. There are lies, damn lies and statistics.

The allegation that there exists a policy or practice to deny parole based solely on the nature of the violent offense, enables the Complaint in this case to transcend what all previous Court decisions have addressed, namely, whether a particular parole denial constituted a violation of one or more Constitutional rights. The Court perceives a distinction inherent in those prior cases, which only challenged the resulting decision, and this Complaint, which challenges the process of reaching a decision.

*Equal Protection Claim*

**\*10** Plaintiffs contend that they have been denied the benefit of full consideration of all the statutory factors, in contrast to inmates not convicted of A-1 violent crimes. Defendants argue that Plaintiffs cannot state a claim for an equal protection violation and move to dismiss that claim as well. They argue that violent felons are not similarly situated to non-violent felons for purposes of equal protection analysis, and that prisoners or A-1 felons are not a suspect class enabling them to state an equal protection claim. They argue that the Board's exercise of discretion, including giving more weight to one factor than another in reaching an ultimate decision, is exactly what the statute provides. They point to several decisions of the Eastern and Southern Districts of New York in which the

courts decided that the Board may, after considering all of the statutory guidelines, determine that parole should be denied based on the nature and severity of the underlying crimes.

The Court disagrees with Defendants' assertion that Plaintiffs are not similarly situated to other (non-violent) prisoners eligible for parole, insofar as every prisoner eligible for parole, is subject to, and deserving of fair consideration of each relevant statutory factor. That the resulting decision could quite likely be legitimately different, according to whether someone is an A-1 violent offender or not, does not change the fact that each individual eligible for a parole determination has a right to actual consideration by proper procedure, rather than to a predetermined outcome imposed by an unpublished policy, not adopted by the legislature.

The Court concludes that the same distinction addressed *supra* in the due process analysis, between challenging the *outcome* of a parole decision and challenging the *process* of making a parole decision, applies to the equal protection analysis. An A-1 violent offender who is not similarly situated to a non-A-1 violent offender for purposes of being *granted* parole, is nevertheless similarly situated to a non-A-1 violent offender for purposes of *being considered* for parole, according to the statutorily-defined criteria. The violent nature of the offense may obviously be considered, but may not serve to make a denial a foregone conclusion, in contravention of the statutorily-prescribed process of consideration.

*Ex Post Facto Claim*

Defendants argue that a denial of parole does not increase the penalty by which a crime is punishable and doesn't operate retroactively. Our Court of Appeals has held:

[There is no] merit in plaintiffs' claims that State parole procedures adopted after they were incarcerated violate the Ex Post Facto Clause. That Clause applies only to "legislative action that retroactively 'punishes as a crime an act previously committed, which was innocent when done,' 'makes more burdensome the punishment for a crime, after its commission,' or 'deprives one charged

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

with crime of any defense available according to law at the time when the act was committed." *Doe v. Pataki,* 120 F.3d 1263, 1272 (2d Cir .1997) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169-70, 70 L.Ed. 216, 46 S.Ct. 68 (1925)). A law that is merely procedural and does not increase a prisoner's punishment cannot violate the Ex Post Facto Clause even when applied retrospectively. *See California Dep't of Corrections v. Morales,* 514 U.S. 499, 507-09, 131 L.Ed.2d 588, 115 S.Ct. 1597 (1995).

**\*11** The Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion.

*Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001).

"[W]here parole is concerned[,] discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised." *Garner v. Jones,* 529 U.S. 244 (U .S.2000). In *Garner,* Georgia's state board of pardons and paroles amended its rules so that the interval of time between parole considerations was extended to at least every eight years. The Supreme Court concluded that retroactive application of a law, which increased the maximum interval of years within which a petitioner could be reconsidered for parole, did not violate the *ex post facto* clause because there was no proof that the amendment created a significant risk of increased punishment for respondent. The rule gave the Parole Board broad discretion to schedule reconsideration hearings based on release suitability, and the Supreme Court reversed and remanded the action because there was no proof that the amended law lengthened respondent's incarceration. The High Court held:

The States are prohibited from enacting an ex post facto law. U .S. Const., Art. I, § 10, cl. 1. One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. Whether retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a

parole board is taken into account.

*Garner,* 529 U.S. at 249-250 (citations omitted).

Defendants argue that Plaintiffs do not cite "any instance where an *ex post facto* violation is founded upon a parole board's discretionary practice alone, in the absence of any change to governing regulations." *Reply Memo at 12.* Here, Plaintiffs' claim is that the discretionary practice has been materially altered by an outright policy to deny parole to certain prisoners, regardless of positive considerations.

Because under *Garner,* retroactive application of the policy *may* increase the punishment for a crime after its commission, the Complaint states a claim, although one of "particular difficulty when the [remaining] discretion vested in the parole board is taken into account." *See Garner, supra.*

*Failure to Exhaust Administrative Remedies*

Defendants argue that the Complaint should be dismissed for failure to allege or show that administrative remedies were exhausted. They assert that Plaintiffs' claims should be brought individually under 28 U.S.C. § 2254, which requires the exhaustion of state remedies. The Court disagrees. Due process and equal protection concerns raised by parole determinations do not necessarily seek to invalidate the underlying conviction or sentence. Indeed such claims may be brought under 42 U.S.C. § 1983, without the exhaustion requirement. *See Wilkinson v. Dotson,* 544 U.S. 74 (2005).

**\*12** The Court does not read the Complaint to complain literally that the Parole Board resentenced them, but rather that the application of an *ultra vires* policy of the Parole Board to the Plaintiffs has the effect of "extending their minimum term of imprisonment." *Oppo. Memo at 34-35.* The Court's present concern is whether a claim has been stated that an alleged policy of predetermined parole denials deprived Plaintiffs of a statutorily-required process of parole determination. Exhaustion is not required.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

*Standing of Individual Plaintiffs*

In their reply papers, Defendants for the first time challenge Plaintiffs' standing, arguing that Plaintiffs' reliance on class allegations and abstract harm prevents the stating of a claim. Defendants assert that in Plaintiffs' opposition papers, it is clear for the first time that they are not asserting individualized injury based on the specific facts surrounding their specific parole denials, but are relying rather upon a global characterization of unlawful practices of the Parole Board. Defendants argue that Plaintiffs cannot rely upon the class action mechanism to create a cause of action where one does not exist, and that Plaintiffs who do not state actual individualized claims do not have standing to serve as class representatives.

Fairly read, Plaintiffs each assert that an unlawful policy, not a part of the legislative criteria enacted with respect to parole, exists in New York, and was or will be employed in his case, and had or will have the adverse effect of causing him to be denied parole. This non-frivolous allegation is sufficient to establish standing.

*Collateral Estoppel*

Defendants assert that three Plaintiffs (Buckley, Graziano, and Jacques) have previously challenged their parole release denials in state courts on substantially the same bases and facts alleged in this case, and that their challenges have been denied. Plaintiffs respond that the individual Plaintiffs have never had a full and fair opportunity to litigate their allegations in this case, concerning what they claim is the Parole Board's class-wide policy.

Collateral estoppel is an affirmative defense to be pleaded and proved. Under the general principles of collateral estoppel:

[A] judgment in a prior proceeding bars a party and its privies from relitigating an issue if, but only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate

in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Carney v. Philippone,* 332 F.3d 163, 169-170 (2d Cir.2003) (citations omitted).

Collateral estoppel under New York law is not automatic and the Court does not deem a ruling necessary at this stage in the litigation as to the three named Plaintiffs believed by Defendants to be collaterally estopped from litigating their claims. Were one or more individual Plaintiffs to be dismissed from the case, there are apparently ample Plaintiffs who have not previously litigated the claims raised in this case. This Court has already received letters from prisoners interested in the case, and additional cases have been filed as related to this case. For purposes of disposing of this motion, the Court declines to find any Plaintiffs collaterally estopped from being a part of the lawsuit.

***Conclusion***

**\*13** The Motion (Doc. Nos.8, 9) is denied.

The Court has received numerous letters from prisoners interested in this case and as noted above, separate cases have been filed *pro se* by prisoners as "related" to this case. It may well be that this order "involves a controlling question of law as to which there may be substantial ground for difference of opinion" and it is possible that an immediate appeal from the order might materially advance the ultimate termination of the litigation," which is likely to be lengthy and expensive. The pendency of this litigation of necessity brings confusion to pending cases in the Division of Parole and adds to unrest in the prisons, as shown by the recent *pro se* filings. On request, the Court will confer with counsel and consider whether it should make the findings contemplated by 28 U.S.C. § 1292(b), and permit an immediate interlocutory appeal. A case management conference with the Court is hereby set for July 28, 2006 at 11:00 a.m.

SO ORDERED.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2023082 (S.D.N.Y.)
(Cite as: 2006 WL 2023082 (S.D.N.Y.))

S.D.N.Y.,2006.
Graziano v. Pataki
Not Reported in F.Supp.2d, 2006 WL 2023082
(S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 2877646 (S.D.N.Y.)
(Cite as: 2009 WL 2877646 (S.D.N.Y.))

C Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Spyro GERMENIS, Plaintiff,
v.
N.Y.S. DEPARTMENT OF CORRECTIONAL
SERVICES, Brian Fischer-Commissioner N.Y.S.
Department of Parole, George B.
Alexander-Commissioner of Parole, Defendants.
**No. 08 Civ. 8968(GEL).**

Sept. 9, 2009.

Spyro Germenis, Woodburne, NY, pro se.

Andrew M. Cuomo, Attorney General of the State of New
York (Maria Barous Hartofilis, Assistant Attorney
General, of Counsel), New York, NY, for defendants.

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge.

**\*1** Pro se plaintiff Spyro Germenis, a New York State
prisoner, brings this action under 42 U.S.C. § 1983
alleging that defendants, the New York State Department
of Correctional Services ("DOCS"), the New York State
Division of Parole ("DOP"), and the head of each of those
agencies, DOCS Commissioner Brian Fischer and DOP
Chairman George B. Alexander, violated his constitutional
rights to due process and equal protection by denying him
fair parole hearings from 1997 to 2007, insofar as his
sentencing minutes and other unspecified documents were
not considered, resulting in the denial of his parole.
Defendants move to dismiss pursuant to Federal Rules of
Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set
forth below, defendants' motion will be granted and the
complaint dismissed.

**BACKGROUND**

In 1983, Germenis pled guilty to murder in the second
degree and was sentenced to fifteen years to life in prison.
(Hartofilis Decl. Ex. A.) [FN1] Germenis first appeared
before the parole board in September 1997, at which time
he was denied parole. (Hartofilis Decl. Ex. B.) Between
that time and September 6, 2005, he appeared before the
Parole board four more times and was denied parole on
each occasion. (Hartofilis Decl. Exs. B & G at 1.) A sixth
parole hearing was scheduled for September 11, 2007.
(Compl. at 2.) At that time, however, the Parole board
informed Germenis that his sentencing minutes were not
in the DOP's possession and the hearing was accordingly
adjourned three months, until December 11, 2007.
(Compl. at 2.)

> FN1. The following recitation of facts is drawn
> from the allegations in the complaint and
> documents integral to it, as well as from
> undisputed facts in the public record. They are
> construed in the light most favorable to
> Germenis, and his allegations are assumed to be
> true for purposes of this motion to dismiss,
> except when they are inconsistent with the
> documentary record.

During this adjournment, a parole officer informed
Germenis that the DOP could not obtain his sentencing
minutes because the stenographer had died and did not
leave any notes. (*Id.*) Germenis's sixth parole hearing went
forward as scheduled on December 11, 2007. (Hartofilis
Decl. Ex E (minutes of parole hearing); *see also* Compl.
at 1.) Despite the complaint's intimations to the contrary,
the transcript of this hearing reveals, and Germenis
ultimately concedes, that the DOP did have copy of
Germenis's sentencing minutes as of this sixth parole
hearing. (Hartofilis Decl. Ex. E. at 2-4; *see also* 3/11/09
Germenis Aff. ¶ 4.) [FN2] These sentencing minutes, in fact,
were reviewed in detail at this parole hearing, but did not
affect the Parole board's ultimate decision to deny
Germenis parole once again. (Hartofilis Decl. Ex E at 2-4,
17.) This is not surprising, given that the sentencing

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2877646 (S.D.N.Y.)
(Cite as: 2009 WL 2877646 (S.D.N.Y.))

transcript itself reveals that the sentencing judge made no recommendation regarding Germenis's parole and simply imposed the indeterminate term of fifteen years to life negotiated by the parties in the plea agreement. (Hartofilis Decl. Exs. A.)

> FN2. In fact, although not noted in the complaint, Germenis later divulges that he provided a copy of his sentencing transcript to the parole officer who informed him of the DOP's inability to obtain a copy of this document. (3/11/09 Germenis Aff. ¶ 3.)

Although recognizing that his sentencing minutes were considered by the Parole board in December 2007, Germenis infers from the fact that defendants lacked the sentencing minutes in September 2007 that the minutes were not considered at his first five parole hearings. He further posits that still other documents that are supposed to be considered in parole determinations under New York law may be missing from his file. (Compl. at 2.) Germenis contends that these deficiencies, which Germenis alleges to have resulted from the defendants' "gross negligence," violated his due process and equal protection rights and deprived him of any meaningful chance of being paroled throughout the years. (*Id.* at 2-4.)

**\*2** Germenis commenced this action on September 17, 2008,[FN3] seeking compensatory and punitive damages, plus an injunction ordering defendants "to discontinue the practice of conducting a[p]arole consideration hearing without having the statutorily mandated documents and *all* required documents needed to properly review, conduct and decide a[p]arole consideration request." (Compl. at 4.) Defendants moved to dismiss the action, in part, for lack of subject-matter jurisdiction, and, in its entirety, for failure to state a claim upon which relief can be granted. Germenis timely opposed the motion, and, along with his opposition papers, purported to amend the complaint to add allegations that his December 11, 2007 parole hearing was tainted, not only for a potential lack of consideration of all relevant documents, but also because one of the three commissioners who denied Germenis parole has since been convicted of sex crimes. (*See* Am. Compl. attached to P's 3/11/09 Opp'n.) Additionally, having now admitted for the first time in his opposition papers that the parole board did have his sentencing minutes at the

December 2007 parole hearing, the amended complaint also asserts, without elaboration, that the parole hearing was not recorded and that the hearing transcript does not accurately reflect what occurred. (*Id.*)

> FN3. A pro se prisoner is deemed to have filed his complaint on the date he delivers it to prison officials to be mailed, *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993), modified on other grounds, 25 F.3d 81 (2d Cir.1994), and Germenis declares that he duly delivered the complaint to prison authorities on September 17, 2008. (Compl. at 5.)

Apart from this newest allegation concerning the accuracy of the hearing transcript, the question to be decided, as Germenis puts it, is what remedy exists for defendants' mishandling of the sentencing minutes-and perhaps other documents-for some period of time, and the resulting inability to consider those documents in the parole determinations. The answer, in this federal forum at least, is none, and the complaint accordingly will be dismissed.

## DISCUSSION

### I. Motion to Dismiss Standard

Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. While recognizing that it is often preferable to consider Rule 12(b)(1) jurisdictional challenges before any other arguments for dismissal, *e.g., United States ex rel Kreindler & Kreindler v. United Tech. Corp.,* 985 F.2d 1148, 1155-56 (2d Cir.1993), here, because defendants' arguments that the complaint must be dismissed pursuant to Rule 12(b)(6) are dispositive of the action, whereas the Rule 12(b)(1) arguments, even if fully meritorious, would only serve to hive off various aspects of the litigation, the following analysis will be limited to the legal sufficiency of Germenis's claims under Rule12(b)(6). *See Jones v. Georgia,* 725 F.2d 622, 623 (11th Cir.1984) (noting that "exceptions" to this "generally preferable approach" exist, inter alia, "when the plaintiff's claim has no plausible foundation" (internal citations omitted)), cited with approval in *Kreindler,* 985 F.2d at 1156.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2877646 (S.D.N.Y.)
(Cite as: 2009 WL 2877646 (S.D.N.Y.))

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims for relief. *See Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007). In considering the legal sufficiency of the claims, a court must accept as true all well-pleaded facts in the complaint, "as supplemented by undisputed facts that are matters of public record." *State Employees Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 77 (2d Cir.2007). Additionally, a court may also consider documents that are "integral" to the complaint, even if neither physically attached to nor incorporated by reference into the complaint. *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006), quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2001). While a court evaluating a motion to dismiss must always draw all reasonable inferences in plaintiff's favor, *e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 93 (2d Cir.2007), here, because plaintiff is proceeding pro se, the duty is amplified and the factual allegations must be construed liberally "to raise the strongest arguments that they suggest," *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

**\*3** The notice-pleading standard of the Federal Rules of Civil Procedure requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007). This requires, at a "bare minimum," that the plaintiff "provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki,* 516 F.3d 50, 57 (2d Cir.2008) (internal quotations omitted). Although "[a] pro se complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus,* 551 U .S. 89, 94 (2007) (per curiam), ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly,* 550 U.S. at 558, or where plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.* at 570.

**II. Due Process**

Germenis contends that his parole hearings did not comport with due process because all required documents were not factored into the parole determinations. As Germenis recognizes, however, a prisoner's due process rights in regards to parole are circumscribed. "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis,* 239 F.3d 169, 170 (2d Cir.2001) (per curiam), citing, among other cases, *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex,* 442 U.S. 1, 11-13 (1979). The Second Circuit has repeatedly found that New York's parole scheme, which affords the DOP discretion to grant or deny parole, "is not one that creates in any prisoner a legitimate expectancy of release." *Id.* at 171; *see also Booth v. Hammock,* 605 F.2d 661, 664 (2d Cir.1979) ("It is apparent that New York's parole provisions ... do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist.").[FN4] While the statutory provisions establish "guidelines ... to structure the exercise of discretion, no entitlement to release is created." *Booth,* 605 F.2d at 664.

FN4. The parole statute explicitly states:

Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for the law.

N.Y. Exec. Law § 259-i(2)(c)(A).

Although New York prisoners do not have a right to parole, and the full panoply of constitutional protections that would accompany such a right, the due process clause nevertheless extends to provide a "federally-protected liberty interest in ... not being denied parole for arbitrary

Slip Copy, 2009 WL 2877646 (S.D.N.Y.)
(Cite as: 2009 WL 2877646 (S.D.N.Y.))

or impermissible reasons." *Mathie v. Dennison,* No. 06 Civ. 3184, 2007 WL 2351072, at *6 (S.D.N.Y. Aug. 16, 2007), quoting *Brown v. Thomas,* No. 02 Civ. 9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003), citing in turn *Meachum v. Fano,* 427 U.S. 215, 226 (1976); *see also* e.g., *Sing-Pao v. Connolly,* 564 F.Supp.2d 232, 242 (S.D.N.Y.2008) (New York inmates' "Due Process Rights guaranteed by the Fourteenth Amendment are limited to not being denied parole for arbitrary or impermissible reasons." (internal quotations omitted)); *Bottom v. Pataki,* No. 03 Civ. 835, 2006 WL 2265408, at *5 (N.D.N.Y. Aug. 7, 2006) ("[A]n inmate may only bring a due process claim if the denial of parole is either arbitrary or capricious."). Although one court in this district has stated that an inmate has a due process right to a parole decision made in accordance with a state's statutory criteria, *Graziano v. Pataki,* No. 06 Civ. 0480, 2006 WL 2023082, at *7 (S.D.N.Y. July 17, 2006), "[t]he argument that a disregard of governing state law inherently renders a parole decision arbitrary or procedurally flawed proves to much. If such an argument were accepted, every state law requirement would ipso facto be incorporated into federal constitutional law." *Mathie,* 2007 WL 2351072, at *8. Rather, alleged violations of state law by and large "do not create interests entitled to due process protection, *Cofone v. Manson,* 594 F.2d 934, 938-39 (2d Cir.1979), and are matters for consideration by the state courts." *Boothe,* 605 F.2d at 664-65.

**\*4** The crux of Germenis's complaint is that defendants deprived him of due process by not considering all of the materials New York law requires to be considered in making parole determinations. Specifically, New York law existing at the time of Germenis's December 2007 parole hearing law directs that the following be considered in a parole decision:

(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;

(ii) performance, if any, as a participant in a temporary release program;

(iii) release plans including community resources, employment, education and training and support services available to the inmate;

(iv) any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to [N.Y. Corr. Law ¶ 147]; and

(v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated.

N.Y. Exec. Law. § 259-i(2)(c)(A) (2007). Additionally, for an inmate such as Germenis, whose minimum period of incarceration was fixed by the sentencing court, New York law mandates that the parole board consider:

(i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, and pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and

(ii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

N.Y. Exec. Law. § 259-i(1)(a), as incorporated into § 259-i(1)(a) (2007).<sup>FN5</sup>

> FN5. The law has since been amended to add, as an additional factor, "the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law," but otherwise remains identical in all relevant respects. N.Y. Exec. Law. § 259-i(2)(c)(A) (2009).

Slip Copy, 2009 WL 2877646 (S.D.N.Y.)
(Cite as: 2009 WL 2877646 (S.D.N.Y.))

Germenis contends that defendants' failure to properly maintain his file with his sentencing minutes and possibly other documents, and the concomitant inability to consider these documents at his parole hearings, in violation of state law, impinged on his due process rights to fair hearings and any meaningful chance of release. These alleged state law procedural failures, however, are precisely the sort of matters that courts have found to present no cognizable constitutional claim. In *Mathie*, for example, this Court dismissed the plaintiff's due process challenge to the DOP's alleged failure, in light of an alleged blanket policy of denying parole to all violent felons, to consider all relevant evidence in making a parole determination. 2007 WL 2351072, at *7. Accepting that such a policy might violate state law, *Mathie* noted that "to the extent that plaintiff has a potential state law claim against defendants, § 1983 is not the proper vehicle, and this Court is not the proper venue, for vindicating such a claim." *Id.* Likewise, in *Standley v. Dennison,* No. 9:05-CV-1033, 2007 WL 2406909 (N.D.N.Y. Aug. 21, 2007), the court concluded that plaintiff's allegations of various procedural deficiencies in his parole hearings, "most notably, [a violation of] the requirement that the recommendations of the sentencing court be considered .... do not, in and of themselves, give rise to a violation of the Due Process Clause of the Fourteenth Amendment." 2007 WL 2406909, at *9. Thus, in the absence of any factual allegation to support a finding that the denial of parole was made arbitrarily or capriciously, the court dismissed the plaintiff's due process claims. *Id.*

**\*5** Here too, accepting Germenis's factual allegations as true and construing them as liberally as possible in Germenis's favor, as must be done in considering this motion to dismiss, Germenis has failed to state a due process claim. A failure to properly maintain Germenis's file with each and every document New York law directs be included in the file, and a failure to consider one or more of those required documents at his parole hearings, without more, is insufficient to state a plausible claim that any defendant acted arbitrarily or capriciously in denying parole.[FN6] As in *Mathie,* Germenis "essentially ... conflates a potential state law claim with a non-existent constitutional claim," *Mathie,* 2007 WL 2351072, at *7, for the "state procedural requirements that he alleges have not been observed do not create interests entitled to due process protection, and are matters for consideration by the state courts," *Booth,* 605 F.2d at 664-65 (internal citation omitted). Accordingly, Germenis's due process

claim must be dismissed.

> FN6. Moreover, as is it not the sentencing minutes per se that the statute requires to be considered, but rather any "recommendations of the sentencing court," N.Y. Exec. Law. § 259-i(1)(a), as incorporated into § 259-i(1)(a), and as the sentencing judge made no such recommendations at sentencing, it is far from clear that a failure to consider the sentencing minutes would violate state law.

### III. Equal Protection

Germenis's equal protection claim also fails.[FN7] "To prove a violation of the Equal Protection Clause ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005). Germenis, however, alleges no *intentional* mistreatment, but rather repeatedly characterizes defendants' challenged conduct as negligence. (*E.g.,* compl. at 4 ("The Defendants have caused through their negligence a violation of this Plaintiffs Civil Rights .").) Nor do the factual allegations to support an inference of any intentional or purposeful discrimination. Accordingly, the claim must be dismissed on this basis alone.

> FN7. Contrary to defendants' assertion that Germenis impermissibly raises an equal protection claim for the first time in his opposition papers (D. Reply 2-3), the complaint in fact alleges that "defendants ... violated this Plaintiffs Constitutional Right to Due Process and Equal Protection of the Law." (Compl. at 1). Although the remainder of the complaint focuses on due process violations, in light of Germenis's pro se status, this cursory assertion of an equal protection violation is deemed sufficient to raise the issue in the complaint. Accordingly, the legal sufficiency of such claim must be addressed.

Further dooming the claim, Germenis does not expressly allege, and nothing in the complaint suggests, that any

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2877646 (S.D.N.Y.)
(Cite as: 2009 WL 2877646 (S.D.N.Y.))

similarly situated individuals received more favorable treatment. In fact, it is entirely unclear as compared to whom Germenis believes he was disparately treated. The complaint provides no basis to infer that defendants are making impermissible classifications among people in any relevant respect. In the absence of discrimination based on an impermissible classification, Germenis may still assert a "class of one" equal protection claim, "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech v. Village of Willowbrook,* 528 U.S. 562, 564-65 (2000). The mere fact that other inmates in the New York state system may have had all relevant evidence considered in their parole determinations does not suffice to establish a class of one theory, even at the pleading stage, in light of the high degree of similarity required for such a claim, *Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir.2005) (plaintiff and comparator must be "prima facie identical"), overruled on other grounds by *Appel v. Spiridon,* 531 F.3d 138, 139-40 (2d Cir.2008), and the myriad of variables involved in parole decisions. Accordingly, Germenis has failed to state any equal protection violation.

**IV. Purported Amended Complaint**

**\*6** Germenis's supplemental allegation that his December 2007 parole hearing was tainted because one of the participating parole commissioners has been convicted of an unrelated crime also fails to state a claim to relief. Even were the amendment procedurally proper, the claim must be dismissed because a legal proceeding is not invalidated because a judge or other official who participated was later found to have engaged in misconduct, or even crimes, unrelated to the matter in which he sat in judgment. Nor does the criminal conviction of one of the commissioners supply the necessary factual amplification to render Germenis's claim of a constitutional violation stemming from any of the alleged state law procedural deficiencies "plausible" under *Twombly.* 550 U.S. at 570.

As Germenis's failure to state a cognizable due process or equal protection claim disposes of the action, defendants' remaining arguments need not be considered.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss (Dkt.# 10) is granted and the complaint is dismissed in its entirety. In accord with the concern articulated in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009), that "pro se indigent litigants ... have access, without cost, to review the case law relied upon by a district court in ruling about the litigants' claim," *id.* at 79, and in light of Germenis's previous complaints of difficulty accessing unpublished cases from the prison library, defendants are directed to promptly provide Germenis with a copy of any opinion cited in this decision that is either unpublished or only available electronically.

SO ORDERED.

S.D.N.Y.,2009.
Germenis v. N.Y.S. Dept. Of Correctional Services
Slip Copy, 2009 WL 2877646 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 508086 (E.D.N.Y.)
(Cite as: 2006 WL 508086 (E.D.N.Y.))

Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,
E.D. New York.
James MITCHELL, a/k/a Wamel Allah, Petitioner,
v.
Joseph CONWAY, Superintendent of Attica Correctional Facility, Respondent.
**No. 04 CV 1088(CBA).**

March 1, 2006.

James Mitchell, Auburn, NY, pro se.

Kings County District Attorneys Office-Generic, Amy Merrill Appelbaum, Office of the District Attorneys, Kings County, Morgan James Dennehy, Kings County District Attorneys Office, Brooklyn, NY, for Respondent.

MEMORANDUM AND ORDER

AMON, United States District Judge.

**\*1** Before the Court is James Mitchell's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mitchell is currently serving a term of twenty-five years to life in a New York State prison for his 1977 conviction on charges of murder in the second degree and criminal possession of a weapon in the second degree. He contends that classification of his murder conviction as a violent felony offense has led to an increase in the punishment he is receiving, in violation of the *Ex Post Facto* Clause of the United States Constitution and the Due Process Clause of the Fourteenth Amendment.

I. Background

On August 30, 1975, Mitchell shot and killed Charles Freeman during an altercation at a party in Brooklyn, NY. After a trial by jury, Mitchell was convicted in 1977 in New York State Supreme Court of murder in the second degree, as defined by New York Penal Law § 125.25(1), and criminal possession of a weapon in the second degree, as defined by New York Penal Law § 265.03. He received concurrent sentences totaling twenty five years' to lifetime imprisonment. The conviction was affirmed on appeal by the Appellate Division of the New York State Court. *People v. Mitchell,* 70 A.D.2d 789, 416 N.Y.S.2d 159 (2d Dept.1979).

Mitchell has since filed six motions pursuant to New York Criminal Procedure Law Article 440 in the New York State Supreme Court challenging his conviction, sentence, or continued incarceration. The last of these motions, filed pursuant to N.Y. Criminal Procedure Law § 440.20 in July of 2003, asserted that the New York State Department of Correctional Services violated the *Ex Post Facto* Clause of the United States Constitution by reclassifying his crime as a violent felony offense on the basis of a law enacted after his conviction. The court denied the motion on the ground that such a reclassification was not a recognizable ground for relief under section 440.20, which allows a court to set aside a sentence only when the sentence is "unauthorized, illegally imposed, or invalid as a matter of law." *New York v. Mitchell,* No. 1632/76 (N.Y.Sup.Ct. September 23, 2003) [hereinafter, "State 440.20 Decision"]. The court noted that Mitchell did not contend that his sentence had been illegally imposed, but only that the reclassification interfered with his ability to achieve parole. (*Id.*) The court alternatively addressed the merits, noting that "[a]n offense committed before the enactment of these statutes is not excluded from classification as a violent felony notwithstanding it was not so classified when committed, as long as the elements of the crime when committed are the same as those of an offense now defined as a violent felony offense." (*Id.*)

Mitchell has also pursued other legal avenues to challenge his continued incarceration, including filing several petitions for writs of habeas corpus with the federal courts. In the instant petition, which was filed on March 3, 2004, Mitchell contends that the New York State Department of Correctional Services has violated the *Ex Post Facto*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 508086 (E.D.N.Y.)
(Cite as: 2006 WL 508086 (E.D.N.Y.))

Clause of the United States Constitution by reclassifying his second degree murder conviction as a conviction for a violent felony offense pursuant to New York Penal Law § 70.02 ("Section 70.02"), which was enacted after he committed his offense. He also argues that the parole board violated the Due Process Clause of the Fourteenth Amendment by relying on that reclassification to deny him parole, and by denying him parole simply on the basis of the violent nature of his crime of conviction, as a result of political pressure from Governor George Pataki. In view of Mitchell's numerous previous habeas petitions, this Court initially directed him to seek permission from the United States Court of Appeals for the Second Circuit to file a second or successive habeas petition. On July 6, 2004, the Second Circuit issued a mandate denying permission to file a second or successive petition relating to Mitchell's trial or sentence, but allowing the filing of a petition challenging post-conviction and post-sentencing events affecting the length of Mitchell's incarceration, on the grounds that such a challenge was not successive. See Mitchell v. Conway, No. 04-1598 (2d Cir. July 6, 2004). On May 4, 2005, Mitchell filed a motion to have the Court appoint him counsel, and also requested an evidentiary hearing regarding "newly discover[ed] evidence." (Pet. Ltr. (May 4, 2005).)

*2 Subsequent to initiating these proceedings, Mitchell initiated a proceeding in New York State Supreme Court pursuant to Article 78 of New York's Civil Practice Law and Rules challenging the denial of parole after his second appearance before the parole board on March 11, 2003. See Allah v. Pataki, No. 6925-03 (N.Y.Sup.Ct. March 6, 2004). The New York State Supreme Court held that the parole board's decision was not arbitrary and capricious but was grounded in due consideration of a number of factors relevant to Mitchell's case. The court specifically rejected Mitchell's contention that the board's decision rested entirely on the violent nature of Mitchell's crime of conviction. Id. The Appellate Division affirmed that determination and also found that Mitchell's contentions that the board had been improperly influenced by political pressure and that he had been classified a violent felony offender were "without merit." Allah v. Pataki, 15 A.D.3d 810, 789 N.Y.S.2d 764, 764-65 (N.Y.App.Div.2005).

II. Standard of Review

The Kings County District Attorney urges this Court to grant deference to the decision of the New York State Supreme Court which denied the Mitchell's most recent section 440.20 motion, since that motion asserted the same challenge made here. See 28 U.S.C. § 2254(d)(1) (stating federal court shall not grant writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" except in certain limited circumstances). The Court concludes that this decision is not owed deference, however, because the state court misperceived Mitchell's contention and relied on inapposite state law in addressing the merits of his claim. It relied on case law which addressed the constitutionality of laws which have the effect of increasing punishment for *subsequently committed* crimes by reclassifying earlier convictions in an offender's criminal history. (See State 440.20 Decision.) That issue is different from Mitchell's contention that misapplication of the 1978 law has impermissibly increased the punishment for his 1977 conviction. See Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) ("The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."). Since the reasoning of the state court decision does not apply to Mitchell's claim, the Court declines to accord it any deference.

III. Discussion

In the present case, Mitchell was convicted of murder in the second degree in 1977. In 1978, the State of New York enacted laws classifying certain offenses as "violent felony offenses." Mitchell claims that his second degree murder conviction has been wrongly reclassified as a violent felony offense by the Parole Board pursuant to this law, and that such reclassification violates the *Ex Post Facto* and Due Process Clauses of the United States Constitution.

A. Mitchell's Ex Post Facto Claim.

*3 The *Ex Post Facto* Clause provides that "[n]o bill of attainder or ex post facto Law shall be passed." U.S. Const., Art. I, § 9, cl. 3. The Supreme Court has held that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 508086 (E.D.N.Y.)
(Cite as: 2006 WL 508086 (E.D.N.Y.))

a penal law violates the *Ex Post Facto* Clause if 1) it applies to events occurring before its enactment, and 2) it disadvantages the offender affected by it. *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). The Court later clarified that an ambiguous or speculative "disadvantage" is insufficient to implicate the *Ex Post Facto* Clause. *California Dept. of Corrections v. Morales,* 514 U.S. 499, 506 n. 3 & 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (upholding constitutionality of law which allowed parole hearings for certain inmates every three years instead of annually). Rather, the clause means simply that "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

Although Mitchell contends that the *Ex Post Facto* Clause has been violated by the retroactive reclassification of his murder conviction, he has not identified any law which applies retroactively to him and by which he has been disadvantaged. Indeed, as Mitchell correctly notes, his conviction for murder in the second degree is not classified as a conviction for a "violent felony offense" by Section 70.02. In New York, murder in the second degree is categorized as a "class A-I felony." N.Y. Penal Law § 125.25 (flush language). The statutory phrase "violent felony offense" is defined to include only "a class B violent felony offense, a class C violent felony offense, a class D violent felony offense, or a class E violent felony offense." N.Y. Penal Law § 70.02. Since class A-I felonies are not included in that definition, Mitchell's second degree murder conviction is not classified by statute as a violent felony offense. Accordingly, he has no argument that there was a classification made after he committed the offense in 1977 that adversely impacted him.[FN1]

FN1. Mitchell's conviction for criminal possession of a weapon in the second degree was apparently classified as a conviction of a violent felony offense after he committed the offense. N.Y. Penal Law § 70.02. However, Mitchell has already served more than the maximum term of 10 years of imprisonment that was imposed for that charge and does not allege that its subsequent classification as a "violent felony offense" has affected him in any way. Moreover, nothing in the record suggests that the Parole Board ever considered the statutory classification

of this charge as a "violent felony offense" in rendering a decision in his case.

Mitchell's contention that the State nevertheless has mistakenly classified him as a violent felony offender does not raise a claim under the *Ex Post Facto* Clause. That clause applies only to legislative acts, and therefore does not apply to the mistaken application of an otherwise valid law. *See* *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (U.S.1977) (noting *Ex Post Facto* Clause is "a limitation upon the powers of the Legislature"). Such mistakes instead raises concerns under the Due Process Clause of the Fourteenth Amendment. *Cf. id.* (holding Due Process Clause of Fifth Amendment protects against certain retroactive applications of judicial precedent); *Bouie v. City of Columbia,* 378 U.S. 347, 353-54, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (same, in context of Fourteenth Amendment).

*B.Mitchell's Due Process Claims*

Mitchell has raised two claims under the Due Process Clause of the Fourteenth Amendment. First, that the Parole Board has erroneously classified him as a "violent felony offender" and relied upon that classification to deny him parole. Second, that the Parole Board has neglected its statutory obligations and has denied him parole solely on the basis of his crime of conviction, as a result of political pressure exerted by Governor George Pataki.

**\*4** Neither the United States Constitution nor New York state law creates a liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment. *Greenholtz v. Inmates of the Neb. Panel and Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001). New York's parole provisions give the Parole Board wide discretion to consider carefully the "circumstances of each individual case," and do not create any entitlement to release. *Barna,* 239 F.3d at 171 (*quoting* N.Y. Comp.Codes R. & Regs. tit.9, § 8001.3(a)). Although New York law does direct the board to consider certain factors, it does not specify the weight to be attached to any individual factor. *See* N.Y. Exec. Law § 259-i(2)(c)(A) (enumerating factors the board must consider). The parole board may in its discretion find that

Not Reported in F.Supp.2d, 2006 WL 508086 (E.D.N.Y.)
(Cite as: 2006 WL 508086 (E.D.N.Y.))

any one of those factors, including the severity of the inmate's offense of conviction, outweighs the other factors in a particular case and is grounds to deny parole. *Boddie v. N.Y. State Div. of Parole,* 285 F.Supp.2d 421, 428 (S.D.N.Y.2003). Unless the board fails to consider the relevant statutory factors, New York courts will not overturn the board's decision to deny parole unless the decision "exhibits irrationality bordering on impropriety." *Bramble v. N.Y.S. Board of Parole,* 307 A.D.2d 463, 761 N.Y.S.2d 544, 544 (N.Y.App.Div.2003). "Thus, insofar as any inmate incarcerated in a New York State facility has any liberty interest in parole, that interest extends only to not being denied a petition arbitrarily or capriciously, based on inappropriate consideration of a protected classification or an irrational distinction, or by reason of any other constitutionally unlawful grounds." *Manley v. Thomas,* 255 F.Supp.2d 263, 266 (S.D.N.Y.2003) (*citing Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)).

1. There is no evidence that Mitchell has been classified as a "violent felony offender" by the Parole Board.

There is no evidence in the record that the parole board ever believed Mitchell's conviction for murder in the second degree to be classified as a violent felony offense under Section 70.02. Indeed, the transcript of Mitchell's March 8, 2005 parole hearing shows that the board agreed that Mitchell was not classified as a violent felony offender. (Tr. at 11 (March 8, 2005) ("You are not legislatively defined as a violent offender, I will give you that.").) Although Mitchell has supplied the Court with a memo he apparently received from the Office of the Inmate Records Coordinator at Attica Correctional Facility asserting that his "offenses of Criminal Possession of a Weapon 2nd and Murder 2nd are both classified as VFO's," (Memo, Pet.'s Exh. 12 (May 12, 2003)), there is no evidence that this memo has any relevance to Mitchell's parole proceedings. Nor is there any other evidence that the parole board ever considered the statutory classification of Mitchell's murder conviction when denying him parole. Neither New York's Executive Law nor the Division of Parole's guidelines authorize or encourage Parole Boards to consider whether an inmate has committed a "violent felony offense" within the meaning of Section 70.02 when deciding whether to grant parole. *See* N.Y. Exec. Law §§ 259-i(1)(a)(i), (2)(c)(A) (enumerating factors board may consider); N.Y.

Comp.Codes R. & Regs. tit.9, §§ 8001.3, 8002.3. An affidavit from counsel to the Division of Parole submitted in this case states that the Parole Board generally does not consider the classification of crimes when deciding whether to grant parole. (Tracy Aff. ¶ 6 (" "[T]he Parole Board does not, and can not, categorize parole eligible inmates by reason of their crimes of conviction when considering them for possible release to parole supervision.").) Finally, the Parole Board in this case made no mention of the classification of Mitchell's crimes of conviction in any of its three decisions denying him parole, but instead emphasized the nature and circumstances of the crimes, Mitchell's in-prison disciplinary problems, and the board's conclusion that "there is a reasonable probability that [Mitchell] would not live and remain at liberty without again violating the law." (*E.g.,* Parole Board Release Decision Notice, Tracy Aff. Exh. A (March 8, 2005); *see also* Parole Hearing Tr. at 23 (March 8, 2005).)

**\*5** It appears that Mitchell objects to any discussion of the violent nature of his crime because his crime is not statutorily defined to be a "violent felony offense." (*See, e.g.,* Parole Board Release Decision Notice, Tracy Aff. Exh. A (August 19, 2005) (stating "Reasons for Denial" include "the violent nature and circumstances of the instance offense").) This objection is not well-founded. Simply because a crime is not within the statutory definition of "violent felony offense" does not mean that the crime is not violent, nor that it would be improper for the Parole Board to consider the violent nature of the crime. Mitchell was convicted of killing another person by shooting him multiple times, a crime which anyone would characterize as violent. The Parole Board may permissibly consider that violence when deciding whether to release Mitchell into society. *See* N.Y. Exec. Law §§ 259-i(1)(a)(i), (2)(c)(A) (directing Board to consider the seriousness of an inmate's offense of conviction and any aggravating or mitigating factors when deciding whether to grant parole).

2. There is no evidence of political pressure in Mitchell's case.

Mitchell argues that he has been denied parole because Governor Pataki has pressured the Parole Board to deny parole to all inmates convicted of violent felonies.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 508086 (E.D.N.Y.)
(Cite as: 2006 WL 508086 (E.D.N.Y.))

Mitchell appears to have presented this argument to the New York state courts during his Article 78 proceedings following the denial of parole after his second parole hearing, in 2003. See*Allah v. Pataki,* 15 A.D.3d 810, 789 N.Y.S.2d 764, 764-65 (N.Y.App.Div.2005). Although the New York State Supreme Court did not address the argument, the Appellate Division specifically rejected it. *Id.*

Mitchell has submitted copies of several news reports and other publications showing the Governor to support granting parole more frequently to nonviolent offenders and less frequently to violent offenders. None of these documents, however, suggests that political pressure played any role in Mitchell's case. Nor does the record before the Court suggest that the parole board gave undue weight to Mitchell's crime of conviction or neglected the other factors enumerated by New York's Executive Law and the Division of Parole's guidelines. Finally, as discussed above, the record shows that the Board's three denials of parole were not arbitrary and capricious, but were based reasonably upon a consideration of the circumstances of his individual case.

*C. No evidentiary hearing or appointment of counsel is warranted.*

Mitchell has requested an evidentiary hearing regarding "newly discover[ed] evidence" he has submitted to the Court. (Pet. Ltr. (May 4, 2005).) That evidence consists of a document purporting to show that the Parole Board considers the statutory classification of an offense when deciding whether to grant parole. ((Exh. 5, Pet. Letter to Court (March 28, 2005).) The affidavit of counsel to the New York State Division of Parole states that this document is a page from a "Parole Revocation Decision Notice" used by an administrative law judge during parole revocation proceedings. (*See* Tracy Aff. ¶ 8.) That description is consistent with the document, which on its face appears to relate to parole revocation rather than to the initial granting or denial of parole. (*See* Exh. 5 ¶ 1.G, Pet. Letter to Court (March 28, 2005) ("Revoke and Restore Recommendation").) Because Mitchell has not yet been granted parole and has not been subject to any parole revocation proceedings, the document does not show any action taken in his case. Moreover, Mitchell does not contend that this document reflects board action in his

case. (*See id.* ("This document was provided to me by a paralegal assistant by the name Scott who was working with a parole case.").) The Court therefore concludes that an evidentiary hearing regarding the document is not necessary. See 28 U.S.C. § 2254(e).

**\*6** A court may appoint counsel to represent indigent petitioners seeking writs of habeas corpus, with limited exceptions not applicable here. See 28 U.S.C. § 2254(h). The Second Circuit has held that "counsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor." *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001). In the present case, the Court has concluded that Mitchell's argument is without merit and has determined that no evidentiary hearing is required in this case. Therefore, the Court denies Mitchell's request for appointment of counsel.

IV. Conclusion

For the reasons stated above, Mitchell's application for habeas corpus relief pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability will not be issued because petitioner has failed to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(e)(2). The Clerk of the Court is instructed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

E.D.N.Y.,2006.
Mitchell v. Conway
Not Reported in F.Supp.2d, 2006 WL 508086 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

C   Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Norris J. McLAURIN, Plaintiff,
v.
David A. PATERSON, Governor of New York State, et
al., Defendants.
No. 07 Civ 3482(PAC)(FM).

Aug. 11, 2008.

*ORDER*

Honorable PAUL A. CROTTY, District Judge.

**\*1** In this action brought pursuant to 42 U.S.C. § 1983,
*pro se* Plaintiff Norris J. McLaurin alleges that, by
denying him parole, Defendants [FN1] violated his
constitutional rights under the Due Process and Equal
Protection Clauses of the Fourteenth Amendment and the
Ex Post Facto Clause of Article I of the United States
Constitution. The motion was referred to Magistrate Judge
Frank Maas, who issued a 35-page Report and
Recommendation ("R & R") dated June 12, 2008 in which
he recommended that the Court grant Defendants' motion
to dismiss. McLaurin filed timely objections. Upon careful
consideration, the Court adopts the R & R-noting one
non-dispositive correction-and grants Defendants' motion
to dismiss.

FN1. The Amended Complaint names as
Defendants: former Governors of New York
George E. Pataki and Eliot Spitzer; the New
York State Division of Parole and its former and
current Chairmen, Robert Dennison and George
Alexander, respectively; and twelve individuals
alleged to be Parole Commissioners or Parole
Officers. McLaurin sued Pataki, Spitzer, and
Dennison solely in their official capacities.

(Am.Compl.¶¶ 7, 9.) Per Federal Rule of Civil
Procedure 25(d)(1), David A. Paterson, the
current governor of New York, is substituted for
Pataki and Spitzer, and Alexander is substituted
for Dennison.

**The Magistrate Judge's Report and Recommendation**

In his R & R, Magistrate Judge Maas provided a
comprehensive summary of the factual and procedural
history bearing on McLaurin's claims, including an
exhaustive analysis of his various parole hearings. It need
not be repeated here.

Magistrate Judge Maas specifically found the following:

(1) that any claims that accrued before March 12, 2004,
including those related to McLaurin's 2001 and 2003
parole hearings, are time-barred (R & R 16);

(2) that claims against the Division of Parole must be
dismissed because it does not qualify as a "person"
under Section 1983 (R & R 17);

(3) that the Parole Board denied McLaurin parole in 2006
and 2007 in an appropriate and legitimate exercise of its
discretion and upon due consideration of McLaurin's
criminal record, his institutional adjustment, his future
plans, and the recommendation of the sentencing judge
(R & R 20-25);

(4) that the Amended Complaint does not plausibly allege
an unofficial statewide policy of denying parole for
prisoners sentenced under recidivist statutes on the basis
of their criminal history (R & R 25-28);

(5) that the State has a rational basis for distinguishing
between persistent and non-persistent offenders in
making parole determinations (R & R 28-29);

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

(6) that McLaurin cannot challenge a hypothesized unofficial State policy by which the Parole Board automatically denies parole for violent felony offenders because the challenged policy is not a "law" within the scope of the Ex Post Facto Clause (R & R 30-32); and

(7) that, insofar as McLaurin challenges the application of provisions of the Sexual Offender Registration Act ("SORA"), N.Y. Correct. Law § 168 et seq. as a violation of the Ex Post Facto Clause, his claim is not ripe for review (R & R 33).

**Applicable Law**

In evaluating the report and recommendation of a magistrate judge, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the magistrate judge's recommendations, the court is required to review the contested portions *de novo. See Pizarro v. Bartlett* 776 F.Supp. 815, 817 (S.D.N.Y.1991). For uncontested portions of the report and recommendation, the court need only review the face of the record for clear error. *See Wilds v. United Parcel Serv., Inc.,* 262 F.Supp.2d 163, 169 (S.D.N.Y.2003).

**McLaurin's Objections**

*\*2* By his letter to the Court dated June 23, 2008, McLaurin interposed objections "to each and every part" of Magistrate Judge Maas's R & R. (Plaintiff's Objections to the Magistrate's Report and Recommendation ("Obj.") 1). He supplemented these objections in a June 30, 2008 letter styled "Plaintiff's Addendum to Objections" ("Addendum"). McLaurin specifically objects that:

1. as a general matter, Magistrate Judge Maas improperly considered and relied on evidentiary materials beyond the scope of the complaint and failed to construe the allegations in light most favorable to McLaurin (Obj.1-2);

2. the R & R mistakenly states that his 1979 conviction for attempted possession of prison contraband was a felony (Obj.2-3);

3. the R & R improperly finds that the Parole Board could consider separately his three offenses for robbery in 1979, even though they constituted a single conviction for sentencing purposes (Obj.3-5);

4. Magistrate Judge Maas improperly glossed over Defendants' failure to consider the sentencing judge's statements and the inaccuracies regarding those statements contained in his Inmate Status Report (Obj.5-6);

5. his Ex Post Facto claims pertaining to the application of SORA requirements are ripe for review (Obj.6-8);

6. Magistrate Judge Maas improperly denied him an opportunity to depose a former parole commissioner whose testimony might have been relevant to his failure to train claim (Obj.8-9);

7. the R & R improperly categorizes his deliberate indifference allegations as a *Monell* claim (Obi.9-11);

8. the Parole Board committed procedural errors resulting in a deprivation of due process (Obj.11-13);

9. he should be allowed to submit evidence to support his claim that parole is foreclosed by an unofficial state policy barring discretionary parole decisions (Obj.13-16);

10. he has properly alleged a viable equal protection claim (Obj.16);

11. the R & R failed to address his claim that he was labeled a discretionary sex offender in violation of his due process rights (Addendum 2-4); and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

12. Magistrate Judge Maas refused to permit further discovery of his claims despite his express statement to the contrary in a telephonic conference on May 29, 2008 (Addendum 4-5).

Where objections to an R & R simply reiterate the same arguments in the original pleadings, a district court need only review for clear error. *Edwards v. Fischer,* 414 F.Supp.2d 342, 346-47 (S.D.N.Y.2006) (citing *Vega v. Artuz,* No. 97 Civ. 3775(LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). McLaurin's objections numbered 4, 5, 8, and 10 above are merely a replay of old arguments heard and decided by Magistrate Judge Maas. With respect to these objections, the Court reviews the recommendations of the Magistrate Judge for clear error. Having found no clear error, the Court adopts the Magistrate Judge's recommendations in full in regard to these claims.

This Court reviews the remaining objections *de novo.*

**Objections 1 & 12:**

*3 Magistrate Judge Maas evaluated whether to convert Defendants' motion to a motion for summary judgment. (R & R 13 n. 7.) In the end, he concluded that the additional materials submitted for his consideration-McLaurin's Parole Board decisions, Inmate Status Reports related to his Parole Board appearances, and transcripts of his interviews-were either incorporated by reference in McLaurin's Amended Complaint or integral thereto. (R & R at 13-14 n. 7.) In light of these findings, Magistrate Judge Maas did not err in barring additional discovery, regardless of his representations of May 29, 2008.

**Objections 2 & 3:**

The Court notes one correction to the R & R: McLaurin's 1979 conviction for attempted possession of prison contraband was a misdemeanor rather than a felony. (*See* R & R 22 & n. 10.) Thus, McLaurin has been convicted of seven, not eight, felonies. However, this correction does not change the analysis, because Magistrate Judge Maas allowed for the possibility that the Parole Board made

procedural errors. (R & R at 23 ("[E]ven if the Court were to assume that the Defendants committed one or more of the procedural errors alleged in the Amended Complaint, ... [the] decisions regarding McLaurin were not made in an arbitrary manner or for impermissible reasons.))

McLaurin's next objection-that his three 1979 robbery offenses should qualify as a single conviction for parole purposes-is also unpersuasive. While, pursuant to N.Y. Penal Law § 70.08, these offenses were considered a single conviction at the time of sentencing, *see McLaurin v. Kelly,* No. 94 Civ. 1560(RSP)(GJD), 1998 WL 146282, at *1 (N.D.N.Y. Mar. 27, 1998) (approving Report & Rec. of DiBianco, Mag. J.), the statutory scheme is not addressed to parole procedures and is therefore irrelevant to the present discussion. (*See* R & R 22 n. 10.)

**Objection 6:**

The R & R refers to the comments of a Commissioner Manley, regarding his lack of training and the general practices of the Parole Board. (R & R 23 n. 11.) Magistrate Judge Maas denied McLaurin an opportunity to depose Manley, however, noting that Manley did not participate in McLaurin's 2006 or 2007 hearings. (R & R 23 n. 11.) McLaurin now objects that, as Manley did preside over his 2005 hearing, his testimony might be relevant to the alleged lack of supervision and training at that hearing. (Obj.9.) However, McLaurin already received a *de novo* hearing in 2006 based on the improper procedures undertaken by the Parole Board in 2005. (*See* R & R 5, 21.) McLaurin does not indicate any other relief to which he might be entitled to redress rights violated in the 2005 hearing. Accordingly, Magistrate Judge Maas did not err in refusing to allow Manley's deposition.

**Objections 7 & 9:**

Insofar as the Court agrees with Magistrate Judge Maas that the Parole Board appropriately applied its discretion and evaluated all relevant considerations in assessing McLaurin's requests for parole, McLaurin's other objections to the dismissal of his due process claims-i.e., the failure to train and/or supervise board members, the deliberate indifference of specific Division of Parole

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

employees, and the existence of an unofficial statewide policy barring the Parole Board's exercise of discretion-are foreclosed.

**Objection 11:**

*4 Finally, Magistrate Judge Maas did not err in failing to construe McLaurin's allegations concerning the application of SORA requirements (Am.Compl.¶ 19(g)) as raising a due process claim. In his memorandum opposing the motion to dismiss, McLaurin addresses his SORA-based claims under the heading "The Amended Complaint States Viable Ex Post Facto Claims" (Pl.'s Mem. 22-24), which is set off entirely from his discussion of due process claims (Pl.'s Mem. 12-21). Moreover, the same logic applies whether McLaurin's claim is addressed to ex post facto or due process concerns: the claim is not ripe for review because the SORA conditions have not been applied to McLaurin. (*See* R & R 33.)

**Conclusion**

For the foregoing reasons, the R & R issued by Magistrate Judge Maas is adopted in full, allowing for the single correction addressed above. McLaurin's objections to the R & R are DENIED. Defendants' motion to dismiss the Amended Complaint in its entirety is GRANTED. The Clerk of the Court is directed to terminate the present motion and close this case.

SO ORDERED.

NORRIS J. MCLAURIN,

Plaintiff,

-against-

GEORGE PATAKI, former Governor of New York State, *et al.,*

Defendants.

*REPORT AND RECOMMENDATION TO THE HONORABLE PAUL A. CROTTY*

FRANK MAAS, United States Magistrate Judge.

I. *Introduction*

In this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, plaintiff Norris J. McLaurin ("McLaurin"), an inmate at the Mid-Orange Correctional Facility, claims that the denial of his requests for parole violated his constitutional rights. As a consequence, he seeks declaratory and injunctive relief against George E. Pataki ("Pataki") and Eliot S. Spitzer ("Spitzer"), two former Governors of the State of New York;[FN1] Robert Dennision ("Dennision"), the former Chairman of the New York State Division of Parole ("Division of Parole" or "Division"); George Alexander ("Alexander"), the current Chairman of the Division; twelve individuals alleged to be Parole Commissioners or Parole Officers ("Parole Board" or "Board"); and the Division of Parole (collectively, the "Defendants").

> FN1. Spitzer was named as the "Governor of New York." Since he was sued in his official capacity, David A. Paterson ("Paterson"), the current Governor, must be substituted as the defendant pursuant to Fed.R.Civ.P. 25(d).

The Defendants have now moved to dismiss the amended complaint ("Amended Complaint" or "Am. Compl.") pursuant to Rules 12(b) (1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that this motion be granted.

II. *Background*

A. *Facts*

Construing McLaurin's Amended Complaint and his other

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

papers in the light most favorable to him, the relevant facts may be summarized as follows:

1. *Underlying Crime and Sentence*

On October 16, 1991, McLaurin robbed a bank in Binghamton, New York, threatening the tellers and customers with what appeared to be a firearm. (Ex. F at 2).[FN2] During the course of the incident, McLaurin herded his victims into the teller area and directed them to get on the ground; he also assaulted one of the tellers. (Exs. A at 1-2, C at 5). The police apprehended McLaurin shortly after he exited the bank and found a toy cap gun on his person. (Ex. F at 2). On April 2, 1992, he pleaded guilty to the Class D Felony of Attempted Robbery in the Second Degree before Broome County Court Judge Patrick Mathews, who subsequently sentenced him, as a persistent violent felony offender, to a prison term often years to life. (Am.Compl.¶ 20).

> FN2. "Ex. ___" refers to the exhibits annexed to the Declaration of Assistant Attorney General Neil Shevlin, dated Nov. 19, 2007.

**\*5** After the Appellate Division, Third Department, upheld his sentence, McLaurin filed a federal habeas corpus proceeding in the United States District Court for the Northern District of New York. On March 27, 1998, the Honorable Rosemary S. Pooler, then a District Judge, held that because McLaurin was sentenced simultaneously for three 1979 robbery convictions, they could be counted as only one conviction for purposes of determining whether he was a persistent violent felony offender. *McLaurin v. Kelly*, No. 93 Civ. 1560(RSP)(GJD), 1998 WL 146282, at *1, 7 (N.D.N.Y. Mar. 27, 1998) (approving Report & Rec. of DiBianco, Mag. J.). Judge Pooler therefore directed that McLaurin be resentenced, but observed that nothing would preclude the state court from considering "McLaurin's prior conviction for first degree sexual abuse" as a basis for adhering to its prior determination that he was a persistent violent felony offender.[FN3]*Id.* at*2.

> FN3. In addition to his three "simultaneous" robbery convictions in 1979, McLaurin had prior felony convictions for sexual abuse in the first

degree, attempted possession of prison contraband in the first degree, robbery in the third degree, and conspiracy in the fourth degree. (Ex. A at 3-4). He also had been adjudicated a youthful offender in connection with an attempted robbery in 1972. (*Id.* at 3).

Perhaps not surprisingly, when Judge Mathews resentenced McLaurin, he again found that McLaurin was a persistent violent felony offender, and sentenced him to the term often years to life in prison that he previously had imposed. (Am.Compl.¶ 23). Significantly, during the resentencing proceeding, Judge Mathews addressed the issue of McLaurin's parole eligibility, stating:

> I think it's a shame. I've had a lot of time to interact with you over the years and if one thing steps forward, it's clearly that you're an intelligent man, very intelligent, and unquestionably you wasted so many years of your life. I have the hope that you will, when you are released, turn to productive legal endeavors, and I believe you can make it.... Notwith-standing the convictions in this particular case, [or] the nature of the crimes, I still am willing to state on the record that *I think that you should be considered by parole at the earliest possible release date* because I think that you have learned your lesson.

(Am. Compl. Attach, at 4-5) (emphasis added).

2. *Parole Hearings and Other Proceedings from 2001 to 2005*

McLaurin first became eligible for parole in August 2001, at which time the Board denied his request for release without considering Judge Mathews' sentencing recommendation. (Am.Compl.¶ 25). In August 2003, McLaurin again was denied release by the Board. (*Id.* ¶ 26). He challenged this determination by filing an Article 78 proceeding in Supreme Court, Orange County, in which he argued that the Parole Board had violated New York law by failing to consider Judge Mathews' recommendation. (*Id.* ¶ 29). On October 28, 2004, that court held that McLaurin was entitled to a *de novo* parole hearing because of the Parole Board's failure to take into

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

account the resentencing minutes. (*Id.* ¶ 30). The Board appealed this determination. (*Id.* ¶ 31).

While the Board's appeal was pending, McLaurin had another parole hearing on August 16, 2005, at which time McLaurin's request for release on parole was once again denied without any consideration of the resentencing minutes. (*Id.* ¶¶ 33-34). Thereafter, on March 14, 2006, the Appellate Division, Second Department, affirmed the decision granting McLaurin's Article 78 petition. As the Appellate Division explained, Judge Mathews' statement constituted a "sentencing recommendation" which the Parole Board was "required to obtain and consider" prior to making its parole determination. *McLaurin v. N.Y. State Bd. of Parole,* 27 A.D.3d 565, 566 (2d Dep't 2006). The Division of Parole therefore was directed to retrieve McLaurin's resentencing minutes and conduct a *de novo* hearing. *Id.* at 565.

### 3. *2006 De Novo Parole Hearing*

**\*6** On October 17, 2006, McLaurin made a fourth appearance before three parole commissioners for the *de novo* hearing directed by the Appellate Division. (Am.Compl.¶ 39). Although the Board had obtained the resentencing minutes containing Judge Mathews' recommendation and placed them in McLaurin's file in advance of the hearing, (Ex. D), the Inmate Status Report (a cover sheet furnished to the commissioners) still indicated inaccurately that there was no official statement from the sentencing judge. (Am.Compl.¶38). Despite this error, Commissioner Ferguson expressly noted during the hearing that the sentencing minutes were part of McLaurin's folder and that "even the resentencing judge indicated he noticed [McLaurin's] level of intelligence." (Ex. E at 5, 9). The Board nevertheless denied McLaurin's request for parole, explaining that:

After a review of the record, interview, and sentencing minutes, the pan el has determined that if released at this time there is a reasonable probability that you would not live and remain at liberty without again violating the law and your release would be incompatable with the welfare of society and would so deprecate the serious nature of the crime as to undermine respect for the law. This decision is based on the following factors: Your

instant offense is attempted robbery 2nd in which you entered a bank and displayed what appeared to be a firearm during the robbery. Your criminal history is extensive and dates back to a 1972 youthful offender, includes sex abuse, eight felonies, five of which are robberies, multiple prior prison terms and community supervision. Note is made of your programming, sincere remorse and eight years of clean disciplinary record. While the Board notes your markedly improved attitude you have clearly led the life [of] a violent career criminal. You pose a risk to society. Parole is denied.

(*Id.* at 2).

McLaurin appealed this decision to the Division of Parole Appeals Unit, which apparently failed to render any decision. (Am.Compl.¶ 41).

### 4. *2007 Parole Hearing*

On August 22, 2007, McLaurin made his fifth appearance before the Board. (*Id.* ¶ 44). This time, the Inmate Status Report provided to the Board had been corrected to indicate that the resentencing minutes were in McLaurin's file (although it still incorrectly noted that there had been no official statement from a judge); indeed, the Report quoted the portion of the resentencing minutes in which Judge Mathews had stated, "I think that you should be considered by parole at the earliest possible date because I think that you have learned your lesson." (Ex. F at 1-2). The Report further observed that if McLaurin were to be released, his parole should be subject to two mandatory special conditions for sex offenders. (*Id.* at 3).

At the hearing, Commissioner Smith indicated that the pan el had been afforded an opportunity to review the resentencing minutes and noted Judge Mathews' statements about considering McLaurin for parole at the earliest possible date. (Ex. G at 5-6). However, the Board nevertheless denied parole once again, stating:

**\*7** After a personal interview, record review, and deliberation, this pan el finds your release is incompatible with the public safety and welfare. Your

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

instant offense of attempted robbery 2 involved a bank robbery where you displayed what appeared to be a handgun. At the time you were on parole. You have multiple prior revocations of parole. Consideration has been given to your demonstrated pattern of robbery related crime. Your much improved behavior, program accomplishments, and community support are noted. However due to your lengthy record of crime, and poor supervision record, your release at this time is denied. There is a reasonable probability you would not live and remain at liberty without violating the law. During the interview you displayed little remorse for the victim of your criminal activities.[FN4]

> FN4. Although the Board indicated that McLaurin had shown "little remorse" during the hearing, in its decision less than one year earlier, it had noted his "sincere remorse." (*See* Exs. E at 2, G at 2).

(Ex. G at 2).

5. *Institutional Record*

During his time in prison, McLaurin has earned a Masters of Professional Studies degree from the New York Theological Seminary. (Am.Compl.¶ 4). He also has completed programs relating to Aggression Replacement Training, Alternatives to Violence, and Alcohol and Substance Abuse Treatment. His positive institutional adjustment is further demonstrated by the fact that he has not received any disciplinary infractions over the past ten years. (*Id* .¶ 3).

B. *Pleadings*

McLaurin's original complaint in this action is dated March 12, 2007; his Amended Complaint is dated August 31, 2007. (Docket Nos. 1, 14). In the Amended Complaint, McLaurin alleges that the Defendants' denial of his requests for parole violated his constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Ex Post Facto Clause of Article I of the United States Constitution.

More specifically, McLaurin contends that his procedural due process rights were violated because the Defendants: (1) failed to consider Judge Mathews' remarks as a recommendation under New York Executive Law Section 259-i and refused to acknowledge that Judge Mathews had expressly recommended that McLaurin be paroled after ten years; (2) relied on erroneous information indicating that McLaurin had seven or eight felony convictions; (3) incorrectly referred to McLaurin's youthful offender adjudication as a felony conviction; (4) mischaracterized information contained in a Victim Impact Statement by noting incorrectly that the victims of his crime had sustained physical injuries; and (5) failed adequately to train and supervise the parole commissioners and staff.[FN5] (Am.Compl.¶¶ 47, 59-62). McLaurin also contends that the Defendants violated his due process, equal protection, and Ex Post Facto Clause rights by maintaining an unofficial policy of denying parole on the basis of an inmate's criminal history, without meaningful consideration of the other statutory factors. (*Id.* ¶¶ 48-58). Finally, he alleges that the Defendants violated his Ex Post Facto Clause rights by improperly requiring that his release conditions comply with the New York Sexual Offender Registration Act ("SORA"), N.Y. Correct. Law § 168, *et seq.* (*Id.* ¶ 47).

> FN5. McLaurin frames the failure-to-train claim in his Amended Complaint as a "deliberate indifference" claim, (Am.Compl.¶¶ 59-62), evidently hoping to extend liability to the current Governor and Chairman of the Division of Parole, neither of whom had any personal involvement in the denial of his parole. To the extent that McLaurin seeks to bring this claim as a *Monell* claim, *see Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), he faces the obstacle that no municipality is involved in this action. *See id.* at 691 n. 54 (noting that local governments may be sued under Section 1983 because, unlike states, they do not have Eleventh Amendment immunity); *see also City of Canton v. Harris,* 489 U.S. 378, 388 (1989) (municipalities maybe held liable for damages under *Monell* arising out of a failure to train their personnel where it amounts to deliberate indifference).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

**\*8** McLaurin seeks declaratory and injunctive relief to prevent these alleged violations from recurring. Specifically, he seeks (1) an order declaring that the Defendants violated his constitutional rights and (2) an injunction requiring the Parole Board to (a) stop making parole release determinations solely on the basis of his prior criminal history, (b) expunge all inaccurate information in his parole file, and (c) provide him with an immediate *de novo* parole hearing at which the Defendants acknowledge that Judge Mathews' remarks constitute a recommendation that McLaurin be released after ten years' imprisonment. (*Id.* ¶¶ 63-72).

C. *Motion to Dismiss*

On November 19, 2007, the Defendants moved to dismiss the Amended Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) McLaurin's claims against Pataki and Dennison are moot, (2) certain of his claims are barred by the statute of limitations, (3) McLaurin has failed to allege sufficient personal involvement on the part of Spitzer and Alexander with respect to certain alleged constitutional violations, and (4) the Amended Complaint fails to state a claim upon which relief can be granted.[FN6] (Docket No. 19).

> FN6. The Defendants withdrew additional arguments regarding qualified immunity and the Eleventh Amendment because McLaurin is not seeking monetary damages. (Defs.' Reply Mem. at 1 n. 1).

McLaurin has filed a memorandum of law and affidavit in opposition to the motion to dismiss which (despite his *pro se* status) are polished and well-reasoned. (Docket Nos. 33-34). The Defendants, in turn, have filed a reply memorandum. (Docket No. 35). Accordingly, the motion is fully submitted.

III. *Discussion*

A. *Standard of Review*

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction over the claim. Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if it fails to state a claim for which relief can be granted. Although the same standard of review applies to both motions, *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003); *Alster v. Goord,* No. 05 Civ. 10883(WHP), 2008 WL 506406, at \*2 (S.D.N.Y. Feb. 26, 2008), a court "must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.' " *Tirone v. N.Y. Stock Exch., Inc.,* No. 05 Civ. 8703(WHP), 2007 WL 2164064, at \*3 (S.D.N.Y. July 27, 2007) (quoting *Magee v. Nassau County Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998)).

In connection with both motions, the court must accept the material factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). As the Supreme Court recently has explained, the issue that must be decided under Rule 12(b)(6) is whether the plaintiff's claims are "plausible." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965-66 & n. 5 (2007). This requires the Court to apply a "flexible" standard, pursuant to which a pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis omitted).

**\*9** Because McLaurin is a *pro se* litigant, the Court may rely on both his amended complaint and his motion papers in assessing the legal sufficiency of his claims. *See, e.g., Milano v. Astrue,* No. 05 Civ. 6527(KMW)(DF), 2007 WL 2668511, at \*2 (S.D.N.Y. Sept. 7, 2007); *Burgess v. Goord,* No. 98 Civ.2077(SAS), 1999 WL 33458, at \*1 n. 1 (S.D.N.Y. Jan. 26, 1999); *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at \*1 n. 2 (S.D.N.Y. Nov. 17, 1997). The Court may also consider any documents referenced in his pleadings or which are properly the subject of judicial notice. *See Tarshis v. Riese Org.,* 211 F.3d 30, 39 (2d Cir.2000), *abrogated on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

Cir.1991). Indeed, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect.' " *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir.2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam)); *see Munno v. Town of Orangetown,* 391 F.Supp.2d 263, 268 (S.D.N.Y.2005) (where "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the court may consider the documents" in connection with a Rule 12(b)(6) motion) (internal quotation marks omitted); *Thomas v. Westchester County Health Care Corp.,* 232 F.Supp.2d 273, 275 (S.D.N.Y.2002) ("Documents that are integral to plaintiff's claims may also be considered, despite plaintiff's failure to attach them to the complaint.").

Additionally, because McLaurin is proceeding *pro se,* the Court must read his papers "liberally, and ... interpret them to raise the strongest arguments that they suggest." *Sloane v. Mazzuca,* No. 04 Civ. 8266(KMK), 2006 WL 3096031, at *3 (S.D.N.Y. Oct. 31, 2006) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)) (ellipsis in original); *see also Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998) ("Though a court need not act as an advocate for *pro se* litigants, in *pro se* cases there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done.") (internal quotation marks and citation omitted). This principle applies with particular force here because McLaurin is alleging a civil rights violation. *See, e.g., Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993); *Contes v. City of N.Y.,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at *2 (S.D.N.Y. July 14, 1999).[FN7]

FN7. During a telephone conference on May 29, 2008, I considered whether the Defendants' motion should be converted into a motion for summary judgment. The Defendants previously had warned McLaurin of this possibility by serving a notice of motion containing the cautionary information required by Local Civil Rule 12.1. (*See* Docket No. 20). Ultimately, I concluded that there was no need to treat the Defendants' motion as a motion for summary judgment because the exhibits attached to the

Defendants' papers (McLaurin's Parole Board decisions, Inmate Status Reports related to his Parole Board appearances, and transcripts of his Parole Board interviews) are either incorporated by reference in McLaurin's Amended Complaint or are integral thereto. (*Compare* Am. Compl. ¶¶ 25-46, *with* Exs. A-G). Accordingly, they can be considered without treating the Defendants' motion as a summary judgment motion.

B. *Rule 12(b)(1)*

In their motion papers, the Defendants contend that this Court lacks jurisdiction over defendants Pataki and Dennison because McLaurin's claims against them are moot. (Defs.' Mem. at 5). A case is moot when "the problem sought to be remedied has ceased, and where there is 'no reasonable expectation that the wrong will be repeated.' " *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 402 (1975)). If the case is moot, the court lacks subject matter jurisdiction. *Fox v. Bd. of Trs. of State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir.1994).

*10 In this action, McLaurin has sued Pataki and Dennison solely in their official capacities. (Am.Compl.¶¶ 7, 9). Under Rule 25(d) of the Federal Rules of Civil Procedure, when a "public officer who is a party in an official capacity ... ceases to hold office while the action is pending ... [t]he officer's successor is automatically substituted as a party." This rule is "designed to prevent suits involving public officers from becoming moot due to personnel changes." *Karcher v. May,* 484 U.S. 72, 83 (1987). Accordingly, Paterson and Alexander, the current Governor of New York and Chairman of the Division of Parole, respectively, have been substituted for Pataki and Dennison. *See supra* note 1. Whether McLaurin's claims against Pataki and Dennison technically are moot is therefore irrelevant because other parties have been substituted for them.

In response to McLaurin's opposition papers, the Defendants also have advanced the argument that *all* claims against the Defendants arising out of events during the Pataki administration are now moot. (*See* Defs.' Reply Mem. at 2 n. 3). In that regard, McLaurin alleges in his

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

Amended Complaint that the Pataki administration adopted an unconstitutional policy that has been continued by the current administration. (Am.Compl.¶ 16). If so, the wrongs that he alleges have not been remedied, and there is a reasonable possibility that they might be repeated. McLaurin's claims against the Defendants consequently are not moot. *See Graziano v. Pataki,* No. 06 Civ. 480(CLB), 2007 WL 4302483, at *1 (S.D.N.Y. Dec. 5, 2007).

C. *Rule 12(b)(6)*

1. *Statute of Limitations*

The statute of limitations for Section 1983 actions arising out of constitutional wrongs in New York is three years. *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994). In calculating this period, courts assume, pursuant to the "prison mailbox" rule, that a pleading is filed when it is given to prison officials. *See Houston v. Lack,* 487 U.S. 266, 275-76 (1988); *Nobel v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001). In this case, McLaurin's original complaint is dated March 12, 2007, and was mailed to the Court by prison officials on March 23, 2007. His papers are silent, however, as to the date that the complaint was tendered to prison officials for mailing.

On the assumption that McLaurin tendered his complaint to prison officials on the date that he signed it, any claims that accrued before March 12, 2004, would be time barred. To the extent that McLaurin seeks relief in connection with alleged violations of his rights during the 2001 and 2003 parole hearings, his Amended Complaint therefore must be dismissed. McLaurin apparently does not disagree with this analysis. Indeed, in his opposition papers, McLaurin explains that the list of parole commissioners named in his Amended Complaint intentionally excluded those who had participated only in the denial of his parole in 2001 and 2003. (PL's Mem. at 10; Aff. of Norris J. McLaurin, sworn to on Nov. 30, 2007 ("Pl.'s Aff."), ¶ 2).

2. *Failure to State a Claim Under Section 1983*

**\*11** Section 1983 provides a means by which a person alleging a constitutional deprivation may bring a claim, but does not itself create any substantive rights. *Sykes,* 13 F.3d at 519. Consequently, to state a claim under Section 1983, a plaintiff must allege that a "person" acting under color of state law has deprived him of a right, privilege, or immunity guaranteed by the United States Constitution. *See* 42 U.S.C. § 1983; *Fox v. City of N.Y.,* No. 03 Civ. 2268(FM), 2004 WL 856291, at *4 (S.D.N.Y. Apr. 20, 2004). Here, as noted above, McLaurin alleges that the Defendants, while acting under the color of state law, violated his Fourteenth Amendment and Ex Post Facto Clause rights.

a. *State Agencies Are Not "Persons"*

A state agency does not qualify as a "person" under Section 1983. *Harris v. N.Y. State Dep't of Health,* 202 F.Supp.2d 143, 178 (S.D.N.Y.2002) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 64 (1989)). Accordingly, McLaurin's claims against the Division of Parole must be dismissed because it is a New York state agency. *Rios v. N.Y. Exec. Dep't Div. of Parole,* No. 07 Civ. 3598(DLI), 2008 WL 150209, at *3 (E.D.N.Y. Jan. 14,2008).

b. *Lack of Personal Involvement*

The Defendants contend that all claims other than those related to the 2007 parole hearing should be dismissed as against defendants Spitzer and Alexander because they were not personally involved in any earlier hearings. (Defs.' Mem. at 6). The Defendants presumably would also extend that argument to include Paterson, who has now been substituted for Spitzer as a defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Personal involvement in an alleged constitutional deprivation is, of course, a "prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006). In his Amended Complaint, however, McLaurin seeks only injunctive and declaratory relief. Personal involvement of a defendant is *not* required in such circumstances. *See, e.g., Voorhees v. Goord,* No. 05 Civ. 1407(KMW)(HBP), 2006 WL 1888638, at *6 n.l

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

(S.D.N.Y. Feb. 24, 2006); *Lyerly v. Phillips,* 04 Civ. 3904(PKC), 2005 WL 1802972, at *4 (S.D.N.Y. July 29, 2005). The claims against the Governor and the Chairman of the Division of Parole in their official capacities therefore should not be dismissed on this ground.

c. *Due Process*

McLaurin advances two distinct due process claims. First, he contends that the specific manner in which the Parole Board conducted his parole hearings violated his due process rights. Second, he contends that the Defendants' unofficial policy of denying parole to all inmates solely on the basis of their criminal histories, without any meaningful consideration of the other statutory factors, gives rise to a due process violation.

At the outset, it is clear that there is no constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 (1979). Accordingly, for a state prisoner to have an interest in parole that is protected by the Due Process Clause, "he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001). The New York parole system, however, does not give any inmate a legitimate expectation that he will be released on parole. *Marvin v. Goord,* 255 F.3d 40, 44 (2d Cir.2001); *Barna,* 239 F.3d at 171. For this reason, alleged violations of the procedural requirements of the New York parole scheme are generally matters for the state courts. *Mathie v. Dennison,* No. 06 Civ. 3184(GEL), 2007 WL 2351072, at *6 (S.D.N.Y. Aug. 16, 2007). The Due Process Clause nevertheless may be violated if parole is denied for arbitrary or impermissible reasons, such as reliance upon a suspect characteristic or an irrational distinction. *See, e.g ., id.* at *6; *Cartagena v. Connelly,* No. 06 Civ.2047(LTS) (GWG), 2006 WL 2627567, at *7 (S.D.N.Y. Sept. 14, 2006); *Siao-Pao v. Mazzuca,* 442 F.Supp.2d 148, 154 (S.D.N.Y.2006); *Morel v. Thomas,* No. 02 Civ. 9622(HB), 2003 WL 21488017, at *4 (S.D.N.Y. June 26, 2003).

**\*12** Under New York law, parole is not a reward for good conduct in prison; rather, it is granted only when there is a "reasonable probability" that the inmate will not violate the law upon his release, his release is not inconsistent with societal welfare, and it "will not so deprecate the seriousness of his crime as to undermine respect for law." N.Y. Exec. Law § 259-i(2)(c)(A). In making its decision with respect to a request for parole, the Board may consider, among other factors, the offender's background, his criminal history, the severity of his offense and any prior offenses, and the manner in which he has adjusted to any prior release on probation or parole. [FN8]*Id.*

FN8. More specifically, Executive Law Section 259-i provides that the Parole Board must consider:

(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government ...; and (v) any statement made to the board by the crime victim or the victim's representative ....

N.Y. Exec. Law § 259-i(2)(c)(A). Additionally, if the court has set a minimum period of incarceration, the Board must consider:

(i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and *recommendations of the sentencing court,* the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and (ii) *prior criminal record,* including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

*Id.* § 259-i(l)(a) (emphases added).

### i. *McLaurin's Hearings*

McLaurin's first due process claim is that his rights were violated as a consequence of various procedural errors that arose during his parole hearings. According to McLaurin, the Defendants: (a) failed to treat Judge Mathews' remarks as a sentencing recommendation and refused to acknowledge that the judge had expressly recommended that McLaurin be paroled after ten years; (b) relied on erroneous information that McLaurin had seven or eight felony convictions; (c) incorrectly referred to McLaurin's youthful offender adjudication as a felony conviction; (d) mischaracterized information contained in the Victim Impact Statement by noting incorrectly that the victims sustained physical injuries; and (e) failed adequately to train and supervise parole commissioners and staff. (Am.Compl.¶¶ 47, 59-62).

McLaurin previously prevailed in state court on his claim that the Parole Board failed to consider the resentencing minutes during the 2005 hearing. *See McLaurin,* 27 A.D.3d at 565-66. Indeed, the court's ruling in that case resulted in the Parole Board's *de novo* hearing in 2006. The transcripts of that hearing and the subsequent hearing in 2007 establish, however, that the Parole Board did take into account the recommendation by Judge Mathews that McLaurin "be considered by parole at the earliest possible release date." (Am. Compl. Attach. at 5). For example, the Parole Board's explanation of its parole denial in 2006 expressly states that it "review[ed the] sentencing minutes." (Ex. E at 2). Similarly, in 2007, the Inmate Status Report provided to the Board noted that McLaurin's sentencing and resentencing minutes were in the file. Although the Inmate Status Report incorrectly indicates that the judge did not make an "official statement," it accurately quotes the statement by Judge Mathews regarding early consideration for parole upon which McLaurin relies. (Ex. F at 1-2). Furthermore, the transcripts of both the 2006 and 2007 hearings confirm that the Board considered the state court's sentencing recommendation in reaching its decisions to deny McLaurin's request for parole. (*See* Exs. E at 5 ("both sentencing minutes are now present inside your folder"), 8 ("even the resentencing judge indicated he noticed your level of intelligence"), G at 5-6 ("We have a copy of [the

sentencing minutes] which we've had a chance to review" in which the judge said you should be "considered by the Parole Board a [t] the earliest possible release date.").)[FN9] In light of this undisputed record, McLaurin cannot prevail on his claim that the Board failed to consider Judge Mathews' recommendation in the course of denying his requests for parole.

> FN9. In its written decision in 2007, the Board did not expressly refer to the resentencing minutes but previously had acknowledged reviewing them during the hearing. The omission from the decision is not dispositive. *See Morel,* 2003 WL 21488017, at *4 (parole board "need not expressly discuss each of the reasons in its determination").

**\*13** McLaurin's other claims regarding the conduct of his hearings are equally baseless. First, notwithstanding his assertions to the contrary, (*see* Pl.'s Aff. ¶ 9), McLaurin does have eight felony convictions-one for sexual abuse in 1973, three for robbery in 1979, one for attempted possession of prison contraband in 1979, one for robbery in 1983, one for conspiracy in 1988, and one for robbery in 1992.[FN10] (Ex. A at 3-4). Second, the Parole Board never referred to McLaurin's youthful offender adjudication as a felony conviction; it instead only noted (correctly) that McLaurin's criminal history "dates back to a 1972 youthful offender." (Ex. E at 2). Third, the Inmate Status Reports prepared for the Board did not indicate that the victims incurred physical injuries, but, rather, that McLaurin's robbery involved "force/physical injury." This statement is accurate because McLaurin displayed what appeared to be a firearm during the course of the bank robbery, ordered all of the tellers and customers to get "down on the fucking floor," and threw one of the witnesses to the ground. (Exs. A at 2, C at 1). Finally, the hearing transcripts confirm that the Board interviewed McLaurin at some length during his appearances in 2006 and 2007 and considered the appropriate statutory factors in denying his release on parole. It follows that there is no basis for his claim that he was denied due process because the Board members who conducted those parole hearings were inadequately trained.[FN11]

> FN10. Although McLaurin's three robbery convictions in 1979 may have constituted a

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

single conviction for *sentencing* purposes, *see McLaurin,* 1998 WL 146282, at *1, he undeniably was convicted of three separate crimes. Moreover, there is no basis for his claim that his attempted possession of prison contraband conviction in 1979 was a misdemeanor. That crime is in fact a felony. *See*N.Y. Penal Law § 205.25; (Ex. A at 4; Pl.'s Aff. Ex. 2).

FN11. McLaurin attaches to his affidavit comments made by Commissioner Manley ("Manley") in the course of a pan el discussion at the Association of the Bar of the City of New York. (Pl.'s Aff. Ex. 9). Those comments, which relate to *Manley's* lack of training and the general practices of the Parole Board, are disturbing. However, Manley did not participate in McLaurin's 2006 or 2007 parole hearings. The comments also relate to the Parole Board in general; they do not support the proposition that the Defendants violated McLaurin's due process rights during his parole hearings. (*See* Exs. E at 4, G at 4).

Furthermore, even if the Court were to assume that the Defendants committed one or more of the procedural errors alleged in the Amended Complaint, the 2005, 2006, and 2007 hearing transcripts establish that the Parole Board's decisions regarding McLaurin were not made in an arbitrary manner or for impermissible reasons. Indeed, the Board considered the circumstances leading to McLaurin's conviction, his prior criminal record, his institutional adjustment, and his future plans. In 2006 and 2007, the Board also took into account the sentencing judge's recommendation. The transcript of the 2007 hearing further indicates that the Board took notice of McLaurin's "improved behavior, program accomplishments, and community support." (Ex. G at 2). Ultimately, however, the Parole Board concluded that McLaurin's "lengthy record of crime, and poor supervision record" outweighed his positive adjustment in determining his fitness for parole. (*Id.*). This is precisely the sort of weighing of factors that the Board is statutorily empowered to undertake. *See Manley v. Thomas,* 255 F.Supp.2d 263, 267 (S.D.N.Y.2003); *Brown v. Thomas,* No. 02 Civ. 9257(GEL), 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003).

Consequently, even if there were minor irregularities in the Board's proceedings-such as the failure to update the Inmate Status Report prior to the 2006 *de novo* parole hearing or the ministerial failure to indicate on the 2007 Inmate Status Report that the sentencing judge had made an official statement-McLaurin was afforded all the process that the United States Constitution requires. *See Boddie v. N.Y. State Div. of Parole,* 285 F.Supp.2d 421, 429-30 (S.D.N.Y.2003) (use of uncorrected pre-sentence report and statement of incorrect facts in parole decision does not violate due process). It follows that any further relief to which McLaurin may be entitled must be sought in state court. *See Standley v. Dennison,* No. 9:05 Civ. 1033(GLS)(GHL), 2007 WL 2406909, at *9 (N.D.N.Y. Aug. 21, 2007); *Mathie,* 2007 WL 2351072, at *6.

**\*14** I note that in a recent letter McLaurin has asked the Court to consider *South v. New York State Division of Parole,* N.Y.L.J., Apr. 23, 2008, at 26 (Sup.Ct., N.Y.County, Apr. 8, 2008), in making its determination regarding his due process claims. (Letter from McLaurin to the Court, dated Apr. 21, 2008 ("Pl.'s Letter"), at 1-2). In that case, Justice Goodman held that an inmate was entitled to a *de novo* parole hearing. Justice Goodman's decision, however, was based on state law and a concession by the Attorney General that the petitioner's hearing did not meet the requirements of state law. The case therefore has no bearing on whether McLaurin's federal constitutional rights were violated; if anything, it confirms that any relief to which McLaurin may be entitled rests with the state court.

ii. *Alleged Policy*

McLaurin's other due process claim is that the Defendants have maintained an unofficial policy of denying parole to almost all prisoners sentenced under the recidivist statutes on the basis of their criminal history, "without any meaningful consideration ... of any other ... statutorily mandated factor [.]" (Am.Compl.¶ 49). Several judges have considered similar allegations concerning the alleged parole policies of the Pataki administration. At least four of those judges have concluded that such a policy-if shown to exist-would not violate the Due Process Clause. *See Tatta v. Brown,* No. 06 Civ. 2852, 2007 WL 4298709, at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

*1-2 (E.D.N.Y. Dec. 6, 2007) (Block, J.) (basing parole decision on two statutory factors, the nature of the prisoner's crime and his criminal history, does not violate procedural or substantive due process); *Schwartz v. Dennison,* 518 F.Supp.2d 560, 574 (S.D.N.Y.2007) (Holwell, J.) ("a BOP policy of denying parole to sex offenders would not violate the Due Process Clause"); *Mathie,* 2007 WL 2351072, at *6-7 (Lynch, J.) ("A policy that requires the Board to look first and foremost at the severity of the crime ... is neither arbitrary nor capricious."); *Cartagena,* 2006 WL 2627567, at *9 (Gorenstein, Mag. J.) (policy of denying parole to serious offenders would be proper because Board may give statutory factors whatever weight it deems appropriate and need not cite each factor in its decision).

In *Mathie,* for example, Judge Lynch assumed the existence of a policy to deny parole automatically to all violent felons, but held that such a policy did not violate the Due Process Clause. *Mathie,* 2007 WL 2351072, at *6-7. This decision rested principally on three grounds. First, under New York law the Board may "give whatever weight it deems appropriate to the statutory factors." *Id.* at *6 (quoting *Romer v. Travis,* No. 03 Civ. 1670(KMW)(AJP), 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003)). Judge Lynch noted that the policy merely required the Parole Board to "overvalue[ ] the severity of the crime, at the expense of other statutory considerations." *Id.* In his view, this did not violate the Due Process Clause because due process required only that the Board not act arbitrarily or impermissibly. Second, Judge Lynch observed that even if New York adopted the policy as law, it would not violate an inmate's due process rights because the "federal system has abolished parole altogether for all inmates, including both violent and non-violent felons." *Id.* at *7. As he reasoned, "[i]f the federal government can abolish parole altogether without violating the Constitution, then New York State surely acts within constitutional confines if it decides to restrict parole to only non-violent felons, whom the State could rationally find pose a greater risk to public safety and therefore are not proper candidates for early release." *Id.* Finally, as Judge Lynch explained, even if the Board enacted its policy in violation of state law, the proper venue for such a claim would be state court .[FN12]*Id.*

FN12. In an unpublished opinion, however, the Second Circuit has stated that it is an open question whether a prisoner has a "liberty or property interest in having the Parole Board comply with its own statutory and regulatory guidelines in determining whether to grant or deny parole." *See Rodriguez v. Greenfield,* 7 Fed. App'x 42, 43 (2d Cir.2001).

*15 The sole authority suggesting that a policy of uniformly denying parole to violent or persistent violent felons would violate due process is Judge Brieant's decision in *Graziano,* 2006 WL 2023082, at *6-9. In that case, Judge Brieant denied a motion to dismiss, and later granted certification of a class action, because the plaintiffs-A1 felons who were denied parole-made what he considered a nonfrivolous statistical case that the Parole Board, rather than exercising its discretion in a misguided fashion, was failing to exercise its discretion at all. Ironically, the plaintiffs in that action suggested that the Board was not handcuffed by any alleged policy with respect to non-A1 felons, *i .e.,* persons convicted of crimes other than murder, such as McLaurin.[FN13]*See id.* at *1-2, 8.

FN13. In his April 21 letter, McLaurin asks the Court to address his status in the *Graziano* class action. (Pl.'s Letter at 2). That issue is not properly before this Court. In any event, the *Graziano* class includes only those prisoners "convicted of A-1 felony offenses." (*See* Docket No. 98 in *Graziano,* No. 06 Civ. 480). McLaurin concedes that he has not been convicted of such an offense. (Letter from McLaurin to the Court, dated May 1, 2008, at 2).

Here, as in *Mathie,* McLaurin's contention, at its core, is that the Defendants are relying almost exclusively on the criminal history of a prisoner in determining whether to grant parole release, at the expense of the other statutory factors. The Parole Board is entitled, however, to determine that a prisoner's criminal history outweighs any of the other statutory factors. *Siao-Pau,* 442 F.Supp.2d at 154 (placing heavy emphasis on a prisoner's criminal history is "entirely consistent with the criteria laid down by the legislature") (quoting *Morel,* 2003 WL 21488017, at *5). Accordingly, even if McLaurin was denied parole as a matter of Board policy, this does not raise any due process concerns.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

d. *Equal Protection*

McLaurin next claims that he was denied his rights under
the Equal Protection Clause because the Defendants
treated persistent felony offenders and persistent violent
felony offenders differently than non-persistent felony
offenders. (Am.Compl.¶ 57). Assuming that this is true, it
does not constitute an impermissible ground for the denial
of parole. The Equal Protection Clause is "essentially a
direction that all persons similarly situated should be
treated alike." *City of Cleburne v. Cleburne Living Ctr.,*
473 U.S. 432, 439 (1985). Nevertheless, because prisoners
are not a suspect class, *Lee v. Governor of N.Y.,* 87 F.3d
55, 60 (2d Cir.1996), the policy is "presumed
constitutional and need only be rationally related to a
legitimate state interest." *Mathie,* 2007 WL 2351072, at
*8 (quoting *Salahuddin v. Unger,* No. 04 Civ. 2180(JG),
2005 WL 2122594, at *7 (E.D.N.Y. Sept. 2, 2005)).

The state clearly has a rational basis for drawing a
distinction in parole determinations between persistent
offenders and non-persistent offenders, which is to
"prevent[ ] the early release of potentially violent inmates"
or those who are more likely to recidivate. *See*
*Salahuddin,* 2005 WL 2122594, at *7. Moreover, as Judge
Baer has observed,

the motive and animus that [McLaurin] contends is
impermissible-namely the Board's decision to get tough
on violent [or persistent] offenders because of public
and political pressure-in fact seems entirely permissible,
as it closely relates to the statutory factor of whether
"release is not incompatible with the welfare of society
and will not so deprecate the seriousness of the offense
as to undermine respect for law."

**\*16** *Morel,* 2003 WL 21488017, at *5. McLaurin's equal
protection claim consequently fails as a matter of law.

e. *Ex Post Facto*

Finally, McLaurin contends that the Defendants violated

his Ex Post Facto Clause rights by adopting its alleged
policy and by incorporating into his release conditions
terms required by SORA. (Pl.'s Mem. at 22-24). Under the
Ex Post Facto Clause, states are prohibited from passing
legislation that imposes punishment for an act not
punishable at the time it was committed or which is in
addition to that then prescribed. U.S. Const. art. I, § 10, cl.
1; *Burgess v. Salmon,* 97 U.S. 381, 384 (1878). The focus
is on whether the change "alters the definition of criminal
conduct or increases the penalty by which a crime is
punishable." *Cal. Dep't of Corr. v. Morales,* 514 U.S. 499,
506 n. 3 (1995). Changes in the law governing parole
decisions that "create [ ] a significant risk of prolonging
[the plaintiff's] incarceration" consequently may violate
the Ex Post Facto Clause. *Garner v. Jones,* 529 U.S. 244,
251 (2000). On the other hand, a "law that is merely
procedural and does not increase a prisoner's punishment
cannot violate the Ex Post Facto Clause even when
applied retroactively." *Barna,* 239 F.3d at 171.

i. *Policy*

McLaurin alleges that the Defendants' adoption of a policy
pursuant to which they automatically denied parole to
inmates with a prior criminal history violates the Ex Post
Facto Clause. The Ex Post Facto Clause, however, applies
only to *laws.* U.S. Const. art. I, § 10, cl. 1. In *Garner,* the
Supreme Court determined that state parole regulations are
such laws. *See Garner,* 529 U.S. at 247, 257. Although the
Supreme Court also explained that a parole board's policy
statements and practices could be considered in
determining whether a statute or regulation violated the Ex
Post Facto Clause, *id.* at 256-57, the Court did not address
whether parole board policies or guidelines constitute
"laws" subject to ex post facto analysis. *See Anderson-El*
*v. U.S. Parole Comm'n,* No. 05 Civ. 2697(JSR), 2006 WL
2604723, at *5 n. 2 (S.D.N.Y. Sept. 11, 2006) (Report &
Rec. of Katz, Mag. J.).

Prior to *Garner,* the weight of authority favored the view
that the Ex Post Facto Clause was inapplicable to
nonmandatory guidelines used to guide the discretion of a
parole board. *See, e .g., DiNapoli v. Ne. Reg'l Parole*
*Comm'n,* 764 F.2d 143, 147 (2d Cir.1985) ("parole
guidelines as applied here are not 'laws' within the
meaning of the ex post facto clause"); *Pindle v. Poteat,*
360 F.Supp.2d 17, 20 (D.D.C.2003) ("Most courts of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

appeals addressing the question have held that Parole Commission guidelines, which simply provide guides for the exercise of discretion, cannot be considered 'laws' for purpose of the Ex Post Facto Clause."); *see also Portley v. Grossman,* 444 U.S. 1311, 1312 (1980) (because "guidelines operate only to provide a framework for the Commission's exercise of its statutory discretion[, a] change in guidelines assisting the Commission in the exercise of its discretion is ... a [permissible] procedural change"). Since *Garner,* however, the circuit courts have split on this issue. *Compare Glascoe v. Bezy,* 421 F.3d 543, 548 (7th Cir.2005) ("discretionary *guidelines,* unlike statutes and the 'rules' addressed in *Garner,* are not within the ambit of the Ex Post Facto Clause"), *and Warren v. Baskerville,* 233 F.3d 204, 207-08 (4th Cir.2000) (administrative policies are not subject to Ex Post Facto Clause), *with Michael v. Ghee,* 498 F.3d 372, 384 (6th Cir.2007) (guidelines are subject to Ex Post Facto analysis), *and Fletcher v. Dist. of Columbia,* 391 F.3d 250, 251 (D.C.Cir.2004) (*Garner* "foreclosed [the] categorical distinction between a measure with the force of law and guidelines") (internal quotation marks omitted).

**\*17** Although the Second Circuit has not specifically addressed *Garner,* in its subsequent decision in *Barna v. Travis,* the court held that discretionary parole guidelines are not subject to the Ex Post Facto Clause. *Barna,* 239 F.3d at 171. In that case, the plaintiffs alleged that New York State had a policy pursuant to which prisoners convicted of violent crimes were systematically denied parole. *Id.* at 170. The Second Circuit rejected the plaintiffs' Ex Post Facto claim, noting that the New York State parole guidelines do not create mandatory rules for release but seek only to guide the Parole Board's discretion. *Id.* at 171. The court therefore held that the guidelines were "not 'laws' within the meaning of the Ex Post Facto Clause." *Id.*

McLaurin does not allege that the legislature amended the statute governing parole release, Executive Law Section 259-i, or that a state agency adopted a formal regulation that would bind the Board's discretion. He argues instead that the Defendants' policy encouraged the Board to deny parole solely on the basis of criminal history, without meaningful consideration of the other statutory factors. Stated slightly differently, McLaurin's argument is essentially a claim that the policy permitted the Board to place significantly more emphasis on the statutory factors

relating to a prisoner's criminal history at the expense of such other important factors as the prisoner's institutional record and release plans. *See* N.Y. Exec. Law § 259-i(l)(a), (2)(c)(A). If so, the alleged policy was, at best, a guideline used by the Parole Board in balancing the statutory factors. Although the policy sought to guide the Board in the exercise of its discretion, it was not a mandatory rule binding the Board. This Court therefore is bound by *Barna* and must hold that the Ex Post Facto Clause is inapplicable to the Defendants' alleged policy. *See Farid v. Bouey,* No. 05 Civ. 1540, 2008 WL 2127460, at \*16 (N.D.N.Y. May 20, 2008) (Report & Rec. of Peebles, Mag. J.) (Pataki parole policy is not "law" subject to Ex Post Facto Clause); *Salahuddin,* 2005 WL 2122594, at \*8 (same); *Parks v. Edwards,* No. 03 Civ. 5588(JG), 2004 WL 377658, at \*4 (E.D.N.Y. Mar. 1, 2004) (same); *see also Mathie,* 2007 WL 2351072, at \*13 (upholding the Pataki policy despite the plaintiff's ex post facto claim). *But see Graziano,* 2006 WL 2023082, at \*10-11 (parole board policy subject to Ex Post Facto Clause).

### ii. *Sexual Offender Registration Act*

McLaurin also contends that the Defendants violated his rights under the Ex Post Facto Clause by improperly applying SORA to his release conditions. SORA, which was enacted well after McLaurin's conviction for sexual abuse, imposes certain obligations on those convicted of specified sex offenses. *See Doe v. Pataki,* 120 F.3d 1263, 1266 (2d Cir.1997). In *Doe v. Pataki,* the Second Circuit concluded that the "application of the registration and notification provisions of ... SORA to persons who committed their offenses prior to the January 21, 1996, effective date of the Act does not violate the Ex Post Facto Clause." *Id.* at 1285. This holding does not necessarily control McLaurin's claim because the conditions that the Inmate Status Reports recommended be attached to his parole release do not relate to notification or registration, but rather to his use of medication and participation in a polygraph program. (*See* Ex. F at 3).

**\*18** The Court need not decide whether retroactive application of those conditions violates the Ex Post Facto Clause, however, because those conditions have not been applied to McLaurin. Indeed, the conditions are recommended for imposition only when McLaurin is granted parole release, an event which has yet to occur.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

McLaurin's claim therefore is not ripe for review. *See United States v. Balon,* 384 F.3d 38, 46 (2d Cir.2004) (ripeness doctrine prevents "a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur") (internal quotation marks omitted).

IV. *Conclusion*

For the foregoing reasons, the Court should grant the Defendants' motion to dismiss McLaurin's Amended Complaint. (Docket No. 21).

V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

S.D.N.Y.,2008.
McLaurin v. Paterson
Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Herman CRUZ, Plaintiff,
v.
J. HILLMAN and E. Lee, Defendants.
**No. 01 CIV. 4169 DABDF.**

May 16, 2002.

Mr. Herman Cruz, pro se, Southport Correctional Facility, Pine City.

Edward Rodriguez, Esq., Assistant Attorney General, New York.

REPORT AND RECOMMENDATION

FREEMAN, Magistrate J.

INTRODUCTION

**\*1** Defendants in this action move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, if dismissal is not granted, to limit plaintiff's recovery to nominal damages, pursuant to § 803(d)(e) of the Prisoner Litigation Reform Act of 1996 (the "PLRA"), codified at 42 U.S.C. § 1997e(e). For the reasons set forth below, I recommend that the motion to dismiss be granted in part and denied in part with respect to defendant Hillman, and granted in its entirety with respect to defendant Lee, with leave to replead as set forth below. I further recommend that any recovery by plaintiff be limited to nominal damages.

BACKGROUND

A. *Factual Background*[FN1]

> **FN1.** The following facts are taken from the Complaint in this action, filed May 17, 2001 ("Compl."), and are assumed to be true only for the purposes of this motion. Where the allegations of the Complaint are ambiguous, the Court will afford them a liberal construction. (*See infra* at 7.)

*Pro se* plaintiff Herman Cruz ("Cruz") commenced this action pursuant to 42 U.S.C. § 1983 against defendants Sergeant James Hillman ("Hillman") and Corrections Counselor Eddie Lee ("Lee") (jointly, "Defendants"). Cruz claims that Defendants retaliated against him for filing a prior federal lawsuit against certain employees of the Department of Corrections ("DOCS"), by colluding to deny him protective custody status at Green Haven Correctional Facility ("Green Haven"), even though he had previously informed Defendants that he needed protection because his life was in danger.

According to the Complaint, on September 19, 2000, while incarcerated Green Haven, Cruz had a telephone conversation with his attorney, Anne Richmond ("Richmond"), concerning a federal lawsuit unrelated to the present action. (Compl., ¶ 1.) During that conversation, Richmond gave Cruz favorable news about the lawsuit, informing him that the Assistant Attorney General defending the case had withdrawn a pending motion. (*See id.,* ¶ 2.) For his part, however, Cruz reported to Richmond that he was "having problems" at Green Haven and that "his life [was] in great danger," and he asked Richmond for assistance in obtaining protective custody. (*Id.,* ¶¶ 2-3.) Richmond spoke to Lee, who was in the room with Cruz during the call, about Cruz's problems at Green Haven. (*Id.*) After the telephone call, Lee "express[ed] his dislike for prisoners who lie and win [civil] cases." (*Id.,* ¶ 4.) Cruz responded that his case was not based on lies, and that he had not won anything other than a withdrawal of a motion. (*Id.*) Lee then called Hillman, and instructed Cruz to see Hillman, telling Cruz that "everything would be taken care of." (*Id.,* ¶ 5.) Cruz stressed that he wished to move immediately, because his life was in danger. (*Id.*)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

In accordance with Lee's instruction, Cruz then went to see Hillman, but when he met Hillman, he was greeted with the comment: "So [you're] the Ass-hole jailhouse lawyer who might win some money ." (*Id.,* ¶ 6.) Cruz said that his prior lawsuit was not "open for discussion," and that he was only there "to sign whichever necessary forms [were] mandated for the Protective Custody process." (*Id.*) Hillman said that Cruz would have to "give names" (*id.*), and-although this was not in fact required for the process-Cruz complied, providing the names of his "enemies" (*id.*). After that, Hillman stated, "I don't think you need protection and I really hate jail-house lawyers," and dared Cruz to sue him. (*Id.*) According to Cruz, by thus denying him protective custody "for no reason" (*id.,* ¶ 7), when Cruz was entitled to protection because of his "history with gang members," (*id.*), Hillman violated governing procedures (*see id.*).

**\*2** On the next day, September 20, 2000, Cruz was moved, at Hillman's order, from the H-Block housing area to the E-Block housing area, where one of Cruz's enemies was housed. (*Id.,* ¶ 8.) Cruz was then instructed to see Hillman again. (*See id.,* ¶¶ 8-9.) When he reported to Hillman, Hillman gave him what was apparently a protective custody form, stating, "[l]ook ass-hole, sign here." (*Id.,* ¶ 9.) But once Cruz had signed the form, Hillman ripped it up and threw it in the waste basket, telling Cruz, "Go to the yard ass-hole and if you complain[ ], I'll have one of my boys cut you." (*Id.*) Hillman then again dared Cruz to sue him. (*Id.*)

After this incident, Cruz wrote to both the judge assigned to his then-pending case and to his counsel, and copied the letters to Superintendent Charles Greiner ("Greiner"), apparently complaining that he needed, but was not being afforded, protection. (*See id.,* ¶ 10.) In one letter, Cruz wrote that he would "have to walk around with a weapon, as it is quite evident the Administration will not give Plaintiff protection." (*Id.,* ¶ 11.) [FN2] After not receiving any response (other than a reply from Greiner that his letters were being forwarded to another prison administrator), Cruz also submitted a grievance, to which he received no reply for more than two months. (*Id.,* ¶¶ 10-12.) Cruz also wrote to a senior corrections counselor and received a responsive letter dated October 10, 2000, informing him that Hillman had denied him protective custody because he had "fail[ed] to name names," which, as noted above, Cruz claims he *did* do, and which, in any

event, he claims should not have been required. (*Id.,* ¶¶ 6, 13.)

> **FN2.** Cruz further contends that he did have a weapon (a "lock and rope"), which he eventually turned over to corrections officers. (*Id.* ¶ 14.)

Upon being moved to another cell block (the A-Block), Cruz apparently attempted to stay within his cell, but, after two weeks, he was told that he would not be fed in his cell, and would have to come out if he wanted to eat. (*See id.,* ¶¶ 14-15.) On or about November 1, 2000, Hillman approached Cruz's cell, and stated, "[You're] in my block now ass-hole.... So come on out [tough] guy!" (*Id.,* ¶ 16.) Cruz alleges that, on another occasion, Lee also approached his cell and warned him to "be careful" because "Green Haven [was] an open battlefield." (*Id.,* ¶ 17.) [FN3]

> **FN3.** Cruz further alleges that, on this occasion, Lee also said that "he process [*sic* ] the forms and will call [Sergeant] Hillman again." (*Id.*) It is unclear from the face of the pleading whether this is meant to suggest that Lee was indicating that he had already processed protective custody forms submitted by Cruz, that he would be processing such forms in the future, or that he was simply the officer responsible for processing such forms.

Cruz alleges that, throughout this period, he wrote additional letters to the judge on his case, the prison Superintendent, and the officer-Captain Totten ("Totten")-to whom the Superintendent had supposedly referred his complaints. (*See id.,* ¶¶ 16-18.) At one point, Totten indicated by memo that he was considering placing Cruz in the Special Housing Unit ("S.H.U."), "where [Cruz] should feel safe." (*Id.* ¶ 15.) No such transfer was made, however, and, when two of Cruz's enemies threatened him, [FN4] Cruz wrote again to Totten, saying that he needed to be taken to the S.H.U. "as soon as possible," and that, to ensure that this happened, he "would throw water at a staff [member]." (*Id.,* ¶ 18.) On November 8, 2000, Cruz threw hot water at a corrections officer (*id.,* ¶ 20), which did result in his being taken to the S.H.U. (*Id.,* ¶ 20.) While in the S.H.U., Cruz continued to make

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

inquiries about his status, and submitted another internal complaint, requesting an investigation. (*Id.*, ¶¶ 21-22.) On November 28, 2000, Cruz received a letter stating, "it appears your fears are no longer an issue because you are now isolated from [the] general population," and that the matter would therefore be considered "closed." (*Id.*) Cruz, however, maintains that his life continued to be in danger. (*Id.*, ¶ 23.)

> **FN4.** According to the Complaint, "two of Plaintiff's enemies were moved on the same company, and told Plaintiff to bring his weapon out in the A.M.," presumably suggesting that Cruz should be prepared for a fight. (*See id.*, ¶ 18.)

**\*3** In sum, Cruz alleges that Hillman and Lee placed his life in danger by colluding to deny him protective custody status, and that they did this because of their "hate and anger" over the fact that Cruz had filed a prior lawsuit against DOCS workers. (*Id.*, ¶ 25.) Cruz also claims that Hillman wrongfully denied him protective custody status by falsely stating that Cruz had refused to name his enemies, and that the prison administration conducted a "biased investigation" into Cruz's complaints about his safety. (*Id.*, ¶¶ 24, 27.)

Citing *Santiago v. Miles,* 774 F.Supp. 775 (W.D.N.Y.1991), which addressed certain constitutional violations at the Elmira Correctional Facility ("Elmira"), Cruz claims that Hillman's actions violated federal law. (*Id.*, ¶ 24.) As discussed below, however (*see infra* at 8-9), *Santiago* involved a claim of racial discrimination, in violation of the Fourteenth Amendment. Although this Court assumes that, by referencing *Santiago*, Cruz is asserting a Fourteenth Amendment violation, made actionable pursuant to 42 U.S.C. § 1983,[FN5] this is not the most logical reading of the substantive allegations of his Complaint. Liberally construed, the Complaint is more reasonably read to allege a "retaliation" claim against both Defendants under the First Amendment, and a "failure to protect" claim under the Eighth Amendment. Both of these claims, if demonstrated, would also be actionable under § 1983. Cruz alleges that his injuries consist of "much mental anguish and a great deal of suffering from worry and grief." (Compl., § IV-A.) He seeks $5 million from each defendant. (*Id.*)

> **FN5.** According to the Civil Cover Sheet filed with the Complaint in this action, Cruz purports to bring this action pursuant to § 1983, although the statute is not cited in the Complaint.

**B.** *Procedural Background*

Cruz filed his *pro se* Complaint in this Court on May 17, 2001. Defendants moved to dismiss the Complaint by Notice of Motion dated August 31, 2001. The motion was fully submitted as of October 30, 2001, and was referred to me on November 9, 2001, for a report and recommendation.

In their motion, Defendants argue that the Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. In the alternative, Defendants argue that they should be shielded from liability under the doctrine of qualified immunity. Finally, in the event the claims are not dismissed, Defendants argue that Cruz's recovery should be limited to nominal damages pursuant to § 1997e(e) of the PLRA.

<div align="center">DISCUSSION</div>

**I. THE MOTION TO DISMISS SHOULD BE** *GRANTED IN PART AND DENIED IN PART.*

**A.** *Legal Standards*

**1.** *Rule 12(b)(6)*

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991) (citation omitted). A claim may not be dismissed under Rule 12(b)(6) unless "it appears beyond doubt that plaintiff can prove no set of facts in support of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

his claim which would entitle him to relief." *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994), quoting *Conley v. Gibson,* 355 U .S. 41, 45-46 (1957). The Court must accept all factual allegations in the complaint as true and "draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Ed.,* 131 F.3d 326, 329 (2d Cir.1997). Further, where, as here, a plaintiff is proceeding *pro se,* the Court must construe the pleadings liberally, *Branham v. Meachum,* 77 F.3d 626, 628-29 (2d Cir.1996), and must "interpret them to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

2. *42 U.S.C. § 1983*

*4 Section 1983 of Title 42 of the United States Code "establishes liability for deprivation under the color of state law 'of any rights, privileges, or immunities secured by the Constitution." *Graham v. Henderson,* 89 F.3d 75, 79 (2d. Cir.1996) (quoting 42 U.S.C. § 1983). Accordingly, to succeed on a claim for violation of civil rights under 42 U.S.C. § 1983, a plaintiff must show that "state officials, acting under color of state law, deprived [him] of a right guaranteed to [him] by the Constitution." *Rodriguez v. Phillips,* 66 F.3d 470, 473 (2d Cir.1995).

B. *Plaintiff's Equal Protection Claim Under Santiago v. Miles*

As noted above, the only specific citation to federal law in the Complaint is Cruz's allegation that Hillman's conduct was unlawful "pursuant to the *Santiago v. Miles* Order." (Compl., ¶ 24.) Presumably, Cruz is referring to *Santiago v. Miles,* 774 F.Supp. 775 (W.D.N.Y.1991), in which black and Hispanic inmates brought a class action claiming discrimination on the basis of race in violation of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983. In that case, the court found that there had been a history of racism at Elmira, which had affected job placement, housing assignments and discipline. *See id.* at 797. The court held that the plaintiffs had established clear violations of the Equal Protection Clause of the Fourteenth Amendment, and ordered that procedures designed to remedy the racial injustices be implemented at Elmira. *Id.* at 801-02. Thus, by alleging that Defendants committed a federal violation under "the *Santiago v. Miles* Order," Cruz is arguably claiming that he was denied protective custody because of his race, in violation of the Equal Protection Clause.[FN6]

FN6. It is also possible that, by referring to the order issued in *Santiago,* Cruz is claiming that the court in that case required DOCS to institute certain procedures in New York State prisons to ensure that the discrimination that took place at Elmira would not be replicated elsewhere, and that Defendants violated those procedures when they denied him protective custody. The court's order in *Santiago,* however, does not appear to apply to prisons other than Elmira, and it is not clear from the face of Cruz's pleading whether Green Haven in fact adopted any procedures regarding protective custody in light of *Santiago.* Further, Cruz has not demonstrated that the violation of such internal prison procedures would, standing alone, constitute a federal constitutional violation. To the extent that Cruz is alleging that Defendants deprived Cruz of the benefit of prison protective custody procedures in retaliation for his prior federal lawsuit, in violation of the First Amendment, his claim is addressed below. (*See infra* at 10-15).

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Id.* at 797 (quoting *Washington v. Davis,* 426 U.S. 229, 239 (1976). A person claiming an Equal Protection violation "must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Id.* (quoting *Huebschen v. Dep't of Health and Social Services,* 716 F .2d 1167, 1171 (7th Cir.1983)). In order to establish a violation of the Equal Protection Clause, a plaintiff must show both a discriminatory effect and proof that a racial motive was responsible for the effect. *Id.* (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252 (1977)).

Here, Cruz has completely failed to allege a violation of the Equal Protection Clause based on racial discrimination. He has not alleged that he is a member of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

any specific racial group, nor has he alleged that Defendants took any actions against him because of his race. Indeed, Cruz has premised his Complaint on the theory that Defendants took adverse actions against him because he had previously filed a lawsuit against DOCS employees, not because of any racial animus. Accordingly, I recommend that, to the extent Cruz has asserted an Equal Protection claim against either or both defendants, the claim be dismissed under Fed.R.Civ.P. 12(b)(6).

C. *Plaintiff's First Amendment Retaliation Claim*

**\*5** The gravamen of Cruz's complaint is that Hillman and Lee colluded to deny him protective custody status because of their "hate and anger" over the fact that Cruz had filed a lawsuit against certain DOCS employees. (Compl., ¶ 25.) This may be read as a First Amendment retaliation claim. In this context, however, the charges Cruz asserts against Hillman appear stronger than those he asserts against Lee.

1. *The Claim Against Hillman*

Cruz alleges that, when he initially approached Hillman seeking to be placed in protective custody, Hillman stated "so [you're] the Ass-hole jail house lawyer who might win some money.... I don't think you need protection and I really hate jail-house lawyers.... Sue me." (*Id.,* ¶ 6.) Cruz also alleges that, in a second encounter, Hillman ripped up and discarded a protective custody form that Cruz had signed, and again dared Cruz to sue him. (*Id.* ¶ 9.) Further, Cruz alleges that Hillman justified his decision to deny Cruz protective custody by falsely claiming that Cruz had not provided the names of his enemies, when Cruz had in fact done so, and was, in any event, not required to do so. (*Id.,* ¶¶ 6, 24.)

An inmate has "a constitutional right of access to the courts and to petition the government for the redress of grievances," and a prison's administrators "may not retaliate against [him] for the exercise of that right." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). In order to state a claim for retaliation, Cruz "must advance non-conclusory allegations establishing (1) that the speech or conduct at issue was protected, (2) that the defendant

took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001).

Here, with respect to his claim against Hillman, Cruz has stated a *prima facie* case for retaliation in non-conclusory terms. Cruz easily satisfies the first and third elements of a retaliation claim. Cruz's conduct-prosecuting a federal lawsuit-is constitutionally protected. *See Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). Further, Cruz has alleged a causal connection between his own conduct and Hillman's actions. As set out above, he alleges that Hillman coupled the denial of Cruz's request with a declaration that Cruz was an "Ass-hole jailhouse lawyer" and that Hillman "really hate[d] jailhouse lawyers." (Compl., ¶ 6.) This allegation raises a strong inference that Hillman denied Cruz's request for protective custody because Cruz was pursuing a federal lawsuit against DOCS workers. Indeed, a causal link between a plaintiff's protected conduct and a defendant's retaliatory action is often proved by circumstantial evidence such as that alleged here by Cruz. *See Sumner v. United States Postal Service,* 899 F.2d 203, 209 (2d Cir.1990) ( "[t]he causal connection between protected activity and adverse ... action can be established indirectly with circumstantial evidence"); *Walton v. Safir,* 122 F.Supp.2d 466, 475 (S.D.N.Y.2001) ("Retaliatory motive is rarely proven by direct evidence.... Circumstantial evidence of retaliation may be found when defendants are aware that plaintiff has engaged in protected speech and defendants' challenged behavior closely follows the protected speech") (internal quotations omitted).

**\*6** The second element of a retaliation claim warrants a more extended discussion. Defendants argue that, under *Dawes,* Cruz has not pleaded the requisite adverse action (by either of the Defendants) because he has not alleged that he was actually attacked by any of the other inmates. (*See* Defendants' Memorandum of Law in Support of Motion to Dismiss, dated August 31, 2001 ("Def.Mem."), at 9-11.) [FN7] In order to adequately plead an adverse action, Cruz must allege that Defendants "subjected him to conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Morales,* 278 F.3d at 131 (internal citations omitted). If the claimed adverse action does not

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

rise to this level, it is "simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes,* 239 F.3d at 489. Although the question of whether a purported adverse action is *de minimis* generally cannot be decided as a matter of law, *see Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999), a claim may be subject to dismissal where the adverse action, as pleaded, plainly does not satisfy the *Morales* test, *see Dawes,* 239 F.3d at 493.

> FN7. Although the Court will separately consider Cruz's claims against each of the named defendants, Defendants have submitted a joint brief, in which they do not differentiate between the allegations directed against each of them.

In *Dawes,* the plaintiff was a *pro se* prisoner who filed a claim for retaliation against various prison officials. The plaintiff claimed that, because the plaintiff had successfully appealed a disciplinary order imposed on him, the defendants had referred to him as an "informant" and a "rat" in front of other prisoners, thereby subjecting him to possible assaults by those prisoners. The Second Circuit affirmed dismissal of the complaint, stating:

[a]bsent some factual showing that the comments by prison officials actually risked inciting other inmates against [plaintiff], we are unwilling simply to assume that prison inmates would be incited, without more, to attack 'one of their own' who was labeled an 'informant' and a 'rat' for complaining to prison supervisors about a prison guard's conduct.

239 F.3d at 493.

Relying on *Dawes,* Defendants argue that the fact that Cruz was not actually assaulted precludes the finding that he suffered an adverse action. Hillman, however, unlike the defendants in *Dawes,* allegedly did more than just make statements about Cruz-he purportedly denied Cruz the benefit of a prison procedure designed to ensure the prisoners' safety, because he did not like the fact that Cruz had filed a lawsuit against various DOCS employees. Fairly construed, the Complaint alleges not only that Cruz was denied protective custody in retaliation for his prior

lawsuit, but that he was denied the opportunity even to *apply* for protective custody. Further, Cruz alleges that, in rejecting his request for protection, Hillman acted entirely outside the normal internal process. It is quite possible that depriving a prisoner of even the ability to seek protective custody-especially when the prisoner believes his safety is at risk-could be used as a means to stifle the prisoners' ability or desire to file lawsuits or grievances. *See Morales,* 278 F.3d at 131-32 (reversing the dismissal of a complaint alleging that the transfer of prisoner to a psychiatric facility was an adverse action taken in retaliation for filing a grievance). At this stage in the litigation, it cannot be said that denial of the right to seek protective custody would not "deter a similarly situated individual of ordinary firmness" from pursuing his constitutional rights. Accordingly, Cruz's retaliation claim against Hillman should not be dismissed for failure to state a claim.

### 2. *The Claim Against Lee*

**\*7** Cruz's principal allegation regarding Lee's conduct is that, when Cruz's counsel asked Lee for assistance with obtaining protective custody for Cruz, Lee responded, at first, by "express[ing] his dislike" for inmates who file civil lawsuits. (Compl., ¶ 4.) Cruz further alleges, however, that Lee then referred him to Hillman. (*Id.,* ¶ 15.) Cruz may have ultimately perceived this referral as evidence of collusion between Lee and Hillman, but the allegation itself says nothing other than that Lee instructed Cruz to see the officer who was seemingly in charge of receiving requests for protective custody.

The only other allegation in the Complaint relating to Lee's conduct is an allegation that, at a later point:

Lee came to Plaintiff's cell and stated to Plaintiff 'Green Haven is an open battlefield, so be careful,' and stated he process [*sic* ] the forms and will call [Sergeant] Hillman again.

(*Id.* ¶ 17.) As noted above (*see supra* n. 3), the meaning of this allegation is unclear. The purported remark about Green Haven being a "battlefield" could be viewed as a generalized threat, but it could equally be viewed as an

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

expression of concern. More importantly, as phrased, nothing about the allegation regarding Lee's processing of forms, and his promise to call Hillman, suggests that Lee was himself at fault for any alleged failure by the prison administration to act upon Cruz's request for protection, or to afford him fair access to prison procedures. To the contrary, this allegation suggests that Lee may have already processed-or was prepared to process-Cruz's request for protective custody.

Even reading the Complaint in the light most favorable to Cruz and affording him the benefit of all inferences, these allegations against Lee appear insufficient to state the necessary adverse action. There is no allegation that Lee even had the authority to deny Cruz protective custody, much less that he did so. There is also no allegation that Lee took any action that thwarted Cruz's attempt to apply for protection. At most, Cruz alleges that, when he first asked Lee for help in obtaining protection, Lee responded by announcing his "dislike" for prisoners who "lie and win [civil] cases" (Compl., ¶ 4); there is no further allegation that these expressed views affected Lee's willingness to assist Cruz. As the Second Circuit stated in *Dawes,* "[c]ertain means of 'retaliation' may be so *de minimis* as not to inhibit or punish an inmate's right to free speech. Many verbal responses by officials of resentment or even ridicule would fall into this safe harbor of permitted response." 239 F.3d at 493 (internal quotations omitted). Standing alone, Lee's alleged initial statement-while insulting and inappropriate-appears no more harsh than the statements alleged in *Dawes,* which were held insufficient to support a retaliation claim.

I therefore recommend that, to the extent Cruz has alleged a First Amendment retaliation claim against Lee, that claim be dismissed for failure to state a claim. I further recommend, however, that Cruz be afforded leave to replead this particular claim. As noted above, certain of Cruz's factual allegations regarding Lee's conduct and statements are ambiguous, and, under the circumstances, it may be possible for Cruz to supplement his allegations regarding Lee's alleged "collusion" with Hillman. Plaintiffs who are proceeding *pro se* should be freely granted leave to amend their pleadings, "especially in civil rights suits." *Gill v. Gilder,* No. 95 Civ. 7933, 1997 WL 419983 at *5 (S.D.N.Y. Jul. 28,1997). Therefore, if Cruz is able to plead that Lee actually did take any "adverse action" against him in retaliation for his prior lawsuit,

Cruz should be granted an opportunity to amend his Complaint to state such an allegation.

D. *Plaintiff's Eighth Amendment Claim*

**\*8** Construing the Complaint liberally, it can also be read to allege a violation of the Eighth Amendment based on Defendants' alleged failure to protect Cruz from other prisoners. The Eighth Amendment's prohibition on the infliction of cruel and unusual punishments imposes duties on prison officials, who must provide "humane conditions of confinement," including taking "reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

Not "every injury suffered by one prisoner at the hands of another," however, "translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A prisoner establishes a violation of the Eighth Amendment based on prison conditions only if he satisfies two requirements. First, the plaintiff must objectively establish that his injury has been "sufficiently serious" to have denied him "the minimal civilized measure of life's necessities." *Id.* Second, the prison official must have had " 'a sufficiently culpable state of mind' amounting to at least deliberate indifference." *Dawes,* 239 F.3d at 494 (quoting *Farmer,* 511 U.S. at 834). Deliberate indifference exists when the prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837.

Here, Cruz has failed to plead facts capable of establishing the first element of the claim: that his injury was objectively "sufficiently serious." Although he repeatedly alleges that his life was in danger, the only harm that he alleges he actually suffered was "much mental anguish and a great deal of suffering from worry and grief." (Compl., § IV-A.) He has not alleged that he was attacked or injured by his enemies as a result of being denied protective custody status, nor has he even alleged that other inmates made significant threats against him.[FN8] Instead, his assertions that he was at risk of harm are entirely conclusory.

FN8. The only specific threat he articulates is the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

comment by two of his "enemies" that he should "bring his weapon out in the A.M." (Compl. ¶ 18; *see supra* n. 4.) Even assuming this was a concrete threat, however, Cruz does not allege that anything came of it that morning, or at any other time.

Essentially, Cruz alleges that he was afraid that Defendants' refusal to place him in protective custody would subject him to assaults by his enemies. Under the relevant case law, fear of assault does not constitute a "sufficiently serious" injury sufficient to state a claim under the Eighth Amendment. *See Dawes,* 239 F.3d at 494 (dismissal of a failure to protect claim affirmed, where plaintiff did not allege he was assaulted by other inmates); *Hudson v. Greiner,* No. 99 Civ. 12339, 2000 WL 1838324 at *7 (S.D.N.Y. Dec. 13, 2000) (plaintiff's allegation that the prison administration knew that placing plaintiff in the general prison population could lead to his being injured, without an allegation of physical injury, was insufficient to state an Eighth Amendment claim); *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998) (evidence that plaintiffs "lived in fear of assault from their cellmates is not an objectively serious enough injury" to support an Eighth Amendment violation); *see also Doe v. Welborn,* 110 F.3d 520 (7th Cir.1997) (fear of assault was not "the kind of extreme and officially sanctioned psychological harm that [supports] a claim for damages under the Eighth Amendment"); *Babcock v. White,* 102 F.3d 267 (7th Cir.1996) ("[h]owever legitimate [the plaintiff prisoner's] fears may have been, ... it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment").

**\*9** Because Cruz has not adequately alleged that he suffered a serious injury, it is not necessary to reach the issue of whether prison officials were deliberately indifferent to the risk of that injury. Accordingly, I recommend that, to the extent Cruz has asserted an Eighth Amendment "failure to protect" claim, that claim be dismissed as against both Defendants.

## E. *The Doctrine of Qualified Immunity*

In their motion, Defendants argue that they are protected from suit by Cruz under the doctrine of qualified

immunity. Because I conclude above that Cruz has adequately pleaded the elements of a retaliation claim against Hillman, it is necessary to consider whether Hillman is, in any event, immune to liability for such a claim, under this doctrine. Based on the facts as pleaded, Hillman cannot show that his alleged conduct necessarily falls within protection of this doctrine, and I therefore recommend that Hillman's argument on this point be rejected.

The doctrine of qualified immunity "protects prison officials from personal liability [for damages] under § 1983 when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Horne v. Coughlin,* 155 F.3d 26, 29 (2d Cir.1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *accord Rodriguez v. Phillips,* 66 F.3d 470, 475 (2d Cir.1995). To determine whether a constitutional right is "clearly established" courts consider the following factors: "whether the right was defined with reasonable specificity; whether the decisional law of the Supreme Court and the applicable circuit courts supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful." *Horne,* 155 F.3d at 29 (quoting *Rodriguez,* 66 F.3d at 476). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Cerrone v. Brown,* 246 F.3d 194, 199 (2d Cir.2001). If a right is clearly established, a state official is still entitled to qualified immunity if "it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Id.* (internal quotations omitted). Objective reasonableness is established if "the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality" of the official's actions." *Id.* at 203.

Hillman concedes, as he must, that a plaintiff's constitutional right to access the courts without suffering retaliatory consequences is clearly established. (*See* Def. Mem. at 14.) Thus, Hillman appears to be arguing that it was "objectively reasonable" for him to believe that denying Cruz an opportunity to seek protective custody would not be prohibited retaliatory conduct. While it is true that, under *Dawes,* a prisoner has no right to

Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

protective custody status based solely on his fear of being attacked by other inmates, *Dawes* cannot be read for the proposition that, as a matter of law, only an action taken by a prison official that results in an actual assault upon the plaintiff can constitute an unlawful adverse action. As discussed above, the actions allegedly taken by Hillman-which allegedly deprived Cruz of access to established prison procedures for seeking assistance-are more serious than those taken by the defendants in *Dawes*. At this stage in the litigation, it cannot be said as a matter of law that it would have been objectively reasonable for Hillman to believe that denying Cruz a fair opportunity even to seek protective custody status would constitute a prohibited adverse action. *See Amaker v. Haponik,* No. 98 Civ. 2663, 2000 WL 343772 at *6 (S.D.N.Y. Mar. 31, 2000) (holding that the complaint should not be dismissed on qualified immunity grounds where "the facts [were] not sufficiently developed at this stage in the proceedings to conclude that a reasonable officer would not have concluded that defendants' actions were unlawful"); *Burgess v. Goord,* No. 98 Civ.2077, 1999 WL 33458 (S.D.N.Y. Jan 26, 1999) (although defendants argued that it was objectively reasonable for them to believe their actions were lawful, "dismissal on the basis of qualified immunity would be premature" where plaintiff had adequately pleaded a claim). Accordingly, Hillman is not entitled to qualified immunity on Cruz's retaliation claim at this time, and the claim should not be dismissed on that basis.

## II. ANY RECOVERY BY PLAINTIFF SHOULD BE LIMITED *TO NOMINAL DAMAGES PURSUANT TO THE PLRA.*

**\*10** Section 1997e(e) of the PLRA provides the following limitation on recovery:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The Second Circuit has recently held that Section 1997e(e) applies to "all federal civil actions including claims alleging constitutional violations." *Thompson v. Carter,* No. 00 Civ. 0253, 2002

WL 427750 at *3 (2d Cir. Mar. 19, 2002). Thus, an incarcerated plaintiff, suing over the allegedly unlawful conduct of prison officials, "cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." *Id.* at *4. However, Section 1997e(e) does not limit the availability of nominal damages, punitive damages or injunctive relief. *Id.* at *5.

The only injuries alleged by Cruz are "much mental anguish and a great deal of suffering from worry and grief," (Compl., § IV-A.), which is nothing more than mental or emotional injury. Cruz has not alleged any actual physical injury, nor has he requested punitive damages or injunctive relief. Accordingly, under § 1997e(e) of the PLRA, Cruz's recovery should be limited to nominal damages.

### CONCLUSION

For all of the foregoing reasons, I recommend that:

(1) the motion to dismiss plaintiff's Equal Protection claim against both defendants be granted;

(2) the motion to dismiss plaintiff's First Amendment retaliation claim against defendant Hillman be denied;

(3) the motion to dismiss plaintiff's First Amendment retaliation claim against defendant Lee be granted, with leave to replead;

(4) the motion to dismiss plaintiff's Eighth Amendment claim against both defendants be granted; and

(5) to the extent any claims remain, plaintiff's recovery be limited to nominal damages.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)
(Cite as: 2002 WL 31045864 (S.D.N.Y.))

objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States Courthouse, 500 Pearl Street, Room 2510, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983).

S.D.N.Y.,2002.
Cruz v. Hillman
Not Reported in F.Supp.2d, 2002 WL 31045864 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1999 WL 305515 (N.D.N.Y.)
(Cite as: 1999 WL 305515 (N.D.N.Y.))

**C**  Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
James BARNA and Jason B. Nicholas, Plaintiffs,
v.
Brion D. TRAVIS, Chairperson, New York State Div.
of Parole et al., Defendants.
**No. CIV97CV1146(FJS/RWS).**

April 22, 1999.

James Barna, Wallkill Correctional Facility, Walkill,
Plaintiff Pro Se.

Jason B. Nicholas, Walkill Correctional Facility, Walkill,
Plaintiff Pro Se.

Hon. Eliot Spitzer, Attorney General of the State of New
York, Attorney for Defendants, Department of Law,
Albany, Steven H. Schwartz, Esq., Asst. Attorney General,
of Counsel.

ORDER AND REPORT-RECOMMENDATION

SMITH, Magistrate J.

**\*1** Plaintiffs bring this civil rights action pursuant to 42
U.S.C. § 1983. This case has been referred to the
undersigned for report and recommendation by the
Honorable Rosemary S. Pooler, then United States District
Judge,[FN1] pursuant to 28 U.S.C. Section 636(b) and
N.D.N.Y.L.R. 72.4. Pending before the court is a motion
by the defendants to dismiss plaintiffs' complaint.
Plaintiffs allege violations of both due process and the Ex
Post Facto Clause. Each plaintiff has filed a memorandum
of law in opposition to the motion. For the reasons which
follow, it is recommended that defendants' motion be
granted, dismissing plaintiffs' complaint in its entirety.

FN1. Judge Pooler now serves as a member of
the Second Circuit Court of Appeals. This action
has been reassigned to the Honorable Frederick
J. Scullin, United States District Judge.

*The Underlying Convictions and Sentences*

Plaintiff Barna was sentenced in 1977 following a
conviction for second degree murder and first degree
burglary, for which he received concurrent prison
sentences of fifteen years to life and zero to fifteen years,
respectively. The New York State Division of Parole
considered and denied him parole in 1991, 1993, 1995,
and 1997. Barna's next appearance before the Board is
scheduled for July 1999.

Plaintiff Nicholas was sentenced in 1991 following a
conviction of first degree manslaughter and a youthful
offender crime, for which he received consecutive prison
sentences of five to fifteen years and one and one-third to
four years, respectively. The New York State Division of
Parole considered and denied him parole in 1997.
Nicholas was scheduled to appear before the Board for the
second time in January 1999.

DISCUSSION

*Due Process Claim*

Plaintiffs first allege that defendants systematically deny
parole applicants due process safeguards in parole release
determinations. It is a fundamental principle of
constitutional law that the first inquiry in the analysis of an
alleged due process violation is whether there exists a
protected liberty interest. *Kentucky Dep't of Corrections
v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908,
104 L.Ed.2d 506 (1989). As a predicate to their due
process claim, then, plaintiffs must establish that they
enjoy a protected liberty interest under New York's
statutory scheme for determining whether to grant or deny

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 305515 (N.D.N.Y.)
(Cite as: 1999 WL 305515 (N.D.N.Y.))

an inmate's application for parole (i.e., a legitimate expectation of release).

In 1979, the Supreme Court announced that an inmate is entitled to due process safeguards in parole determinations only when the state's parole provisions create a legitimate expectation of release. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11-13, 99 S.Ct. 2100, 2106-07, 60 L.Ed.2d 668 (1979). The *Greenholtz* Court held that the presence of mandatory language in state parole schemes, directing that an inmate "shall" be released upon a finding that the relevant criteria have been met, creates a presumption that parole release will be granted and thus gives rise to an expectation of release. *Id.* at 12, 99 S.Ct. at 2106. In accordance with the principles set forth in *Greenholtz,* the Second Circuit thereafter held that New York's statutory scheme creates no such expectation because the state's parole provisions "do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist." *Boothe v. Hammock,* 605 F.2d 661, 664 (2d Cir.1979). On the contrary, under New York's scheme, the decision to release is a matter committed to the discretion of the Parole Board.[FN2] N.Y. Exec. Law § 259-i(2)(c) (McKinney Supp.1999). "Decisions that are purely discretionary or ultimately discretionary with the parole authorities do not create a protectible liberty interest ...." *Berard v. State of Vermont Parole Bd.,* 730 F.2d 71, 75 (2d. Cir.1984) (citations omitted). As a result, pursuant to *Boothe,* prisoners in New York state are not entitled to the safeguards afforded by federal due process with respect to parole release determinations.

FN2. New York's statute provides the following:

Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of the crime as to undermine respect for law.

N.Y. Exec. Law § 259-i(2)(c) (McKinney 1993 & Supp.1999).

*2 Until recently, discussion of plaintiffs' due process claim would have concluded with reference to *Greenholtz* and *Boothe.* In 1995, however, the Supreme Court reformulated the liberty interest analysis under which federal courts determine whether state law confers a liberty interest on inmates. *Sandin v. Conner,* 515 U.S. 472, 483, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Under *Sandin,* the presence or absence of mandatory language, while still relevant, is no longer dispositive in determining whether a particular statute gives rise to a protectible liberty interest. *Id.* Rather, the focus of the inquiry should be on the nature of the interest allegedly created by the state. *Id.* State created liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to ordinary prison life." *Id.*

In light of *Sandin,* the validity of the conclusion that New York's parole provisions do not create a protectible liberty interest must be reexamined. Such a reexamination reveals, however, that although *Sandin* changes the analysis, it does not change the result. Even assuming, arguendo, that the "absence of procedural safeguards attending a decision denying an inmate's application for parole is one that 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," ' the discretionary language of New York's parole provisions nonetheless militates against a finding of a protectible liberty interest. *Quartararo v. Catterson,* 917 F.Supp. 919, 963 (E.D.N.Y.1996) (*quoting Sandin,* 515 U.S. at 483, 115 S.Ct. at 2300). Although *Sandin* expressly rejects the approach of drawing negative implications from mandatory language, it does not render language considerations irrelevant to the liberty interest analysis. *See id.* at 964; *see also, Orellana v. Kyle,* 65 F.3d 29, 32 (5th Cir.1995). Given the broad discretion afforded the Parole Board under New York's statutory scheme, *Sandin* does not alter the conclusion that inmates in this state have no legitimate expectation of release. Accordingly, plaintiffs are not entitled to federal due process protection with respect to parole release determinations.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 305515 (N.D.N.Y.)
(Cite as: 1999 WL 305515 (N.D.N.Y.))

Finally, even if New York's parole provisions conferred upon inmates a protectible liberty interest, plaintiffs fail to state a claim against the Parole Board under § 1983. The Second Circuit recently held that Parole Board officials are entitled to absolute immunity from liability for damages under § 1983 for their decisions to grant, deny, or revoke parole. *Montero v. Travis*, No. 98-2063, 1999 WL 163554, at *4 (2d Cir. Mar. 26, 1999).

*Ex Post Facto Claim*

Plaintiffs further allege that the Parole Board's enforcement of the "Pataki policy" to eliminate parole of violent offenders, particularly those convicted of homicide and sex-related offenses, violates their right to be free of ex post facto punishment under Article I, § 10 of the federal Constitution. Plaintiffs do not cite to any specific legislative enactment or measure as having violated the Ex Post Facto Clause. Rather, they allege only that they have been aggrieved by the enforcement of a "policy", one that is both unwritten and unofficial. In other words, the basis of plaintiffs' claim is the purported "get-tough" approach recently adopted by the New York State Parole Board. Assuming, without deciding, that such a "policy" does in fact exist, plaintiffs' claim lacks an arguable basis in law and thus fails.

**\*3** It has long been held that the Ex Post Facto Clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U .S. 37, 43, 110 S.Ct 2715, 2719-20, 111 L.Ed.2d 30 (1990) (*citing Calder v. Bull*, 3 Dall. 386, 391-392 (1798)). In large part, ex post facto jurisprudence centers on whether a particular enactment, measure, or regulation runs afoul of the Clause under that definition. *See e.g., California Dep't of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); *Lee v. Governor of the State of New York*, 87 F.3d 55 (2d Cir.1996).

Although such an inquiry is determinative in many cases, the analysis of plaintiffs' claim begins, and ultimately ends, on a much more fundamental level. Simply stated, the "policy" upon which plaintiffs rely as the basis of their

claim is not a law subject to ex post facto analysis. This is not to say, of course, that a policy can never constitute a law for purposes of the Ex Post Facto Clause. A number of circuit courts have addressed, or at least made reference to, the issue of whether an administrative policy or regulation can be an ex post facto law.[FN3] The focus of the inquiry in those courts has been whether the policy or regulation is binding on the Parole Board, or merely serves as a guideline for the exercise of discretionary decisionmaking. *See e.g., Shabazz v. Gabry*, 123 F.3d 909, 914-915 (6th Cir.1997), *cert denied,* 118 S.Ct. 1061, 140 L.Ed.2d 122 (1998) (finding memoranda and directives not laws for ex post facto purposes); *Hamm v. Latessa*, 72 F.3d 947, 956 n. 14 (1st Cir.1995) (identifying the nature of the inquiry); *Bailey v. Gardebring*, 940 F.2d 1150, 1156-57 (8th Cir.1991) (finding parole regulations merely aid Parole Board in exercise of discretionary authority); *Devine v. New Mexico Dep't of Corrections,* 866 F.2d 339, 343 n. 7 (10th Cir.1989) (finding guidelines that merely channel discretion of Parole Board do not constitute ex post facto laws); *Prater v. United States Parole Comm'n,* 802 F.2d 948, 952-53 (7th Cir.1986) (finding written policies do not qualify as laws for purposes of ex post facto analysis). Under such an analysis, binding regulations fall within the purview of the Clause whereas those that merely function as discretionary guides are not subject to ex post facto review.

FN3. The Second Circuit is not among the courts that have considered this issue.

When viewed in accordance with this distinction, it is clear that the policy relied upon by the plaintiffs in the instant case is not one that is binding on the Parole Board. No official promulgation of the policy, either through legislative mandate or internal directive, requires the Board to follow or adopt it. The Board remains free to ignore the policy if it is so inclined. The most such a policy can be said to do is guide or channel the discretion of the Parole Board, thereby effectively removing it from the reach of the Ex Post Facto Clause. Simply put, this policy does not have the force and character of law necessary to invoke ex post facto analysis.

**\*4** Finally, plaintiff Barna contends that the application of parole guidelines enacted after his 1976 conviction, instead of those in force at the time of his offense,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 305515 (N.D.N.Y.)
(Cite as: 1999 WL 305515 (N.D.N.Y.))

similarly violates the Ex Post Facto Clause. Specifically, Barna asserts that the guidelines now permit consideration of both the seriousness of the offense and the defendant's prior criminal record, two criteria that allegedly worked to his detriment. It is well-established in the Second Circuit, however, that federal parole guidelines are not laws within the meaning of the Ex Post Facto Clause. *Beltempo v. Hadden,* 815 F.2d 873, 875 (2d Cir.1987); *DiNapoli v. Northeast Regional Parole Comm'n,* 764 F.2d 143, 145 (2d Cir.1985). To the extent that *Beltempo* and *DiNapoli* involved the application of federal, rather than state, parole guidelines, such a distinction is one without a difference. Accordingly, Barna cannot establish an ex post facto violation with respect to the application of amended parole guidelines.

CONCLUSION

For the reasons stated above, it is hereby

RECOMMENDED, that defendants' motion to dismiss be granted and that the complaint be dismissed in its entirety.

IT IS HEREBY ORDERED that the Clerk of the Court serve a copy of this Order and Report-Recommendation, by regular mail, upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health & Human Serv.,* 892 F.2d 15, 16 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1999.
Barna v. Travis
Not Reported in F.Supp.2d, 1999 WL 305515 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 1475334 (D.Conn.)
(Cite as: 2005 WL 1475334 (D.Conn.))

**C**  Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Donald R. LEDUC Plaintiff,
v.
James R. TILLEY, et al. Defendants.
**No. 3:05CV157MRK.**

June 22, 2005.

Donald T. LeDuc, Quaker Hill, CT, pro se.

*RULING AND ORDER*

KRAVITZ, J.

**\*1** Plaintiff, Donald LeDuc is confined at the Carl
Robinson Correctional Institution in Enfield, Connecticut.
He brings this 42 U.S.C. § 1983 civil rights action *pro se*
pursuant to 28 U.S.C. § 1915. Mr. LeDuc alleges that his
rights under the Second, Fifth, Eighth and Fourteenth
Amendments were violated when state officials, while
enforcing state statutes, seized and destroyed his
collection of firearms. For the reasons that follow, the
Court dismisses all of Mr. LeDuc's claims.

I.

Mr. LeDuc has met the requirements of 28 U.S.C. §
1915(a) and has been granted leave to proceed *in forma
pauperis* in this action. However, pursuant to 28 U.S.C. §
1915(e)(2)(B), "the court shall dismiss the case at any
time if the court determines that ... the action ... is
frivolous or malicious; ... fails to state a claim on which
relief may be granted; or ... seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C.
§ 1915(e)(2)(B)(i)-(iii). *See Cruz v. Gomez*, 202 F.3d 593,

596 (2d Cir.2000) (dismissal of a complaint by a district
court under any of the three enumerated sections in 28
U.S.C. § 1915(e)(2)(B) is mandatory rather than
discretionary).

In reviewing the complaint, the court "accept[s] as true all
factual allegations in the complaint" and draws inferences
from these allegations in the light most favorable to the
plaintiff. *Cruz*, 202 F.3d at 596. "When an *in forma
pauperis* plaintiff raises a cognizable claim, his complaint
may not be dismissed *sua sponte* for frivolousness under
§ 1915(e)(2)(B)(i) even if the complaint fails to flesh out
all the required details." *Livingston v. Adirondack
Beverage Co.*, 141 F.3d 434, 437 (2d Cir.1998)
(quotations and citations omitted). Dismissal of the
complaint under 28 U.S.C. § 1915(e)(2)(B) is appropriate
only if " 'it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would
entitle him to relief.' " *Id.* at 597 (quoting *Conley v.
Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80
(1957)).

Furthermore, the Second Circuit has recently emphasized
that "*pro se* litigants ... cannot be expected to know all of
the legal theories on which they might ultimately recover.
It is enough that they allege that they were injured, and
that their allegations can conceivably give rise to a viable
claim." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d
Cir.2005). It is up to the district court to determine what
claims a *pro se* plaintiff's complaint could raise, and in
doing so, "the court's imagination should be limited only
by [the plaintiff]'s factual allegations, not by the legal
claims set out in his pleadings." *Id.*

II.

Mr. LeDuc's claims are based on the following facts
alleged in his Complaint. On May 9, 2001, in response to
a harassment complaint made by one of Mr. LeDuc's
co-workers, Defendants Connecticut State Troopers
Weber, Tilley and McWilliams executed search and
seizure and arrest warrants at Mr. LeDuc's home in
Hamden, Connecticut. *See* Compl. [doc. # 1] at 3-3D. Mr.
LeDuc's weapons collection was seized by the Connecticut

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1475334 (D.Conn.)
(Cite as: 2005 WL 1475334 (D.Conn.))

State Police in accordance with section 29-38c of the Connecticut General Statutes, which authorizes the seizure of firearms from a person "pos[ing] a risk of imminent personal injury to himself or herself, or to other individuals," and Mr. LeDuc was arrested for violations of the State's pistol permit regulations. *See id.* at 4-4D. Among the twenty-four weapons seized was a collection of eleven pistols and revolvers valued by Mr. LeDuc at approximately $7,000. *See* Compl. at 4C-4D. Mr. LeDuc values the remaining thirteen firearms at $8,000. *See* Compl. at 3C.

**\*2** From May 9, 2001, until January 4, 2002, Mr. LeDuc was held on bond and his weapons were stored at the Connecticut State Police Barracks for Troop I in Bethany, Connecticut. Mr. LeDuc later pleaded guilty to violating section 29-28 of the Connecticut General Statutes, which requires, among other things, that any holder of a pistol permit notify the authority issuing the permit of any change of address within two business days of the change. *See id.* at 4B. The penalty for violating section 29-28 is set forth in section 29-37(a), which provides that "[a]ny person violating any provision of section 29-28 or 29-31 shall be fined not more than five hundred dollars or imprisoned not more than three years, or both, and any pistol or revolver found in the possession of any person in violation of any said provisions shall be forfeited."

On January 4, 2002, Mr. LeDuc appeared before Connecticut Superior Court Judge Earl Richards for sentencing. As part of his penalty for violating section 29-28, Mr. LeDuc's eleven pistols and revolvers were forfeited to the State. *See* Compl. at 4C. Assistant State's Attorney James Turcotte also asked the court to order the destruction of all twenty-four of Mr. LeDuc's seized weapons. Mr. LeDuc asked that his collection of thirteen firearms valued at $8,000 be transferred in accordance with section 29-38c(e) of the Connecticut General Statutes, which allows "[a]ny person whose firearm or firearms have been ordered seized pursuant to subsection (d) of this section" to "transfer such firearm or firearms in accordance with the provisions of section 29-33 ... to any person eligible to possess such firearm or firearms." Judge Richards denied the request and ordered the entire collection of twenty-four weapons destroyed. Trooper Kennedy then destroyed the weapons in November 2002, in accordance with the Judge Richard's order. *See id.* at 4C.

III.

For the reasons stated below, Mr. LeDuc cannot maintain any of the claims stated in his Complaint based on the facts he has alleged. The Court addresses each claim in turn.

A. Second Amendment

Mr. LeDuc claims that in seizing and destroying his weapons collection, Defendants violated his Second Amendment right to bear arms. *See* Compl. at 4D ("Plaintiff claims that his Second Amendment Right to bear arms was violated ... since the Plaintiff never had any control over the fate of his firearm collection."). However, Mr. LeDuc cannot maintain a Second Amendment claim against Defendants because, as the Second Circuit recently held, " 'the right to keep and bear arms' does not apply against the States" and "is a right only against the federal government." *Bach v. Pataki,* 408 F.3d 75, 84-86 (2d Cir.2005) (citing *Presser v. Illinois,* 116 U.S. 252, 6 S.Ct. 580, 29 L.Ed. 615 (1886)). Mr. LeDuc's Second Amendment claims are asserted only against the State. Indeed, his Complaint is premised entirely upon application of sections 29-28, 29-37 and 29-38c of the Connecticut General Statutes, and it names only state actors as defendants. Because Mr. LeDuc's Second Amendment claims are barred by the Second Circuit's recent decision in *Bach,* the Court dismisses his Second Amendment claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

B. Fourteenth Amendment

**\*3** Next, Mr. LeDuc also makes what the Court liberally construes as a "void for vagueness" due process claim. *See* Compl. at 3F ("Plaintiff claims that his Fourteenth Amendment Right was violated, because [section 29-38c] failed to clarify for the Plaintiff that his firearm would or would not be able to be transferred."). In particular, Mr. LeDuc alleges that Defendants violated his due process rights when they applied section 29-38(c) to him, because the words "may transfer" in the statute are "misleading"

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1475334 (D.Conn.)
(Cite as: 2005 WL 1475334 (D.Conn.))

and "gave the Plaintiff a false hope" that he would be able to transfer his gun collection to another person, "without indicating that the weapons could be taken without any possibility of salvage." Compl. at 3F. Mr. LeDuc cannot maintain a void for vagueness claim based on the facts he has alleged.

The void for vagueness doctrine is rooted in the principle that "[t]he Due Process Clause requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them." *Perez v. Hoblock,* 368 F.3d 166, 174 (2d Cir.2004) (citations and quotation marks omitted). Therein lies the principal problem with Mr. LeDuc's claim: the portion of the Connecticut statute that he identifies as "misleading" does not forbid or proscribe any conduct. To the contrary, section 29-38c(e) simply permits a person in Mr. LeDuc's situation to request transfer of seized firearms to another person; the section itself does not prohibit any conduct. *See United States v. Payden,* 598 F.Supp. 1388, 1396 (S.D.N.Y.1984) (statute that did not prohibit conduct was not proper subject of a vagueness challenge), *rev'd on other grounds,* 759 F.2d 202 (2d Cir.1985). Because Mr. LeDuc does not, and cannot, allege that section 29-38(c)(e) failed to give him notice as to what conduct was "prohibited," the Court dismisses his Fourteenth Amendment claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

C. Fifth Amendment

Mr. LeDuc also asserts that Defendants violated his rights under the takings clause of the Fifth Amendment by requiring forfeiture of his collection of eleven pistols and revolvers, which he values at approximately $7,000, as well as thirteen other firearms which he values at $8,000, without providing him just compensation. *See* Compl. at 3C-3E.

Mr. LeDuc's claim with respect to the pistols and revolvers fails because a statutory forfeiture without compensation is not an unlawful taking under the Fifth Amendment. It is well-established that "if the government acts pursuant to a forfeiture statute, it may seize personal property without compensating the owner." *Redford v. U.S. Dep't of Treas.,*

691 F.2d 471, 473 (10th Cir.1982) (collecting cases). *See also Bennis v. Michigan,* 516 U.S. 442, 452-53, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."). Indeed, courts routinely approve statutory forfeitures of property without compensation. *See, e.g., United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 366, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (approving of statutory forfeiture of firearms where owner was acquitted of criminal charges involving firearms); *United States v. Gaskin,* 364 F.3d 438, 463 (2d Cir.2004) (approving of statutory forfeiture of $16,000 that was intended to be used in a drug offense).

**\*4** As Mr. LeDuc alleges in his Complaint, his pistols and revolvers were destroyed after he pleaded guilty to violating section 29-28. *See* Compl. at 4A. As Mr. LeDuc also recognizes, section 29-37(a) expressly authorizes forfeiture of any pistols or revolvers found in possession of a person who violates the State's pistol permit regulations contained in section 29-28. *See* Compl. at 4D. In those circumstances, Mr. LeDuc cannot maintain a Fifth Amendment takings claim for forfeiture of his pistols and revolvers.

The status of Mr. LeDuc's claim Fifth Amendment claim regarding his remaining eleven firearms is less clear. On the facts as alleged by Mr. LeDuc, the Court is unable to discern what statutory authority, if any, Defendants asserted in requiring forfeiture and destruction of Mr. LeDuc's remaining eleven firearms. Section 29-38c does not appear to authorize the State to hold firearms seized pursuant to that section for more than one year. *See* Conn. Gen.Stat. § 29-38c(d) ("If [after a hearing] the court finds by clear and convincing evidence that the person [whose firearms were seized] poses a risk of imminent personal injury to himself ... or to other individuals, it may order the ... firearms seized pursuant to the warrant issued under subsection (a) of this section continue to be held by the state for a period not to exceed one year.").

However, even assuming that Mr. LeDuc could state a viable takings claim regarding the forfeiture of the remaining eleven firearms, he is nonetheless required to exhaust state remedies before asserting such a claim in this

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1475334 (D.Conn.)
(Cite as: 2005 WL 1475334 (D.Conn.))

Court. *See Williamson County Reg. Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) ("[I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."); *see also San Remo Hotel, L.P. v. City and County of San Francisco,* --- U.S. - - - - , --- S.Ct. ----, ---L.Ed.2d - - - - , 2005 WL 1421451, at *13 (June 20, 2005) (same). In *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375 (2d Cir.1995), the Second Circuit recognized that the Connecticut Constitution contains "a straight forward takings clause" and required a plaintiff, like Mr. LeDuc, to seek compensation under the State's Constitution before bringing a federal takings claim. *Id.* at 380 ("So long as a remedy potentially is available under the state constitution's provision, [plaintiff] has not yet met the preconditions for a valid takings claim."). Mr. LeDuc has not stated or suggested anywhere in his Complaint that he has satisfied this exhaustion requirement. The Complaint does contain an allegation that Mr. LeDuc filed a claim for property loss with Connecticut's Claims Commissioner. *See* Compl. at 6. However, he does not allege that his claim has been fully and finally adjudicated as is required by the Second Circuit. Unless and until Mr. LeDuc exhausts his state remedies, any federal takings claim he might have is not yet ripe, and this Court lacks subject matter jurisdiction over it. *See Warboys v. Proulx,* 303 F.Supp.2d 111, 117 (D.Conn.2004) (dismissing plaintiff's federal takings claim as unripe for failure to exhaust state remedies).

**\*5** Accordingly, the Court dismisses Mr. LeDuc's Fifth Amendment claims regarding forfeiture of his pistols and revolvers pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and dismisses Mr. LeDuc's Fifth Amendment claim regarding his remaining firearms as unripe. The Court will provide Mr. LeDuc an opportunity to amend his Complaint to address the latter defect if he has basis in fact to assert that he has satisfied exhaustion requirements.

### D. Eighth Amendment

Finally, Mr. LeDuc asserts an Eighth Amendment claim challenging his conviction, the length of his sentence, and the forfeiture of his weapons. First, Mr. LeDuc alleges that "his Eighth Amendment Right of the U.S. Constitution" was violated when "the penalty provided for violation of [section] 29-28 as stated in [section] 29-37 resulted in a felony conviction and a prison term which was far too harsh and wildly disproportionate for the Plaintiff's act of failing to notify CT State Police of an address change." Compl. at 4C. Based on the facts that he has alleged, Mr. LeDuc cannot maintain an Eighth Amendment claim under § 1983 regarding his conviction or the length of his sentence. It is well-established that:

[W]here a judgment in favor of the plaintiff would necessarily implicate the validity of the plaintiff's conviction or the length of his sentence, a cause of action under section 1983 is not cognizable unless the plaintiff can show that his underlying "conviction or sentence had been reversed on direct appeal, declared invalid by a state tribunal authorized to make such a determination, or called into question by the issuance of a federal writ of habeas corpus."

*Torres v. Stewart,* 263 F.Supp.2d 463, 467 (D.Conn.2003) (quoting *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). Mr. LeDuc has not alleged that his conviction or sentence has been reversed. Because Mr. LeDuc's claim is precisely the kind of claim that *Heck* bars, the Court dismisses Mr. LeDuc's Eighth Amendment claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) insofar as he challenges his conviction and the length of the sentence he received.

Mr. LeDuc also asserts that the forfeiture of his weapons collection violated the Excessive Fines provision of the Eighth Amendment. *See* Compl. at 3E ("by the actions of the Defendants, [Plaintiff's] ... Eighth Amendment (excessive fines shall not be imposed) ... Rights of the U.S. Constitution were violated."); *id.* at 4C (same). The Supreme Court has held that a forfeiture could violate the Excessive Fines clause of the Eighth Amendment if the forfeiture was "grossly disproportionate to the gravity of the offense" for which forfeiture was found appropriate. *United States v. Bajakajian,* 524 U.S. 321, 333, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). This principle applies to both criminal and civil forfeitures. *See, e.g., Austin v. United States,* 509 U.S. 602, 610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *United States v. Collado,* 348 F.3d 323, 328 (2d Cir.2003).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

For three reasons, the Court entertains considerable doubt whether Mr. LeDuc has stated a viable Eighth Amendment claim under the Excessive Fines clause. First, the Court questions whether Mr. LeDuc's § 1983 action concerning the forfeiture of his firearms is actually an indirect attack on his underlying criminal sentence. *See Jordan v. Appeldorn,* No. Civ. A. 00-1717, 2000 WL 1100786, at *4 n. 6 (E.D.Pa. Aug.1, 2000). If it is, then this claim would also appear to be barred by *Heck.* Second, while the Court does not discount Mr. LeDuc's personal sense of loss over the forfeiture and destruction of Mr. LeDuc's pistols and revolvers pursuant to section 29-37, it seems unlikely that forfeiture of eleven pistols and revolvers with a total value of approximately $7,000 is "grossly disproportionate" to the gravity of his offense within the meaning of the relevant case law. *See Bajakajian,* 524 U.S. at 333-38;*United States v. 32 Medley Lane,* --- F.Supp.2d ----, 2005 WL 1341135, at *5-*6 (D.Conn. May 31, 2005). Third and finally, with respect to Mr. LeDuc's remaining firearms, the Court questions whether the forfeiture of these firearms constitutes punishment. A forfeiture is subject to the Excessive Fines clause only if "it is punishment." *Austin,* 509 U.S. at 609-10. Putting aside the question of whether the State was authorized to require forfeiture of firearms seized pursuant to Conn. Gen.Stat. § 29-38c, the language of that provision suggests a non-punitive purpose.

***6** Nevertheless, the Court need not at this time decide these issues, because as the Court explains below, there are other defects in Mr. LeDuc's Eighth Amendment claims that require dismissal.

1. State Trooper Defendants

The Court dismisses Mr. LeDuc's Eighth amendment claim against all five state troopers named in his Complaint because Mr. LeDuc has not alleged that they were personally involved in imposing an excessive fine on him. "[A]bsent personal involvement, an individual defendant cannot be liable under § 1983." *Atkins v. County of Orange,* No. 01 CIV. 11536(WCC), --- F.Supp.2d ----, 2005 WL 1330962, at *14 (S.D.N.Y. Jun.3, 2005). Indeed, Mr. LeDuc's Complaint is completely devoid of any allegation that any of the five state troopers he has named as defendants played any role in imposing a forfeiture of his firearms, the act that Mr. LeDuc claims constituted an excessive fine.

The Court notes in particular that while Mr. LeDuc has alleged that State Trooper Kennedy was involved in the *destruction* of Mr. LeDuc's firearms, he has not alleged that Trooper Kennedy was involved in the *forfeiture* of those firearms. *See* Compl. at 3C-3D, 3F. "The Excessive Fines Clause ... limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Bajakajian,* 524 U.S. at 328. The forfeiture of Mr. LeDuc's firearms occurred when Judge Richards ordered the weapons forfeited (and denied Mr. LeDuc's request to transfer them). Mr. LeDuc has not alleged that Trooper Kennedy was involved in any manner in Judge Richards' decision to order forfeiture of the weapons. Instead, his sole allegation is that Trooper Kennedy carried out the state court's order that the firearms, having been forfeited, be destroyed. *See* Compl. at 3C-3D, 3F. Therefore, on the facts as alleged in Mr. LeDuc's complaint, Trooper Kennedy could not have violated Mr. LeDuc's Eighth Amendment right under the Excessive Fines clause.

Accordingly, the Court dismisses Mr. LeDuc's Eighth Amendment excessive fines claim against State Troopers Tilley, Webster, Williams, Matson and Kennedy pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[FN1]

FN1. Parenthetically, the Court also notes that even if Mr. LeDuc had stated a viable claim against Trooper Kennedy, as a state officer, Trooper Kennedy is also immune from any suit for damages against him in his official capacity because he is a state officer. Therefore, any claims for money damages against Trooper Kennedy in his official capacity are hereby dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii). *See Huminski v. Corsones,* 396 F.3d 53, 70 (2d Cir.2005) (state officials acting in their official capacity are not "persons" for purposes of § 1983). Trooper Kennedy would also likely be entitled to qualified immunity on any individual capacity claims. A state official is entitled to qualified immunity when the official has an objectively reasonable basis for believing in the lawfulness of his actions. *See Connecticut v. Crotty,* 346 F.3d 84, 101-02 (2d Cir.2003).

Not Reported in F.Supp.2d, 2005 WL 1475334 (D.Conn.)
(Cite as: 2005 WL 1475334 (D.Conn.))

Reliance on a presumptively valid court order and statute would ordinarily be sufficient to satisfy this requirement. *Id.*

### 2. Judge Richards

The Court also dismisses all of Mr. LeDuc's claims against Judge Earl Richards. A judge is absolutely immune for all claims for damages relating to actions taken in his judicial capacity, whether sued in his individual or official capacity. Mr. LeDuc's allegations against Judge Richards, the state court judge who sentenced Mr. LeDue, exclusively concern the orders he issued in Mr. LeDuc's criminal case, acts that unquestionably performed in the course of Judge Richards' judicial duties. Therefore, Judge Richards is absolutely immune from Mr. LeDuc's claim for damages arising from Judge Richards' actions in Mr. LeDuc's criminal case. *See Cruz v. Superior Court Judges, No. 3:04CV1103 (CFD), 2005 WL 677282,* at *3 (D.Conn. Mar.21, 2005) (citing *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). "Although unfairness and injustice to a litigant may result" due to this rule, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles,* 502 U.S. at 9 (quotation marks and citations omitted). Accordingly, all claims for damages asserted in the Complaint against Judge Richards are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

*7 Judges are also immune from civil rights claims for injunctive relief based on actions taken in their judicial capacities, unless "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983, *amended by* Federal Courts Improvement Act of 1996, § 309(c), Pub.L. No. 104-317, 110 Stat. 3847, 3853 (1996). Mr. LeDuc has not alleged that any declaratory decree was violated or that declaratory relief was unavailable. Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order. *See Salem v. Paroli,* 260 B.R. 246, 254 (S.D.N.Y.2001) (dismissing § 1983 claim for injunctive relief against judge because declaratory relief was available through appeal in state court); *Hultberg v. State,* No. CIV. A. 97-3577, 1998 WL 30288, at *6

(E.D.La. Jan.28, 1998) (same). Mr. LeDuc has not alleged any facts suggesting that he was unable to take an appeal of Judge Richards' order requiring forfeiture of his weapons. Accordingly, the Court dismisses Mr. LeDuc's claims for injunctive relief against Judge Richards pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

Finally, Mr. LeDuc also seeks a "declaratory judgment" from the Court that "Plaintiff's ... Eighth ... Amendment Rights of the U.S. Constitution were violated by the actions of any and/or some and/or all of the above named Defendants." The doctrine of judicial immunity does not shield judges from claims for prospective declaratory relief. *See, e.g., Davidson v. Garry,* 956 F.Supp. 265, 268 (E.D.N.Y.1996). Nevertheless, the Court must dismiss Mr. LeDuc's claim for declaratory relief against Judge Richards, because any prospective declaratory relief he could conceivably assert is now moot. *See Alexander v. Yale Univ.,* 631 F.2d 178, 183 (2d Cir.1980) ("A party's case or controversy becomes moot ... when it becomes impossible for the courts, through exercise of their remedial powers, to do anything to redress the injury."). The forfeiture order does not constitute an ongoing violation; nor does Mr. LeDuc allege that he will be subject to a similar injury in the future. Therefore, Mr. LeDuc's injury is not one that the Court can redress through a prospective declaratory judgment. *See Stack v. City of Hartford,* 170 F.Supp.2d 288, 293 (D.Conn.2001) (" 'A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show that he or she will be injured in the future.' ") (quoting *Deshawn E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998)).

In essence, Mr. LeDuc's claim for declaratory relief is really a retrospective claim because rather than seeking relief for a future or ongoing violation, his claim is "intertwined with [his] claim for money damages," for it asks the Court to "declare whether a past constitutional violation occurred." *Nat'l Audubon Soc. v. Davis,* 307 F.3d 835, 848 n. 5 (9th Cir.2002) (citing *F.E.R. v. Valdez,* 58 F.3d 1530, 1533 (10th Cir.1995)). However, as the Court has explained, a claim for retrospective relief does not lie against Judge Richards. *See Ippolito v. Meisel,* 958 F.Supp. 155, 165 (D.Conn.1997) ("[T]he courts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs."). Accordingly, the Court dismisses Mr. LeDuc's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 1475334 (D.Conn.)
(Cite as: 2005 WL 1475334 (D.Conn.))

Eighth Amendment claim for declaratory relief.

### 3. State's Attorney Turcotte

**\*8** Mr. LeDuc's damages claim against Assistant State's Attorney James Turcotte (in both his official and individual capacity) is similarly barred by the doctrine of absolute prosecutorial immunity. "It is well established that prosecutors have absolute immunity from a civil suit for damages under 42 U.S.C. § 1983 when engaged in activities that are 'intimately associated with the judicial phase of the criminal process' " such as initiation of a prosecution and presentation of the government's case. Root v. Liston, 363 F.Supp.2d 190, 193 (D.Conn.2005) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). This is because "[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." Mangiafico v. Blumenthal, 358 F.Supp.2d 6, 14 (D.Conn.2005) (citing Imbler, 424 U.S. at 424-25). Mr. LeDuc's allegations against Assistant State's Attorney Turcotte relate exclusively to actions taken in the course of prosecuting the State's case against Mr. LeDuc. See Compl. at 3B ("States Attorney James Turcotte asked the Court to order the Plaintiff's seized firearms destroyed."). Accordingly, all claims for damages asserted in the Complaint against Assistant State's Attorney Turcotte are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

In addition to his damages claims, Mr. LeDuc also seeks declaratory and injunctive relief against State's Attorney Turcotte. Unlike claims for damages, the doctrine of prosecutorial immunity does not shield prosecutors from claims for prospective injunctive or declaratory relief. See, e.g., Nicholson v. Williams, 203 F.Supp.2d 153, 246 (E.D.N.Y.2002). Nevertheless, Mr. LeDuc's claim for declaratory relief against State's Attorney Turcotte is dismissed, because as explained in Part III.D.2, supra, the only declaratory relief that Mr. LeDuc seeks is retrospective rather than prospective.

By contrast, Mr. LeDuc's claim for injunctive relief requesting that the Court "impose an injunction to repeal" certain state statutes does seek prospective relief. Compl.

at 7, 7B. However, as stated, Mr. LeDuc's request is not one upon which relief can be granted. Putting aside whether the Court could ever actually order such relief [FN2]-a matter that is very doubtful-it is clear that State's Attorney Turcotte does not have the authority to repeal state statutes. Nor, for that matter, do any of the defendants that Mr. LeDuc has sued. Therefore, even if the Court were inclined and able to order repeal of the statutes, the Court could not order such relief against State's Attorney Turcotte or any other defendants named in this lawsuit.

> FN2.Rial v. McGinnis, 756 F.Supp. 1070, 1072 (N.D.Ill.1991) (Shadur, J.) (noting that the principles of federalism and of the separation of powers would likely preclude the ability of the court to grant such a "bizarre" prayer for relief).

However, the Court's inquiry does not end here, because construed liberally, Mr. LeDuc's Complaint could also be read to request the Court to enjoin the remaining defendants from enforcing sections 29-37 and 29-38c of the Connecticut General Statues in the future. Even so construed, the Court would still be unable to grant Mr. LeDuc's request, because he lacks standing to assert a claim for such "preventative" injunctive relief. In Lyons v. City of Los Angeles, 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Supreme Court held that a plaintiff lacked standing to pursue prospective injunctive relief where he failed to allege a real and immediate threat of harm at the hands of the defendant. Past harm, the Supreme Court explained, was insufficient to establish standing. See Lyons, 461 U.S. at 106;Ward v. Murphy, 330 F.Supp.2d 83, 98 (D.Conn.2004) (same).

**\*9** Mr. LeDuc's Complaint deals exclusively with past harm. He has not alleged anywhere in his Complaint that there is a likelihood that he will again be required to forfeit weapons to the State. Indeed, the possibility that Mr. LeDuc will again be required to forfeit his pistols and revolvers pursuant to section 29-37, or any other provision, seems remote at best given the allegations of the Complaint. For having been convicted of a felony, Mr. LeDuc is no longer eligible to lawfully obtain pistols and revolvers under Connecticut law. SeeConn. Gen.Stat. § 29-28. In fact, Mr. LeDuc is no longer lawfully eligible to obtain any firearm that has traveled through interstate

Not Reported in F.Supp.2d, 2005 WL 1475334 (D.Conn.)
(Cite as: 2005 WL 1475334 (D.Conn.))

commerce under federal law. *See* 18 U.S.C. § 922(g)(3). In the absence of any allegations to the contrary, therefore, the Court concludes that the possibility that Mr. LeDuc will again be subject to the forfeiture provisions of section 29-37 or section 29-38c is speculative at best. Accordingly, the Court dismisses without prejudice Mr. LeDuc's claims for prospective injunctive relief against State's Attorney Turcotte pursuant to 28 U.S.C. § 1915(e)(2)(B).

IV.

At this juncture, the Court has dismissed without prejudice all claims set forth in Mr. LeDuc's Complaint. The Court will allow Mr. LeDuc an opportunity to remedy the defects identified by the Court-if possible. Mr. LeDuc shall file any amended complaint on or before July 22, 2005. Mr. LeDuc must also deliver the appropriate service and summons forms as well a copies of the amended complaint to the U.S. Marshals Service so that they may serve any defendants named in the Amended Complaint on or before July 22, 2005.

Failure to comply with this order will result in dismissal of Mr. LeDuc's entire lawsuit, which was filed on January 27, 2005, for failure to serve defendants within 120 days of filing the complaint pursuant to Rule 4(m) of the *Federal Rules of Civil Procedure*.

IT IS SO ORDERED.

Dated at New Haven, Connecticut on: *June 21, 2005.*

D.Conn.,2005.
LeDuc v. Tilley
Not Reported in F.Supp.2d, 2005 WL 1475334 (D.Conn.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Norris J. McLAURIN, Plaintiff,
v.
David A. PATERSON, Governor of New York State, et
al., Defendants.
**No. 07 Civ 3482(PAC)(FM).**

Aug. 11, 2008.

*ORDER*

Honorable PAUL A. CROTTY, District Judge.

**\*1** In this action brought pursuant to 42 U.S.C. § 1983,
*pro se* Plaintiff Norris J. McLaurin alleges that, by
denying him parole, Defendants [FN1] violated his
constitutional rights under the Due Process and Equal
Protection Clauses of the Fourteenth Amendment and the
Ex Post Facto Clause of Article I of the United States
Constitution. The motion was referred to Magistrate Judge
Frank Maas, who issued a 35-page Report and
Recommendation ("R & R") dated June 12, 2008 in which
he recommended that the Court grant Defendants' motion
to dismiss. McLaurin filed timely objections. Upon careful
consideration, the Court adopts the R & R-noting one
non-dispositive correction-and grants Defendants' motion
to dismiss.

> FN1. The Amended Complaint names as
> Defendants: former Governors of New York
> George E. Pataki and Eliot Spitzer; the New
> York State Division of Parole and its former and
> current Chairmen, Robert Dennison and George
> Alexander, respectively; and twelve individuals
> alleged to be Parole Commissioners or Parole
> Officers. McLaurin sued Pataki, Spitzer, and
> Dennison solely in their official capacities.

(Am.Compl.¶¶ 7, 9.) Per Federal Rule of Civil
Procedure 25(d)(1), David A. Paterson, the
current governor of New York, is substituted for
Pataki and Spitzer, and Alexander is substituted
for Dennison.

**The Magistrate Judge's Report and Recommendation**

In his R & R, Magistrate Judge Maas provided a
comprehensive summary of the factual and procedural
history bearing on McLaurin's claims, including an
exhaustive analysis of his various parole hearings. It need
not be repeated here.

Magistrate Judge Maas specifically found the following:

(1) that any claims that accrued before March 12, 2004,
including those related to McLaurin's 2001 and 2003
parole hearings, are time-barred (R & R 16);

(2) that claims against the Division of Parole must be
dismissed because it does not qualify as a "person"
under Section 1983 (R & R 17);

(3) that the Parole Board denied McLaurin parole in 2006
and 2007 in an appropriate and legitimate exercise of its
discretion and upon due consideration of McLaurin's
criminal record, his institutional adjustment, his future
plans, and the recommendation of the sentencing judge
(R & R 20-25);

(4) that the Amended Complaint does not plausibly allege
an unofficial statewide policy of denying parole for
prisoners sentenced under recidivist statutes on the basis
of their criminal history (R & R 25-28);

(5) that the State has a rational basis for distinguishing
between persistent and non-persistent offenders in
making parole determinations (R & R 28-29);

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

(6) that McLaurin cannot challenge a hypothesized unofficial State policy by which the Parole Board automatically denies parole for violent felony offenders because the challenged policy is not a "law" within the scope of the Ex Post Facto Clause (R & R 30-32); and

(7) that, insofar as McLaurin challenges the application of provisions of the Sexual Offender Registration Act ("SORA"), N.Y. Correct. Law § 168 *et seq.* as a violation of the Ex Post Facto Clause, his claim is not ripe for review (R & R 33).

**Applicable Law**

In evaluating the report and recommendation of a magistrate judge, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the magistrate judge's recommendations, the court is required to review the contested portions *de novo. See Pizarro v. Bartlett* 776 F.Supp. 815, 817 (S.D.N.Y.1991). For uncontested portions of the report and recommendation, the court need only review the face of the record for clear error. *See Wilds v. United Parcel Serv., Inc.,* 262 F.Supp.2d 163, 169 (S.D.N.Y.2003).

**McLaurin's Objections**

**\*2** By his letter to the Court dated June 23, 2008, McLaurin interposed objections "to each and every part" of Magistrate Judge Maas's R & R. (Plaintiff's Objections to the Magistrate's Report and Recommendation ("Obj.") 1). He supplemented these objections in a June 30, 2008 letter styled "Plaintiff's Addendum to Objections" ("Addendum"). McLaurin specifically objects that:

1. as a general matter, Magistrate Judge Maas improperly considered and relied on evidentiary materials beyond the scope of the complaint and failed to construe the allegations in light most favorable to McLaurin (Obj.1-2);

2. the R & R mistakenly states that his 1979 conviction for attempted possession of prison contraband was a felony (Obj.2-3);

3. the R & R improperly finds that the Parole Board could consider separately his three offenses for robbery in 1979, even though they constituted a single conviction for sentencing purposes (Obj.3-5);

4. Magistrate Judge Maas improperly glossed over Defendants' failure to consider the sentencing judge's statements and the inaccuracies regarding those statements contained in his Inmate Status Report (Obj.5-6);

5. his Ex Post Facto claims pertaining to the application of SORA requirements are ripe for review (Obj.6-8);

6. Magistrate Judge Maas improperly denied him an opportunity to depose a former parole commissioner whose testimony might have been relevant to his failure to train claim (Obj.8-9);

7. the R & R improperly categorizes his deliberate indifference allegations as a *Monell* claim (Obi.9-11);

8. the Parole Board committed procedural errors resulting in a deprivation of due process (Obj.11-13);

9. he should be allowed to submit evidence to support his claim that parole is foreclosed by an unofficial state policy barring discretionary parole decisions (Obj.13-16);

10. he has properly alleged a viable equal protection claim (Obj.16);

11. the R & R failed to address his claim that he was labeled a discretionary sex offender in violation of his due process rights (Addendum 2-4); and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

12. Magistrate Judge Maas refused to permit further discovery of his claims despite his express statement to the contrary in a telephonic conference on May 29, 2008 (Addendum 4-5).

Where objections to an R & R simply reiterate the same arguments in the original pleadings, a district court need only review for clear error. *Edwards v. Fischer,* 414 F.Supp.2d 342, 346-47 (S.D.N.Y.2006) (citing *Vega v. Artuz,* No. 97 Civ. 3775(LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). McLaurin's objections numbered 4, 5, 8, and 10 above are merely a replay of old arguments heard and decided by Magistrate Judge Maas. With respect to these objections, the Court reviews the recommendations of the Magistrate Judge for clear error. Having found no clear error, the Court adopts the Magistrate Judge's recommendations in full in regard to these claims.

This Court reviews the remaining objections *de novo.*

**Objections 1 & 12:**

**\*3** Magistrate Judge Maas evaluated whether to convert Defendants' motion for summary judgment. (R & R 13 n. 7.) In the end, he concluded that the additional materials submitted for his consideration-McLaurin's Parole Board decisions, Inmate Status Reports related to his Parole Board appearances, and transcripts of his interviews-were either incorporated by reference in McLaurin's Amended Complaint or integral thereto. (R & R at 13-14 n. 7.) In light of these findings, Magistrate Judge Maas did not err in barring additional discovery, regardless of his representations of May 29, 2008.

**Objections 2 & 3:**

The Court notes one correction to the R & R: McLaurin's 1979 conviction for attempted possession of prison contraband was a misdemeanor rather than a felony. (*See* R & R 22 & n. 10.) Thus, McLaurin has been convicted of seven, not eight, felonies. However, this correction does not change the analysis, because Magistrate Judge Maas allowed for the possibility that the Parole Board made

procedural errors. (R & R at 23 ("[E]ven if the Court were to assume that the Defendants committed one or more of the proceedural errors alleged in the Amended Complaint, ... [the] decisions regarding McLaurin were not made in an arbitrary manner or for impermissible reasons.))

McLaurin's next objection-that his three 1979 robbery offenses should qualify as a single conviction for parole purposes-is also unpersuasive. While, pursuant to N.Y. Penal Law § 70.08, these offenses were considered a single conviction at the time of sentencing, *see McLaurin v. Kelly,* No. 94 Civ. 1560(RSP)(GJD), 1998 WL 146282, at *1 (N.D.N.Y. Mar. 27, 1998) (approving Report & Rec. of DiBianco, Mag. J.), the statutory scheme is not addressed to parole procedures and is therefore irrelevant to the present discussion. (*See* R & R 22 n. 10.)

**Objection 6:**

The R & R refers to the comments of a Commissioner Manley, regarding his lack of training and the general practices of the Parole Board. (R & R 23 n. 11.) Magistrate Judge Maas denied McLaurin an opportunity to depose Manley, however, noting that Manley did not participate in McLaurin's 2006 or 2007 hearings. (R & R 23 n. 11.) McLaurin now objects that, as Manley did preside over his 2005 hearing, his testimony might be relevant to the alleged lack of supervision and training at that hearing. (Obj.9.) However, McLaurin already received a *de novo* hearing in 2006 based on the improper procedures undertaken by the Parole Board in 2005. (*See* R & R 5, 21.) McLaurin does not indicate any other relief to which he might be entitled to redress rights violated in the 2005 hearing. Accordingly, Magistrate Judge Maas did not err in refusing to allow Manley's deposition.

**Objections 7 & 9:**

Insofar as the Court agrees with Magistrate Judge Maas that the Parole Board appropriately applied its discretion and evaluated all relevant considerations in assessing McLaurin's requests for parole, McLaurin's other objections to the dismissal of his due process claims-i.e., the failure to train and/or supervise board members, the deliberate indifference of specific Division of Parole

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

employees, and the existence of an unofficial statewide policy barring the Parole Board's exercise of discretion-are foreclosed.

**Objection 11:**

**\*4** Finally, Magistrate Judge Maas did not err in failing to construe McLaurin's allegations concerning the application of SORA requirements (Am.Compl.¶ 19(g)) as raising a due process claim. In his memorandum opposing the motion to dismiss, McLaurin addresses his SORA-based claims under the heading "The Amended Complaint States Viable Ex Post Facto Claims" (Pl.'s Mem. 22-24), which is set off entirely from his discussion of due process claims (Pl.'s Mem. 12-21). Moreover, the same logic applies whether McLaurin's claim is addressed to ex post facto or due process concerns: the claim is not ripe for review because the SORA conditions have not been applied to McLaurin. (*See* R & R 33.)

**Conclusion**

For the foregoing reasons, the R & R issued by Magistrate Judge Maas is adopted in full, allowing for the single correction addressed above. McLaurin's objections to the R & R are DENIED. Defendants' motion to dismiss the Amended Complaint in its entirety is GRANTED. The Clerk of the Court is directed to terminate the present motion and close this case.

SO ORDERED.

NORRIS J. MCLAURIN,

Plaintiff,

-against-

GEORGE PATAKI, former Governor of New York State, *et al.,*

Defendants.

**REPORT AND RECOMMENDATION TO THE HONORABLE PAUL A. CROTTY**

FRANK MAAS, United States Magistrate Judge.

I. *Introduction*

In this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, plaintiff Norris J. McLaurin ("McLaurin"), an inmate at the Mid-Orange Correctional Facility, claims that the denial of his requests for parole violated his constitutional rights. As a consequence, he seeks declaratory and injunctive relief against George E. Pataki ("Pataki") and Eliot S. Spitzer ("Spitzer"), two former Governors of the State of New York;[FN1] Robert Dennision ("Dennision"), the former Chairman of the New York State Division of Parole ("Division of Parole" or "Division"); George Alexander ("Alexander"), the current Chairman of the Division; twelve individuals alleged to be Parole Commissioners or Parole Officers ("Parole Board" or "Board"); and the Division of Parole (collectively, the "Defendants").

> FN1. Spitzer was named as the "Governor of New York." Since he was sued in his official capacity, David A. Paterson ("Paterson"), the current Governor, must be substituted as the defendant pursuant to Fed.R.Civ.P. 25(d).

The Defendants have now moved to dismiss the amended complaint ("Amended Complaint" or "Am. Compl.") pursuant to Rules 12(b) (1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that this motion be granted.

II. *Background*

A. *Facts*

Construing McLaurin's Amended Complaint and his other

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

papers in the light most favorable to him, the relevant facts may be summarized as follows:

1. *Underlying Crime and Sentence*

On October 16, 1991, McLaurin robbed a bank in Binghamton, New York, threatening the tellers and customers with what appeared to be a firearm. (Ex. F at 2).[FN2] During the course of the incident, McLaurin herded his victims into the teller area and directed them to get on the ground; he also assaulted one of the tellers. (Exs. A at 1-2, C at 5). The police apprehended McLaurin shortly after he exited the bank and found a toy cap gun on his person. (Ex. F at 2). On April 2, 1992, he pleaded guilty to the Class D Felony of Attempted Robbery in the Second Degree before Broome County Court Judge Patrick Mathews, who subsequently sentenced him, as a persistent violent felony offender, to a prison term of ten years to life. (Am.Compl.¶ 20).

FN2. "Ex. ___" refers to the exhibits annexed to the Declaration of Assistant Attorney General Neil Shevlin, dated Nov. 19, 2007.

**\*5** After the Appellate Division, Third Department, upheld his sentence, McLaurin filed a federal habeas corpus proceeding in the United States District Court for the Northern District of New York. On March 27, 1998, the Honorable Rosemary S. Pooler, then a District Judge, held that because McLaurin was sentenced simultaneously for three 1979 robbery convictions, they could be counted as only one conviction for purposes of determining whether he was a persistent violent felony offender. *McLaurin v. Kelly,* No. 93 Civ. 1560(RSP)(GJD), 1998 WL 146282, at \*1, 7 (N.D.N.Y. Mar. 27, 1998) (approving Report & Rec. of DiBianco, Mag. J.). Judge Pooler therefore directed that McLaurin be resentenced, but observed that nothing would preclude the state court from considering "McLaurin's prior conviction for first degree sexual abuse" as a basis for adhering to its prior determination that he was a persistent violent felony offender.[FN3]*Id.* at \*2.

FN3. In addition to his three "simultaneous" robbery convictions in 1979, McLaurin had prior felony convictions for sexual abuse in the first

degree, attempted possession of prison contraband in the first degree, robbery in the third degree, and conspiracy in the fourth degree. (Ex. A at 3-4). He also had been adjudicated a youthful offender in connection with an attempted robbery in 1972. (*Id.* at 3).

Perhaps not surprisingly, when Judge Mathews resentenced McLaurin, he again found that McLaurin was a persistent violent felony offender, and sentenced him to the term often years to life in prison that he previously had imposed. (Am.Compl.¶ 23). Significantly, during the resentencing proceeding, Judge Mathews addressed the issue of McLaurin's parole eligibility, stating:

I think it's a shame. I've had a lot of time to interact with you over the years and if one thing steps forward, it's clearly that you're an intelligent man, very intelligent, and unquestionably you wasted so many years of your life. I have the hope that you will, when you are released, turn to productive legal endeavors, and I believe you can make it.... Notwith-standing the convictions in this particular case, [or] the nature of the crimes, I still am willing to state on the record that *I think that you should be considered by parole at the earliest possible release date* because I think that you have learned your lesson.

(Am. Compl. Attach, at 4-5) (emphasis added).

2. *Parole Hearings and Other Proceedings from 2001 to 2005*

McLaurin first became eligible for parole in August 2001, at which time the Board denied his request for release without considering Judge Mathews' sentencing recommendation. (Am.Compl.¶ 25). In August 2003, McLaurin again was denied release by the Board. (*Id.* ¶ 26). He challenged this determination by filing an Article 78 proceeding in Supreme Court, Orange County, in which he argued that the Parole Board had violated New York law by failing to consider Judge Mathews' recommendation. (*Id.* ¶ 29). On October 28, 2004, that court held that McLaurin was entitled to a *de novo* parole hearing because of the Parole Board's failure to take into

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

account the resentencing minutes. (*Id.* ¶ 30). The Board appealed this determination. (*Id.* ¶ 31).

While the Board's appeal was pending, McLaurin had another parole hearing on August 16, 2005, at which time McLaurin's request for release on parole was once again denied without any consideration of the resentencing minutes. (*Id.* ¶¶ 33-34). Thereafter, on March 14, 2006, the Appellate Division, Second Department, affirmed the decision granting McLaurin's Article 78 petition. As the Appellate Division explained, Judge Mathews' statement constituted a "sentencing recommendation" which the Parole Board was "required to obtain and consider" prior to making its parole determination. *McLaurin v. N.Y. State Bd. of Parole,* 27 A.D.3d 565, 566 (2d Dep't 2006). The Division of Parole therefore was directed to retrieve McLaurin's resentencing minutes and conduct a *de novo* hearing. *Id.* at 565.

3. *2006 De Novo Parole Hearing*

**\*6** On October 17, 2006, McLaurin made a fourth appearance before three parole commissioners for the *de novo* hearing directed by the Appellate Division. (Am.Compl.¶ 39). Although the Board had obtained the resentencing minutes containing Judge Mathews' recommendation and placed them in McLaurin's file in advance of the hearing, (Ex. D), the Inmate Status Report (a cover sheet furnished to the commissioners) still indicated inaccurately that there was no official statement from the sentencing judge. (Am.Compl.¶ 38). Despite this error, Commissioner Ferguson expressly noted during the hearing that the sentencing minutes were part of McLaurin's folder and that "even the resentencing judge indicated he noticed [McLaurin's] level of intelligence." (Ex. E at 5, 9). The Board nevertheless denied McLaurin's request for parole, explaining that:

After a review of the record, interview, and sentencing minutes, the pan el has determined that if released at this time there is a reasonable probability that you would not live and remain at liberty without again violating the law and your release would be incompatible with the welfare of society and would so deprecate the serious nature of the crime as to undermine respect for the law. This decision is based on the following factors: Your

instant offense is attempted robbery 2nd in which you entered a bank and displayed what appeared to be a firearm during the robbery. Your criminal history is extensive and dates back to a 1972 youthful offender, includes sex abuse, eight felonies, five of which are robberies, multiple prior prison terms and community supervision. Note is made of your programming, sincere remorse and eight years of clean disciplinary record. While the Board notes your markedly improved attitude you have clearly led the life [of] a violent career criminal. You pose a risk to society. Parole is denied.

(*Id.* at 2).

McLaurin appealed this decision to the Division of Parole Appeals Unit, which apparently failed to render any decision. (Am.Compl.¶ 41).

4. *2007 Parole Hearing*

On August 22, 2007, McLaurin made his fifth appearance before the Board. (*Id.* ¶ 44). This time, the Inmate Status Report provided to the Board had been corrected to indicate that the resentencing minutes were in McLaurin's file (although it still incorrectly noted that there had been no official statement from a judge); indeed, the Report quoted the portion of the resentencing minutes in which Judge Mathews had stated, "I think that you should be considered by parole at the earliest possible date because I think that you have learned your lesson." (Ex. F at 1-2). The Report further observed that if McLaurin were to be released, his parole should be subject to two mandatory special conditions for sex offenders. (*Id.* at 3).

At the hearing, Commissioner Smith indicated that the pan el had been afforded an opportunity to review the resentencing minutes and noted Judge Mathews' statements about considering McLaurin for parole at the earliest possible date. (Ex. G at 5-6). However, the Board nevertheless denied parole once again, stating:

**\*7** After a personal interview, record review, and deliberation, this pan el finds your release is incompatible with the public safety and welfare. Your

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

instant offense of attempted robbery 2 involved a bank robbery where you displayed what appeared to be a handgun. At the time you were on parole. You have multiple prior revocations of parole. Consideration has been given to your demonstrated pattern of robbery related crime. Your much improved behavior, program accomplishments, and community support are noted. However due to your lengthy record of crime, and poor supervision record, your release at this time is denied. There is a reasonable probability you would not live and remain at liberty without violating the law. During the interview you displayed little remorse for the victim of your criminal activities.[FN4]

> FN4. Although the Board indicated that McLaurin had shown "little remorse" during the hearing, in its decision less than one year earlier, it had noted his "sincere remorse." (*See* Exs. E at 2, G at 2).

(Ex. G at 2).

5. *Institutional Record*

During his time in prison, McLaurin has earned a Masters of Professional Studies degree from the New York Theological Seminary. (Am.Compl.¶ 4). He also has completed programs relating to Aggression Replacement Training, Alternatives to Violence, and Alcohol and Substance Abuse Treatment. His positive institutional adjustment is further demonstrated by the fact that he has not received any disciplinary infractions over the past ten years. (*Id* .¶ 3).

B. *Pleadings*

McLaurin's original complaint in this action is dated March 12, 2007; his Amended Complaint is dated August 31, 2007. (Docket Nos. 1, 14). In the Amended Complaint, McLaurin alleges that the Defendants' denial of his requests for parole violated his constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Ex Post Facto Clause of Article I of the United States Constitution.

More specifically, McLaurin contends that his procedural due process rights were violated because the Defendants: (1) failed to consider Judge Mathews' remarks as a recommendation under New York Executive Law Section 259-i and refused to acknowledge that Judge Mathews had expressly recommended that McLaurin be paroled after ten years; (2) relied on erroneous information indicating that McLaurin had seven or eight felony convictions; (3) incorrectly referred to McLaurin's youthful offender adjudication as a felony conviction; (4) mischaracterized information contained in a Victim Impact Statement by noting incorrectly that the victims of his crime had sustained physical injuries; and (5) failed adequately to train and supervise the parole commissioners and staff.[FN5] (Am.Compl.¶¶ 47, 59-62). McLaurin also contends that the Defendants violated his due process, equal protection, and Ex Post Facto Clause rights by maintaining an unofficial policy of denying parole on the basis of an inmate's criminal history, without meaningful consideration of the other statutory factors. (*Id.* ¶¶ 48-58). Finally, he alleges that the Defendants violated his Ex Post Facto Clause rights by improperly requiring that his release conditions comply with the New York Sexual Offender Registration Act ("SORA"), N.Y. Correct. Law § 168, *et seq.* (*Id.* ¶ 47).

> FN5. McLaurin frames the failure-to-train claim in his Amended Complaint as a "deliberate indifference" claim, (Am.Compl.¶¶ 59-62), evidently hoping to extend liability to the current Governor and Chairman of the Division of Parole, neither of whom had any personal involvement in the denial of his parole. To the extent that McLaurin seeks to bring this claim as a *Monell* claim, *see Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), he faces the obstacle that no municipality is involved in this action. *See id.* at 691 n. 54 (noting that local governments may be sued under Section 1983 because, unlike states, they do not have Eleventh Amendment immunity); *see also City of Canton v. Harris,* 489 U.S. 378, 388 (1989) (municipalities maybe held liable for damages under *Monell* arising out of a failure to train their personnel where it amounts to deliberate indifference).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

**\*8** McLaurin seeks declaratory and injunctive relief to prevent these alleged violations from recurring. Specifically, he seeks (1) an order declaring that the Defendants violated his constitutional rights and (2) an injunction requiring the Parole Board to (a) stop making parole release determinations solely on the basis of his prior criminal history, (b) expunge all inaccurate information in his parole file, and (c) provide him with an immediate *de novo* parole hearing at which the Defendants acknowledge that Judge Mathews' remarks constitute a recommendation that McLaurin be released after ten years' imprisonment. (*Id.* ¶¶ 63-72).

C. *Motion to Dismiss*

On November 19, 2007, the Defendants moved to dismiss the Amended Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) McLaurin's claims against Pataki and Dennison are moot, (2) certain of his claims are barred by the statute of limitations, (3) McLaurin has failed to allege sufficient personal involvement on the part of Spitzer and Alexander with respect to certain alleged constitutional violations, and (4) the Amended Complaint fails to state a claim upon which relief can be granted.[FN6] (Docket No. 19).

> FN6. The Defendants withdrew additional arguments regarding qualified immunity and the Eleventh Amendment because McLaurin is not seeking monetary damages. (Defs.' Reply Mem. at 1 n. 1).

McLaurin has filed a memorandum of law and affidavit in opposition to the motion to dismiss which (despite his *pro se* status) are polished and well-reasoned. (Docket Nos. 33-34). The Defendants, in turn, have filed a reply memorandum. (Docket No. 35). Accordingly, the motion is fully submitted.

III. *Discussion*

A. *Standard of Review*

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction over the claim. Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if it fails to state a claim for which relief can be granted. Although the same standard of review applies to both motions, *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003); *Alster v. Goord,* No. 05 Civ. 10883(WHP), 2008 WL 506406, at \*2 (S.D.N.Y. Feb. 26, 2008), a court "must decide the 'jurisdictional question first because a disposition of a Rule 12(b) (6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.' " *Tirone v. N.Y. Stock Exch., Inc.,* No. 05 Civ. 8703(WHP), 2007 WL 2164064, at \*3 (S.D.N.Y. July 27, 2007) (quoting *Magee v. Nassau County Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998)).

In connection with both motions, the court must accept the material factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). As the Supreme Court recently has explained, the issue that must be decided under Rule 12(b)(6) is whether the plaintiff's claims are "plausible." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965-66 & n. 5 (2007). This requires the Court to apply a "flexible" standard, pursuant to which a pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis omitted).

**\*9** Because McLaurin is a *pro se* litigant, the Court may rely on both his amended complaint and his motion papers in assessing the legal sufficiency of his claims. *See, e.g., Milano v. Astrue,* No. 05 Civ. 6527(KMW)(DF), 2007 WL 2668511, at \*2 (S.D.N.Y. Sept. 7, 2007); *Burgess v. Goord,* No. 98 Civ.2077(SAS), 1999 WL 33458, at \*1 n. 1 (S.D.N.Y. Jan. 26, 1999); *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at \*1 n. 2 (S.D.N.Y. Nov. 17, 1997). The Court may also consider any documents referenced in his pleadings or which are properly the subject of judicial notice. *See Tarshis v. Riese Org.,* 211 F.3d 30, 39 (2d Cir.2000), *abrogated on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

Cir.1991). Indeed, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect.' " *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir.2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam)); *see Munno v. Town of Orangetown,* 391 F.Supp.2d 263, 268 (S.D.N.Y.2005) (where "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the court may consider the documents" in connection with a Rule 12(b)(6) motion) (internal quotation marks omitted); *Thomas v. Westchester County Health Care Corp.,* 232 F.Supp.2d 273, 275 (S.D.N.Y.2002) ("Documents that are integral to plaintiff's claims may also be considered, despite plaintiff's failure to attach them to the complaint.").

Additionally, because McLaurin is proceeding *pro se,* the Court must read his papers "liberally, and ... interpret them to raise the strongest arguments that they suggest." *Sloane v. Mazzuca,* No. 04 Civ. 8266(KMK), 2006 WL 3096031, at *3 (S.D.N.Y. Oct. 31, 2006) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)) (ellipsis in original); *see also Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998) ("Though a court need not act as an advocate for *pro se* litigants, in *pro se* cases there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done.") (internal quotation marks and citation omitted). This principle applies with particular force here because McLaurin is alleging a civil rights violation. *See, e.g., Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993); *Contes v. City of N.Y.,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at *2 (S.D.N.Y. July 14, 1999).[FN7]

FN7. During a telephone conference on May 29, 2008, I considered whether the Defendants' motion should be converted into a motion for summary judgment. The Defendants previously had warned McLaurin of this possibility by serving a notice of motion containing the cautionary information required by Local Civil Rule 12.1. (*See* Docket No. 20). Ultimately, I concluded that there was no need to treat the Defendants' motion as a motion for summary judgment because the exhibits attached to the

Defendants' papers (McLaurin's Parole Board decisions, Inmate Status Reports related to his Parole Board appearances, and transcripts of his Parole Board interviews) are either incorporated by reference in McLaurin's Amended Complaint or are integral thereto. (*Compare* Am. Compl. ¶¶ 25-46, *with* Exs. A-G). Accordingly, they can be considered without treating the Defendants' motion as a summary judgment motion.

**B.** *Rule 12(b)(1)*

In their motion papers, the Defendants contend that this Court lacks jurisdiction over defendants Pataki and Dennison because McLaurin's claims against them are moot. (Defs.' Mem. at 5). A case is moot when "the problem sought to be remedied has ceased, and where there is 'no reasonable expectation that the wrong will be repeated.' " *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 402 (1975)). If the case is moot, the court lacks subject matter jurisdiction. *Fox v. Bd. of Trs. of State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir.1994).

***10** In this action, McLaurin has sued Pataki and Dennison solely in their official capacities. (Am.Compl.¶ 7, 9). Under Rule 25(d) of the Federal Rules of Civil Procedure, when a "public officer who is a party in an official capacity ... ceases to hold office while the action is pending ... [t]he officer's successor is automatically substituted as a party." This rule is "designed to prevent suits involving public officers from becoming moot due to personnel changes." *Karcher v. May,* 484 U.S. 72, 83 (1987). Accordingly, Paterson and Alexander, the current Governor of New York and Chairman of the Division of Parole, respectively, have been substituted for Pataki and Dennison. *See supra* note 1. Whether McLaurin's claims against Pataki and Dennison technically are moot is therefore irrelevant because other parties have been substituted for them.

In response to McLaurin's opposition papers, the Defendants also have advanced the argument that *all* claims against the Defendants arising out of events during the Pataki administration are now moot. (*See* Defs.' Reply Mem. at 2 n. 3). In that regard, McLaurin alleges in his

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

Amended Complaint that the Pataki administration adopted an unconstitutional policy that has been continued by the current administration. (Am.Compl.¶ 16). If so, the wrongs that he alleges have not been remedied, and there is a reasonable possibility that they might be repeated. McLaurin's claims against the Defendants consequently are not moot. *See Graziano v. Pataki,* No. 06 Civ. 480(CLB), 2007 WL 4302483, at *1 (S.D.N.Y. Dec. 5, 2007).

C. *Rule 12(b)(6)*

1. *Statute of Limitations*

The statute of limitations for Section 1983 actions arising out of constitutional wrongs in New York is three years. *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994). In calculating this period, courts assume, pursuant to the "prison mailbox" rule, that a pleading is filed when it is given to prison officials. *See Houston v. Lack,* 487 U.S. 266, 275-76 (1988); *Nobel v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001). In this case, McLaurin's original complaint is dated March 12, 2007, and was mailed to the Court by prison officials on March 23, 2007. His papers are silent, however, as to the date that the complaint was tendered to prison officials for mailing.

On the assumption that McLaurin tendered his complaint to prison officials on the date that he signed it, any claims that accrued before March 12, 2004, would be time barred. To the extent that McLaurin seeks relief in connection with alleged violations of his rights during the 2001 and 2003 parole hearings, his Amended Complaint therefore must be dismissed. McLaurin apparently does not disagree with this analysis. Indeed, in his opposition papers, McLaurin explains that the list of parole commissioners named in his Amended Complaint intentionally excluded those who had participated only in the denial of his parole in 2001 and 2003. (PL's Mem. at 10; Aff. of Norris J. McLaurin, sworn to on Nov. 30, 2007 ("Pl.'s Aff."), ¶ 2).

2. *Failure to State a Claim Under Section 1983*

**\*11** Section 1983 provides a means by which a person alleging a constitutional deprivation may bring a claim, but does not itself create any substantive rights. *Sykes,* 13 F.3d at 519. Consequently, to state a claim under Section 1983, a plaintiff must allege that a "person" acting under color of state law has deprived him of a right, privilege, or immunity guaranteed by the United States Constitution. *See* 42 U.S.C. § 1983; *Fox v. City of N.Y.,* No. 03 Civ. 2268(FM), 2004 WL 856209, at *4 (S.D.N.Y. Apr. 20, 2004). Here, as noted above, McLaurin alleges that the Defendants, while acting under the color of state law, violated his Fourteenth Amendment and Ex Post Facto Clause rights.

a. *State Agencies Are Not "Persons"*

A state agency does not qualify as a "person" under Section 1983. *Harris v. N.Y. State Dep't of Health,* 202 F.Supp.2d 143, 178 (S.D.N.Y.2002) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 64 (1989)). Accordingly, McLaurin's claims against the Division of Parole must be dismissed because it is a New York state agency. *Rios v. N.Y. Exec. Dep't Div. of Parole,* No. 07 Civ. 3598(DLI), 2008 WL 150209, at *3 (E.D.N.Y. Jan. 14,2008).

b. *Lack of Personal Involvement*

The Defendants contend that all claims other than those related to the 2007 parole hearing should be dismissed as against defendants Spitzer and Alexander because they were not personally involved in any earlier hearings. (Defs.' Mem. at 6). The Defendants presumably would also extend that argument to include Paterson, who has now been substituted for Spitzer as a defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Personal involvement in an alleged constitutional deprivation is, of course, a "prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006). In his Amended Complaint, however, McLaurin seeks only injunctive and declaratory relief. Personal involvement of a defendant is *not* required in such circumstances. *See, e.g., Voorhees v. Goord,* No. 05 Civ. 1407(KMW)(HBP), 2006 WL 1888638, at *6 n.l

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

(S.D.N.Y. Feb. 24, 2006); *Lyerly v. Phillips,* 04 Civ. 3904(PKC), 2005 WL 1802972, at *4 (S.D.N.Y. July 29, 2005). The claims against the Governor and the Chairman of the Division of Parole in their official capacities therefore should not be dismissed on this ground.

c. *Due Process*

McLaurin advances two distinct due process claims. First, he contends that the specific manner in which the Parole Board conducted his parole hearings violated his due process rights. Second, he contends that the Defendants' unofficial policy of denying parole to all inmates solely on the basis of their criminal histories, without any meaningful consideration of the other statutory factors, gives rise to a due process violation.

At the outset, it is clear that there is no constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 (1979). Accordingly, for a state prisoner to have an interest in parole that is protected by the Due Process Clause, "he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001). The New York parole system, however, does not give any inmate a legitimate expectation that he will be released on parole. *Marvin v. Goord,* 255 F.3d 40, 44 (2d Cir.2001); *Barna,* 239 F.3d at 171. For this reason, alleged violations of the procedural requirements of the New York parole scheme are generally matters for the state courts. *Mathie v. Dennison,* No. 06 Civ. 3184(GEL), 2007 WL 2351072, at *6 (S.D.N.Y. Aug. 16, 2007). The Due Process Clause nevertheless may be violated if parole is denied for arbitrary or impermissible reasons, such as reliance upon a protected characteristic or an irrational distinction. *See, e.g ., id.* at *6; *Cartagena v. Connelly,* No. 06 Civ.2047(LTS) (GWG), 2006 WL 2627567, at *7 (S.D.N.Y. Sept. 14, 2006); *Siao-Pao v. Mazzuca,* 442 F.Supp.2d 148, 154 (S.D.N.Y.2006); *Morel v. Thomas,* No. 02 Civ. 9622(HB), 2003 WL 21488017, at *4 (S.D.N.Y. June 26, 2003).

**\*12** Under New York law, parole is not a reward for good conduct in prison; rather, it is granted only when there is a "reasonable probability" that the inmate will not violate the law upon his release, his release is not inconsistent

with societal welfare, and it "will not so deprecate the seriousness of his crime as to undermine respect for law." N.Y. Exec. Law § 259-i(2)(c)(A). In making its decision with respect to a request for parole, the Board may consider, among other factors, the offender's background, his criminal history, the severity of his offense and any prior offenses, and the manner in which he has adjusted to any prior release on probation or parole. [FN8]*Id.*

FN8. More specifically, Executive Law Section 259-i provides that the Parole Board must consider:

(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government ...; and (v) any statement made to the board by the crime victim or the victim's representative ....

N.Y. Exec. Law § 259-i(2)(c)(A). Additionally, if the court has set a minimum period of incarceration, the Board must consider:

(i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and *recommendations of the sentencing court,* the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and (ii) *prior criminal record,* including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

*Id*. § 259-i(l)(a) (emphases added).

i. *McLaurin's Hearings*

McLaurin's first due process claim is that his rights were violated as a consequence of various procedural errors that arose during his parole hearings. According to McLaurin, the Defendants: (a) failed to treat Judge Mathews' remarks as a sentencing recommendation and refused to acknowledge that the judge had expressly recommended that McLaurin be paroled after ten years; (b) relied on erroneous information that McLaurin had seven or eight felony convictions; (c) incorrectly referred to McLaurin's youthful offender adjudication as a felony conviction; (d) mischaracterized information contained in the Victim Impact Statement by noting incorrectly that the victims sustained physical injuries; and (e) failed adequately to train and supervise parole commissioners and staff. (Am.Compl.¶¶ 47, 59-62).

McLaurin previously prevailed in state court on his claim that the Parole Board failed to consider the resentencing minutes during the 2005 hearing. *See McLaurin, 27 A.D.3d at 565-66.* Indeed, the court's ruling in that case resulted in the Parole Board's *de novo* hearing in 2006. The transcripts of that hearing and the subsequent hearing in 2007 establish, however, that the Parole Board did take into account the recommendation by Judge Mathews that McLaurin "be considered by parole at the earliest possible release date." (Am. Compl. Attach. at 5). For example, the Parole Board's explanation of its parole denial in 2006 expressly states that it "review[ed the] sentencing minutes." (Ex. E at 2). Similarly, in 2007, the Inmate Status Report provided to the Board noted that McLaurin's sentencing and resentencing minutes were in the file. Although the Inmate Status Report incorrectly indicates that the judge did not make an "official statement," it accurately quotes the statement by Judge Mathews regarding early consideration for parole upon which McLaurin relies. (Ex. F at 1-2). Furthermore, the transcripts of both the 2006 and 2007 hearings confirm that the Board considered the state court's sentencing recommendation in reaching its decisions to deny McLaurin's request for parole. (*See* Exs. E at 5 ("both sentencing minutes are now present inside your folder"), 8 ("even the resentencing judge indicated he noticed your level of intelligence"), G at 5-6 ("We have a copy of [the

sentencing minutes] which we've had a chance to review" in which the judge said you should be "considered by the Parole Board a [t] the earliest possible release date."). FN9 In light of this undisputed record, McLaurin cannot prevail on his claim that the Board failed to consider Judge Mathews' recommendation in the course of denying his requests for parole.

> FN9. In its written decision in 2007, the Board did not expressly refer to the resentencing minutes but previously had acknowledged reviewing them during the hearing. The omission from the decision is not dispositive. *See Morel, 2003 WL 21488017, at *4* (parole board "need not expressly discuss each of the reasons in its determination").

**\*13** McLaurin's other claims regarding the conduct of his hearings are equally baseless. First, notwithstanding his assertions to the contrary, (*see* Pl.'s Aff. ¶ 9), McLaurin does have eight felony convictions-one for sexual abuse in 1973, three for robbery in 1979, one for attempted possession of prison contraband in 1979, one for robbery in 1983, one for conspiracy in 1988, and one for robbery in 1992.FN10 (Ex. A at 3-4). Second, the Parole Board never referred to McLaurin's youthful offender adjudication as a felony conviction; it instead only noted (correctly) that McLaurin's criminal history "dates back to a 1972 youthful offender." (Ex. E at 2). Third, the Inmate Status Reports prepared for the Board did not indicate that the victims incurred physical injuries, but, rather, that McLaurin's robbery involved "force/physical injury." This statement is accurate because McLaurin displayed what appeared to be a firearm during the course of the bank robbery, ordered all of the tellers and customers to get "down on the fucking floor," and threw one of the witnesses to the ground. (Exs. A at 2, C at 1). Finally, the hearing transcripts confirm that the Board interviewed McLaurin at some length during his appearances in 2006 and 2007 and considered the appropriate statutory factors in denying his release on parole. It follows that there is no basis for his claim that he was denied due process because the Board members who conducted those parole hearings were inadequately trained.FN11

> FN10. Although McLaurin's three robbery convictions in 1979 may have constituted a

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

single conviction for *sentencing* purposes, *see McLaurin,* 1998 WL 146282, at *1, he undeniably was convicted of three separate crimes. Moreover, there is no basis for his claim that his attempted possession of prison contraband conviction in 1979 was a misdemeanor. That crime is in fact a felony. *See* N.Y. Penal Law § 205.25; (Ex. A at 4; Pl.'s Aff. Ex. 2).

FN11. McLaurin attaches to his affidavit comments made by Commissioner Manley ("Manley") in the course of a panel discussion at the Association of the Bar of the City of New York. (Pl.'s Aff. Ex. 9). Those comments, which relate to *Manley's* lack of training and the general practices of the Parole Board, are disturbing. However, Manley did not participate in McLaurin's 2006 or 2007 parole hearings. The comments also relate to the Parole Board in general; they do not support the proposition that the Defendants violated McLaurin's due process rights during his parole hearings. (*See* Exs. E at 4, G at 4).

Furthermore, even if the Court were to assume that the Defendants committed one or more of the procedural errors alleged in the Amended Complaint, the 2005, 2006, and 2007 hearing transcripts establish that the Parole Board's decisions regarding McLaurin were not made in an arbitrary manner or for impermissible reasons. Indeed, the Board considered the circumstances leading to McLaurin's conviction, his prior criminal record, his institutional adjustment, and his future plans. In 2006 and 2007, the Board also took into account the sentencing judge's recommendation. The transcript of the 2007 hearing further indicates that the Board took notice of McLaurin's "improved behavior, program accomplishments, and community support." (Ex. G at 2). Ultimately, however, the Parole Board concluded that McLaurin's "lengthy record of crime, and poor supervision record" outweighed his positive adjustment in determining his fitness for parole. (*Id.*). This is precisely the sort of weighing of factors that the Board is statutorily empowered to undertake. *See* Manley v. Thomas, 255 F.Supp.2d 263, 267 (S.D.N.Y.2003); Brown v. Thomas, No. 02 Civ. 9257(GEL), 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003).

Consequently, even if there were minor irregularities in the Board's proceedings-such as the failure to update the Inmate Status Report prior to the 2006 *de novo* parole hearing or the ministerial failure to indicate on the 2007 Inmate Status Report that the sentencing judge had made an official statement-McLaurin was afforded all the process that the United States Constitution requires. *See* Boddie v. N.Y. State Div. of Parole, 285 F.Supp.2d 421, 429-30 (S.D.N.Y.2003) (use of uncorrected pre-sentence report and statement of incorrect facts in parole decision does not violate due process). It follows that any further relief to which McLaurin may be entitled must be sought in state court. *See* Standley v. Dennison, No. 9:05 Civ. 1033(GLS)(GHL), 2007 WL 2406909, at *9 (N.D.N.Y. Aug. 21, 2007); Mathie, 2007 WL 2351072, at *6.

**\*14** I note that in a recent letter McLaurin has asked the Court to consider *South v. New York State Division of Parole,* N.Y.L.J., Apr. 23, 2008, at 26 (Sup.Ct., N.Y.County, Apr. 8, 2008), in making its determination regarding his due process claims. (Letter from McLaurin to the Court, dated Apr. 21, 2008 ("Pl.'s Letter"), at 1-2). In that case, Justice Goodman held that an inmate was entitled to a *de novo* parole hearing. Justice Goodman's decision, however, was based on state law and a concession by the Attorney General that the petitioner's hearing did not meet the requirements of state law. The case therefore has no bearing on whether McLaurin's federal constitutional rights were violated; if anything, it confirms that any relief to which McLaurin may be entitled rests with the state court.

ii. *Alleged Policy*

McLaurin's other due process claim is that the Defendants have maintained an unofficial policy of denying parole to almost all prisoners sentenced under the recidivist statutes on the basis of their criminal history, "without any meaningful consideration ... of any other ... statutorily mandated factor [.]" (Am.Compl.¶ 49). Several judges have considered similar allegations concerning the alleged parole policies of the Pataki administration. At least four of those judges have concluded that such a policy-if shown to exist-would not violate the Due Process Clause. *See* Tatta v. Brown, No. 06 Civ. 2852, 2007 WL 4298709, at

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

*1-2 (E.D.N.Y. Dec. 6, 2007) (Block, J.) (basing parole decision on two statutory factors, the nature of the prisoner's crime and his criminal history, does not violate procedural or substantive due process); *Schwartz v. Dennison,* 518 F.Supp.2d 560, 574 (S.D.N.Y.2007) (Holwell, J.) ("a BOP policy of denying parole to sex offenders would not violate the Due Process Clause"); *Mathie,* 2007 WL 2351072, at *6-7 (Lynch, J.) ("A policy that requires the Board to look first and foremost at the severity of the crime ... is neither arbitrary nor capricious."); *Cartagena,* 2006 WL 2627567, at *9 (Gorenstein, Mag. J.) (policy of denying parole to serious offenders would be proper because Board may give statutory factors whatever weight it deems appropriate and need not cite each factor in its decision).

In *Mathie,* for example, Judge Lynch assumed the existence of a policy to deny parole automatically to all violent felons, but held that such a policy did not violate the Due Process Clause. *Mathie,* 2007 WL 2351072, at *6-7. This decision rested principally on three grounds. First, under New York law the Board may "give whatever weight it deems appropriate to the statutory factors." *Id.* at *6 (quoting *Romer v. Travis,* No. 03 Civ. 1670(KMW)(AJP), 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003)). Judge Lynch noted that the policy merely required the Parole Board to "overvalue[ ] the severity of the crime, at the expense of other statutory considerations." *Id.* In his view, this did not violate the Due Process Clause because due process required only that the Board not act arbitrarily or impermissibly. Second, Judge Lynch observed that even if New York adopted the policy as law, it would not violate an inmate's due process rights because the "federal system has abolished parole altogether for all inmates, including both violent and non-violent felons." *Id.* at *7. As he reasoned, "[i]f the federal government can abolish parole altogether without violating the Constitution, then New York State surely acts within constitutional confines if it decides to restrict parole to only non-violent felons, whom the State could rationally find pose a greater risk to public safety and therefore are not proper candidates for early release." *Id.* Finally, as Judge Lynch explained, even if the Board enacted its policy in violation of state law, the proper venue for such a claim would be state court .[FN12] *Id.*

FN12. In an unpublished opinion, however, the Second Circuit has stated that it is an open

question whether a prisoner has a "liberty or property interest in having the Parole Board comply with its own statutory and regulatory guidelines in determining whether to grant or deny parole." *See Rodriguez v. Greenfield,* 7 Fed. App'x 42, 43 (2d Cir.2001).

*15 The sole authority suggesting that a policy of uniformly denying parole to violent or persistent violent felons would violate due process is Judge Brieant's decision in *Graziano,* 2006 WL 2023082, at *6-9. In that case, Judge Brieant denied a motion to dismiss, and later granted certification of a class action, because the plaintiffs-A-1 felons who were denied parole-made what he considered a nonfrivolous statistical case that the Parole Board, rather than exercising its discretion in a misguided fashion, was failing to exercise its discretion at all. Ironically, the plaintiffs in that action suggested that the Board was not handcuffed by any alleged policy with respect to non-A-1 felons, *i .e.,* persons convicted of crimes other than murder, such as McLaurin.[FN13] *See id.* at *1-2, 8.

FN13. In his April 21 letter, McLaurin asks the Court to address his status in the *Graziano* class action. (Pl.'s Letter at 2). That issue is not properly before this Court. In any event, the *Graziano* class includes only those prisoners "convicted of A-1 felony offenses." (*See* Docket No. 98 in *Graziano,* No. 06 Civ. 480). McLaurin concedes that he has not been convicted of such an offense. (Letter from McLaurin to the Court, dated May 1, 2008, at 2).

Here, as in *Mathie,* McLaurin's contention, at its core, is that the Defendants are relying almost exclusively on the criminal history of a prisoner in determining whether to grant parole release, at the expense of the other statutory factors. The Parole Board is entitled, however, to determine that a prisoner's criminal history outweighs any of the other statutory factors. *Siao-Pau,* 442 F.Supp.2d at 154 (placing heavy emphasis on a prisoner's criminal history is "entirely consistent with the criteria laid down by the legislature") (quoting *Morel,* 2003 WL 21488017, at *5). Accordingly, even if McLaurin was denied parole as a matter of Board policy, this does not raise any due process concerns.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

d. *Equal Protection*

McLaurin next claims that he was denied his rights under the Equal Protection Clause because the Defendants treated persistent felony offenders and persistent violent felony offenders differently than non-persistent felony offenders. (Am.Compl.¶ 57). Assuming that this is true, it does not constitute an impermissible ground for the denial of parole. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). Nevertheless, because prisoners are not a suspect class, *Lee v. Governor of N.Y.,* 87 F.3d 55, 60 (2d Cir.1996), the policy is "presumed constitutional and need only be rationally related to a legitimate state interest." *Mathie,* 2007 WL 2351072, at *8 (quoting *Salahuddin v. Unger,* No. 04 Civ. 2180(JG), 2005 WL 2122594, at *7 (E.D.N.Y. Sept. 2, 2005)).

The state clearly has a rational basis for drawing a distinction in parole determinations between persistent offenders and non-persistent offenders, which is to "prevent[ ] the early release of potentially violent inmates" or those who are more likely to recidivate. *See Salahuddin,* 2005 WL 2122594 at *7. Moreover, as Judge Baer has observed,

the motive and animus that [McLaurin] contends is impermissible-namely the Board's decision to get tough on violent [or persistent] offenders because of public and political pressure-in fact seems entirely permissible, as it closely relates to the statutory factor of whether "release is not incompatible with the welfare of society and will not so deprecate the seriousness of the offense as to undermine respect for law."

**\*16** *Morel,* 2003 WL 21488017, at *5. McLaurin's equal protection claim consequently fails as a matter of law.

e. *Ex Post Facto*

Finally, McLaurin contends that the Defendants violated

his Ex Post Facto Clause rights by adopting its alleged policy and by incorporating into his release conditions terms required by SORA. (Pl.'s Mem. at 22-24). Under the Ex Post Facto Clause, states are prohibited from passing legislation that imposes punishment for an act not punishable at the time it was committed or which is in addition to that then prescribed. U.S. Const. art. I, § 10, cl. 1; *Burgess v. Salmon,* 97 U.S. 381, 384 (1878). The focus is on whether the change "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Cal. Dep't of Corr. v. Morales,* 514 U.S. 499, 506 n. 3 (1995). Changes in the law governing parole decisions that "create [ ] a significant risk of prolonging [the plaintiff's] incarceration" consequently may violate the Ex Post Facto Clause. *Garner v. Jones,* 529 U.S. 244, 251 (2000). On the other hand, a "law that is merely procedural and does not increase a prisoner's punishment cannot violate the Ex Post Facto Clause even when applied retroactively." *Barna,* 239 F.3d at 171.

i. *Policy*

McLaurin alleges that the Defendants' adoption of a policy pursuant to which they automatically denied parole to inmates with a prior criminal history violates the Ex Post Facto Clause. The Ex Post Facto Clause, however, applies only to *laws.* U.S. Const. art. I, § 10, cl. 1. In *Garner,* the Supreme Court determined that state parole regulations are such laws. *See Garner,* 529 U.S. at 247, 257. Although the Supreme Court also explained that a parole board's policy statements and practices could be considered in determining whether a statute or regulation violated the Ex Post Facto Clause, *id.* at 256-57, the Court did not address whether parole board policies or guidelines constitute "laws" subject to ex post facto analysis. *See Anderson-El v. U.S. Parole Comm'n,* No. 05 Civ. 2697(JSR), 2006 WL 2604723, at *5 n. 2 (S.D.N.Y. Sept. 11, 2006) (Report & Rec. of Katz, Mag. J.).

Prior to *Garner,* the weight of authority favored the view that the Ex Post Facto Clause was inapplicable to nonmandatory guidelines used to guide the discretion of a parole board. *See, e .g., DiNapoli v. Ne. Reg'l Parole Comm'n,* 764 F.2d 143, 147 (2d Cir.1985) ("parole guidelines as applied here are not 'laws' within the meaning of the ex post facto clause"); *Pindle v. Poteat,* 360 F.Supp.2d 17, 20 (D.D.C.2003) ("Most courts of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

appeals addressing the question have held that Parole Commission guidelines, which simply provide guides for the exercise of discretion, cannot be considered 'laws' for purpose of the Ex Post Facto Clause."); *see also Portley v. Grossman,* 444 U.S. 1311, 1312 (1980) (because "guidelines operate only to provide a framework for the Commission's exercise of its statutory discretion[, a] change in guidelines assisting the Commission in the exercise of its discretion is ... a [permissible] procedural change"). Since *Garner,* however, the circuit courts have split on this issue. *Compare Glascoe v. Bezy,* 421 F.3d 543, 548 (7th Cir.2005) ("discretionary *guidelines,* unlike statutes or the 'rules' addressed in *Garner,* are not within the ambit of the Ex Post Facto Clause"), *and Warren v. Baskerville,* 233 F.3d 204, 207-08 (4th Cir.2000) (administrative policies are not subject to Ex Post Facto Clause), *with Michael v. Ghee,* 498 F.3d 372, 384 (6th Cir.2007) (guidelines are subject to Ex Post Facto analysis), *and Fletcher v. Dist. of Columbia,* 391 F.3d 250, 251 (D.C.Cir.2004) (*Garner* "foreclosed [the] categorical distinction between a measure with the force of law and guidelines") (internal quotation marks omitted).

**\*17** Although the Second Circuit has not specifically addressed *Garner,* in its subsequent decision in *Barna v. Travis,* the court held that discretionary parole guidelines are not subject to the Ex Post Facto Clause. *Barna,* 239 F.3d at 171. In that case, the plaintiffs alleged that New York State had a policy pursuant to which prisoners convicted of violent crimes were systematically denied parole. *Id.* at 170. The Second Circuit rejected the plaintiffs' Ex Post Facto claim, noting that the New York State parole guidelines do not create mandatory rules for release but seek only to guide the Parole Board's discretion. *Id.* at 171. The court therefore held that the guidelines were "not 'laws' within the meaning of the Ex Post Facto Clause. *Id.*

McLaurin does not allege that the legislature amended the statute governing parole release, Executive Law Section 259-i, or that a state agency adopted a formal regulation that would bind the Board's discretion. He argues instead that the Defendants' policy encouraged the Board to deny parole solely on the basis of criminal history, without meaningful consideration of the other statutory factors. Stated slightly differently, McLaurin's argument is essentially a claim that the policy permitted the Board to place significantly more emphasis on the statutory factors

relating to a prisoner's criminal history at the expense of such other important factors as the prisoner's institutional record and release plans. *See*N.Y. Exec. Law § 259-i(l)(a), (2)(c)(A). If so, the alleged policy was, at best, a guideline used by the Parole Board in balancing the statutory factors. Although the policy sought to guide the Board in the exercise of its discretion, it was not a mandatory rule binding the Board. This Court therefore is bound by *Barna* and must hold that the Ex Post Facto Clause is inapplicable to the Defendants' alleged policy. *See Farid v. Bouey,* No. 05 Civ. 1540, 2008 WL 2127460, at *16 (N.D.N.Y. May 20, 2008) (Report & Rec. of Peebles, Mag. J.) (Pataki parole policy is not "law" subject to Ex Post Facto Clause); *Salahuddin,* 2005 WL 2122594, at *8 (same); *Parks v. Edwards,* No. 03 Civ. 5588(JG), 2004 WL 377658, at *4 (E.D.N.Y. Mar. 1, 2004) (same); *see also Mathie,* 2007 WL 2351072, at *13 (upholding the Pataki policy despite the plaintiff's ex post facto claim). *But see Graziano,* 2006 WL 2023082, at *10-11 (parole board policy subject to Ex Post Facto Clause).

ii. *Sexual Offender Registration Act*

McLaurin also contends that the Defendants violated his rights under the Ex Post Facto Clause by improperly applying SORA to his release conditions. SORA, which was enacted well after McLaurin's conviction for sexual abuse, imposes certain obligations on those convicted of specified sex offenses. *See Doe v. Pataki,* 120 F.3d 1263, 1266 (2d Cir.1997). In *Doe v. Pataki,* the Second Circuit concluded that the "application of the registration and notification provisions of ... SORA to persons who committed their offenses prior to the January 21, 1996, effective date of the Act does not violate the Ex Post Facto Clause." *Id.* at 1285. This holding does not necessarily control McLaurin's claim because the conditions that the Inmate Status Reports recommended be attached to his parole release do not relate to notification or registration, but rather to his use of medication and participation in a polygraph program. (*See* Ex. F at 3).

**\*18** The Court need not decide whether retroactive application of those conditions violates the Ex Post Facto Clause, however, because those conditions have not been applied to McLaurin. Indeed, the conditions are recommended for imposition only when McLaurin is granted parole release, an event which has yet to occur.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)
(Cite as: 2008 WL 3402304 (S.D.N.Y.))

McLaurin's claim therefore is not ripe for review. *See United States v. Balon,* 384 F.3d 38, 46 (2d Cir.2004) (ripeness doctrine prevents "a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur") (internal quotation marks omitted).

IV. *Conclusion*

For the foregoing reasons, the Court should grant the Defendants' motion to dismiss McLaurin's Amended Complaint. (Docket No. 21).

V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Crotty. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

S.D.N.Y.,2008.
McLaurin v. Paterson
Not Reported in F.Supp.2d, 2008 WL 3402304 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.)))

C   This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.
Pawel CZERNICKI, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF JUSTICE,
Defendant-Appellee.
**Docket No. 04-4058-CV.**

June 24, 2005.

**Background:** Federal prisoner brought tort claim against government under Federal Tort Claims Act (FTCA). The United States District Court for the Eastern District of New York, John Gleeson, J., dismissed complaint for lack of subject matter jurisdiction. Prisoner appealed.

**Holding:** The Court of Appeals held that prisoner did not show extraordinary circumstances to entitle him to equitable tolling of two-year limitations period on presenting claim to federal agency.

Affirmed.

West Headnotes

**[1] United States 393** ⚷ **113**

393 United States
   393VIII Claims Against United States
      393k113 k. Presentation, Allowance, and Adjustment. Most Cited Cases
Federal prisoner was not entitled to equitable tolling of two-year limitations period in which to file administrative claim with federal agency under Federal Tort Claims Act (FTCA) absent showing that extraordinary circumstances

prevented his timely filing. 28 U.S.C.A. § 2401(b).

**[2] Federal Courts 170B** ⚷ **752**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk752 k. Matters or Evidence Considered. Most Cited Cases
New evidence presented by federal prisoner for first time on appeal would not be considered in reviewing dismissal of his Federal Tort Claims Act (FTCA) complaint. 28 U.S.C.A. §§ 1346, 2671 et seq.
**\*410** Pawel Czernicki, Brooklyn, New York, for the Appellant, pro se.

Warshawsky, Steven M., Assistant United States Attorney, Eastern District of New York (Steven Kim, Assistant United States Attorney, Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief), Brooklyn, New York, for the Appellee, of counsel.

Present:   MINER, STRAUB, Circuit Judges, and KEENAN,FN* District Judge.

      FN* The Honorable John F. Keenan, United States District Judge, Southern District of New York, sitting by designation.

**SUMMARY ORDER**

**\*\*1** AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

Plaintiff-Appellant Pawel Czernicki ("Czernicki") appeals

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.)))

from the November 18, 2003 judgment of the United States District Court for the Eastern District of New York (John Gleeson, *Judge*), which granted Defendant-Appellee's motion to dismiss the amended complaint for lack of subject matter jurisdiction. We assume the parties' familiarity with the facts of this case, its procedural posture, and the decision below.

When reviewing a district court's dismissal for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), this Court reviews factual findings for clear error and legal conclusions *de novo*. *Close v. New York,* 125 F.3d 31, 35-36 (2d Cir.1997) (citations omitted). Under the Federal Tort Claims Act ("FTCA"), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues ...," 28 U.S.C. § 2401(b), and we have explained that, "[u]nless a plaintiff complies with that requirement, a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim," *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 189 (2d Cir.1999). For substantially the same reasons provided by the District Court, we hold that Czernicki has failed to demonstrate that he filed an administrative claim within the two-year statute of limitations under the FTCA.

[1][2] Moreover, we agree with the District Court's finding that the doctrine of equitable tolling should not apply in this case. We have applied the doctrine of equitable tolling in "rare and exceptional circumstances," where we found that "extraordinary circumstances" prevented a party from timely performing a required act and that party "acted with reasonable diligence throughout the period he [sought] to toll." *Doe v. Menefee,* 391 F.3d 147, 159-60 (2d Cir.2004). In *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court explained that the doctrine of equitable tolling can apply to cases filed against the United States, and that it is within the discretion of the district court to equitably toll the statute of limitations "where the claimant has actively pursued his judicial remedies by filing a defective **411 pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." In *Kronisch v. United States,* 150 F.3d 112, 123 (2d Cir.1998), we explained that the FTCA's limitations period "will be equitably tolled so long as defendants'

concealment of their wrongdoing prevented plaintiff from becoming aware of, or discovering through the exercise of reasonable diligence, his cause of action." The record clearly indicates that Czernicki failed to file a timely administrative claim, and he presented no evidence to the District Court demonstrating that extraordinary circumstances warrant the tolling of the statutory period.FN1

FN1. For the first time, Czernicki submits in his appeal the declaration of fellow inmate Ron Reale, which suggests that Czernicki was dissuaded by prison officials from filing an FTCA claim. The Government subsequently moved to strike the declaration as new evidence that was not first presented to the District Court. We grant the Government's motion and decline to consider this evidence for the first time on appeal. *See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.,* 54 F.3d 69, 72-73 (2d Cir.1995) (declining to consider appellant's argument not raised in district court absent a showing of manifest injustice or extraordinary need).

**2 We have considered all of Czernicki's claims on this appeal and find that each of them is unavailing. Accordingly, the Government's motion to strike Mr. Reale's declaration is GRANTED and the District Court's order dismissing the amended complaint for lack of subject matter jurisdiction is AFFIRMED.

C.A.2 (N.Y.),2005.
Czernicki v. U.S. Dept. of Justice
137 Fed.Appx. 409, 2005 WL 1498456 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.